KLEIN LAW GROUP OF NEW YORK PLLC
120 East 79th Street, Suite 1A
New York, New York 10021
(347) 292-8170
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM, on behalf of themselves and other similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>P&G AUDITORS AND CONSULTANTS, LLC; GRC SOLUTIONS, LLC; PGX, LLC; AND APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,<br><br>Defendants. | **CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Requested** |

Plaintiffs, Ricardo Mazzitelli ("Mazzitelli"), Kenneth Curry ("Curry"), and Jacqueline Brown Pilgrim ("Pilgrim") (collectively "Plaintiffs"), on behalf of themselves and other current and former Anti-Money Laundering investigators ("AML") and/or Team Leads ("TL"), by and through their undersigned counsel, file this Complaint against Defendants, P & G AUDITORS AND CONSULTANTS, LLC ("P&G"), GRC SOLUTIONS, LLC ("GRC"), PGX, LLC ("PGX"), and APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS ("Apple Bank") (collectively referred to as "Defendants") and state as follows:

## NATURE OF THE ACTION

1.     Plaintiffs allege on behalf of themselves and other similarly situated current and former AMLs and TLs of the Defendants, pursuant to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law; (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq*; and (iii) entitled to declaratory relief pursuant to 28 U.S.C. §2201.

2.      Plaintiffs further allege on behalf of themselves, and a class of other similarly situated current and former AMLs and TLs of the Defendants, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for overtime work for which they did not receive overtime premium pay as required by the New York Labor Law §§ 650 et seq. ("NYLL"), and the supporting New York State Department of Labor regulations, as well as additional damages.

## JURISDICTION

3.      Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, et seq., hereinafter called the "FLSA") to recover unpaid back wages, to recover an additional equal amount as liquidated damages, to obtain declaratory relief, and to obtain reasonable attorney's fees and costs.

4.      This Court has jurisdiction over Plaintiffs' New York state law claims pursuant to 28 U.S.C. §1367, because Plaintiffs' state law claims arise from substantially the same factual nexus as their FLSA claims.

5.      Venue is proper in the Southern District of New York because the events forming the basis of this suit occurred in this District.

## PARTIES

6.      Plaintiff CURRY is currently a resident of Henry County, Georgia who rented long-term stay accommodations in New York, New York for the times relevant to this Action.

7.     At all times relevant hereto, CURRY was employed by Defendants as a non-exempt AML and performed related activities for Defendants in New York.

8.     CURRY worked as an AML for Defendants from approximately October 9, 2017 to August 26, 2018.

9.     CURRY is a covered employee of Defendants within the meaning of the FLSA and NYLL.

10.    Plaintiff MAZZITELLI is a resident of Miami-Dade County, Florida who rented a room in Brooklyn, New York for the times relevant to this Action.

11.    At all times relevant hereto, MAZZITELLI was employed by Defendants as a non-exempt AML and/or TL and performed related activities for Defendants in New York.

12.    MAZZITELLI worked as a Team Lead for Defendants from approximately July 2017 to February 2018.

13.    MAZZITELLI is a covered employee of Defendants within the meaning of the FLSA and NYLL.

14.    Plaintiff PILGRIM is currently a resident of Broward County, Florida who rented an apartment in New York, New York at times relevant to this Action.

15.    At all times relevant hereto, PILGRIM was employed by Defendants as a non-exempt AML and performed related activities for Defendants in New York.

16.    PILGRIM worked as an AML for Defendants from approximately April 27, 2018 to June 11, 2018.

17.    PILGRIM is a covered employee of Defendants within the meaning of the FLSA and NYLL.

18.     At all times material hereto P&G, was, and continues to be, a Foreign Limited Liability Company with its principal place of business located in East Brunswick, New Jersey.

19.     Defendant P&G is a covered employer within the meaning of FLSA and NYLL and, at all relevant times, employed Plaintiffs and similarly situated employees.

20.     At all relevant times, P&G has maintained control, oversight, and direction over Plaintiffs and similarly situated employees.

21.     P&G has a centralized corporate policy that it applied to all AMLs and TLs employed on its Apple Bank project.

22.     P&G applied the same employment policies, practices, and procedures to all AMLs and TLs within the proposed class/collective, including policies, practices, and procedures with respect to payment of wages.

