UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
KENNETH CURRY, RICARDO MAZZITELLI,
JACQUELINE BROWN PILGRIM, on behalf of
themselves and others similarly situated,

         Plaintiffs,

 -against-

P&G AUDITORS AND CONSULTANTS, LLC; GRC
SOLUTIONS, LLC; PGX, LLC; AND APPLE
BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,

         Defendants.
------------------------------------------------------------------ x

Case No. 20-cv-06985 (LTS)(SLC)

**DEFENDANT'S RULE 56.1 STATEMENT OF MATERIAL FACTS <u>NOT IN DISPUTE</u>**

    Defendant Apple Bank for Savings ("Apple Bank" or "the Bank"), sued herein as Apple Bancorp, Inc. d/b/a Apple Bank for Savings, by its attorneys, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, for its statement under Local Rule 56.1, states that there are no genuine issues to be tried regarding the following material facts:

    1. By a Consent Order dated December 16, 2015 ("Consent Order"), the Federal Deposit Insurance Corporation ("FDIC") required Apple Bank, regarding its Bank Secrecy Act ("BSA") and Anti-Money Laundering ("AML") Compliance Program, in accordance with applicable BSA and AML statutory and regulatory requirements, to "engage a qualified firm acceptable to the Regional Director to perform a validation of the Bank's suspicious activity monitoring system, which shall include testing of the effectiveness of established filtering criteria and thresholds and ensuring that the system appropriately detects potentially suspicious activity." (Affidavit of Dean G. Yuzek, sworn to on December 3, 2020 ("Yuzek Aff."), Ex. A at p. 7, ¶ 4.)

    2. The Consent Order required Apple Bank to "engage a qualified firm acceptable to the Regional Director to conduct a review of all accounts and transaction activity for the time period beginning October 1, 2014 through the effective date of this ORDER . . . to determine

1

whether suspicious activity involving any accounts or transactions within or through the Bank was properly identified and reported in accordance with the applicable suspicious activity reporting requirements ('Look Back Review')," and upon completion of the Look Back Review, "prepare any additional CTRs and SARs necessary based upon the review." (Yuzek Aff., Ex. A at pp. 7-8, ¶¶ 6(a) and (b).)

3. By a signed Memorandum of Understanding dated January 29, 2016 ("MOU"), the New York State Department of Financial Services ("NYSDFS") required Apple Bank, regarding its BSA and AML Compliance Program, in accordance with the relevant regulations of the NYSDFS, as well as the rules and regulations of the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC"), to "engage a qualified firm acceptable to the Superintendent to perform a validation of the Bank's suspicious activity monitoring system, which shall include testing of the effectiveness of established filtering criteria and thresholds and ensuring that the system appropriately detects potentially suspicious activity." (Yuzek Aff., Ex. B at p. 6, ¶ 4.)

4. The MOU required Apple Bank to "engage a qualified firm acceptable to the Superintendent to conduct a review of all accounts and transaction activity for the time period beginning October 1, 2014 through December 16, 2015 . . . to determine whether suspicious activity involving any accounts or transactions within or through the Bank was properly identified and reported in accordance with the applicable suspicious activity reporting requirements (the 'Look Back Review')." (Yuzek Aff., Ex. B at p. 7, ¶¶ 6(a) and (b).)

5. As directed by the FDIC and NYSDFS, Apple Bank engaged GRC Solutions, LLC ("GRC") to, independently, test, monitor and validate Apple Bank's Compliance Program,

including the Bank's suspicious activity monitoring system (the "Project").  (Yuzek Aff., Exs. A. at pp. 7-8 and B. at pp. 6-7.)

6. GRC represented to Apple Bank that it "employs Certified Anti-Money Laundering Specialists (CAMS), Operations, and other subject matter experts across a broad spectrum of BSA/AML/OFAC activities..." (Yuzek Aff., Exs. D at p. 3 (3rd paragraph), E at p. 3 (3rd paragraph), and F at p. 3 (3rd paragraph).)

7. Apple Bank and GRC entered into contractual documents, consisting of proposals outlining GRC's Statements of Work ("SOW") and a fully executed Master Services Agreement ("MSA"). (Yuzek Aff., Exs. C-H.)

8. The SOWs and MSA described GRC's services and defined the scope of its work. (Yuzek Aff., Exs. C-H.)

9. The MSA states "Apple Bank has no responsibility for the supervision and/or monitoring of GRC Agents to ensure their compliance with MSA and SOW terms and conditions." (Yuzek Aff., Ex. C at p. 3, ¶ 2 "Privacy and Confidentiality" (last sentence).)

10. The non-solicitation provision of the MSA prohibited Apple Bank from soliciting for employment or other engagement any GRC Agent working on the Project "[t]o avoid the potential for (or the appearance of) any actual or potential conflict of interest (including, without limitation, lack of GRC Agent independence). . . ." (Yuzek Aff., Ex. C at p. 3, ¶ 4 "Non-Solicitation".)

11. GRC designed the plan for implementing the Project, including the estimated hours GRC expected its employees to work, and designated the specific number of analysts, managers and directors needed to complete the Project.  (Yuzek Aff.,  Exs. D at pp. 5-6 and G at pp. 7-11.)

12. The Consent Order and MOU address time-sensitive obligations. (Yuzek Aff., Exs. A at pp. 7-8 and B at pp. 6-7.)

13. GRC was aware of its role as an independent third-party auditor as mandated by the FDIC and NYSDFS, and such time constraints. (Yuzek Aff., Exs. D at p. 6, "Timeline" and G at p. 11, "Estimated Fees, Expenses & Timeline.")

