KLEIN LAW GROUP OF NEW YORK PLLC
120 East 79th Street, Suite 1A
New York, New York 10021
(347) 292-8170
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM, on behalf of themselves and other similarly situated,

　　　　　　　　　　　　　　　　　Plaintiffs,

- against -

P&G AUDITORS AND CONSULTANTS, LLC; GRC SOLUTIONS, LLC; PGX, LLC; AND APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,

　　　　　　　　　　　　　　　　　Defendants.

---

**DECLARATION OF PLAINTIFF RICARDO MAZZITELLI IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND AUTHORIZE NOTICE OF PENDENCY AND CONSENT TO JOIN**

I, Ricardo Mazzitelli, hereby declare under penalty of perjury that the following is true:

1. My name is Ricardo Mazzitelli, I am over the age of 18 years old, and I am currently a resident of Miami-Dade County, Florida.

2. On or around June 13, 2017, I entered into a Master Service Agreement ("MSA") and Statement of Work ("SOW") with GRC, LLC ("GRC") to work as an Anti-Money Laundering Team Lead ("TL") for Defendant Apple Bancorp, Inc. ("Apple Bank") on a project known as "Lookback Review Phase 1."

3. There were multiple phases included in this project, but all phases were parts of the same anti-money laundering project.

4. In order to be eligible to work on this project, GRC required me to work through a limited liability company that I created called Mazzitelli Consulting, LLC.

5. GRC paid me, through Mazzitelli Consulting, LLC.

6. For this project, GRC employed Anti-Money Laundering investigators (AMLs), Anti-Money Laundering Quality Assurance (QAs) and TLs, all of whom were selected by GRC.

7. From my discussions with TLs, who worked on this project, including Felicia R., Keith W., and Marvin W., GRC did not pay any TLs directly; rather GRC required every single TL to have a company and paid that Company based on the hours each TL worked.

8. From my discussions with QAs who worked on this project, including David B., Urim L., Luis L., GRC did not pay any QAs directly; rather GRC required every single QA to have a company and paid that Company based on the hours each QA worked.

9. From my discussions with AMLs who worked on this project, including Kenneth Curry, Lisa G., Erik K., Rhonda B., Ed C., Bruce C., Dvong, Lucy H., Ludger J.-C., Richard N., Devika R., Ravi S., Akshay V., Dominic V., Jim V., Anthony W., Brian Z., Tim B., Naem B., Dustin P., GRC did not pay any AMLs directly; rather GRC required every single AML to have a company and paid that Company based on the hours each AML worked.

10. From my discussions with TLs, QAs, and AMLs who worked on this project, including those listed above, each TL, QA and AML had his or her own company.

11. In connection with the Lookback Review Phase 1 project, GRC sent me to work at the Apple Bank located at 2100 Broadway, at West 73rd Street in Manhattan that was owned and/or operated by Defendant Apple Bancorp, Inc. d/b/a Apple Bank for Savings.

12. During this period, I worked exclusively for Defendants as a Team Lead.

13. I worked alongside several dozen other AMLs, QAs, and TLs. These AMLs and I worked extremely long hours. I was required to work at least 40 hours, but in reality GRC required me to work a minimum of 65 hours per week and throughout the duration of my employment, I logged approximately 70 hours each week working for GRC and Apple Bank.

14. I recall working late into the night and on weekends on a regular basis throughout the project.

15. GRC monitored the hours logged and required TLs to ask QAs and AMLs to work additional hours if their hours were anticipated to fall below the 65 hour minimum.

16. Because I worked alongside the other TLs, QAs and AMLs I observed dozens and dozens of TLs, QAs, and AMLs work the same or substantially similar hours as I did, and I can attest that virtually all AMLs worked much more than 40 hours per week. AMLs who worked these long hours include Kenneth Curry, Lisa G., Erik K., Rhonda B., Ed C., Bruce C., Dvong, Lucy H., Ludger J.-C., Richard N., Devika R., Ravi S., Akshay V., Dominic V., Jim V., Anthony W., Brian Z., Tim B., Naem B., Dustin P. QAs who worked these long hours include David B., Urim L., Luis L. TLs who worked these long hours include Felicia R., Keith W., and Marvin W.

17. While working on this project, I, and my fellow TLs, QAs and AMLs, used Apple Bank's facilities, computers, paper, IT, and information to perform our jobs.

