KLEIN LAW GROUP OF NEW YORK PLLC
120 East 79th Street, Suite 1A
New York, New York 10021
(347) 292-8170
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM, on behalf of themselves and other similarly situated,

                              Plaintiffs,

- against -

P&G AUDITORS AND CONSULTANTS, LLC; GRC SOLUTIONS, LLC; PGX, LLC; AND APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,

                              Defendants.

---

## DECLARATION OF PLAINTIFF KENNETH CURRY IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND AUTHORIZE NOTICE OF PENDENCY AND CONSENT TO JOIN

I, Kenneth Curry, hereby declare under penalty of perjury that the following is true:

    1.    My name is Kenneth Curry and I am currently a resident of Henry County, Georgia.

    2.    At all times relevant to this Action, I was employed by Defendants as an Anti-Money Laundering investigator ("AML").

    3.    From approximately October 9, 2017 to August 26, 2018, Defendants P & G Auditors and Consultants, LLC's, ("P&G"), GRC Solutions, LLC's ("GRC"), PGX, LLC's ("PGX") (collectively, "Contractor Defendants") sent me to work at the Apple Bank located at

2100 Broadway, at West 73rd Street in Manhattan that was owned and/or operated by Defendant Apple Bancorp, Inc. d/b/a Apple Bank for Savings ("Apple Bank") (Contractor Defendants and Apple Bank, referred to collectively, as "Defendants").

4. During this period I worked exclusively for Defendants as an AML.

5. My relationship with Defendants started on or around October 6, 2017, Deepa Keswani Teckchandani, a project manager for GRC and its affiliate P&G, interviewed me for the AML position on the Apple Bank project.

6. As part of the interview process, P&G and GRC required me to complete an employment application, and to supply a copy of my resume and writing sample, as well as submit to a background check.

7. On October 6, 2017, Louise Hyland, an employee of P&G and GRC wrote to me and stated that Deepa Keswani Teckchandani wanted to hire me.

8. Subsequently, on October 9, 2017, P&G and GRC required me to enter into a Master Subcontractor Agreement ("MSA") through an entity I had created called KDC Consulting, LLC. A true and correct copy of this MSA is attached hereto as Exhibit A.

9. KDC Consulting, LLC is a single member LLC and has no purpose other than to allow me to work on compliance review projects because agencies like GRC, P&G and PGX often require compliance officers/anti-money laundering investigators to form these entities in order to gain employment. KDC Consulting, LLC has never had any employees other than myself.

10. Indeed, per the MSA, even if I and/or KDC wanted to hire another contractor to work on the Apple Bank project, I couldn't have because the agreement stipulated that the "[c]ontractor who will perform the services" would be myself.

11. The MSA explicitly provided that I would be working for Apple Bank on a project called "Lookback Review Phase 2."

12. The MSA expressly stipulated that I would have to work a minimum of 40 hours per week, and up to 60 hours per week. In fact, this was a gross underestimate of the time I actually spent working on the Apple Bank project, because I routinely worked over 70 hours per week. P&G and GRC and Apple Bank in fact required me to work no fewer than 65 hours in each week and I averaged over 65 hours of work per week throughout the duration of my employment.

13. The MSA further provided that, Apple Bank is "currently open extended hours, plus additional hours on federal holidays" in order to facilitate our work and to complete the work on the deadlines, I understand Apple Bank set for the completion of the Lookback Review Phase 2 project.

14. Indeed, upon information and belief, Apple Bank directed GRC to force us to work extremely long hours in order to complete the projects within its timeframe.

15. During my work on this project, Apple Bank often hired additional security staff and maintenance staff to allow us to utilize its premises at the Bank to work beyond normal banking hours.

16. Pursuant to the MSA, the Apple Bank project was intended to last approximately 12 to 20 weeks through the end of 2017.

17. For the duration of this project, P&G and GRC paid me at the flat rate of $75.00 per hour.

18. Although P&G and GRC required me to work more than 40 hours per week, there was no provision in the agreement to pay me a time and half premium for each hour beyond 40 that I worked.

19. On or around, January 22, 2018, P&G and GRC renegotiated their Master Subcontractor Agreement with me, and began paying me $90.00 per hour through KDC Consulting, LLC. A true and correct copy of this updated MSA is attached hereto as Exhibit B.

