MASTER SERVICE AGREEMENT

**THIS MASTER SERVICE AGREEMENT** (this "*Agreement*") is made as of April 26, 2018 (the "*Effective Date*") by and between **PGX, LLC**, a New Jersey limited liability company ("*PGX*"), and **[KDC Consulting LLC]**, ("*Contractor*," referred to collectively with PGX as the "*Parties*").

## ARTICLE I. PERSONNEL

1.1  *Personnel.*  Contractor, from time to time, will enter into a Statement of Work ("*SOW*") with PGX identifying needs for professional auditing services to be provided by qualified personnel (the "*Personnel*"). The SOW will identify (among other items), the scope of the services requested, the fees to be paid in connection with those services, and the desired qualifications and standards of the Personnel. The services of Personnel identified by Contractor shall be made available to PGX and/or PGX clients ("Clients"). Nothing in this Agreement requires either Contractor or PGX to enter into a minimum number of SOWs, and each party reserves the right to decline to enter into a given SOW. However, any SOW entered into by the Parties will be governed by this Agreement, unless otherwise modified therein.

## ARTICLE II. RIGHTS AND OBLIGATIONS OF CONTRACTOR

2.1  *Contractor Engagement and Payment of Personnel.*

  2.1.1  All Contractor Personnel providing services to PGX or Clients shall at all times be employees or contractors of Contractor, and not of PGX.

  2.1.2  Personnel shall not be eligible for, or entitled to receive, compensation of any kind or nature from PGX. Contractor shall be solely responsible for the payment of Personnel for the work they perform pursuant to an SOW.

  2.1.3  Contractor shall have sole responsibility for the following: (i) computation and payment of the Personnel's wages in accordance with state and federal laws; (ii) withholding and payment to government authorities of all federal, state, and local payroll taxes; (iii) payment of unemployment insurance to the state and federal governments; (iv) payment and maintenance of workers' compensation insurance covering Personnel; (v) all other applicable deductions and payments to and for Personnel as required by law; and (vi) maintenance of all required timekeeping records for Personnel; (vii) payment of any and all other amounts that may be due to Personnel; (viii) screening, reference checks, and interviews of potential Personnel; and (ix) ensuring compliance with immigration laws for all Personnel, including completion and maintenance of Forms I-9 and documentation related thereto.

  2.1.4  Contractor shall provide written notice to PGX of any Personnel who is not an employee of Contractor.

2.2  *Policies and Procedures.*  Contractor shall maintain policies and procedures sufficient to ensure that the Personnel who are Contractor employees understand their rights and obligations to report any alleged workplace discrimination, retaliation, and/or harassment.

2.3  *Replacement of Personnel.*  In the event that any Personnel assigned to PGX and/or Clients under this Agreement or an SOW shall be unavailable as a result of death, disability, extended leave of absence or termination of employment, Contractor shall identify and provide a suitable replacement.

2.4  *Warranty Regarding Personnel.*  Contractor further represents and warrants that it shall not provide any Personnel who has been convicted of a crime involving dishonesty, breach of trust or money laundering, or who has agreed to enter into a pretrial diversion or similar program in connection with prosecution for such an offense (collectively, "Disqualifying Events"). Contractor further warrants that it will promptly notify PGX upon learning of any Disqualifying Events in the background of any Personnel. PGX reserves the right to confirm the information provided by Contractor via conducting a background check on Personnel.

Initial KDC

## ARTICLE III.   RIGHTS AND OBLIGATIONS OF PGX

3.1 **Licenses and Permits for Operation of PGX's Business.**  PGX agrees that it shall obtain and pay the costs of any required federal, state, county or municipal licenses or permits required in connection with the operation of its business or its utilization of the services of any of the Personnel.

3.2 **Policies.** PGX shall provide Contractor with a copy of any of its policies that apply to or govern the conduct of any of the Personnel covered by this Agreement or any SOW. As policies or procedures are updated, PGX shall provide a copy of such revisions to Contractor.

3.3 **Forwarding Complaints.**  In the event that any PGX representative or liaison becomes aware of any complaint from or about any Personnel, PGX shall promptly advise Contractor of such complaint in writing.

## ARTICLE IV.   PRIVACY, CONFIDENTIALITY AND IP ASSIGNMENT

4.1 **Regulatory Compliance.**  Pursuant to the Gramm-Leach-Bliley Act, 15 U.S.C. 6801 and 6805(b) and all regulations promulgated thereunder, and the Interagency Guidelines Establishing Standards for Safeguarding Customer Information, 12 CFR Part 364, Appendix B, all nonpublic data and information relating to customers of PGX and/or Clients provided to Contractor ("*Customer Information*") shall be treated confidentially and safeguarded by Contractor. Contractor shall not disclose or use any such Customer Information except as necessary to carry out the services for which Contractor has been engaged under an SOW or as required by applicable law.

