KLEIN LAW GROUP OF NEW YORK PLLC
120 East 79th Street, Suite 1A
New York, New York 10021
(347) 292-8170
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM, on behalf of themselves and other similarly situated, | **Index No 20-cv-6985** |
| Plaintiffs, | |
| - against - | |
| P&G AUDITORS AND CONSULTANTS, LLC; GRC SOLUTIONS, LLC; PGX, LLC; AND APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR COLLECTIVE ACTION CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

Dated: December 11, 2020

By: /s/ Julia Klein
Julia Klein
120 East 79th Street, Suite 1A
New York, New York 10021
347.292.8170
jklein@kleinlegalgroup.com
Attorneys for Plaintiffs

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

INTRODUCTION .......................................................................................................1

PROCEDURAL HISTORY .......................................................................................2

STATEMENT OF FACTS .........................................................................................2

    A.  Plaintiffs ......................................................................................................2

        1.  Kenneth Curry ...............................................................................2

        2.  Jacqueline Brown Pilgrim ............................................................6

        3.  Ricardo Mazzitelli .........................................................................8

    B.  Defendants ...................................................................................................9

    C.  Prior Litigation of Contractor Defendants ............................................11

ARGUMENT .............................................................................................................11

I.      THE COURT SHOULD CERTIFY THE FLSA COLLECTIVE ACTION AND

       ORDER NOTICE ..............................................................................................11

    A.  Plaintiffs Satisfy the Requirements of the Two-Step Certification Process for
       FLSA Collective Actions............................................................................12

    B.  Plaintiffs Meet the Lenient Standard for Conditional Certification and Notice
       ........................................................................................................................14

    C.  Court Authorized Notice Is Appropriate in This Case....................15

    D.  The FLSA Claims in this Collective Action Should Extend Back Three Years
       Because Defendants Willfully Violated the FLSA ............................................18

**E. The Court Should Order Expedited Production of Names and Contact Information**.......................................................................................**19**

**II.      THE STATUTE OF LIMITATIONS SHOULD BE EQUITABLY TOLLED ...20**

**CONCLUSION** ...........................................................................................................**22**

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bediako v. P & G Auditors & Consultants, LLC*,

    No. 19-CV-2527, 2020 U.S. Dist. LEXIS 497 (S.D.N.Y. Jan. 2, 2020) ..........................21

*Bhumithanarn v. 22 Noodle Market Corp.*,

    No. 14 Civ. 2625, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ......................................13

*Bittencourt v. Ferrara Bakery & Café, Inc.*,

    310 F.R.D. 106 (S.D.N.Y. 2015) ......................................................................................14

*Braunstein v. E. Photographic Labs*,

    600 F.2d 335 (2d Cir. 1975)..............................................................................................12

*Campos v. Lenmar Restaurant Inc.*,

    No. 18 Civ. 12359, 2019 WL 6210814 (S.D.N.Y. Nov. 21, 2019) ..................................13

*Cherif v. Sameday Delivery Corp.*,

    No. 13-cv-1341, 2015 U.S. Dist. LEXIS 133807 (E.D.N.Y. Sept. 30, 2015) ..................18

*Chhab v. Darden Restaurants, Inc*.,

    No. 11 Civ. 8345, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013)................................12, 13

*Dickensheets v. Arc Marine, LLC*,

    440 F. Supp. 3d 670 (S.D. Tex. 2020) ..............................................................................17

*Escobar v. Mortino East Village*,

    No. 14 Civ. 6760, 2015 WL 4726871 (S.D.N.Y. Aug. 10, 2015) ...................................13

*Ferreira v. Modell's Sporting Goods, Inc.*,

    No. 11 Civ. 2395, 2012 WL 2952922 (S.D.N.Y. July 16, 2012) ...................................14

*Flood v. Carlson Restaurants Inc.*,

    No. 14 Civ. 2740, 2015 WL 260436 (S.D.N.Y. Jan. 20, 2015)...................................14, 18

*Gambino v. Harvard Prot. Servs. LLC*,

    No. 10 CIV 0983 PAC, 2011 WL 102691 (S.D.N.Y. Jan. 11, 2011)...............................16

*Glatt v. Fox Searchlight Pictures Inc.*,

    No. 11 Civ. 6784, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) ...................................20

*Gonzalez v. Scalinatella, Inc.*,

    No. 13 Civ. 3629, 2013 WL 6171311 (S.D.N.Y. Nov. 25, 2013) ...................................13

*Hamadou v. Hess Corp.*,

    915 F. Supp. 2d 651 (S.D.N.Y. 2013)........................................................................18, 19

*He v. Home on 8th Corp.*,

    No. 09-cv-5630, 2014 U.S. Dist. LEXIS 114605 (S.D.N.Y. Aug. 13, 2014)...................18

*Hernandez v. Bare Burger Dio Inc.*,

    No. 12 Civ.7794, 2013 WL 3199292 (S.D.N.Y. June 25, 2013).....................................13

*Hoffmann-La Roche Inc. v. Sperling*,

    493 U.S. 165 (1989)....................................................................................................12, 15

*Iglesias-Mendoza v. La Belle Farm, Inc.*,

    239 F.R.D. 363 (S.D.N.Y. 2007) ......................................................................18

*In re Deloitte & Touche, LLP Overtime Litig.*,

    No. 11 Civ. 2461, 2011 WL 6292923 (S.D.N.Y. Dec. 16, 2011)......................19

*In re Deloitte & Touche, LLP Overtime Litig.*,

    No. 11 Civ. 2461, 2012 WL 340114 (S.D.N.Y. Jan. 17, 2012)........................16

*In re Penthouse Executive Club Compensation Litigation*,

    No. 10 Civ. 1145, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ......................19

*Jackson v. Bloomberg, L.P.*,

    298 F.R.D. 152 (S.D.N.Y. 2014) ......................................................................20

*Kemper v. Westbury Operating Corp.*,

    No. 12-cv-895, 2012 WL 4976122 (E.D.N.Y. Oct. 17, 2012) ..........................21

*Khalil v. Original Homestead Rest., Inc.*,

    No. 07-cv-695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007)..........13

