UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

KENNETH CURRY, RICARDO MAZZITELLI
and JACQUELINE BROWN-PILGRIM,

                    Plaintiffs,

           - against -

P&G AUDITORS AND CONSULTANTS,
LLC, GRC SOLUTIONS, LLC, PGX, LLC and
APPLE BANCORP, INC,

                    Defendants

           - and -

GRC SOLUTIONS, LLC and PGX, LLC,

                Crossclaim Plaintiffs,

           - against -

KDC CONSULTING, LLC, KENNETH
CURRY (IN HIS CAPACITY AS MANAGING
MEMBER OF KDC CONSULTING, LLC),
MAZZITELLI CONSULTING, LLC,
MAZZITELLI CONSULTING
INCORPORATED, BROPIL CONSULTING,
LLC, JACQUELINE BROWN-PILGRIM (IN
HER CAPACITY AS MANAGING MEMBER
OF BROPIL CONSULTING, LLC), and
DENNIS PILGRIM (IN HIS CAPACITY AS
MANAGING MEMBER OF BROPIL
CONSULTING, LLC),

                Crossclaim
                Defendants.

------------------------------------------------------------ x

Case No. 20-cv-06985 (LTS)(SLC)

**ANSWER**
**AND CROSSCLAIMS**

       Defendants P&G Auditors and Consultants, LLC ("P&G"), GRC Solutions, LLC

("GRC") and PGX, LLC ("PGX," and referred to collectively with P&G and GRC as

"Contractor Defendants"), by and through their undersigned counsel, hereby submit their answer

to the allegations set forth in the complaint (the "Complaint") filed by the plaintiffs Kenneth

Curry ("Curry"), Ricardo Mazzitelli ("Mazzitelli") and Jacqueline Brown-Pilgrim ("Brown-Pilgrim," referred to collectively with Curry and Mazzitelli as "Plaintiffs").

1.      The allegations in Paragraph 1 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the Fair Labor Standards Act ("FLSA"), deny the remaining allegations in Paragraph 1 of the Complaint, and specifically deny that Plaintiffs are entitled to any of the relief sought therein.

2.      The allegations in Paragraph 2 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the New York Labor Law ("NYLL"), deny the remaining allegations in Paragraph 2 of the Complaint, and specifically deny that Plaintiffs are entitled to any of the relief sought therein.

3.      The allegations in Paragraph 3 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the FLSA, deny the remaining allegations in Paragraph 2 of the Complaint, and specifically deny that Plaintiffs are entitled to any of the relief sought therein.

4.      The allegations in Paragraph 4 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the FLSA and state law, and deny the remaining allegations in Paragraph 4 of the Complaint.

5.      The allegations in Paragraph 5 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

6.      Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 6 of the Complaint, and therefore deny it.

7.      Contractor Defendants deny the allegation in Paragraph 7 of the Complaint.

8.      Contractor Defendants deny the allegations in Paragraph 8 of the Complaint.

9.      The allegations in Paragraph 9 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

10.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 10 of the Complaint, and therefore deny it.

11.     Contractor Defendants deny the allegation in Paragraph 11 of the Complaint.

12.     Contractor Defendants deny the allegations in Paragraph 12 of the Complaint.

13.     The allegations in Paragraph 13 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

14.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 14 of the Complaint, and therefore deny it.

15.     Contractor Defendants deny the allegation in Paragraph 15 of the Complaint.

16.     Contractor Defendants deny the allegations in Paragraph 16 of the Complaint.

17.     The allegations in Paragraph 17 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

18.     P&G admits the allegation in Paragraph 18 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 18 of the Complaint, and therefore deny them.

19.     The allegations in Paragraph 19 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, P&G denies the allegation in Paragraph 19 of the Complaint, and GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 19 of the Complaint, and therefore deny them.

20.     P&G denies the allegation in Paragraph 20 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 20 of the Complaint, and therefore deny them.

21.     P&G denies the allegation in Paragraph 21 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 21 of the Complaint, and therefore deny them.

22.     P&G denies the allegation in Paragraph 22 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 22 of the Complaint, and therefore deny them.

23.     GRC denies the allegation in Paragraph 23 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 23 of the Complaint, and therefore deny them.

24.     The allegations in Paragraph 24 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them, and P&G and PGX lack knowledge or information sufficient to form a belief as to their accuracy, and therefore deny them.

25.     GRC denies the allegation in Paragraph 25 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 25 of the Complaint, and therefore deny them.

26.     GRC denies the allegation in Paragraph 26 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 26 of the Complaint, and therefore deny them.

27.     GRC denies the allegation in Paragraph 27 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 27 of the Complaint, and therefore deny them.

28.     PGX admits the allegation in Paragraph 28 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 28 of the Complaint, and therefore deny them.

29.     The allegations in Paragraph 29 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, PGX denies the allegation in Paragraph 29 of the Complaint, and P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 29 of the Complaint, and therefore deny them.

30.     PGX denies the allegation in Paragraph 30 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 30 of the Complaint, and therefore deny them.

31.     PGX denies the allegation in Paragraph 31 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 31 of the Complaint, and therefore deny them.

32.     PGX denies the allegation in Paragraph 32 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 32 of the Complaint, and therefore deny them.

33.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 33 of the Complaint, and therefore deny them.

34.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 34 of the Complaint, and therefore deny them.

35.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 35 of the Complaint, and therefore deny them.

36.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 36 of the Complaint, and therefore deny them.

37.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 37 of the Complaint, and therefore deny them.

38.     The allegations in Paragraph 38 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

39.     PGX and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 39 of the Complaint, and therefore deny them. P&G admits the allegations in Paragraph 39 of the Complaint.

40.     PGX and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 40 of the Complaint, and therefore deny them. GRC admits the allegations in Paragraph 40 of the Complaint.

41.     P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 41 of the Complaint, and therefore deny them. PGX admits the allegations in Paragraph 41 of the Complaint.

42.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 42 of the Complaint, and therefore deny them.

43.     The allegations in Paragraph 43 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

44.     Contractor Defendants deny the allegations in Paragraph 44 of the Complaint.

45.     Contractor Defendants deny the allegations in Paragraph 45 of the Complaint.

46.     Contractor Defendants deny the allegations in Paragraph 46 of the Complaint.

47.     Contractor Defendants deny the allegations in Paragraph 47 of the Complaint.

48.     Contractor Defendants deny the allegations in Paragraph 48 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 48 of the Complaint that concern Apple Bank.

49.     Contractor Defendants deny the allegations in Paragraph 49 of the Complaint.

50.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 50 of the Complaint, and therefore deny them.

51.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 51 of the Complaint, and therefore deny them.

52.     Contractor Defendants deny the allegations in Paragraph 52 of the Complaint.

53.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 53 of the Complaint, and therefore deny them.

54.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 54 of the Complaint, and therefore deny them.

55.     The allegations in Paragraph 55 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

56.     Contractor Defendants admit that Plaintiffs have purported to commence this action as a collective action under the FLSA, and deny all remaining allegations in Paragraph 56, and specifically deny that treatment of this matter as a collective under the FLSA is appropriate.