23.     At all times material hereto, GRC, was and continues to be, a Foreign Limited Liability Company with its principal place of business located in East Brunswick, New Jersey.

24.     Defendant GRC is a covered employer within the meaning of FLSA and NYLL and, at all relevant times, employed Plaintiffs and similarly situated employees.

25.     At all relevant times, GRC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees.

26.     GRC has a centralized corporate policy that it applied to all AMLs and TLs employed at the Apple Bank project.

27.     GRC applied the same employment policies, practices, and procedures to all AMLs and TLs, including policies, practices, and procedures with respect to payment of wages.

28.     At all times material hereto PGX, was, and continues to be, a Foreign Limited Liability Company with its principle place of business located in East Brunswick, New Jersey.

29.     Defendant PGX is a covered employer within the meaning of FLSA and NYLL and, at all relevant times, employed Plaintiffs and similarly situated employees.

30.     At all relevant times, PGX has maintained control, oversight, and direction over Plaintiffs and similarly situated employees.

31.     PGX has a centralized corporate policy that it applied to all AMLs and TLs employed on the Apple Bank project.

32.     PGX applied the same employment policies, practices, and procedures to all AMLs and TLs employees on the Apple Bank project, including policies, practices, and procedures with respect to payment of wages.

33.     At all times material hereto APPLE BANK, was, and continues to be, a Foreign Limited Liability Company, that is  registered in the State of Delaware but has its principal place of business located at 205 East 42nd Street, New York, New York 10017.

34.     Defendant APPLE BANK is a covered employer within the meaning of FLSA and NYLL and, at all relevant times, employed Plaintiffs and similarly situated employees.

35.     At all relevant times, APPLE BANK has maintained control, oversight, and direction over Plaintiffs and similarly situated employees.

36.     APPLE BANK has a centralized corporate policy that it applied to all AMLs and TLs that Defendants P&G, GRC, and PGX sourced to APPLE BANK in connection with its anti-money laundering review project that took place throughout 2017 and 2018.

37.     APPLE BANK applied the same employment policies, practices, and procedures to all AMLs and TLs that Defendants P&G, GRC, and PGX sourced to APPLE BANK in connection with its anti-money laundering review project that took place throughout 2017 and 2018, including policies, practices, and procedures with respect to payment of wages.

38.     At all times material hereto, each of the Defendants was, and continues to be, an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA and NYLL.

39.     Based upon information and belief, the annual gross revenue of P&G was in excess of $500,000.00 per annum during the relevant time periods.

40.     Based upon information and belief, the annual gross revenue of GRC was in excess of $500,000.00 per annum during the relevant time periods.

41.     Based upon information and belief, the annual gross revenue of PGX was in excess of $500,000.00 per annum during the relevant time periods.

42.     Based upon information and belief, the annual gross revenue of APPLE BANK was in excess of $500,000.00 per annum during the relevant time periods.

43.     At all times relevant hereto, the Defendants were a "joint enterprise" within the meaning of the FLSA and NYLL.

44.     At all times relevant hereto, Defendants P&G, GRC, and PGX had a common business purpose and all existed to provide anti-money laundering consultant services to their clients, one of whom was APPLE BANK.

45.     At all times relevant hereto, Defendants P&G, GRC, and PGX had common ownership.

46.      At all times relevant hereto, Defendants P&G, GRC, and PGX shared the same principal executive office, website, phone numbers and vendors.

47.     At all times relevant hereto, Defendants P&G, GRC, and PGX shared common management.

48.     At all times relevant hereto, Defendant APPLE BANK utilized the services of P&G, GRC, and PGX to aid and abet it in a fraud to avoid paying overtime wages and to avoid the payment of employment taxes on behalf of MAZITELLI, CURRY, PILGRIM and others similarly situated AMLs and TLs, by knowingly and purposefully misclassifying these AMLs and TLs as independent contractors rather than employees.

49.     Defendants P&G, GRC, and PGX hired MAZZITELLI, CURRY, PILGRIM and all other AMLs and TLs who comprise the members of the collective and class to perform duties as AMLs and TLs in New York, for Defendants' client, APPLE BANK.

50.     At all times relevant hereto, Defendant APPLE BANK utilized the services of P&G's, GRC's, and PGX's AMLs and TLs to provide the same type of services that APPLE BANK received from its own employees.