14. GRC was required to plan, implement and oversee the various stages of the Project and general workflow. (Yuzek Aff., Exs. D at pp. 4-5, E at pp. 4-5, F at pp. 6-7, G at p. 3-6, and H at pp. 1-3.)

15. Apple Bank neither controlled nor dictated the days or the number of hours GRC employees worked to meet the deadlines imposed by their employer, GRC, or by the FDIC and the NYSDFS. (Affidavit of Susan Goro, sworn to on December 2, 2020 ("Goro Aff."), ¶ 8; Yuzek Aff., Exs. A at pp. 7-8, B at pp. 6-7, D at pp. 5-6, and G at pp. 7-11.)

16. GRC employees were frequently "on-boarded" and "off-boarded" from the Project by GRC, often without Apple Bank being immediately advised, as the retention of GRC employees was subject to GRC's control. (Yuzek Aff., Exs. I and J.)

17. GRC would notify Apple Bank when "New GRC Contractors" joined the Project. (Yuzek Aff., Ex. I-3.)

18. GRC would inform Apple Bank of the dates on which new GRC employees had joined the project, and "where we stand with systems access for our recent new joiners[]." (Yuzek Aff., Ex. I-2.)

19. PGX, LLC ("PGX") is an affiliate of GRC. (ECF No. 1, ¶ 44-47.)

20. P&G Auditors and Consultants, LLC is an affiliate of GRC. (ECF No. 1, ¶ 44-47.)

21. GRC and/or its affiliates recruited and hired Plaintiffs Kenneth Curry ("Curry"), Ricardo Mazzitelli ("Mazzitelli"), Jacqueline Brown Pilgrim ("Pilgrim," collectively "Plaintiffs") to work for GRC on the Project for which it was engaged to conduct. (ECF No. 1, ¶¶ 49, 89-97, 110-13, 120-23.)

22. Apple Bank did not hire Plaintiffs to work on the Project. (ECF No. 1, ¶¶ 49, 89-91, 110-12, 120-21.)

23. Apple Bank was not involved in the process of hiring or terminating GRC employees with respect to the Project. (Goro Aff., ¶ 5.)

24. Apple Bank did not have the power to hire or fire GRC employees working on the Project. (Goro Aff., ¶ 5.)

25. Apple Bank did not prepare or retain records of employment for any GRC employees. (Goro Aff., ¶ 6.)

26. Apple Bank did not maintain any personnel files for the GRC employees. (Goro Aff., ¶ 6.)

27. Apple Bank did not maintain copies of tax forms for any GRC employees. (Goro Aff., ¶ 6.)

28. Apple Bank did not maintain copies of paystubs for any GRC employees. (Goro Aff., ¶ 6.)

29. Apple Bank did not maintain copies of any agreements between GRC employees and GRC (or entities affiliated with GRC). (Goro Aff., ¶ 6.)

30. Apple Bank did not pay the GRC employees. (Goro Aff., ¶ 7.)

31. Apple Bank did not provide pay statements or issue any 1099s or W2s to GRC employees. (Goro Aff., ¶ 7.)

32. GRC billed Apple Bank, including by advance payment of a percentage of GRC's estimated fees, followed by bills for the balance of such fees based on hours incurred, plus other costs, including, but not limited to, an allocated administrative overhead factor on total gross fees. (Yuzek Aff., Exs. D at p. 6, F at p. 7, and H at p. 3.)

33. Apple Bank did not determine how any of the GRC employees working on the Project would or should be classified. (Goro Aff., ¶ 7.)

34. Apple Bank had no input in classification decisions with respect to GRC employees. (Goro Aff., ¶ 7.)

35. Apple Bank was contractually obligated to provide GRC employees with access to Bank systems and information technology resources, to perform their agreed-upon scope of work. (Goro Aff., ¶ 3; Yuzek Aff., Exs. E at p. 4, "Scope and Activity Guidelines," F at p. 6, and G at p. 4, ¶ 2, "Phase I, Project Management.")

36. Apple Bank required GRC employees, like all personnel affiliated with third parties, to sign its Acceptable Use Policy for security purposes. (Goro Aff., ¶ 4; *see also* Yuzek Aff., Ex. K.)

37. To enable GRC employees to perform their work, Apple Bank provided them, at an Apple Bank branch, with temporary workstations, which were partitioned from the offices and workstations of Apple Bank employees. (Affidavit of Mitchell Jacobs, sworn to on December 1, 2020 ("Jacobs Aff."), ¶ 4.)

38. At times, when GRC employees needed access to the Bank's premises after the Bank's standard hours of operation, the Bank necessarily provided security to ensure the safety of these invitees. (Jacobs Aff., ¶ 5.)

39. PGX terminated Curry from the Project by August 26, 2018. (ECF No. 1, ¶ 108.)

40. GRC terminated Mazzitelli from the project in February 2018. (ECF No. 1, ¶ 116.)

41. Pilgrim resigned from the Project by June 11, 2018. (ECF No. 1, ¶ 127.)

42. The above-captioned action was commenced more than two years after Plaintiffs completed their work for GRC and/or its affiliates on the Project. (ECF No. 1.)

Dated: New York, New York
December 3, 2020

                                        **INGRAM YUZEK GAINEN CARROLL**
                                        **& BERTOLOTTI, LLP**

By: _____
      Dean G. Yuzek (dyuzek@ingramllp.com)
      Jennifer B. Zourigui (jzourigui@ingramllp.com)
      Amanda B. Grannis (agrannis@ingramllp.com)
150 East 42nd Street, 19th Floor
New York, New York, 10017
(212) 907-9600

*Attorneys for Defendant Apple Bank for Savings*
*sued herein as Apple Bancorp, Inc.*
*d/b/a Apple Bank for Savings*