18. Apple Bank was aware of my presence at the worksite, and also aware of my fellows TLs, QAs and AMLs presence at the bank, as they kept their facilities open for us on weekends, holidays and after business hours, and they also hired security to allow us to work at the bank.

19.     As a condition of my employment, I was required to sign Apple Bank's "acceptable use policy," which, among other things, set forth the terms and conditions I was required to abide by in order to use Apple Bank's information technology resources. I am aware that other TLs, QAs and AMLs who worked on the Apple Bank project had to sign Apple Bank's "acceptable use policy" as well.

20.     I got paid directly by GRC, but only after we submitted our hours using an online portal provided by GRC.  Speaking with various co-workers, it is my understanding that they also got paid directly by GRC only after submitting time through the GRC portal.  It is also my understanding that GRC provided all TLs, QAs and AMLs with a training document called "Time Tracking through the Portal," which instructed us how to get paid by entering our time records into the system.

21.     Upon information and belief, the Contractor Defendants submitted these time sheets to Apple Bank for review and to ascertain how much money Apple Bank owed the Contractor Defendants to pay for our services.

22.     Upon information and belief both the Contractor Defendants and Apple Bank routinely retained copies of AMLs', QAs' and TLs' time sheets.

23.     For the duration of this project, GRC paid me at the flat rate of $110.00 per hour.

24.     Although GRC and, I believe, Apple Bank, required me to work more than 40 hours per week, there was no provision in the agreement to pay me a time and half premium for each hour beyond 40 that I worked.

25.     Indeed, I estimate that I worked approximately 70 hours per week in each week that I worked for GRC and Apple Bank and in that time, I never received overtime premiums.

26. My long work hours were not an anomaly. I personally observed many of my TL, QA, and AML colleagues work the same long hours that I did.

27. Having spoken to various colleagues during my time working on this project, including those listed above, I know that GRC and Apple Bank did not pay any TLs, QAs or AMLs overtime premiums; instead they paid all of us at the flat hourly rate they contracted with us that appeared in our MSAs or SOWs.

28. It is my understanding that Apple Bank contracted exclusively with the Contractor Defendants to provide anti-money laundering compliance review for the Lookback project that occurred during this time frame.

29. Because I worked so many long hours, I could not work in another position through the duration of my time on this project.

30. Throughout my employment period, GRC, directed and controlled my work. The work performed by AMLs was reviewed by QAs, who were similarly employed by GRC. AMLs and QAs were supervised by TLs, who were also similarly employed by GRC. TLs received their instructions from GRC, including Deepa Keswani Teckchandani, a project manager for GRC.

31. Our work product was ultimately reviewed and used by both GRC and Apple Bank in furtherance of Apple Bank compliance obligations.

32. Apple Bank had its own compliance staff who performed essentially the same functions as AMLs, QAs, and TLs did.

33. Based on my conversations with other AMLs, QAs, and TLs including those listed above, they were required to form their own entities, sign virtually identical MSAs, work more than 40 hours a week, and nobody was paid overtime premiums for work in excess of 40 hours per week.

34. I was aware of a lawsuit against the Contractor Defendants called *Damani Bediako and Kia Miller, et al. v. P&G Auditors and Consultants, LLC, et al.*, Case No. 1:19-cv-02527. This case alleges the same overtime violations I am now currently alleging and because it was pled as a collective action, I thought that I would have the opportunity to participate in the case and even attempted to contact Plaintiff's counsel. However, no notice was ever sent out and this case settled for approximately $250,000.00. I did not receive any recovery from this lawsuit. To my understanding only 13 former AMLs or TLs received compensation from this settlement agreement.

35. I do not recall ever seeing or receiving any wage and hour notices or receiving any rate of pay notices as part of my employment with Defendants.

36. On December 7, 2020, I received a packet addressed to Mazzitelli Consulting, Inc. The packet included a copy of the complaint in this matter along with a letter signed by "GRC Solutions, LLC" and dated November 30, 2020. The letter purported to be notifying the Vice-President of Mazzitelli Consulting, Inc. of GRC's intent to file claims against Mazzitelli Consulting, Inc. as an "alter ego of Mazzitelli Consulting LLC."

37. The GRC letter also claimed to have included "Correspondence to Mazzitelli Consulting LLC" along with a copy of the complaint, but I did not find any correspondence in the envelope.

38. I believe that GRC was attempting to intimidate me and pressure me into dropping my claims against them.

Dated: December 9th, 2020

_____
Ricardo Mazzitelli