20. The updated MSA again required me to work a "minimum" of 40 hours per week, did not agree to pay me a time and a half premium for each hour over 40, and specifically identified that I would be the only person who could perform services for the Apple Bank project.

21. I continued to work a minimum of 65 hours in each week that I worked for Defendants under the updated MSA.

22. For example in the week ending June 17, 2018, I worked 73 hours. The week ending July 22, 2018, I worked 68.5 hours. The week ending July 29, 2018, I worked 76.00 hours. The week ending August 5, 2018, I worked 67 hours. A true and correct copy of these time records are attached hereto as Exhibit C.

23. I continued working for P&G and GRC and APPLE BANK under these terms and conditions until on or around April 26, 2018, at which time I was required to enter into another MSA and Statement of Work, this time with PGX. A true and correct copy of this MSA is annexed hereto as Exhibit D.

24. Even though PGX replaced P&G and GRC as the party named on the employment agreement, my job duties did not change and I continued working at and for Apple Bank at the same location and on the second phase of the same project.

25. PGX agreed to continue to pay me $90.00 per hour through KDC Consulting, LLC and PGX continued P&G and GRC's policy of continuing to require me to work no fewer than 65 hours for each week that I worked for them.

26. PGX terminated my employment on or about August 26, 2018.

27. As a condition of my employment I was required to sign Apple Bank's "acceptable use policy," which, among other things, set forth the terms and conditions I was required to abide by in order to use Apple Bank's information technology resources.

28. It is my understanding that Apple Bank contracted exclusively with the Contractor Defendants to provide anti money laundering compliance review for the Lookback project that occurred during this time frame.

29. Throughout my employment period, the Contractor Defendants supervised, directed and controlled my work. I and all of the other AMLs worked under the supervision of a Contractor Defendants supervisor who reviewed our work and answered questions we had.

30. I and the other AMLs and TLs who worked on the Apple Bank project submitted time sheets to our contacts at the Contractor Defendants.

31. I and the other AMLs and TLs were required to submit our time sheets at the end of the week ending on Saturday. The Contractor Defendants would approve the time sheets over the weekend.

32. Upon information and belief, the Contractor Defendants submitted these time sheets to Apple Bank for review and to ascertain how much money Apple Bank owed the Contractor Defendants to pay for our services.

33. Upon information and belief both the Contractor Defendants and Apple Bank routinely retained copies of AMLs' and TLs' time sheets.

34. Throughout my Employment Period, I and Defendants' other AMLs and TLs were required to follow Apple Bank's instructions in order to continue working on the Apple Bank review project.

35. Our work product was ultimately reviewed by both the Contractor Defendants and Apple Bank supervisors.

36. In addition to the supervision we received from the Contractor Defendants, we had staff meetings where our direct supervisor would discuss feedback they received from Apple Bank's employees who reviewed our work. Those Apple Bank quality assurance personnel who reviewed our work provided direction and feedback about the quality of our work and made suggestions on ways to improve "ISF's" and "SDS spreadsheets" which are the Apple Bank forms we had to complete as part as our review of the Apple Bank transactions.

37. Apple Bank had its own compliance staff who performed essentially the same functions as AMLs and TLs did.

38. Based on my conversations and observations with other AMLs and TLs including but not limited to Faizan Imam, Ledyne Clixte, Devika Ramnarine, William Schollmeyer, Manzo Tiya, Andy Merline, James Hughes, Danielle Lucas, Erik Krasnic, Hernan Crivellari, Chhorvy Ung, William Burns, Pamela Andrews, Robert Williams, Frederick Anarfi, Ricardo Gonzalez, and William Kaiser, who were all part of a group referred to as "Team 2" we were all required to work substantially more than 40 hours a week, and joked about it because nobody was paid overtime premiums for work in excess of 40 hours per week.

39. Based on my conversation with my co-Plaintiffs I have learned that the Defendants did not pay either of us overtime premiums for the hours we worked in excess of 40 hours a week.

40. I also learned from the Bediako lawsuit, that the Plaintiffs in that case were not paid overtime premiums in excess of 40 hours in a week, and based on these conversations and this information, I have no reason to believe that the Defendants paid any AML or TL who worked on the Apple Bank lookback project overtime premiums.

Dated: December 7, 2020
Henry County, Georgia

By: _____
Kenneth Curry