4.2 **Confidential Information.**  Contractor shall safeguard (A) any Customer Information, and (B) all other confidential, proprietary or nonpublic information of PGX and/or Clients regarding its/their business, operations, plans or strategies (collectively, "Confidential Information" or "CI") through appropriate measures designed to ensure the security and confidentiality of the CI; protect access, availability and integrity of the same; protect against any anticipated threats or hazards to the security or integrity of the CI; and protect against unauthorized access or use of the CI that could result in substantial harm or inconvenience to a customer, PGX, and/or a Client.

4.3 **Duty of Confidentiality.**  Contractor and its Personnel are held to the highest standards of maintaining the confidentiality of all CI provided by PGX and its Clients, including Customer Information. Personnel shall not discuss CI with any outside party, and shall discuss such information with other PGX contractors and/or employees only on a bona fide, business-related, need- to-know basis. In addition, Personnel shall make every reasonable effort to ensure that all CI is kept under proper physical safeguards and access controls, and is not accessible by unauthorized persons. Personnel may be subjected a background check prior to, or as soon as practicable after, commencing SOW services, in accordance with applicable statutes, rules and regulations.

4.4 **Professionalism and Competence.**  Contractor shall provide Personnel who are professionally competent to perform the particular services described in a given SOW. Contractor shall monitor Personnel's work performance, conduct (including their diligence, professional competence and adherence to ethical standards), and compliance with the terms and conditions of this Agreement and the applicable SOW during their performance of services (including, without limitation, the protection of CI).

4.5 **PGX or Client Property.**  All memoranda, papers, letters, notes, notebooks and all copies thereof in any way relating to the business or affairs of the PGX or Clients and provided to Personnel in connection with provision of the Services will be held by Contractor as the property of PGX and/or Client and upon request by PGX or the Client at any time will be immediately returned to the requesting party.

4.6 **Works For Hire.**  Contractor acknowledges that any materials Contractor or Personnel produce in connection with the Services will be considered "work for hire" and be the exclusive property of

2

Initial KDC

PGX unless otherwise agreed in writing between PGX and Contractor. To the extent such materials may not be deemed a "work for hire" under applicable law, Contractor hereby assigns to PGX all right, title and interest in and to Contractor's copyrights to such materials. Contractor will execute and deliver to PGX such instruments of transfer and take such other actions as PGX may reasonably request, including, without limitation, executing and filing, at PGX's expense, copyright applications and other documents required for the protection of PGX's rights to such materials.

### ARTICLE V. MANAGEMENT

5.1 **Personnel Management.** Where applicable, Contractor shall be solely responsible for the management, supervision, discipline and training of Personnel with respect to the performance of their respective duties. PGX may identify an on-site liaison for Personnel assigned to a project pursuant to a SOW. Subject to the foregoing provision, Contractor shall immediately remove any Personnel from service upon PGX's request; provided, however, Contractor retains the ultimate right to terminate its relationship with Personnel, whether upon PGX's recommendation or otherwise.

### ARTICLE VI. NO CONFLICT OF INTEREST

6.1 **No Conflict With Prior Agreements.** Contractor is free to enter into this Agreement. This Agreement does not violate the terms of any agreement between Contractor and/or Personnel on the one hand and any third party on the other.

6.2 **Capacity to Provide Services.** During the term of this Agreement, Personnel shall devote as much of their time, energy and abilities as is necessary to perform the Services in a timely and productive manner. Notwithstanding the foregoing, it is understood that Contractor may, at its discretion, and to the extent consistent with this Agreement, provide services to other customers and clients.

6.3 **No Infringing Use.** In providing the Services, Contractor and its Personnel will not use any invention, discovery, development, improvement, innovation or trade secret in which Contractor or Personnel do not have a proprietary interest.

### ARTICLE VII. INSURANCE

7.1 **Contractor Insurance.** Contractor shall maintain comprehensive commercial liability and such other insurance coverage as may be reasonably requested by PGX and/or Clients.

### ARTICLE VIII. INDEMNITY

8.1 **Indemnification.** Contractor will defend, indemnify and hold PGX harmless with respect to any liability or claim arising out of this Agreement and Contractor's and Personnel's performance under any SOW (or the Agreement as it may relate to such SOW).