*Kim Man Fan v. Ping's on Mott, Inc.*,

    No. 13 Civ. 4939 (AT), 2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014)......................12, 20

*Lawrence v. A-1 Cleaning & Septic Systems*, LLC,

    No. 19 Civ. 3526, 2020 WL 2042423 (S.D. Tex. Apr. 28, 2020) ....................16

*Lopez v. JVA Indus., Inc.*,

    No. 14 Civ. 9988, 2015 WL 5052575 (S.D.N.Y. Aug. 27, 2015) ....................16

*McGlone v. Contract Callers, Inc.*,

    867 F. Supp. 2d 438 (S.D.N.Y. 2012) .......................................................................13, 21

*Millin v. Brooklyn Born Chocolate, LLC*,

    No. 19 Civ. 3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020) ......................................16

*Morris v. Lettire Const. Corp.*,

    896 F. Supp. 2d 265 (S.D.N.Y. 2012) .......................................................................17, 18

*Myers v. Hertz Corp.*,

    624 F.3d 537 (2d Cir. 2010) ....................................................................................13, 15

*Racey v. Jay-Jay Cabaret*, *Inc.*

    No. 15 Civ. 8228, 2016 WL 3020933 (S.D.N.Y. May 5, 2015) .....................................17

*Raniere v. Citigroup Inc.*,

    827 F. Supp. 2d 294 (S.D.N.Y. 2011) ...........................................................................19

*Roebuck v. Hudson Valley Farms, Inc.*,

    239 F. Supp. 2d 234 (N.D.N.Y. 2002) ...........................................................................18

*Sarikaputar v. Veratip Corp.*,

    No. 1:17-cv-00814, 2018 U.S. Dist. LEXIS 147244 (S.D.N.Y. Aug. 29, 2018) ..............13

*Schaefer v. M & T Bank Corp.*,

    122 F.Supp.3d 189 (S.D.N.Y. 2015) .........................................................................13, 15

*Schear v. Food Scope America, Inc.*,

    297 F.R.D. 114 (S.D.N.Y. 2014) ....................................................................................20

*Scott v. Chipotle Mexican Grill, Inc.*,

    954 F.3d 502 (2d Cir. 2020)..............................................................................12


*Shillingford v. Astra Home Care, Inc.*,

    293 F. Supp. 3d 401 (S.D.N.Y. 2018)..............................................................12


*Trinidad v. Pret A Manger (USA) Ltd.*,

    962 F. Supp. 2d 545 (S.D.N.Y. 2013)..............................................................13


*Varghese v. JP Morgan Chase & Co.*,

    No. 14-cv-1718, 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) .........................20


*Velasquez v. Digital Page Inc.*,

    No. 11-CV-3892, 2014 WL 2048425 (E.D.N.Y. May 19, 2014) ......................16


*Williams v. Movage, Inc.*,

    No. 17 Civ. 2628, 2018 WL 1940435 (S.D.N.Y. Apr. 24, 2018)......................12


*Young v. Cooper Cameron Corp.*,

    229 F.R.D. 50 (S.D.N.Y. 2005) .......................................................................14


Statutes

FAIR LABOR STANDARDS ACT (FLSA),

    29 U.S.C. § 203 *et. seq.* (2020)........................................................................1

    29 U.S.C. § 216(b) (2020) ...............................................................11, 12, 14, 15, 22

    29 U.S.C. § 255(a) (2020)................................................................................18


NEW YORK LABOR LAW § 195 (2020) .......................................................................21

FED. R. CIV. P. 23 (2020) ...................................................................................................14

Other Authorities

Declaration of Jacqueline Brown Pilgrim................................................................ *passim*

Declaration of Julia H. Klein ................................................................................ *passim*

Declaration of Kenneth Curry................................................................................ *passim*

Declaration of Ricardo Mazzitelli.......................................................................... *passim*

## INTRODUCTION

Defendants P & G Auditors and Consultants, LLC, ("P&G"), GRC Solutions, LLC ("GRC"), PGX, LLC ("PGX") (collectively, "Contractor Defendants"), and Defendant Apple Bancorp, Inc's. ("Apple Bank") deny their anti-money laundering investigators ("AMLs"), anti-money laundering quality assurance reviewers ("QAs") and team leads ("TLs") overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 203, *et. seq.* ("FLSA"). Plaintiff Kenneth Curry ("Curry"), Jacqueline Brown Pilgrim ("Pilgrim") and Ricardo Mazzitelli ("Mazzitelli") (collectively, "Plaintiffs") seek to protect their rights and the rights of other AMLs, QAs, and TLs by sending the other AMLs, QAs and TLs early Court-approved notice of this action. This notice will describe the lawsuit, explain AML's, QA's and TL's right to participate in this lawsuit, and describe the process by which AMLs, QAs and TLs can join this action to recover unpaid wages.

As set forth below, Plaintiffs allege that, they, along with the all AMLs, QAs, and TLs who were sent by the Contractor Defendants to work on all phases of the Apple Bank Lookback Project,: (1) held the same job title and performed nearly identical job duties; (2) were employed by the Contractor Defendants and Apple Bank (collectively, "Joint Employer Defendants") to perform work at Apple Bank to review Apple Bank's transactions; (3) were subject to the same policies and procedures; and (4) were routinely undercompensated in violation of the FLSA when the Joint Employer Defendants failed to pay overtime premiums, as required by the FLSA, when they worked more than 40 hours per week. The evidence submitted with this motion is more than sufficient to demonstrate that Plaintiffs and the Collective Action Members are similarly situated, and thus Plaintiffs readily meet the lenient standard required to obtain certification of a collective action under the FLSA.