57.     The allegations in Paragraph 57 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

58.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 58 of the Complaint, and therefore deny them, and specifically deny that any of the Contractor Defendants were under a duty to pay overtime premiums to any of the Plaintiffs.

59.     Contractor Defendants deny the allegations in Paragraph 59 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 59 of the Complaint that concern Apple Bank.

60.     Contractor Defendants deny the allegations in Paragraph 60 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 60 of the Complaint that concern Apple Bank.

61.     Contractor Defendants deny the allegations in Paragraph 61 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 61 of the Complaint that concern Apple Bank.

62.     Contractor Defendants admit that Plaintiffs have purported to commence this action as a class action under the NYLL and Rule 23 of the Federal Rules of Civil Procedure, and deny all remaining allegations in Paragraph 62, and specifically deny that treatment of this matter as a class under Rule 23 is appropriate.

63.     The allegations in Paragraph 63 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

64.     Contractor Defendants deny the allegations in Paragraph 64.

65.     The allegations in Paragraph 65 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

66.     The allegations in Paragraph 66 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

67.     Contractor Defendants deny the allegations in Paragraph 67.

68.     Contractor Defendants deny the allegations in Paragraph 68.

69.     The allegations in Paragraph 69 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

70.     The allegations in Paragraph 70 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

71.     The allegations in Paragraph 71 and each of its subparts set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

72.     GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 72.  P&G denies the allegations in Paragraph 72 of the Complaint.

73.     P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 73.  GRC denies the allegations in Paragraph 73, except admits that it has, from time to time, provided audit and risk management services to community banks.

74.     P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 74.  PGX denies the allegations in Paragraph 74.

75.     Contractor Defendants admit that Apple Bank has described itself as a state-chartered bank, operating in the New York metropolitan area, headquartered as a matter of record in Manhasset, New York.

76.     Contractor Defendants deny the allegations in Paragraph 76 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 76 of the Complaint that concern Apple Bank.

77.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 77 of the Complaint, and therefore deny them.

78.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 78 of the Complaint, and therefore deny them.

79.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 79 of the Complaint, and therefore deny them.

80.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 80 of the Complaint, and therefore deny them.

81.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 81 of the Complaint, and therefore deny them.

82.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 82 of the Complaint, and therefore deny them.

83.     Contractor Defendants deny the allegations in Paragraph 83 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 83 of the Complaint that concern the rate at which Plaintiffs were compensated by their employers.

84.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 84, and therefore deny them.

85.     Contractor Defendants deny the allegations in Paragraph 85 of the Complaint, and specifically deny that any of the Contractor Defendants were under a duty to pay overtime

compensation to any of the Plaintiffs, and lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 85 of the Complaint that concern Apple Bank.

86.     Contractor Defendants deny the allegations in Paragraph 86 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 86 of the Complaint that concern Apple Bank.

87.     The allegations in Paragraph 87 and each of its subparts set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

88.     Contractor Defendants deny the allegations in Paragraph 88 of the Complaint, and specifically deny that any of them "harmed" any of the Plaintiffs, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 88 of the Complaint that concern Apple Bank.

89.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 89 of the Complaint, except GRC and P&G deny that Deepa Keswani Tekchandani was a project manager for either of them.   Further answering, GRC states that it contracted with Tyche Compliance Consulting, LLC for certain project management services.

90.     P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 90.   GRC denies the allegations in Paragraph 90 of the Complaint, but admits that KDC Consulting LLC submitted certain information about its employee Curry in connection with its bid for work on the Apple Bank project.

91.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 91.  P&G and GRC deny the allegations in Paragraph 91 of the Complaint.

92.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 92.  P&G and GRC deny the allegations in Paragraph 92 of the Complaint, except GRC admits the existence of that certain Master Subcontractor Agreement between KDC Consulting, LLC and GRC (the "KDG-GRC MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.

93.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 93.  P&G denies the allegations in Paragraph 93 of the Complaint.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 93 of the Complaint are inconsistent with the terms of that document, GRC denies them.

94.     P&G and PGX deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 94.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.   To the extent that any of the allegations in Paragraph 94 of the Complaint are inconsistent with the terms of that document, GRC denies them.

95.     P&G and PGX deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 95.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its

contents.   To the extent that any of the allegations in Paragraph 95 of the Complaint are inconsistent with the terms of that document, GRC denies them.

96.     P&G and PGX deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 96.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.   To the extent that any of the allegations in Paragraph 96 of the Complaint are inconsistent with the terms of that document, GRC denies them.

97.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 97.  P&G denies the allegations in Paragraph 97 of the Complaint.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 97 of the Complaint are inconsistent with the terms of that document, GRC denies them.

98.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 98.  P&G denies the allegations in Paragraph 98 of the Complaint.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 98 of the Complaint are inconsistent with the terms of that document, GRC denies them.

99.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 99.  P&G and GRC deny the allegations in Paragraph 99 of the Complaint, and specifically deny that they employed Curry or required him to perform

services, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 99 of the Complaint that concern Apple Bank.

100.    PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 100.  P&G and GRC deny the allegations in Paragraph 100 of the Complaint, except GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 100 of the Complaint are inconsistent with the terms of that document, GRC denies them.

101.    PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 101.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 101 of the Complaint are inconsistent with the terms of that document, GRC denies them.

102.    PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 102.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 102 of the Complaint are inconsistent with the terms of that document, GRC denies them.

103.    PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 103.  P&G and GRC deny the allegations in Paragraph 103 of the Complaint, and specifically deny that they employed Curry or required him to perform services, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 103 of the Complaint that concern Apple Bank.

104.    Contractor Defendants deny the allegations in Paragraph 104, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 104 of the Complaint that concern Apple Bank.  PGX admits the existence of that certain Master Service Agreement and Statement of Work between KDC Consulting, LLC and PGX (the "KDC-PGX MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 104 of the Complaint are inconsistent with the terms of that document, PGX denies them.

105.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 105.  PGX admits the existence of the KDC-PGX MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 105 of the Complaint are inconsistent with the terms of that document, PGX denies them.  Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 105 of the Complaint that concern Apple Bank.

106.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 106.  PGX admits the existence of the KDC-PGX MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 106 of the Complaint are inconsistent with the terms of that document, PGX denies them.

107.    P&G and GRC deny that either of them employed Curry or "require[d] CURRY to work no fewer than 65 hours for each week that he worked for them," and deny knowledge or information sufficient to form a belief as to the accuracy of the remaining allegations in Paragraph 107.  PGX denies the allegations in Paragraph 107, except denies knowledge or

information sufficient to form a belief as to the accuracy of the allegations in Paragraph 107 concerning P&G and GRC.

108.     P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 108.   PGX denies the allegations in paragraph 108. Further answering, PGX states that KDC Consulting, LLC ceased providing services pursuant to the KDC-PGX MSA on or around August 26, 2018.