51.     At all times relevant hereto, Defendant APPLE BANK needed the services provided by P&G's, GRC's, and PGX's AMLs and TLs to comply with federal and state anti-money laundering statutes, rules, and regulations.

52.     At all times relevant hereto, Defendant P&G's, GRC's, and PGX's AMLs and TLs provided their services solely for APPLE BANK's benefit and provided those services on APPLE BANK's premises using APPLE BANK's equipment including, but not limited to, computers, printers, internet access, and stationery.

53.     APPLE BANK also, as part of its daily operations, directly employs individuals whom it classifies as employees to perform similar duties and job functions as Plaintiffs, AMLs, TLs and other members of the collective/class, in connection with its regulatory requirement of analyzing transactions to determine whether they comply with anti-money laundering statutes and banking regulations.

54.     Nevertheless, in its attempt to evade requirements to pay overtime wages as required by law, APPLE BANK willfully misclassified Plaintiffs, and the class and collective that Plaintiffs represent, as contractors and not as employees.

55.     At all times material hereto, MAZZITELLI, CURRY, PILGRIM and all AMLs and TLs were jointly employed by Defendants, within the meaning of the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiffs bring the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as AMLs and TLs, who elect to opt-into this action (the "FLSA Collective").

57.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective for their overtime hours worked.

58.     Consistent with Defendants' policies and patterns or practices, Plaintiffs and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

59.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

60.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.

61.     This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, the correct overtime wages for all hours worked in excess of 40 hours per workweek.

## NEW YORK CLASS ACTION ALLEGATIONS

62.     Plaintiffs brings the Second, Third, and Fourth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of: All persons who work or have worked as AMLs and/or TLs on APPLE BANK projects in New York between August 26, 2014, and the date of final judgment in this matter (the "New York Class").

63.     The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

64.     There are more than fifty members of the New York Class.

65.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

66.     Plaintiffs and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful actions taken with respect to each member of the New York Class.

67.     Plaintiffs are able to fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the New York Class.

68.     Plaintiffs are represented by attorneys who are competent in employment litigation and have previously represented many plaintiffs in wage and hour cases.

69.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

70.     Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

71.     Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

(a) whether Defendants correctly compensated Plaintiffs and the New York Class for hours worked in excess of 40 per workweek;

(b) whether Defendants correctly compensated Plaintiffs and the New York Class with spread of hours pay, as required by the NYLL;

(c) whether Defendants failed to furnish Plaintiffs and the New York Class with a proper time of hire wage notice, as required by the NYLL; and

(d) whether Defendants failed to furnish Plaintiffs and the New York Class with accurate statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

72.     P&G provides internal audit and risk management services for community banks, credit unions, foreign branches and agencies in New York and elsewhere.

73.     GRC provides internal audit and risk management services for community banks, credit unions, foreign branches and agencies in New York and elsewhere.

74.     PGX provides internal audit and risk management services for community banks, credit unions, foreign branches and agencies in New York and elsewhere.

75.     APPLE BANK is a bank holding company headquartered in Manhasset, New York and operates in the New York metropolitan area.

76.     Plaintiffs were jointly employed by Defendants as non-exempt AMLs and TLs at all times relevant hereto, but were hired by P&G, GRC and/or PGX to provide work on behalf of their client APPLE BANK.

77.     At all times, APPLE BANK was aware of the services that Plaintiffs and members of the collective and class provided for them, and in fact demanded that Plaintiffs and members of the collective and class work in excess of 65 hours per week in order to complete a bank project within a particular timeframe.

78.     APPLE BANK provided Plaintiffs and members of the collective and class with the materials needed to perform their jobs, including computers, office space, stationery, and other project related materials.

79.     Plaintiffs and members of the collective and class performed their work on APPLE BANK property and APPLE BANK also hired additional security to allow Plaintiffs and members of the collective and class to work hours late into the evening and over the weekend when the bank was closed to customers.

80.     APPLE BANK representatives set the parameters and instructions for Plaintiffs and members of the collective and class to perform their job, including, but not limited to, how to review the transactions the AMLs and TLs were assigned to inspect.