8.2 **Third Parties.** In the event of the gross negligence, willful misconduct or violations of law or legal regulations caused by Contractor or Personnel in the performance of services under this MSA or an SOW, Contractor shall forever release, indemnify and hold PGX, its directors, officers, affiliates, employees or representatives harmless from and against any claim, demand, action, suit, cause of action, proceeding, special proceeding, judgments, settlements, costs or expenses (including reasonable attorneys' fees and costs) (A) for alleged injuries to persons or property liability and for any loss, item of damages, including consequential damages, restitution or other orders, legal or regulatory violations, including fines assessed or levied against PGX or any of the aforementioned persons by any regulatory agency or body (herein, "Loss") attributable to Contractor or Personnel, and/or (B) for any such Loss (except for consequential damages) similarly incurred or sustained by a third-party, person or entity by reason thereof.

8.3 **On-Site Conduct.** In performing any services on the premises of PGX or a Client, Personnel will comply with all safety and fire prevention rules applicable to those premises. Contractor's duties

3

Initial KDC

under Section 8.1 includes but is not limited to any liability or claim for personal injury or property damage caused by the negligence or willful misconduct of Personnel.

## ARTICLE IX. DURATION AND TERMINATION OF AGREEMENT

9.1 **Effective and Termination Dates.** This Agreement shall become effective on the Effective Date and shall continue in effect thereafter until it is terminated in accordance with the provisions of this Agreement. For the purposes of the Agreement, the date on which this Agreement is terminated shall be referred to as the "*Termination Date.*"

9.2 **Notice of Termination.** Either Party, for any reason, may terminate this Agreement by delivering written notice of termination to the other party, at least thirty (30) days prior to the Termination Date.

9.3 **Termination of Agreement for Failure to Pay Fees.** If PGX fails to timely pay fees, Contractor may give PGX written notice of its intent to terminate this Agreement for such failure and this Agreement shall terminate as of the expiration of the fifteenth (15th) day from PGX's receipt of such notice, unless PGX has cured such failure within such fifteen (15) day period.

9.4 **Termination for Material Breach.** Either party may terminate this Agreement due to the other party's material breach of this Agreement if such breach is not cured within ten (10) days following written notice of such breach to the breaching party.

9.5 **Bankruptcy Event.** Either party may immediately terminate this Agreement in the event of filing by or against the other party hereto of any petition for bankruptcy, receivership, insolvency or the making by such party of an assignment for the benefit of creditors.

## ARTICLE X. INDEPENDENT CONTRACTOR STATUS

10.1 **Relationship.** The relationship of the parties under this Agreement and any SOW shall be, and at all times remain, one between independent contractors. Neither this Agreement nor any associated SOW shall create the relationship of an employer and employee, a joint employer, a partnership, or a joint venture. Contractor represents and warrants that it is a corporation duly organized and existing under the laws of Contractor's state, or country of incorporation, and that it is a bona fide corporate business entity established for a valid business purpose within the meaning of the tax laws of the United States. Contractor further acknowledges that PGX is relying upon the foregoing representations and warranties for the purpose of determining whether or not it is necessary to make withholdings for United States taxes from monies being paid to Contractor hereunder.

10.2 **Responsibility for Taxes, Licenses and Insurance.** Contractor is solely responsible for, and will pay all costs of, conducting Contractor's independent business, including but not limited to general business liability insurance and city, county, state or federal licenses, permits, assessments and taxes (including sales taxes and business and occupation taxes).

10.3 **Payroll Taxes, Workers' Compensation and Unemployment Insurance.** No payroll or employment taxes of any kind (including, but not limited to, FICA, FUTA, federal or state personal income taxes, state disability insurance taxes, and state unemployment taxes) shall be withheld or paid by PGX with respect to any payments to Contractor. Contractor shall be fully and solely responsible for filing appropriate tax returns, and for making social security contributions and any other relevant payments to government authorities. Contractor shall maintain workers' compensation insurance and unemployment insurance coverage covering the Personnel, and shall comply with all requirements imposed by applicable law with respect thereto. Contractor shall defend, indemnify and hold PGX harmless from the payment of taxes, premiums, interest, penalties or contributions which are required of PGX by any government agency at any time as the result of payment of the Fees or which PGX may otherwise be compelled to pay (except to the extent required by law to be withheld and in fact withheld), as well as from all other costs and expenses, including without

limitation attorneys' fees, incurred by PGX as the result of any audit, inquiry, investigation, or lawsuit by a government agency or third party in connection therewith.