1

**PROCEDURAL HISTORY**

Plaintiffs Curry, Pilgrim, and Mazzitelli filed a class and collective action complaint on August 28, 2020, alleging that Joint Employer Defendants violated the overtime provisions of the FLSA, and other violations regarding unpaid wages. *See* Declaration of Julia H. Klein, dated December 10, 2020 ("Klein Decl."), at ¶ 4, Ex. A. The Apple Bank Defendants answered the Complaint on October 15, 2020. *See* Klein Decl., at ¶ 5, Ex. B. Recently, the Apple Bank Defendants filed a motion for summary judgment seeking dismissal of claims against them. *See* Klein Decl., at ¶ 6. Plaintiffs have not yet filed their opposition to this motion. *Id*. The Contractor Defendants have not yet filed an Answer in response to the Complaint. *See* Klein Decl., at ¶ 7. Formal discovery has not yet commenced. *See* Klein Decl., at ¶ 8.

**STATEMENT OF FACTS**

In this class and collective action, Plaintiffs allege that Joint Employer Defendants violated FLSA by failing to fully and adequately compensate Plaintiffs for the time that they worked, including failing to pay overtime wages when they worked more than 40 hours in a week.

**A.     Plaintiffs**

**1.     Kenneth Curry**

The Joint Employer Defendants employed Plaintiff Curry as an AML and QA from approximately October 9, 2017 to August 26, 2018. *See* Declaration of Kenneth Curry, dated December 9, 2020 ("Curry Decl."), at ¶¶ 7, 26. Defendants P & G, GRC, and PGX hired Plaintiff Curry and sent him to work at the Apple Bank facility located at 2100 Broadway in Manhattan that was owned and/or operated by Defendant Apple Bank. *See* Curry Decl., at ¶ 3. During this

period Curry held no other positions and worked exclusively for the Joint Employer Defendants as an AML. *See* Curry Decl., at ¶ 4.

Plaintiff Curry's relationship with the Joint Employer Defendants started on or around October 6, 2017, when Deepa Keswani Teckchandani, a project manager for GRC and its affiliate P&G, interviewed him for the AML position on the Apple Bank Lookback Review Project. *See* Curry Decl., at ¶ 5. As part of the interview process, P&G and GRC required Plaintiff Curry to complete an employment application, and to supply a copy of his resume and a writing sample, as well as to submit to a background check. *See* Curry Decl., at ¶ 6. On October 6, 2017, Louise Hyland, an employee of P&G and GRC, wrote to Plaintiff Curry and stated that Deepa Keswani Teckchandani wanted to hire him.  *See* Curry Decl., at ¶ 7.  As part of the onboarding process, on October 9, 2017, P&G and GRC required Plaintiff Curry to enter into a Master Subcontractor Agreement ("MSA") through an entity he had created named KDC Consulting, LLC. *See* Curry Decl., at ¶ 8, Ex. A. KDC Consulting, LLC is a single member LLC and has no purpose other than to allow Plaintiff Curry to work on compliance review projects because agencies like GRC, P&G and PGX often require compliance officers/anti-money laundering investigators to form these entities in order to gain employment. *See* Curry Decl., at ¶ 9. KDC Consulting, LLC never had any employees other than Plaintiff Curry himself. *Id*.  Indeed, per the MSA, even if Mr. Curry's entity, KDC Consulting, LLC wanted to hire another contractor other than Plaintiff Curry, to work on the Apple Bank project, it could not have because the MSA stipulated that the "[c]ontractor who will perform the services" would be Plaintiff Curry. *See* Curry Decl., at ¶ 10.

The MSA explicitly provided that Plaintiff Curry would be working for Apple Bank on a project called "Lookback Review Phase 2," and also that stipulated that Plaintiff Curry would have to work a minimum of 40 hours per week, and up to 60 hours per week *See* Curry Decl., at ¶¶ 11-

12. This was a gross underestimate of the time Plaintiff Curry actually spent working on the Apple Bank Lookback Review project, because Plaintiff Curry routinely worked over 70 hours per week. *See* Curry Decl., at ¶ 12.

Apple Bank was fully aware of and acquiesced to the number of hours Plaintiff Curry worked.  *See* Curry Decl., at ¶¶ 13-15. The MSA provided that, Apple Bank is "currently open extended hours, plus additional hours on federal holidays," in order to facilitate the work that Plaintiff Curry and other AMLs and TLS performed in order to meet the project deadlines. Moreover, Apple Bank often hired additional security staff and maintenance staff to allow Plaintiff Curry and the AMLs to utilize bank premises to work beyond the branch's operating hours. *See* Curry Decl., at ¶ 15.

Initially P&G and GRC paid Plaintiff Curry at the flat rate of $75.00 per hour. *See* Curry Decl., at ¶ 17. Although P&G and GRC required Plaintiff Curry to work more than 40 hours per week, there was no provision in the MSA to pay Plaintiff Curry a time and half premium for each hour beyond 40 that he worked, and he was paid "straight time" only (i.e., no overtime premiums) for all of the hours that he spent working on the Apple Bank Lookback Review project. *See* Curry Decl., at ¶ 18. On or around, January 22, 2018, P&G and GRC renegotiated the MSA with Plaintiff Curry and began paying him $90.00 per hour through Curry's KDC Consulting, LLC entity. *See* Curry Decl., at ¶ 19, Ex. B. The updated MSA again required Plaintiff Curry to work a "minimum" of 40 hours per week and did not contain a provision addressing payment of overtime for hours worked in excess of 40 hours per week. *See* Curry Decl., at ¶ 20.  Plaintiff Curry continued to work in excess of 40 hours a week for the duration of the project and did not get paid overtime. *See* Curry Decl., at ¶ 22, Ex. C.

Plaintiff Curry continued working for the Joint Employer Defendants under these terms and conditions until on or around April 26, 2018, at which time he was required to enter into yet another MSA, this time with Defendant PGX. *See* Curry Decl., at ¶ 23, Ex. D. Even though PGX replaced P&G and GRC as the party named on the employment agreement, Plaintiff Curry's job duties did not change, and he continued working at and for Apple Bank at the same location and on the second phase of the same project. *See* Curry Decl., at ¶ 24. PGX agreed to continue to pay Plaintiff Curry $90.00 per hour through Mr. Curry's single purpose entity, KDC Consulting, LLC, and PGX continued P&G's and GRC's policy of requiring Curry to work no fewer than 40 hours for each week that he worked for them.  PGX terminated Plaintiff Curry's employment on or about August 26, 2018. *See* Curry Decl., at ¶ 25.