109.     P&G denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 109.   GRC and PGX deny the allegations in Paragraph 109 of the Complaint, and, further answering, note upon information and belief that Apple Bank's "Acceptable Use Policy" is "applicable to users who require access to the Bank's information technology resources, [and] is required to be signed by, among others, all personnel affiliated with third parties."

110.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 110 of the Complaint, except GRC denies that Deepa Keswani Tekchandani was a project manager for GRC.   Further answering, GRC states that it contracted with Tyche Compliance Consulting, LLC for certain project management services.

111.     PGX and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 111 of the Complaint.   GRC denies the allegations in Paragraph 111 of the Complaint, but admits that Mazzitelli Consulting LLC submitted certain information about its employee Mazzitelli in connection with its bid for work on the Apple Bank project.

112.     PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 112.  GRC admits upon information and belief the existence of that certain Master Service Agreement and Statement of Work between Mazzitelli Consulting, LLC and GRC (the "MCL-GRC MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.

113.     PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 113.  GRC denies the allegations in Paragraph 113. Further answering, GRC states that the MCL-GRC MSA called for the payment of certain consulting fees, and respectfully refers the Court to that document for a full and accurate recitation of its contents.

114.     PGX lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 114.  P&G and GRC deny the allegations in Paragraph 114, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 114 of the Complaint that concern Apple Bank.

115.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 115 of the Complaint.

116.     PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 116.  GRC denies the allegations in Paragraph 116. Further answering, GRC states that Mazzitelli Consulting, LLC ceased providing services pursuant to the MCL-GRC MSA in or around February 2018.

117.     P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 117.  GRC denies the allegations in Paragraph 117 of the Complaint, and, further answering, notes upon information and belief that Apple Bank's

"Acceptable Use Policy" is "applicable to users who require access to the Bank's information technology resources, [and] is required to be signed by, among others, all personnel affiliated with third parties."

118.    PGX and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 118 of the Complaint.  GRC denies the allegations in Paragraph 118 of the Complaint, and specifically denies that it employed Mazzitelli or "required" him to work on the Apple Bank project.

119.    Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 119 of the Complaint, including those which concern the rate at which Mazzitelli was compensated by his employer Mazzitelli Consulting, LLC.

120.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 120.  PGX denies the allegations in Paragraph 120 of the Complaint, but admits that Bropil Consulting, LLC submitted certain information about its employee Pilgrim in connection with its bid for work on the Apple Bank project.

121.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 121.  PGX admits the existence of that certain Master Service Agreement and Statement of Work between Bropil Consulting, LLC and PGX (the "Bropil-PGX MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 121 of the Complaint are inconsistent with the terms of that document, PGX denies them.

122.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 122.  PGX admits the existence of the Bropil-PGX

MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 122 of the Complaint are inconsistent with the terms of that document, PGX denies them.

123.   P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 123.  PGX denies the allegations in Paragraph 123. Further answering, PGX states that the Bropil-PGX MSA called for the payment of certain consulting fees, and respectfully refers the Court to that document for a full and accurate recitation of its contents.

124.   P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 124.  PGX admits the existence of the electronic mail correspondence between Mary Hernandez and Bropil Consulting, LLC, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 124 of the Complaint are inconsistent with the terms of that document, PGX denies them.

125.   GRC and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 125 of the Complaint.  PGX denies the allegations in Paragraph 125 of the Complaint, and specifically denies that it employed Pilgrim or "required" her to work a certain number of hours per week.

126.   Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 126 of the Complaint, including those which concern the rate at which Pilgrim was compensated by her employer Bropil Consulting, LLC.

127.   GRC and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 127.  PGX denies the allegations in Paragraph 127.

Further answering, PGX states that Bropil Consulting, LLC ceased providing services pursuant to the Bropil-PGX MSA in or around May 2018.

128.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 128.  PGX denies the allegations in Paragraph 128 of the Complaint, and, further answering, notes upon information and belief that Apple Bank's "Acceptable Use Policy" is "applicable to users who require access to the Bank's information technology resources, [and] is required to be signed by, among others, all personnel affiliated with third parties."

129.    P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 129.  PGX and GRC deny the allegations in Paragraph 129 of the Complaint.  Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 129 of the Complaint that concern Apple Bank.

130.    The allegations in Paragraph 130 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

131.    The allegations in Paragraph 131 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

132.    The allegations in Paragraph 132 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

133.    Contractor Defendants incorporate by reference Paragraphs 1 to 132 as if set forth fully herein.

134.    The allegations in Paragraph 134 of the Complaint set forth legal argument, to which no response is necessary.    To the extent that a response is called for, Contractor Defendants deny them, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations which concern the rate at which Plaintiffs and putative members of the purported FLSA Collective were compensated by their respective employers.

135.    The allegations in Paragraph 135 of the Complaint set forth legal argument, to which no response is necessary.    To the extent that a response is called for, Contractor Defendants deny them.

136.    The allegations in Paragraph 136 of the Complaint set forth legal argument, to which no response is necessary.    To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they owed any duty to Plaintiffs under the FLSA.

137.    The allegations in Paragraph 137 of the Complaint set forth legal argument, to which no response is necessary.    To the extent that a response is called for, Contractor Defendants deny them.

138.    The allegations in Paragraph 138 of the Complaint set forth legal argument, to which no response is necessary.    To the extent that a response is called for, Contractor Defendants deny them.

139.    The allegations in Paragraph 139 of the Complaint set forth legal argument, to which no response is necessary.    To the extent that a response is called for, Contractor Defendants deny them.

140.    Contractor Defendants incorporate by reference Paragraphs 1 to 139 as if set forth fully herein.

141.    The allegations in Paragraph 141 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

142.    The allegations in Paragraph 142 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they owed any duty to Plaintiffs or any other member of the purported class under the NYLL.

143.    The allegations in Paragraph 143 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they owed any duty to Plaintiffs or any other member of the purported Class under the NYLL.

144.    The allegations in Paragraph 144 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that Plaintiffs or any other member of the purported Class are entitled to any of the relief sought.

145.    Contractor Defendants incorporate by reference Paragraphs 1 to 144 as if set forth fully herein.

146.    The allegations in Paragraph 146 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they were under any duty to provide "accurate statements of wages" to Plaintiffs or any other member of the purported Class.

147.     The allegations in Paragraph 147 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

148.     The allegations in Paragraph 148 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

149.     The allegations in Paragraph 149 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

150.     Contractor Defendants incorporate by reference Paragraphs 1 to 149 as if set forth fully herein.

151.     The allegations in Paragraph 151 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

152.     The allegations in Paragraph 152 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

Contractor Defendants deny that any of the Plaintiffs, either individually or on behalf of anyone else they purport to represent, are entitled to any of the relief sought in their Prayer for Relief.

## AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLAIMS

Contractor Defendants, either individually or collectively, reserve the right to amend this Answer and to assert additional defenses and/or supplement, alter, or change their Answer and Affirmative Defenses upon completion of appropriate investigation and discovery.   The

statement of any defense hereafter does not assume the burden of proof for any issue as to which applicable law places the burden on Plaintiff.