81.     APPLE BANK reviewed work product from Plaintiffs and members of the collective and class.

82.     APPLE BANK employs employees in its compliance department who perform essentially the same functions that Plaintiffs and members of the collective and class performed for the bank.

83.     Throughout their employment, Plaintiffs were paid on an hourly basis in exchange for work they performed, to the extent Defendants paid them for their hours worked.

84.     Plaintiffs and those similarly situated, routinely worked in excess of forty (40) hours per workweek as part of their regular job duties.

85.     Despite working more than forty (40) hours per week, Defendants failed to pay Plaintiffs and those similarly situated overtime compensation at a rate of time and a half their regular rate of pay for hours worked over forty in a workweek.

86.     All Defendants have employed and are employing at least dozens of other individuals as AMLs and TLs who performed and continue to perform the same or similar job duties under the same pay provision as Plaintiffs and the class members for projects for APPLE BANK.

87.     Defendants have violated Title 29 U.S.C. §207 and the NYLL, from at least January 2017 to the present, in that:

a)  Plaintiffs worked in excess of forty (40) hours per workweek for the period of employment with Defendants;

b)  No payments, and provisions for payment, have been made by Defendants to properly compensate Plaintiffs at the statutory rate of one and one-half times their regular rate for those hours worked in excess of forty (40) hours per workweek as provided by the FLSA and the NYLL; and

c) Defendants have failed to maintain proper time records as mandated by the FLSA and the NYLL.

88.     Consistent with their policies, and patterns or practices as described herein, Defendants harmed each Plaintiff, individually, as follows:

**<u>Kenneth Curry</u>**

89.     On or around October 6, 2017, CURRY interviewed for a position with Deepa Keswani Teckchandani, a project manager for GRC and its affiliate P&G.

90.     As part of the interview process, P&G and GRC required CURRY to complete an employment application, and to supply a copy of his resume and writing sample, as well as submit to a background check.

91.     Later that day, on October 6, 2017, Louise Hyland, an employee of P&G and GRC wrote to CURRY and stated that Deepa Keswani Teckchandani wanted to hire CURRY.

92.     Subsequently, on October 9, 2017, P&G and GRC required CURRY to enter into a Master Subcontractor Agreement through an entity created by CURRY called KDC Consulting, LLC.

93.     Pursuant to this Master Subcontractor Agreement, P&G and GRC told CURRY that he would be working for APPLE BANK on a project called "Lookback Review Phase 2."

94.     The Master Subcontractor Agreement further required CURRY to commit to working a minimum of 40 hours per week and up to 60 hours per week.

95.     The Master Subcontractor Agreement further provided that, APPLE BANK is "currently open extended hours, plus additional hours on federal holidays."

96.     Pursuant to the Master Subcontractor Agreement, the project was intended to last approximately 12 to 20 weeks through the end of 2017.

97.     At this time, P&G and GRC agreed to pay CURRY at the flat rate of $75.00 per hour.

98.     Although P&G and GRC required CURRY to work more than 40 hours per week, there was no provision in the agreement to pay CURRY a time and half premium for each hour beyond 40 that CURRY worked.

99.     P&G and GRC and APPLE BANK in fact required CURRY to work no fewer than 65 hours in each week that he worked for them and CURRY averaged over 65 hours of work per week throughout the duration of his employment.

100.    On or around, January 22, 2018, P&G and GRC renegotiated their Master Subcontractor Agreement with CURRY to pay him $90.00 per hour through KDC Consulting, LLC.

101.    There was no provision in the modified agreement to pay CURRY a time and half premium for each hour beyond 40 that CURRY worked.

102.    The modified agreement further provided that CURRY was still required to work a minimum of 40 hours per week.

103.    P&G and GRC and APPLE BANK in fact required CURRY to work a minimum of 65 hours in each week that he worked for them and CURRY continued to average over 65 hours of work per week throughout the duration of his employment.

104.    CURRY continued working for P&G and GRC and APPLE BANK under these terms and conditions until on or around April 26, 2018, at which time he was required to enter into another Master Service Agreement and Statement of Work, this time with PGX.

105.    Even though PGX replaced P&G and GRC as the party named on the employment agreement, CURRY's job duties did not change and he continued working at and for APPLE BANK at the same location and on the second phase of the same project.