- 10.4 **Employee Benefits.** Contractor shall provide the Personnel with those employee benefits as solely determined by Contractor (if any). Personnel shall not be entitled to any employee benefits extended by PGX to its employees. Neither PGX nor any of its employees or contractors shall be eligible for, or participate in, any employee health, pension, stock option or other fringe benefit plan or policy sponsored by Contractor.

- 10.5 **Compliance with Law.** Contractor agree to comply with all applicable state and federal laws and regulations as well as other valid rules and regulations of governmental agencies applicable to Contractor and/or the provisions of its services under this Agreement. Specifically, PGX shall comply with all applicable provisions of the Fair Labor Standards Act, the Consolidated Omnibus Budget Reconciliation Act, the Family Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act, and all federal, state and local laws that govern the employment relationship between Contractor and its employees.

- 10.6 **Maintenance and Retention of Records.** Contractor shall keep records of all hours worked by Personnel assigned to PGX under this Agreement and any associated SOW. Contractor shall maintain records of all fees, wages, benefits, payments and business and personnel actions paid or taken by Contractor in connection with the Personnel.

- 10.7 **Immigration Reform and Control Act of 1986.** Contractor shall comply with applicable provisions of the Immigration Reform and Control Act of 1986 and maintain Form I-9s for all Personnel.

- 10.8 **No Authority to Bind.** Unless otherwise specified in an SOW, Contractor and Personnel have no authority to enter into contracts on behalf of PGX or Clients, or to otherwise obligate PGX or Clients in any respect.

## ARTICLE XI. ADDITIONAL PROVISIONS

- 11.1 **Amendments.** This Agreement, including any exhibits and schedules, may be amended at any time and from time to time, but any amendment must be in writing and signed by all of the parties to this Agreement.

- 11.2 **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without regard to the conflict of law principles thereof).

- 11.3 **Binding Effect.** This Agreement shall inure to the benefit of and be binding upon the parties and their respective heirs, successors, representatives and permitted assigns.

- 11.4 **Entire Agreement.** This Agreement, along with any associated SOW, constitutes the entire agreement between the parties hereto relating to the subject matter hereof, and contains all of the terms, conditions, covenants, stipulations, understandings and provisions agreed upon by the parties. No agent or representative of either party hereto has authority to make, and the parties shall not be bound by or liable for, any statement, representation, promise, or agreement not specifically set forth in this Agreement or related SOW.

- 11.5 **Further Assurances.** Each of the parties shall execute and deliver any and all additional papers, documents, and other assurances and shall do any and all acts and things reasonably necessary in connection with the performances of their obligations hereunder and to carry out the intent of the parties hereto.

- 11.6 **Assignment.** This Agreement shall not be assigned by either party without the prior written consent of the other party. Notwithstanding the foregoing, this Agreement shall be automatically assigned to the successor of a party, without the required consent of the other party, in the event of a merger, consolidation, sale of stock, sale of assets or other similar corporate transaction involving a party to this Agreement, and such successor shall assume all of the rights and obligations of such party hereunder.

Initial **KDC**

11.7  **Severability.** If any part or condition of this Agreement is held to be void, invalid or inoperative, such shall not affect any other provision hereof, which shall continue to be effective as though such void, invalid or inoperative part, clause or condition had not been made.

11.8  **Waiver of Provisions.** The failure by one party to require performance by the other party shall not be deemed to be a waiver of any such breach, nor of any subsequent breach by the other party of any provision of this Agreement. Such waiver shall not affect the validity of this Agreement, nor prejudice either party's rights in connection with any subsequent action.

11.9  **Delay in Performance.** If either party is delayed in or prevented from performing any of its obligations hereunder by circumstances beyond its reasonable control and not the fault of such party, which such party is unable to prevent or overcome by the exercise of reasonable commercial efforts, then the performance of such obligation shall be excused for the period of the delay and the period for the performance of such obligation shall be extended for an equivalent period; *provided, however,* that such party shall have given prompt notice and full particulars of such cause to the other party.

**ARTICLE XII. *Counterpart Execution*.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Transmission of an executed counterpart of this Agreement by telecopy shall be effective. **WITNESS WHEREOF**, the undersigned has caused this Agreement to be executed as of the day and year first given above.

**KDC Consulting LLC**

By: *[signature]*
Name: *[signature]*   Title: Owner/President

**PGX, LLC**

By:
Name: *[signature: Annise Hyland]*   Title: Project Administrator

6