As a condition of his employment, Plaintiff Curry was required to sign Apple Bank's "acceptable use policy," which, among other things, set forth the terms and conditions he was required to abide by in order to use Apple Bank's information technology resources. *See* Curry Decl., at ¶ 27.  Apple Bank contracted exclusively with the Contractor Defendants to provide anti money laundering compliance review for the Apple Bank Lookback Review project that occurred during this time frame. *See* Curry Decl., at ¶ 28.

Throughout Plaintiff Curry's employment period, all AMLs and TLs who worked on the Apple Bank Lookback Review project submitted time sheets to the Contractor Defendants. *See* Curry Decl., at ¶¶ 30-31. Upon information and belief, the Contractor Defendants submitted these time sheets to Apple Bank for review and to ascertain how much money Apple Bank owed the Contractor Defendants to pay for the AMLs and TLs services. *See* Curry Decl., at ¶ 32.  Upon information and belief, both the Contractor Defendants and Apple Bank routinely retained copies of AML's and TL's time sheets. *See* Curry Decl., at ¶ 33. The AML's and TL's work product was

ultimately reviewed by both the Contractor Defendants and Apple Bank supervisors. *See* Curry Decl., at ¶ 35.  For example, in addition to the supervision the AMLs and TLs received from the Contractor Defendants, the AMLs and TLs participated in regularly held staff meetings where their direct supervisor would discuss feedback that they received from Apple Bank's employees who reviewed the AML's and TL's work. *See* Curry Decl., at ¶ 36. The Apple Bank quality assurance personnel who reviewed the AMLs and TLs work provided direction and feedback about the quality of the AMLs and TLs work and made suggestions on ways to improve "ISF's" and "SDS spreadsheets," which are the Apple Bank forms that AMLs and TLs had to complete as part as their review of the Apple Bank transactions. *See* Curry Decl., at ¶ 36.  Furthermore, upon information and belief, Apple Bank had its own compliance staff who performed essentially the same functions as AMLs and TLs did. *See* Curry Decl., at ¶ 37.

Plaintiff Curry directly observed other AMLs and TLs including, but not limited to, Faizan Imam, Ledyne Clixte, Devika Ramnarine, William Schollmeyer, Manzo Tiya, Andy Merline, James Hughes, Danielle Lucas, Erik Krasnic, Hernan Crivellari, Chhorvy Ung, William Burns, Pamela Andrews, Robert Williams, Frederick Anarfi, Ricardo Gonzalez, and William Kaiser, who were all part of a group referred to as "Team 2," work substantially more than 40 hours a week. *See* Curry Decl., at ¶ 38. These "Team 2" members often and joked about their long hours and commented on the fact that nobody was paid overtime premiums for work in excess of 40 hours per week. *See* Curry Decl., at ¶ 38.

### 2.  Jacqueline Brown Pilgrim

On or around April 26, 2018, Defendant PGX entered into a MSA with Plaintiff Pilgrim's corporate entity, Bropil Consulting, LLC, to allow Plaintiff Pilgrim work as an AML on the Apple Bank's Lookback Review project.  *See* Declaration of Jacqueline Brown Pilgrim, dated December

10, 2020 ("Pilgrim Decl."), at ¶¶ 2-4, Ex. A. PGX sent Plaintiff, and dozens more AMLs to work at the Apple Bank located at 2100 Broadway in Manhattan that was owned and/or operated by Defendant Apple Bank. *See* Pilgrim Decl., at ¶¶ 6-9.

While working as an AML on this project, the Contractor Defendants required Pilgrim to work at least 40 hours, but in reality, Plaintiff Pilgrim worked approximately 66 to 72 hours each week. *See* Pilgrim Decl., at ¶ 8. Plaintiff Pilgrim personally observed dozens of other AMLs work similar hours. *See* Pilgrim Decl., at ¶ 9. Plaintiff Pilgrim also had discussions with several other AMLs who worked on the Apple Bank Lookback Review project in which she learned that the Contractors Defendants required AMLs to set up an entity in order to work and get paid and paid that single purpose entity based on the hours that each AML worked. *See* Pilgrim Decl., at ¶ 5.

While working on this project, Plaintiff Pilgrim and her fellow AMLs, used Apple Bank's facilities, computers, paper, IT, and information to perform their jobs. *See* Pilgrim Decl., at ¶ 10. Apple Bank was aware of the AML's and TL's presence at the worksite since it kept its facilities open for them on weekends, holidays and after business hours, and they also hired security to allow the AMLs and TLs to work at the bank after business hours. *See* Pilgrim Decl., at ¶ 11. Plaintiff Pilgrim was also required to sign Apple Bank's "acceptable use policy," which, among other things, set forth the terms and conditions she was required to abide by in order to use Apple Bank's information technology resources. *See* Pilgrim Decl., at ¶ 12. She also learned that other AMLs who worked on the Apple Bank project had to sign Apple Bank's "acceptable use policy." *See* Pilgrim Decl., at ¶ 12.

Plaintiff Pilgrim's corporate entity got paid directly by PGX, but only after she submitted her time sheets using an online portal provided by PGX. *See* Pilgrim Decl., at ¶ 13. She also spoke

with various co-workers and learned that all AMLs and TLs got paid after submitting time through the PGX portal. *See* Pilgrim Decl., at ¶ 13.

For the duration of this project, PGX paid Plaintiff Pilgrim's corporate entity at the flat rate of $90.00 per hour. *See* Pilgrim Decl., at ¶ 16. The Joint Employer Defendants never paid Plaintiff Pilgrim overtime compensation, even when she worked more than 40 hours in a week. *See* Pilgrim Decl., at ¶¶ 17-18. Plaintiff Pilgrim spoke to her colleagues and the Joint Employer Defendants did not pay any of the AMLs overtime premiums, instead the Joint Employer Defendants paid everyone at the flat hourly rate that they had contracted with each AMLs and TL, and that appeared in the AMLs' and TLs' MSAs. *See* Pilgrim Decl., at ¶¶ 19-20. Because the Joint Employer Defendants required Plaintiff Pilgrim to work such long hours, she was not able to work in another position throughout the duration of her time on this project. *See* Pilgrim Decl., at ¶ 22.