1.      Plaintiffs have failed to serve any of the Contractor Defendants in accordance with the Federal Rules of Civil Procedure and/or the New York Civil Practice Law and Rules.

2.      The Complaint and each claim fails to state a claim upon which relief can be granted.

3.      Plaintiffs and any and all putative collective and class action members were not "employees" of any of the Contractor Defendants within the meaning of the FLSA or NYLL.

4.      Any damages suffered by Plaintiffs and any and all putative collective and class action members were proximately caused in whole or in part by the wrongful conduct of nonparties (including but not limited to KDC Consulting LLC, Mazzitelli Consulting LLC, Mazzitelli Consulting Corporation and/or Bropil Consulting LLC), and therefore any recovery must be barred or apportioned according to the respective fault of those nonparties whose actions contributed to those alleged damages.

5.      Plaintiffs' claims and the claims of any and all collective and/or class action members are barred, based on the doctrine of unclean hands.

6.      Plaintiffs' claims and the claims of any and all collective and class action members are barred, in whole or in part, because they are estopped by their own conduct (including but not limited to representations they made to state and federal tax authorities) to claims and right to damages or other monetary relief from Contractor Defendants.

7.      Plaintiffs' claims and the claims of the putative collective and class action members for liquidated damages are barred because GRC and PGX acted in good faith,

nonwillfully, and with reasonable grounds for believing that the agreements with business entities operated by Plaintiffs were not subject to the FLSA and NYLL.

8.  Plaintiffs' claims and the claims of any and all collective and/or class action members are barred by their ratification of and/or consent to the actions allegedly undertaken.

9.  Plaintiffs' claims and the claims of any and all putative collective action and class members are barred in whole or in part by the applicable statute of limitations.

10.  Plaintiffs cannot satisfy the requirements for a class action under Fed. R. Civ. P. 23 or a collective action under 29 U.S.C. § 216, because, among other reasons, Plaintiffs are inappropriate representatives, Plaintiffs' counsel is not qualified, experienced or able to represent a class of plaintiffs, and common issues of law and fact do not predominate over individual issues.

11.  Even if Plaintiffs or the collective action members are entitled to any unpaid wages, Contractor Defendants did not willfully violate the FLSA, and therefore Plaintiffs are not entitled to a three-year statute of limitations.

12.  Plaintiffs and any and all collective and/or class action members are not entitled to any relief under the FLSA, because, to the extent that they performed work and were not compensated, they worked without Contractor Defendants' knowledge or mutual assent.

13.  Contractor Defendants' actions, as complained of in the Complaint, were taken in good faith, and in conformity with and in reliance on written interpretations of the Fair Labor Standards Act promulgated by the Secretary of Labor, and Contractor Defendants therefore have a complete defense to Plaintiffs' claims, pursuant to § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259.

14.     Plaintiffs' claims and the claims of any and all putative collective and class action members are barred because such claims have been waived, discharged, or abandoned.

15.     Contractor Defendants are entitled to a credit for or setoff against amounts paid to Plaintiffs and the putative collective and/or class action members.

16.     Plaintiffs' claims and the claims of any and all collective and/or class action members are barred, in whole or in part, because some of the activities for which they demand compensation are *de minimis* under the FLSA and NYLL.

17.     Plaintiffs and the putative collective and class action members are not entitled to equitable relief insofar as they have an adequate remedy at law.

18.     The hours Plaintiffs and the collective and/or class action members claim to have worked are not "hours worked" within the meaning applicable under the FLSA and NYLL.

19.     Plaintiffs' claims and the claims of any and all collective and/or class action members for equitable relief are barred by the doctrine of laches.

20.     Contractor Defendants were under no duty to provide Wage Theft Prevention Act notices or wage statements to Plaintiffs or any member of the putative class or collective.

21.     Contractor Defendants assert that they presently have insufficient knowledge or information upon which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available. Contractor Defendants reserve the right to assert additional defenses in the event that discovery reveals that such defenses would be appropriate.

**WHEREFORE**, Contractor Defendants request that all counts asserted against them be dismissed with prejudice, and that they be awarded such other relief as the Court deems fair and just.

## GRC'S ANSWER TO APPLE BANK'S CROSSCLAIM

GRC, by and through its undersigned counsel, hereby submits its answer to the allegations set forth in the crossclaim (the "Apple Bank Crossclaim") filed by the defendant Apple Bancorp, Inc. ("Apple").

1.      The allegations in Paragraph 1 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

2.      The allegations in Paragraph 2 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

3.      GRC lacks knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 3 of the Apple Bank Crossclaim, and therefore denies it.

4.      GRC admits the allegation in Paragraph 4 of the Apple Bank Crossclaim.

5.      GRC admits the allegation in Paragraph 5 of the Apple Bank Crossclaim.

6.      GRC admits the existence of the MSA referenced in Paragraph 6 of the Apple Bank Crossclaim (the "AB-GRC MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.

7.      GRC admits the existence of the AB-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 7 of the Apple Bank Crossclaim are inconsistent with the terms of that document, GRC denies them.

8.      GRC incorporates by reference Paragraphs 1 to 7 as if set forth fully herein.

9.      The allegations in Paragraph 9 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

10.     The allegations in Paragraph 10 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

11.     GRC denies the allegations in Paragraph 11 of the Apple Bank Crossclaim.

12.     GRC admits the existence of the AB-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 12 of the Apple Bank Crossclaim are inconsistent with the terms of that document, GRC denies them.

GRC denies that any Apple Bank is entitled to the relief sought against it in the Prayer for Relief.

**AFFIRMATIVE DEFENSES TO APPLE BANK'S CROSSCLAIMS**

GRC reserves the right to amend this Answer to Apple Bank's Crossclaim and to assert additional defenses and/or supplement, alter, or change its Answer and Affirmative Defenses upon completion of appropriate investigation and discovery.  The statement of any defense hereafter does not assume the burden of proof for any issue as to which applicable law places the burden on Apple Bank.

1.      The Crossclaim fails to state a claim upon which relief can be granted.

2.      Apple Bancorp. has failed to fulfill its obligations under the agreement.

3.      GRC's performance of the alleged obligations is excused by the failure of conditions precedent.

4.      The Crossclaim of Apple Bancorp. is barred by its ratification of and/or consent to the actions allegedly undertaken.

5.      GRC's performance of the alleged obligations is excused by the doctrine of impossibility.

6.      GRC's performance of the alleged obligations is excused by the doctrine of frustration of purpose.

7.      GRC asserts that it presently has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. GRC reserves the right to assert additional defenses in the event that discovery reveals that such defenses would be appropriate.

**WHEREFORE**, GRC requests that the crossclaim asserted against it by Apple Bank be dismissed with prejudice, and that it be awarded such other relief as the Court deems fair and just.