106.    PGX agreed to continue to pay CURRY $90.00 per hour through KDC Consulting, LLC for the work CURRY performed for APPLE BANK.

107.    PGX continued P&G and GRC's policy of continuing to require CURRY to work no fewer than 65 hours for each week that he worked for them and CURRY in fact  averaged over 65 hours of work per week throughout the duration of his employment.

108.    PGX terminated CURRY's employment on or about August 26, 2018.

109.    As a condition of employment CURRY was required to sign APPLE BANK's "acceptable use policy," which, among other things, set forth the terms and conditions CURRY was required to abide by in order to use APPLE BANK's information technology resources.

**Ricardo Mazzitelli**

110.    MAZZITELLI interviewed for a TL position with Deepa Keswani Teckchandani, a project manager for GRC.

111.    As part of the interview process, GRC required MAZZITELLI to complete an employment application, and to supply a copy of his resume and writing sample, as well as submit to a background check.

112.    On or about June 13, 2017, GRC and MAZZITELLI, through an entity he created, Mazzitelli Consulting, LLC, entered into a Master Service Agreement and Statement of Work.

113.    GRC agreed to pay MAZZITELLI $110.00 per hour for the work he performed for APPLE BANK.

114.    On or about July 3, 2017, MAZZITELLI commenced his employment as a TL with P&G, GRC and APPLE BANK.

115.    During his time as a TL, MAZZITELLI was instructed to encourage AMLs to work more hours each week.

116.    GRC terminated MAZZITELLI's employment in February 2018.

117.    As a condition of employment MAZZITELLI was required to sign APPLE BANK's "acceptable use policy," which, among other things, set forth the terms and conditions MAZZITELLI was required to abide by in order to use APPLE BANK's information technology resources.

118.    GRC required MAZZITELLI to work a minimum of 40 hours in each week that he worked for them, but encouraged him to work more than 40 hours per week and MAZZITELLI regularly averaged over 65 hours of work per week throughout the duration of his employment.

119.    Although MAZZITELLI worked in excess of 40 hours each week, he was not compensated at the time and one-half rate for any time that exceeded 40 hours in any week.

**Jacqueline Brown Pilgrim**

120.    As part of the interview process, PGX required PILGRIM to complete an employment application, and to supply a copy of her resume and writing sample, as well as submit to a background check.

121.    On or around April 26, 2018, PGX and PILGRIM, through an entity she created Bropil Consulting, LLC, entered into a Master Service Agreement and Statement of Work.

122.    Pursuant to the Statement of Work, the project was intended to last through mid-August 2018.

123.    PGX agreed to pay PILGRIM $90.00 per hour for the work she performed for APPLE BANK.

124.    In an email from employee Mary Hernandez on April 18, 2018, to which Louise Hyland was carbon-copied via email, PGX noted that PILGRIM would be required to submit her hours for a project referred to as "APPB Lookback 2 Phase 2" on a weekly basis using an online portal provided by PGX.

125.    PGX required PILGRIM to work a minimum of 65 hours in each week that she worked for them and PILGRIM regularly worked over 65 hours of work per week throughout the duration of her employment, logging from 66 to 72 hours each week.

126.    Although PILGRIM worked in excess of 40 hours each week, she was not compensated at the time and one-half rate for any time that exceeded 40 hours in any week.

127.    PILGRIM resigned from her position, with June 11, 2018 as the last day of her employment.

128.    As a condition of employment PILGRIM was required to sign APPLE BANK's "acceptable use policy," which, among other things, set forth the terms and conditions PILGRIM was required to abide by in order to use APPLE BANK's information technology resources.

129.    Defendants were aware that Plaintiffs were entitled to overtime pay for all overtime hours they worked and that there was no possible exemption applicable to them, because they were paid on an hourly, rather than salary basis.

130.    Defendants did not act in good faith or reliance upon any of the following in formulating their pay practices: (a) case law; (b) the FLSA, 29 U.S.C. § 201, et seq.; (c) Department of Labor Wage & Hour Opinion Letters; or (d) the Code of Federal Regulations.

131.   Defendants have acted willfully in failing to pay Plaintiffs and the collective and class members in accordance with the law.

132.   Defendants have failed to maintain accurate records of Plaintiffs' and the collective and class members' work hours in accordance with the law.