### 3.     Ricardo Mazzitelli

Plaintiff Mazzitelli entered into an MSA and SOW with GRC to work as an AML and TL on the Apple Bank "Lookback Review Phase 1" project. *See* Declaration of Ricardo Mazzitelli, dated December 9, 2020 ("Mazzitelli Decl."), at ¶ 2. There were multiple phases included in this project, but all phases were parts of the same anti-money laundering project. *See* Mazzitelli Decl., at ¶ 3. GRC paid Plaintiff Mazzitelli for his work on the project through his corporate entity Mazzitelli Consulting, LLC. *See* Mazzitelli Decl., at ¶ 5. For this project, GRC employed AMLs, QAs and TLs, all of whom were selected by GRC. *See* Mazzitelli Decl., at ¶ 6. Plaintiff Mazzitelli spoke with his colleagues on the project, all of whom were required to utilize a corporate entity to get paid. *See* Mazzitelli Decl., at ¶¶ 7-9.

Defendants required Plaintiff Mazzitelli to work a minimum of 65 hours per week and throughout the duration of his employment, and he logged approximately 70 hours each week

working for GRC and Apple Bank. *See* Mazzitelli Decl., at ¶ 13.  GRC required TLs, like Plaintiff Mazzitelli, to ask QAs and AMLs to work additional hours if their hours were anticipated to fall below the 65-hour minimum. *See* Mazzitelli Decl., at ¶ 15. Plaintiff Mazzitelli worked alongside the other TLs, QAs and AMLs and he observed dozens of TLs, QAs, and AMLs work the same or substantially similar hours as he did, in all cases much more than 40 hours per week. *See* Mazzitelli Decl., at ¶¶ 16-26. Because he worked such long hours, he could not work in another position through the duration of his time on this project. *See* Mazzitelli Decl., at ¶ 29.

Plaintiff Mazzitelli and his co-workers only got paid after they submitted their hours to GRC using an online portal provided by GRC. *See* Mazzitelli Decl., at ¶ 20. GRC paid Plaintiff Mazzitelli at the flat rate of $110.00 per hour and did not pay him a time and half premium for each hour beyond 40 that I worked. *See* Mazzitelli Decl., at ¶¶ 23-24. Plaintiff Mazzitelli spoke to various colleagues during his time working on this project and was told that GRC and Apple Bank did not pay any TLs, QAs or AMLs overtime premiums; instead, they paid all of them at the flat hourly rate they contracted with them that appeared in the MSAs or SOWs.  *See* Mazzitelli Decl., at ¶¶ 27, 33.  No notices were ever provided to Plaintiff Mazzitelli or the other TLs, QAs or AMLs to describe their rights under federal or state wage and hour laws. *See* Mazzitelli Decl., at ¶ 35.

Apple Bank contracted exclusively with the Contractor Defendants to provide anti-money laundering compliance review for the Lookback project that occurred during this time frame. *See* Mazzitelli Decl., at ¶ 28.

Both the Contractor Defendants and Apple Bank supervised and reviewed Plaintiff Mazzitelli and the TLs, QAs and AMLs work on the Apple Bank Lookback review project. *See* Mazzitelli Decl., at ¶¶ 30-32.

The Contractor Defendants have engaged in retaliatory conduct and have pressured Plaintiff Mazzitelli to withdraw his claim. *See* Mazzitelli Decl., at ¶¶ 36-38.

**B.     Defendants**

Apple Bank is a bank holding company that operates in the New York metropolitan area. *See* Declaration of Julia H. Klein, dated December 10, 2020 ("Klein Decl."), at ¶ 15.

The Contractor Defendants are entities that partner with financial institutions to mitigate risks and meet regulatory requirements in the areas of Financial Crimes Advisory Services, IT & Cybersecurity Advisory Services, SOX/FDICIA Services, Credit Risk Management (loan reviews, underwriting and stress testing), Regulatory Compliance, Strategic Planning, Project Management and other customized consulting engagements. *See* Klein Decl., at ¶ 16, Ex. J.

Based on information received from Apple Bank, Plaintiffs have learned that the Federal Deposit Insurance Corporation ("FDIC") entered into a Consent Order dated December 16, 2015, ("Consent Order") that required Apple Bank to perform a validation of the Bank's suspicious activity monitoring system, regarding its Bank Secrecy Act and Anti-Money Laundering Compliance Program. *See* Klein Decl., at ¶ 16.  Apple Bank was required to review all customer accounts and transaction activity for the time period beginning October 1, 2014 through December 16, 2015. *Id*. Similarly, New York State Department of Financial Services ("NYSDFS") and Apple Bank entered into a Memorandum of Understanding dated January 29, 2016 ("MOU"), that required Apple Bank to conduct a review of all customer accounts and transaction activity for the time period beginning October 1, 2014 through December 16, 2015 . . . to determine whether suspicious activity was properly identified and reported in accordance with the applicable suspicious activity reporting requirements.  *See* Klein Decl., at ¶ 18.  Apple Bank retained the Contractor Defendants to perform the Lookback Review, pursuant to the Consent Order and MOU.

To staff the Apple Bank Lookback review project, the Contractor Defendants hired Plaintiffs and members of the collective. *See* Klein Decl., at ¶ 16, Ex. J.  In this regard, all applicants applied with the Contractor Defendants and went through similar interview and onboarding processes. *See* Mazzitelli Decl., at ¶¶ 6-8, Pilgrim Decl. at ¶5.  If hired for this project, the Contractor Defendants required the person to have a corporate entity through which to get paid, and to sign MSAs. *See* Mazzitelli Decl., at ¶¶ 6-8, Pilgrim Decl. at ¶5.  The MSAs are all similar in the sense that they stipulate that the employees are required to work at least 40 hours a week, and that they received a flat hourly rate, without overtime premiums, regardless of the number of hours the employee actually worked. *See* Curry Decl., at ¶ 12; Mazzitelli Decl., at ¶ 13, Pilgrim Decl. at ¶ 8. All employees were directed to submit their time records through the same time tracking portal. *See* Mazzitelli Decl., at ¶ 20, Pilgrim Decl. at ¶13. Furthermore, once on-boarded, the Contractor Defendants sent their employees to Apple Bank to conduct the same type of work under the same conditions. *See* Mazzitelli Decl., at ¶¶ 3, 6

**C. Prior Litigation of Contractor Defendants.**

This is not the first time that the Contractor Defendants have been sued for failing to pay overtime to its AMLs and TLs. *See* Klein Decl., at ¶ 9, Ex. C. The Contractor Defendants recently settled a case for unpaid overtime for $250,000.00.  *See* Klein Decl., at ¶ 10, Ex. D.