<u>**CROSSCLAIMS**</u>

<u>**Parties**</u>

GRC and PGX, by and through their undersigned counsel, hereby assert crossclaims against crossclaim defendants KDC Consulting, LLC ("KDC") and Curry in his capacity as its managing member, Mazzitelli Consulting, LLC ("MC LLC"), Mazzitelli Consulting Incorporated ("MC Inc.") and Bropil Consulting, LLC ("Bropil").

1.      GRC is a New Jersey Limited Liability Company with a principal place of business in East Brunswick, New Jersey.

2.      PGX is a New Jersey Limited Liability Company with a principal place of business in East Brunswick, New Jersey.

3.      KDC was a Georgia Limited Liability Company with a principal place of business at 120 Crown Chase Drive, Stockbridge, Georgia.

4.      According to the Georgia Secretary of State's Corporations Division, Curry formed KDC on or around July 26, 2016.

5.      MC LLC is a New York Limited Liability Company with a principal place of business at 2500 Johnson Avenue, Bronx, New York.

6.      According to the New York Secretary of State's Division of Corporations, Mazzitelli registered MC LLC as a domestic Limited Liability Company on June 13, 2011.

7.      MC Inc. is a Florida business corporation with a principal place of business at 373 NE 101st Street, Miami Shores, Florida.

8.      Melissa Mazzitelli filed MC Inc.'s articles of incorporation with the Florida Department of State's Division of Corporations on March 3, 2017.

9.      Bropil is a Florida Limited Liability Company with a principal place of business at 12840 NW 18th Court, Pembroke Pines, Florida.

10.     According to the Florida Department of State's Division of Corporations, Brown-Pilgrim registered Bropil as a domestic Limited Liability Company on August 14, 2013.

### Jurisdiction and Venue

11.     The Court has supplemental jurisdiction over these crossclaims under 28 U.S.C. § 1367(a) because the claims asserted herein are so related to the claims asserted in the Complaint that they form a part of the same case and controversy under Article III of the United States Constitution.

12.     Venue is proper in this Court and in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) to the extent venue is deemed proper in the Complaint.

**<u>Facts</u>**

*As to KDC*

**The KDC-GRC MSA**

13.     In October 2017, KDC sought to be engaged by GRC to provide services on an independent contractor basis.

14.     In connection with GRC's due diligence as to KDC's business operations, GRC conducted a background check into KDC and Curry, the personnel that KDC had proposed to perform services pursuant to the KDC-GRC MSA.

15.     In connection with that process, KDC represented to GRC that it, and its personnel, had provided "consulting and investigative expertise and services to financial institutions under regulatory review for compliance and/or policy deficiencies."

16.     KDC also represented to GRC that its personnel had "40+ years of combined municipal law enforcement, corporate security and Bank Secrecy Act/Anti-Money Laundering (BSA/AML) investigation experience."

17.     KDC also represented to GRC that its personnel had provided services to no fewer than fourteen financial institutions in connection with "BSA/ AML/ OFAC engagements" over an eleven-year period.

18.     In reliance upon these representations, GRC entered into the KDC-GRC MSA with KDC on or around October 7, 2017.

19.     In the KDC-GRC MSA, GRC and KDC agreed that KDC would be engaged by GRC to perform consulting services on an "as needed" basis as an independent contractor.

20.     In the KDC-GRC MSA, GRC and KDC further agreed that employees of KDC would not be entitled to any benefits accorded to GRC's employees.

21.     In the KDC-GRC MSA, KDC assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations.

22.     KDC agreed to "indemnify and hold GRC harmless from any claims, losses, costs, fees, liabilities, damages or injuries suffered by GRC arising out of KDC's failure or negligence with respect to KDC's obligations" under the KDC-GRC MSA.

23.     In the KDC-GRC MSA, GRC and KDC agreed that all fees paid to KDC would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

24.     Between October 2017 and February 2018, KDC provided services in connection with the KDC-GRC MSA and retained the revenue generated through the operation of its business.

25.     As a result of its tax status as an independent contractor, KDC has benefited from the avoidance of certain tax obligations that must be assumed by employees.

26.     Upon information and belief, KDC has represented to state and federal tax authorities that the income generated in connection with the KDC-GRC MSA was not subject to employment-related taxes and withholdings.

27.     Notwithstanding the substantial revenue retained as a result of KDC's status as an independent contractor, according to the allegations in the Complaint, KDC has failed to compensate Curry in accordance with its contractual and legal obligations, as evidenced by Curry's demands for additional payments in the form of alleged overtime compensation.

**GRC's Demand For Indemnification**

28.     Through a public court filing in this action, on November 16, 2020, GRC provided notice that it intended to seek relief from KDC pursuant to the KDC-GRC MSA in connection with Curry's claims.

29.     During a telephonic status conference with the Court on November 20, 2020, GRC, through counsel, articulated an intent to name KDC as a crossclaim defendant in this action.

30.     By correspondence dated November 30, 2020, GRC provided notice of this action to KDC and demanded that KDC, among other things, indemnify and hold harmless GRC in accordance with the terms of the KDC-GRC MSA.

**The KDC-PGX MSA**

31.     In April 2018, KDC sought to be engaged by PGX to provide services on an independent contractor basis.

32.     In connection with that process, KDC identified Curry as its sole employee.

33.     KDC also represented to PGX that its services included, among other things, the provision of "investigative expertise to financial institutions under regulatory review for compliance and/or policy deficiencies pertaining to Alert Clearance, Transaction Monitoring, Suspicious Activity, Quality Control (QC), Know Your Customer (KYC), Customer Due Diligence (CDD), Enhanced Due Diligence (EDD) and Office of Foreign Asset Control (OFAC) Sanctions."

34.     KDC also represented to PGX that its personnel had "40+ years of combined municipal law enforcement, corporate security and Bank Secrecy Act/Anti-Money Laundering (BSA/AML) investigation experience."

35.     In reliance upon these representations, PGX entered into the KDC-PGX MSA with KDC on or around April 26, 2018.

36.     Upon information and belief, in the KDC-PGX MSA, PGX and KDC agreed that KDC would be engaged by PGX to perform consulting services on an "as needed" basis as an independent contractor.

37.     Upon information and belief, in the KDC-PGX MSA, PGX and KDC further agreed that employees of KDC would not be entitled to any benefits accorded to PGX's employees.

38.     Upon information and belief, in the KDC-PGX MSA, KDC assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations.

39.     In the KDC-PGX MSA, PGX and KDC agreed that all fees paid to KDC would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

40.     Between April 2018 and August 2018, KDC provided services in connection with the KDC-PGX MSA and retained the revenue generated through the operation of its business.

41.     As a result of its tax status as an independent contractor, KDC has benefited from the avoidance of certain tax obligations that must be assumed by employees.

42.     Upon information and belief, KDC has represented to state and federal tax authorities that the income generated in connection with the KDC-PGX MSA was not subject to employment-related taxes and withholdings.

43.     Notwithstanding the substantial revenue retained as a result of KDC's status as an independent contractor, according to the allegations in the Complaint, KDC has failed to

compensate Curry in accordance with its contractual and legal obligations, as evidenced by Curry's demands for additional payments in the form of alleged overtime compensation.