## COUNT I

VIOLATION OF 29 U.S.C. §201 et seq. OVERTIME COMPENSATION

133.   Plaintiffs reassert and reallege and paragraphs 1 through 132 of the Complaint as if fully set forth herein.

134.   From at least July 2017 and continuing through August 2018, Plaintiffs and members of the FLSA Collective regularly worked in excess of the forty (40) hours per week for which they were not compensated at the statutory rate of one and one-half times their regular rates of pay.

135.   Plaintiffs were and are entitled to be paid at the statutory rate of one and one-half times their regular rate of pay for those hours worked in excess of forty (40) hours.

136.   At all times material hereto, Defendants failed, and continue to fail, to maintain proper time records as mandated by the FLSA.

137.   Defendants' actions in this regard were/are willful and/or showed/show reckless disregard for the provisions of the FLSA as evidenced by its continued failure to compensate Plaintiffs at the statutory rate of one and one-half times Plaintiffs' regular rate of pay for the hours worked in excess of forty (40) hours per workweek, when they knew, or should have known, such was and is due.

138.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs suffered and continue to suffer damages and lost compensation for time worked over forty (40) hours per workweek, plus liquidated damages.

139.    Plaintiffs are entitled to an award of unpaid wage, liquidated damages, reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

VIOLATION OF THE NEW YORK LABOR LAW

140.    Plaintiffs, on behalf of themselves and the members of the NYLL Class, reassert, re-allege and incorporate by reference paragraphs 1 through 139 as if they were set forth again herein.

141.    At all relevant times, Plaintiffs and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

142.    Defendants willfully violated Plaintiffs' rights and the rights of the members of the NYLL Class, by failing to pay them proper compensation for all hours worked each workweek, as well as for overtime compensation at rates no less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of the New York Labor Law and its appurtenant regulations.

143.    The Defendants' New York Labor Law violations have caused Plaintiffs, and the members of the NYLL Class, irreparable harm for which there is no adequate remedy at law.

144.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the members of the NYLL Class, are entitled to recover from Defendants their unpaid wages, overtime compensation, reasonable attorneys' fees and costs and disbursements of the action pursuant to New York Labor Law.

## COUNT III

VIOLATION OF NEW YORK LABOR LAW –

FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

145.    Plaintiffs, on behalf of themselves and the members of the NYLL Class, reassert and re-allege and incorporate by reference paragraphs 1 through 144 as if they were set forth again herein.

146.    Defendants failed to supply Plaintiffs and the NYLL Class Members with accurate statements of wages as required under the NYLL, Article 6, § 195(3).

147.    Specifically, Defendants failed to provide an accurate number of hours worked by Plaintiffs and the  NYLL Class Members because Defendants failed to list the time Plaintiffs and the NYLL Class Members worked, their regular rate of pay, and/or their accurate overtime rate of pay.

148.    Through their knowing or intentional failure to provide Plaintiffs and the NYLL Class Members with the accurate wage statements required under the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

149.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the NYLL Class Members are entitled to statutory penalties, reasonable attorneys' fees, costs, and injunctive relief and declaratory relief, as provided for by NYLL, Article 6, §198(1-d).

## COUNT IV

NEW YORK LABOR LAW – FAILURE TO PROVIDE PROPER TIME OF HIRE NOTICE

150.     Plaintiffs, on behalf of themselves and the members of the NYLL Class, reassert and re-allege and incorporate by reference paragraphs 1 through 149 as if they were set forth again herein.

151.     Defendants have failed to supply Plaintiff and the NYLL Class Members with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items the following: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

152.     Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the New York Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all AMLs and TLs in the United States

who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as representative of the NY Rule 23 Class and counsel of record as Class Counsel;

E. Unpaid overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F. Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

G. Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NY Rule 23 Class with proper time of hire wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H. Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the NY Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

I. Prejudgment and post-judgment interest;

J. Reasonable attorneys' fees and costs of the action; and

K. Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all counts so triable.

Dated: New York, New York
August 26, 2020

Respectfully submitted,

KLEIN LAW GROUP OF NEW YORK
PLLC


By: /s/ Julia Klein
     Julia Klein
     120 East 79th Street, Suite 1A
     New York, New York 10021
     347.292.8170
     jklein@kleinlegalgroup.com
     Attorneys for Plaintiff