## ARGUMENT

**I.    THE COURT SHOULD CERTIFY THE FLSA COLLECTIVE ACTION AND ORDER NOTICE**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common

issues of law and fact," and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989); Braunstein v. E. Photographic Labs*., 600 F.2d 335, 336 (2d Cir. 1975) (district court has the power to order notice be sent to potential opt-in plaintiffs in an FLSA collective action).

In contrast to hundreds of virtually identical individual suits, which would burden the court system and risk inconsistent rulings, a collective action serves the interests of judicial economy and consistent adjudication.

### A.   Plaintiffs Satisfy the Requirements of the Two-Step Certification Process for FLSA Collective Actions

Courts in this Circuit use a two-step method to assess whether to certify a collective action. *See Williams v. Movage, Inc.*, No. 17 Civ. 2628, 2018 WL 1940435, at *4 (S.D.N.Y. Apr. 24, 2018) (Failla, J.); *see also Kim Man Fan v. Ping's on Mott, Inc*., No. 13 Civ. 4939 (AT), 2014 WL 1512034, at *1 (S.D.N.Y. Apr. 14, 2014) (*citing Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989)). Furthermore, the threshold for collective certification under 29 U.S.C. § 216(b) is a lower bar than the threshold for class certification, as it is "tailored specifically to vindicating federal labor rights" and confers upon employees a "substantive 'right' to proceed as a collective." *See Scott v. Chipotle Mexican Grill, Inc*., 954 F.3d 502, 519 (2d Cir. 2020) (quoting 29 U.S.C. § 216(b)).

At the first step "courts consider 'whether to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation has occurred.'" *See Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018); *see also Chhab v. Darden Restaurants, Inc*., No. 11 Civ. 8345, 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013). As such, Plaintiffs need only "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."

*Escobar v. Mortino East Village*, No. 14 Civ. 6760, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). Plaintiffs "bear a low burden at the first step" and there is a "relatively lenient evidentiary standard" for Plaintiffs to clear. *See Campos v. Lenmar Restaurant Inc.*, No. 18 Civ. 12359, 2019 WL 6210814, at *3 (S.D.N.Y. Nov. 21, 2019) (*citing McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012). This low burden can be even satisfied by "a single plaintiff's affidavit". *See Escobar*, 2015 WL 4726871, at *2 (*citing Bhumithanarn v. 22 Noodle Market Corp.*, No. 14 Civ. 2625, 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015); *Gonzalez v. Scalinatella, Inc.*, No. 13 Civ. 3629, 2013 WL 6171311, at *3 (S.D.N.Y. Nov. 25, 2013); *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ.7794, 2013 WL 3199292, at *3–4 (S.D.N.Y. June 25, 2013).

"[T]he Second Circuit has emphasized that the standard of proof should remain 'low' because 'the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist.'" *See Chhab*, 13 WL 5308004, at *10. (quoting *Myers*, 624 F.3d at 555); *Schaefer v. M & T Bank Corp.*, 122 F.Supp.3d 189, 193 (S.D.N.Y. 2015) (stating that the "[p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one"). Allegations in the pleadings and declarations are sufficient to meet the modest factual standard required to certify a collective action under the FLSA – an extensive evidentiary record is not required and indeed is often unavailable at the conditional certification stage. *See, e.g., Khalil v. Original Homestead Rest., Inc.*, No. 07-cv-695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Sarikaputar v. Veratip Corp.*, No. 1:17-cv-00814, 2018 U.S. Dist. LEXIS 147244, at *10 (S.D.N.Y. Aug. 29, 2018) ("Documents properly considered on a conditional certification motion include plaintiffs' own pleadings, affidavits, [or] declarations…" (internal citations omitted));

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013). Unlike a class action brought pursuant to Fed. R. Civ. P. 23, no "showing of numerosity, typicality, commonality and representativeness need be made" in order to conditionally certify a collective action under the FLSA. *Bittencourt v. Ferrara Bakery & Café, Inc.*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015), *quoting Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

"The Court should not examine 'whether there has been an actual violation of law,' but rather 'whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" *See Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2015 WL 260436, at *2 (S.D.N.Y. Jan. 20, 2015) (quoting *Young*, 229 F.R.D. 50 (S.D.N.Y. 2005)). Rather, if the court finds that similarly situated potential plaintiffs exist, "the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a 'collective action throughout the discovery process.'" *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *2 (S.D.N.Y. July 16, 2012).

### B. Plaintiffs Meet the Lenient Standard for Conditional Certification and Notice

Here, Plaintiffs have readily met this "modest" standard for certification of their FLSA claims and notice should be immediately issued to members of the collective. Frankly, the Contractor Defendants' only defense to this motion is that Plaintiffs are truly independent contractors and thus not entitled to overtime, and Apple Bank's only defense is that it did not jointly employ Plaintiffs and members of the collective. However, as discussed above, the merits issues are not ripe for decision on a motion for collective action certification. Here, there is no doubt that Plaintiffs are similarly situated to members of the collective. The Complaint and the declarations attached to this motion establish that the Joint Employer Defendants treated all AMLs,