**PGX's Demand For KDC to Make Curry Whole**

44.    Through a public court filing in this action, on November 16, 2020, PGX provided notice that it intended to seek relief from KDC pursuant to the KDC-PGX MSA in connection with Curry's claims.

45.    During a telephonic status conference with the Court on November 20, 2020, PGX, through counsel, articulated an intent to name KDC as a crossclaim defendant in this action.

46.    By correspondence dated November 30, 2020, PGX provided notice of this action to KDC and demanded that KDC, among other things, meet its obligations under applicable law and make Curry whole in accordance with the terms of the KDC-PGX MSA.

**KDC'S Dissolution**

47.    According to the Georgia Secretary of State's Corporations Division, KDC's business status has been regularly updated on an annual basis since the time of its formation, most recently on February 12, 2020.

48.    According to the Georgia Secretary of State's Corporations Division, KDC's business status was terminated on or around December 1, 2020.

49.    As of the date of this filing, Curry has continued to hold himself out to the business community as a "Financial Crime Consultant" affiliated with KDC.

***As to MC LLC and MC Inc.***

50.    In June 2017, MC LLC sought to be engaged by GRC to provide services on an independent contractor basis.

51.     In connection with GRC's due diligence as to MC LLC's business operations, GRC conducted a background check into MC LLC and Mazzitelli, the personnel that MC LLC had proposed to perform services pursuant to the MCL-GRC MSA.

52.     In connection with that process, MC LLC represented to GRC that its personnel had provided consulting services on an independent contractor basis in connection with at least a dozen lookback projects over the preceding decade.

53.     MC LLC also represented to GRC that its personnel had expertise in, among other things, the provision of services "in correspondent, retail and international banking" with a specialization in "anti-money laundering (AML), KYC, fraud investigation and Audit."  MC LLC personnel also professed "[k]nowledge of the US Patriot Act, Bank Secrecy Act, KYC requirements and Suspicious Activity Reporting (SARs)," as well as "[k]nowledge of Office of Foreign Assets Control regulations (OFAC) and 'Know Your Customer' Compliance Banking Training (KYC)."

54.     In reliance upon these representations, GRC entered into the MCL-GRC MSA with KDC on or around June 13, 2017.

55.     Upon information and belief, in the MCL-GRC MSA, GRC and MC LLC agreed that MC LLC would be engaged by GRC to perform consulting services on an "as needed" basis as an independent contractor.

56.     Upon information and belief, in the MCL-GRC MSA, GRC and MC LLC further agreed that employees of MC LLC would not be entitled to any benefits accorded to GRC's employees.

57.     Upon information and belief, in the MCL-GRC MSA, MC LLC assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations.

58.     In the MCL-GRC MSA, GRC and MC LLC agreed that all fees paid in connection with the MCL-GRC MSA would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

59.     Notwithstanding the fact that the MCL-GRC MSA was between GRC on the one hand and MC LLC on the other, Mazzitelli directed the payment of all fees in connection with that agreement to be tendered to MC Inc.

60.     Upon information and belief, MC Inc. is an alter ego of MC LLC.

61.     Between July 2017 and February 2018, MC LLC provided services in connection with the MCL-GRC MSA and MC Inc. retained the revenue generated through the operation of that business.

62.     As a result of MC LLC's tax status as an independent contractor, MC LLC and/or MC Inc. have benefited from the avoidance of certain tax obligations that must be assumed by employees.

63.     Upon information and belief, MC LLC and/or MC Inc. have represented to state and federal tax authorities that the income generated in connection with the MCL-GRC MSA was not subject to employment-related taxes and withholdings.

64.     Notwithstanding the substantial revenue retained as a result of MC LLC's status as an independent contractor, according to the allegations in the Complaint, MC LLC has failed to compensate Mazzitelli in accordance with its contractual and legal obligations, as evidenced by Mazzitelli's demands for additional payments in the form of alleged overtime compensation.

65.     By correspondence dated November 30, 2020, GRC provided notice of this action to MC LLC and MC Inc., and demanded that they, among other things, meet MC LLC's obligations under applicable law and make Mazzitelli whole in accordance with the terms of the MCL-GRC MSA.

66.     GRC has received no response from either MC LLC or MC Inc.

*As to Bropil*

**The Bropil-PGX MSA**

67.     In April 2018, Bropil sought to be engaged by PGX to provide services on an independent contractor basis.

68.     In connection with PGX's due diligence as to Bropil's business operations, PGX conducted a background check into Bropil and Brown-Pilgrim, the personnel that Bropil had proposed to perform services pursuant to the Bropil-PGX MSA.

69.     In connection with that process, Bropil represented that it "provides investigative expertise to major financial institutions under Regulatory review for deficiencies in Policies and Compliance procedures pertaining to Banking/Finance Operations, Correspondent Banking, Retail Banking, OFAC, Bank Secrecy Act (BSA), and Bank Bribery Act."

70.     In connection with that process, Bropil represented to PGX that its personnel had provided Anti-Money Laundering consulting services in connection with at least ten lookback projects over the preceding seven years.

71.     Bropil also represented to PGX that its business was "comprised of three (3) employees, with a combined 45 years of Corporate Managerial, Administrative experience in the areas of Bank Secrecy Act (BSA) /Anti-Money Laundering (AML) investigations [and] Client On-Boarding and Documentation."

72.     Bropil further represented to PGX that it had the experience and expertise to "perform transactional reviews on designated accounts/transactions, conduct KYC reviews, and Customer Due Diligence."  Bropil further stated that it had the expertise and resources to provide "review of OFAC regulations and sanctions as it relates to the entities and individuals under the lookback review."

73.     Bropil also represented to PGX that its personnel had the skills and expertise to prepare "investigative reports … with some being escalated for further review, while performing additional duties as required by the client and filing accurate and timely documentary reports."

74.     Bropil further represented to PGX that it was "a corporation duly organized and existing under the laws of [Florida], and that it is a bona fide corporate business entity established for a valid business purpose[.]"

75.     In reliance upon these representations, PGX entered into the Bropil-PGX MSA with Bropil on or around April 26, 2018.

76.     In the Bropil-PGX MSA, PGX and Bropil agreed that Brown-Pilgrim "shall at all times be [an] employee… of [Bropil], and not of PGX" (emphasis in original).

77.     PGX and Bropil also expressly agreed that Brown-Pilgrim was not "eligible for, nor [would she be] entitled to receive, compensation of any kind or nature from PGX," and that Bropil was "solely responsible for the payment of [Brown-Pilgrim] for the work [she] perform[ed] pursuant to" the agreement between PGX and Bropil.

78.     Bropil further agreed that it would be solely responsible for "computation and payment of [Brown-Pilgrim's] wages in accordance with state and federal laws," as well as all other related duties and obligations that an employer owes to an employee under applicable law.