QAs and TLs who worked on the Apple Bank Lookback Review project as independent contractors, (*See* Curry Decl., at ¶¶ 8-10; Mazzitelli Decl., at ¶ 4, Pilgrim Decl. at ¶¶ 2-4), they all performed the same type of work on the same worksite, (*See* Curry Decl., at ¶3; Mazzitelli Decl., at ¶ 11, Pilgrim Decl. at ¶¶ 6), they all entered into MSAs and SOWs with the Contractor Defendants, (*See* Curry Decl., at ¶¶ 8, 10-13, 16, 19-21; Mazzitelli Decl., at ¶¶ 2,27, 33, Pilgrim Decl. at ¶¶ 2-4), they all had to work at least 40 hours, (*See* Curry Decl., at ¶¶ 12, 18, 20, 28-30; Mazzitelli Decl., at ¶¶ 13, 16, 24, 33, Pilgrim Decl. at ¶¶ 8-9, 17-18), and the Joint Employer Defendants failed to pay them overtime premiums for work in excess of 40 hours per week.  *See* Curry Decl., at ¶¶ 38-39; Mazzitelli Decl., at ¶¶ 24-25, 27, 33, Pilgrim Decl. at ¶¶ 16-17,20).

Based on these facts, which are derived from Plaintiffs' own conditions of employment and their observation of their AML, QA and TL co-workers, it cannot be seriously disputed that they are all similarly situated.

### C.    Court Authorized Notice Is Appropriate in This Case

In addition to an order conditionally certifying this collective action, Plaintiffs respectfully request that Court authorized notice be sent by mail, email, and text message to all AMLs, QAs and TLs who work or have worked on the Apple Bank Lookback Review project.

"[B]ecause the three-year statute of limitations for an FLSA claim begins to run as soon as a non-named plaintiff opts-in to the litigation, courts routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery process." *Schaefer*, 122 F.Supp.3d at 193. While the FLSA does not expressly require courts to authorize the sending of notice to potential opt-in plaintiffs, the Second Circuit recently recognized that district courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Myers*, 624 F.3d at 554 (citing *Hoffman-LaRoche*, 493 U.S. at 169). These

methods for distributing notice are routinely approved by this Court and other courts and should be approved here. *See, e.g., Lopez v. JVA Indus., Inc.*, No. 14 Civ. 9988, 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (permitting mailing and posting of notice); *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (allowing notice by email since "communication through email is the norm"); *Gambino v. Harvard Prot. Servs. LLC*, No. 10 CIV 0983 PAC, 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) ("Defendant is directed to produce, in a computer readable format, the names and last known mailing addresses, and alternate addresses, telephone numbers, last known email addresses, and dates of employment.").

Further, text message notice and email notice are appropriate in this case. *See Millin v. Brooklyn Born Chocolate, LLC*, No. 19 Civ. 3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("the objection to…the method of dissemination of the notice, e.g., email and text message, is quite outdated and not in touch with the reality of current life in the United States of America. There is no credible reason why notice should not be provided by email or text message, especially given the board remedial purposes of the FLSA…. [t]he historical reliance of some courts on mailing notices is no longer appropriate given the migratory nature of workers, whether locally or otherwise, and is inconsistent with current methods of communication. Simply put, email, text message and other electronic means of communication is far more prevalent than snail mail, whether fortunately or not") (*citing Velasquez v. Digital Page Inc*., No. 11-CV-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014); *see also Lawrence v. A-1 Cleaning & Septic Systems*, LLC, No. 19 Civ. 3526, 2020 WL 2042423, at * 5 (S.D. Tex. Apr. 28, 2020) ("the purpose of class notice is to ensure that potential plaintiffs "receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to

16

participate… [t]he reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly…text messaging will increase the likelihood that class members will learn about this lawsuit) (internal citations omitted); *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670 (S.D. Tex. 2020)).

Plaintiffs have submitted the text of the proposed Judicial Notice to the Declaration of Julia H. Klein. The proposed notice has been carefully drafted pursuant to standards articulated by this Court. *See e.g., Racey v. Jay-Jay Cabaret*, Inc. No. 15 Civ. 8228, 2016 WL 3020933, at *8-9 (S.D.N.Y. May 5, 2015). Moreover, the proposed notice achieves "the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burden on the defendants." *See Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012).  Additionally, given the ongoing Coronavirus pandemic, alternative forms of notice are necessary in the likely event that putative collective members may not be at their current mailing address or may be unable to safely access a place to mail back consent forms to Plaintiffs' counsel. Accordingly, Plaintiffs respectfully request that these forms of notice be adopted.

Finally, Plaintiffs' request that the Court authorize the mailing of a reminder notice to individuals who do not file an opt-in form mid-way through the opt-in period. By notifying potential plaintiffs that their right to join this lawsuit is limited, the Reminder Letter promotes the FLSA's broad remedial purpose, as well as the goal of court-authorized notice, by promoting efficient case management through notification and joinder of claims. "Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice [to alert potential plaintiffs that the deadline is

coming due] is appropriate." *Flood*, 2015 WL 260436, at \*2-6; *Morri*s, 896 F. Supp. 2d at 274-275.

> **D.    The FLSA Claims in this Collective Action Should Extend Back Three Years Because Defendants Willfully Violated the FLSA**

The statute of limitations under the FLSA is extended from two to three years when, as here, Defendants violated the FLSA willfully, i.e., with guilty knowledge or reckless disregard that the conduct was prohibited. *See* 29 U.S.C. § 255(a). Willfullness may be found on the basis that Defendants were fully aware of the fact that Plaintiffs and other collection action were not being adequately compensated for their work. *He v. Home on 8th Corp*., No. 09-cv-5630, 2014 U.S. Dist. LEXIS 114605, at \*22 (S.D.N.Y. Aug. 13, 2014) ("An employee can demonstrate his employer's reckless disregard of the FLSA's requirements by proving his employer was subjectively aware of a 'substantial danger' that the violation existed.")).

At this conditional certification stage of the litigation, even if the Defendants' willfulness is disputed, "the court applies the three-year statute of limitations for purposes of certifying a representation action." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013), *citing Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002); *see also Cherif v. Sameday Delivery Corp.*, No. 13-cv-1341, 2015 U.S. Dist. LEXIS 133807, at \*12-13 (E.D.N.Y. Sept. 30, 2015) (applying three-year statute of limitations to notice period of FLSA claim when willfulness was in dispute); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (same).