79.    Bropil further agreed to indemnify PGX against "any claim, demand, action, suit, cause of action, proceeding, special proceeding, judgments, settlements, costs or expenses (including reasonable attorneys' fees and costs)" in connection with Bropil's failure to meet its contractual obligations to PGX.

80.    In the Bropil-PGX MSA, PGX and Bropil agreed that all fees paid in connection with the Bropil-PGX MSA would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

81.    Bropil subsequently provided services in connection with the Bropil-PGX MSA and retained the revenue generated through the operation of that business.

82.    As a result of Bropil's tax status as an independent contractor, it has benefited from the avoidance of certain tax obligations that must be assumed by employees.

83.    Upon information and belief, Bropil has represented to state and federal tax authorities that the income generated in connection with the Bropil-PGX MSA was not subject to employment-related taxes and withholdings.

84.    Notwithstanding the substantial revenue retained as a result of Bropil's status as an independent contractor, according to the allegations in the Complaint, Bropil has failed to compensate Brown-Pilgrim in accordance with its contractual and legal obligations, as evidenced by Brown-Pilgrim's demands for additional payments in the form of alleged overtime compensation.

**PGX's Notice of This Action**

85.    Through a public court filing in this action, on November 16, 2020, PGX provided notice that it intended to seek relief from Bropil pursuant to the PGX-Bropil MSA in connection with Brown-Pilgrim's claims.

86.     During a telephonic status conference with the Court on November 20, 2020, PGX, through counsel, articulated an intent to name Bropil as a crossclaim defendant in this action.

87.     By correspondence dated November 30, 2020, PGX provided notice of this action to Bropil, and demanded that it, among other things, indemnify and hold harmless PGX in accordance with the terms of the Bropil-PGX MSA.

88.     PGX has received no response from Bropil.

**Bropil's Dissolution**

89.     According to the Florida Secretary of State's Division of Corporations, Bropil's business status has been regularly updated on an annual basis since the time of its formation, most recently on June 26, 2020.

90.     According to the Florida Secretary of State's Division of Corporations, Bropil's business status was terminated on or around December 10, 2020.

91.     The December 10, 2020 Articles of Dissolution filed with the Florida Secretary of State's Division of Corporations are electronically signed by Brown-Pilgrim.

## FIRST CROSSCLAIM
## BREACH OF CONTRACT (BY GRC AGAINST KDC)

92.     GRC realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 as if fully set forth herein.

93.     The KDC-GRC MSA is a valid and enforceable contract, supported by consideration, between KDC and GRC.

94.     The KDC-GRC MSA governed the terms and conditions of KDC's relationship with GRC.

95.     GRC has performed its contractual obligations under the KDC-GRC MSA.

96.    In the KDC-GRC MSA, KDC assumed sole responsibility for all employment-related obligations, including but not limited to the duty to pay its employees in accordance with applicable law.

97.    Upon information and belief, according to the allegations in the Complaint, KDC failed to meet its employment-related obligations to Curry, including but not limited to the duty to pay Curry in accordance with applicable wage payment law, and thereby breached its contractual commitment to GRC as set forth in the KDC-GRC MSA.

98.    As a direct result of these breaches, GRC has been damaged in an amount to be determined at trial.

## SECOND CROSSCLAIM
## INDEMNIFICATION (BY GRC AGAINST KDC)

99.    GRC realleges and incorporates by reference the allegations contained in paragraphs 1 through 98 as if fully set forth herein.

100.    Pursuant to the KDC-GRC MSA, KDC is required to indemnify and hold GRC harmless for any breach of KDC's obligations thereunder.

101.    Notwithstanding due demand, KDC has failed to meet its contractual obligations to indemnify GRC in connection with this action.

102.    As a direct result of these breaches, GRC has been damaged in an amount to be determined at trial.

## THIRD CROSSCLAIM
## BREACH OF CONTRACT (BY PGX AGAINST KDC)

103.    PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

104.    The KDC-PGX MSA is a valid and enforceable contract, supported by consideration, between KDC and PGX.

105.    The KDC-PGX MSA governed the terms and conditions of KDC's relationship with PGX.

106.    PGX has performed its contractual obligations under the KDC-PGX MSA.

107.    In the KDC-PGX MSA, KDC assumed sole responsibility for all employment-related obligations, including but not limited to the duty to pay its employees in accordance with applicable law.

108.    Upon information and belief, according to the allegations in the Complaint, KDC failed to meet its employment-related obligations to Curry, including but not limited to the duty to pay Curry in accordance with applicable wage payment law, and thereby breached its contractual commitment to PGX as set forth in the KDC-PGX MSA.

109.    As a direct result of these breaches, PGX has been damaged in an amount to be determined at trial.

## FOURTH CROSSCLAIM
## FRAUDULENT CONVEYANCE
## (BY GRC AND PGX AGAINST KDC AND CURRY)

110.    PGX and GRC reallege and incorporate by reference the allegations contained in paragraphs 1 through 109 as if fully set forth herein.

111.    GRC provided notice of its claim against KDC on or around November 16, 2020.

112.    By filing a notice of KDC's dissolution with the Georgia Secretary of State on or around December 1, 2020, Curry attempted to avoid KDC's obligations to GRC.

113.    PGX provided notice of its claim against KDC on or around November 16, 2020.

114.    By filing a notice of KDC's dissolution with the Georgia Secretary of State on or around December 1, 2020, Curry attempted to avoid KDC's obligations to PGX.

115.    In light of his background and experience as an Anti-Money Laundering professional specializing in financial crimes, Curry is uniquely positioned with the skills and expertise to sequester funds and assets of KDC that would otherwise go to the satisfaction of its obligations to GRC and PGX.

116.    Curry's dissolution of KDC was done with the intent to hinder, delay or defraud GRC and PGX in their efforts to enforce their contractual rights against KDC.

117.    Upon information and belief, substantially all of KDC's assets were transferred to Curry immediately prior to or at the time of dissolution.

118.    Because these steps constitute fraudulent and deceptive conduct in an effort to defraud GRC and PGX, balancing of the equities favors GRC and PGX.

119.    By filing this action, Curry has consented to the jurisdiction of this Court.

120.    Due to Curry's efforts to avoid KDC's contractual obligations to GRC and PGX, each of them is entitled to an accounting of all assets held by KDC and/or Curry, entry of an order enjoining the further disposition of any and all assets transferred from KDC to Curry, and an award of attorney's fees pursuant to Sections 276 and 276-a of the New York Uniform Voidable Transactions Act, New York Debtor and Creditor Law, Article 10.

**FIFTH CROSSCLAIM**
**BREACH OF CONTRACT**
**(BY GRC AGAINST MAZZITELLI CONSULTING LLC**
**AND MAZZITELLI CONSULTING CORPORATION)**

121.    GRC realleges and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122.     The MCL-GRC MSA is a valid and enforceable contract, supported by consideration, between MC LLC and GRC.

123.     The MCL-GRC MSA governed the terms and conditions of MC LLC's relationship with GRC.

124.     GRC has performed its contractual obligations under the MCL-GRC MSA.

125.     In the MCL-GRC MSA, MC LLC assumed sole responsibility for all employment-related obligations, including but not limited to the duty to pay its employees in accordance with applicable law.