Here, Plaintiffs have alleged that the Joint Employer Defendants required Plaintiffs to work more than 40 hours per week and did not pay them overtime premiums for this work but were all aware of the long hours Plaintiffs and the collective spent working. *See* Curry Decl., at ¶¶ 12, 18, 20, 28-30; Mazzitelli Decl., at ¶¶ 13, 16, 24, 33, Pilgrim Decl. at ¶¶ 8-9, 17-18.  If there is any

dispute as to the willfulness of the Joint Employer Defendants' actions in failing, as a matter of company policy, to pay Plaintiffs and the Collective Action Members in accordance with the FLSA, the Court must apply the three-year statute of limitations to the notice period. *See Hamadou*, 915 F. Supp. 2d at 668.

Moreover, notice at this initial stage also ensures that, if the Court later determines that a willful violation occurred, those putative plaintiffs whose claims arose between two and three years before the opt-in deadline will not find their claims have been time-barred because they were not given an opportunity to opt in as soon as possible.

### E.    The Court Should Order Expedited Production of Names and Contact Information

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiffs require discovery of the names and contact information for those individuals. "As has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere v. Citigroup Inc*., 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (listing cases); *In re Penthouse Executive Club Compensation Litigation*, No. 10 Civ. 1145, 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010) (listing cases). Indeed, "[i]t is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a class of a collective action and enabling class counsel to obtain relevant discovery." *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461, 2011 WL 6292923, at *1 (S.D.N.Y. Dec. 16, 2011)

Accordingly, Plaintiffs respectfully request that the Court direct Defendants to produce a computer-readable list of the names, last known addresses, social security numbers, telephone numbers, e-mail addresses, work locations, and dates of employment for all persons employed by Defendants as AMLs and TLs. *See, e.g., Campos*, 2019 WL 6210814, at *6 (requiring defendants

to produce names, last known addresses, known telephone numbers, known e-mail addresses, and dates of employment); *Schear v. Food Scope America, Inc.*, 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (requiring defendants to produce names, last known addresses, alternative addresses, known telephone numbers, known e-mail addresses, social security numbers (where applicable), dates of employment and job titles); *Kim Man Fan*, 2014 WL 1512034, at *4 (requiring production of names, addresses, telephone numbers, and email addresses).

In an effort to alleviate privacy concerns, Plaintiffs will request social security numbers only for those individuals whose consent forms are returned undeliverable and enter into a confidentiality agreement with Defendants regarding the social security numbers. *See Campos*, 2019 WL 6210814, at *6.

## II.      THE STATUTE OF LIMITATIONS SHOULD BE EQUITABLY TOLLED

Should the Court grant the instant motion, Plaintiffs respectfully request that the FLSA statute of limitations be tolled until such time that Plaintiff is able to send notice to the Collective Action Members. *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (tolling the statute of limitations pending decision on plaintiffs' motion to certify an FLSA collective actions so as "to avoid inequitable circumstances.").

District courts in this circuit and others have increasingly granted requests for equitable tolling to avoid the prejudice to actual or potential opt in plaintiffs that can arise from the unique procedural posture of such cases. *See, e.g., Varghese v. JP Morgan Chase & Co.*, No. 14-cv-1718, 2016 WL 4718413, at *11 (S.D.N.Y. Sept. 9, 2016) (granting Plaintiffs' motion for equitable tolling); *Jackson*, 298 F.R.D. 170-71 (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff

was originally scheduled to file her motion for conditional certification); *Kemper v. Westbury Operating Corp.*, No. 12-cv-895, 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012) ("[P]laintiffs' request to notify individuals who were employed three years from the date plaintiff filed this motion, rather than from the date of the mailing of the notice, is granted."); *McGlone*, 867 F. Supp. 2d 445 (tolling statute of limitations while conditional certification motion was being decided).

Here, Plaintiffs respectfully submit that such equitable tolling is appropriate here for four reasons. First, the Joint Employer Defendants failed to comply with their statutory notice obligations, by posting a notice of rights at the worksite and by failing to provide the Plaintiffs and collective with rate of pay notices pursuant to Section 195 of the New York Labor Law *See* Mazzitelli Decl. at ¶ 35. The Joint Employer Defendants' failure to provide basic notice of workplace rights, therefore contributed to the potential opt-in plaintiffs' ignorance of rights under the FLSA and NYLL and contributed to the delay in this action. Second, the Contractor Defendants have threatened to engage in retaliation against Plaintiffs and any member of the collective who will file an opt-in notice to participate in the lawsuit. Specifically, the Contractor Defendants have already begun threatening to initiate counter claims against Plaintiffs and to seek indemnification from them. *See* Mazzitelli Decl. at ¶ 36-38; Klein Decl., at ¶ 14, Ex. H and I. This unlawful conduct will very likely make members to collective hesitant to exercise their statutory rights to opt-in. This factor too, should lead to an order tolling the statute of limitations. Finally, some of the Plaintiffs may have been aware of the *Bediako* lawsuit which was styled as a collective action. *Bediako v. P & G Auditors & Consultants, LLC*, No. 19-CV-2527, 2020 U.S. Dist. LEXIS 497 (S.D.N.Y. Jan. 2, 2020). At least one Plaintiff here was aware of this action and believed he would be a participant in this action. *See* Mazzitelli Decl. at ¶ 34. However, since the Contractor Defendants and the Plaintiffs in *Bediako* settled on an individual basis, without sending notice of

the collective to members of the collective, precious time lapsed.  The members of the collective should not be prejudiced by that decision to not send notice out to the collective.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) order Defendants to provide the names, last known addresses, social security numbers, telephone numbers, e-mail addresses, and dates of employment of all putative class members; and (3) equitably toll the statute of limitations for potential opt-in plaintiffs.

Dated: December 11, 2020

Respectfully submitted,

By: /s/ Julia Klein
   Julia Klein
   120 East 79th Street, Suite 1A
   New York, New York 10021
   347.292.8170
   jklein@kleinlegalgroup.com
   Attorneys for Plaintiffs