126.     MC Inc. is an alter ego of MC LLC, in that it received the funds paid in connection with the MCL-GRC MSA and has common ownership with MC LLC.

127.     Upon information and belief, according to the allegations in the Complaint, MC LLC failed to meet its employment-related obligations to Mazzitelli, including but not limited to the duty to pay Mazzitelli in accordance with applicable wage payment law, and thereby breached its contractual commitment to GRC as set forth in the MCL-GRC MSA.

128.     As a direct result of these breaches, GRC has been damaged in an amount to be determined at trial.

## SIXTH CROSSCLAIM
## BREACH OF CONTRACT
## (BY PGX AGAINST BROPIL)

129.     PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 128 as if fully set forth herein.

130.     The Bropil-PGX MSA is a valid and enforceable contract, supported by consideration, between Bropil and PGX.

131.     The Bropil-PGX MSA governed the terms and conditions of Bropil's relationship with PGX.

132.     PGX has performed its contractual obligations under the Bropil-PGX MSA.

133.     In the Bropil-PGX MSA, Bropil assumed sole responsibility for all employment-related obligations, including but not limited to the duty to pay its employees in accordance with applicable law.

134.     Upon information and belief, according to the allegations in the Complaint, Bropil failed to meet its employment-related obligations to Brown-Pilgrim, including but not limited to the duty to pay Brown-Pilgrim in accordance with applicable wage payment law, and thereby breached its contractual commitment to PGX as set forth in the Bropil-PGX MSA.

135.     As a direct result of these breaches, PGX has been damaged in an amount to be determined at trial.

## SEVENTH CROSSCLAIM
### INDEMNIFICATION (BY PGX AGAINST BROPIL)

136.     PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 135 as if fully set forth herein.

137.     Pursuant to the Bropil-PGX MSA, Bropil is required to indemnify and hold PGX harmless for any breach of Bropil's obligations thereunder.

138.     Notwithstanding due demand, Bropil has failed to meet its contractual obligations to indemnify PGX in connection with this action.

139.     As a direct result of these breaches, PGX has been damaged in an amount to be determined at trial.

## EIGHTH CROSSCLAIM
### FRAUDULENT CONVEYANCE
### (BY PGX AGAINST BROPIL, BROWN-PILGRIM AND DENNIS PILGRIM)

140.     PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 139 as if fully set forth herein.

141.    PGX provided notice of its claim against Bropil on or around November 16, 2020.

142.    By filing a notice of Bropil's dissolution with the Florida Secretary of State on or around December 10, 2020, Brown-Pilgrim attempted to avoid Bropil's obligations to PGX.

143.    In addition to Brown-Pilgrim, Dennis Pilgrim is identified as a managing member of Bropil.

144.    In light of her background and experience as an Anti-Money Laundering professional, Brown-Pilgrim is uniquely positioned with the skills and expertise to sequester funds and assets of Bropil that would otherwise go to the satisfaction of its obligations to PGX.

145.    Brown-Pilgrim's dissolution of Bropil was done with the intent to hinder, delay or defraud PGX in their efforts to enforce their contractual rights against Bropil.

146.    Upon information and belief, substantially all of Bropil's assets were transferred to Brown-Pilgrim immediately prior to or at the time of dissolution.

147.    Because these steps constitute fraudulent and deceptive conduct in an effort to defraud PGX, balancing of the equities favors PGX.

148.    By filing this action, Brown-Pilgrim has consented to the jurisdiction of this Court.

149.    Due to Brown-Pilgrim's efforts to avoid Bropil's contractual obligations to PGX, each of them is entitled to an accounting of all assets held by Bropil and/or Brown-Pilgrim, entry of an order enjoining the further disposition of any and all assets transferred from Bropil to Brown-Pilgrim, and an award of attorney's fees pursuant to Sections 276 and 276-a of the New York Uniform Voidable Transactions Act, New York Debtor and Creditor Law, Article 10.

**WHEREFORE,** P&G Auditors and Consultants, LLC, GRC Solutions, LLC and PGX, LLC pray that the Court (i) dismiss the claims of the plaintiffs Kenneth D. Curry, Ricardo

Mazzitelli, and Jacqueline Brown-Pilgrim in their entirety; (ii) dismiss the crossclaim asserted by

Apple Bancorp, Inc. against GRC in its entirety; (iii) enter judgment in GRC's favor against

crossclaim defendants KDC Consulting LLC (and its managing member Kenneth D. Curry),

Mazzitelli Consulting LLC and Mazzitelli Consulting Incorporated; (iv) enter judgment in

PGX's favor against crossclaim defendants KDC Consulting LLC (and its managing member

Kenneth D. Curry) and Bropil Consulting LLC; (v) award to GRC and PGX compensatory

damages, including but not limited to an award of attorneys' fees and expenses, in connection

with the crossclaim defendants' breaches of their respective agreements; (vi) direct the issuance

of writs of attachments against the interests of KDC Consulting LLC and its managing member

Kenneth D. Curry; (vii) enjoin and restrain KDC Consulting LLC and its managing member

Kenneth D. Curry from withdrawing, transferring, spending, hypothecating or otherwise

removing or alienating their interests in any checking, savings, investment, or other banking or

security accounts held in their names, either individually or with others, which are maintained

anywhere; (viii) enjoin and restrain KDC Consulting LLC and its managing member Kenneth D.

Curry from transferring, spending, hypothecating or otherwise removing or alienating their

interests in any and all real or personal property; (ix) order Kenneth D. Curry to account for all

assets acquired from KDC Consulting LLC and turn over same to GRC and PGX; (x) direct the

issuance of writs of attachments against the interests of Bropil Consulting, LLC and its managing

members; (xi) enjoin and restrain Bropil Consulting, LLC and its managing members from

withdrawing, transferring, spending, hypothecating or otherwise removing or alienating their

interests in any checking, savings, investment, or other banking or security accounts held in their

names, either individually or with others, which are maintained anywhere; (xii) enjoin and

restrain Bropil Consulting, LLC and its managing members from transferring, spending,

hypothecating or otherwise removing or alienating their interests in any and all real or personal

property; (xiii) order Bropil Consulting, LLC's managing members to account for all assets

acquired from Bropil Consulting, LLC and turn over same to PGX and (xiv) grant to them any

such further relief as to the Court may seem just and proper.

Dated: New York, New York
         December 21, 2020

DAVIS WRIGHT TREMAINE LLP

By: s/_____
     Lyle S. Zuckerman
     Michael J. Goettig
     1251 Avenue of the Americas, 21st Floor
     New York, New York 10020
     (212) 489-8230
     *Counsel for Defendants*
     *P&G Auditors and Consultants, LLC, GRC Solutions,*
     *LLC and PGX, LLC*
     *and Crossclaim Plaintiffs GRC Solutions, LLC and*
     *PGX, LLC*