KLEIN LAW GROUP OF NEW YORK PLLC
120 East 79th Street, Suite 1A
New York, New York 10075
(347) 292-8170
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM, on behalf of themselves and other similarly situated,<br><br><br>Plaintiffs,<br><br>- against -<br><br>P&G AUDITORS AND CONSULTANTS, LLC; GRC SOLUTIONS, LLC; PGX, LLC; AND APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,<br><br>Defendants. | **Index No 20-cv-6985** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE BANK'S MOTION FOR SUMMARY JUDGMENT

Dated: January 19, 2021

By: /s/ Julia Klein
      Julia Klein
      120 East 79th Street, Suite 1A
      New York, New York 10075
      347.292.8170
      jklein@kleinlegalgroup.com
      Attorneys for Plaintiffs

## TABLE OF CONTENTS

Table of Authorities .......................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS................................................................................................4

PROCEDURAL HISTORY..............................................................................................8

ARGUMENT.....................................................................................................................9

I.      STANDARD OF REVIEW .................................................................................9

II.     GENIUNE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER APPLE
        BANK EMPLOYED PLAINTIFFS .................................................................10

       A.   The Economic Realities between Apple Bank and the Plaintiffs, and Not the
           Contents of the Consent Order, Memorandum of Understanding, or the
           Contractual Agreements between Apple Bank and GRC Determine Whether
           a Joint Employer Relationship Exists ..............................................................12

       B.   Apple Bank Exercised Formal Control Over Plaintiffs and Was a Joint
           Employer...........................................................................................................14

           i.   Apple Bank's Documents Reflect that Apple Bank Had the Power to
             Fire Employees.......................................................................................14

           ii.   Apple Bank Supervised and Controlled Employee Schedules or
             Conditions of Employment....................................................................16

           iii.   Apple Bank Determined the Rate and Method of Payment ...............18

           iv.   Apple Bank Maintained Employment Records ...................................19

       C.   Apple Bank Jointly Employed Plaintiffs Because It Exercised Functional
           Control Over Them...........................................................................................19

           i.   Plaintiffs Worked on Apple Bank's Premises and Used Their
             Equipment ..............................................................................................20

           ii.   Plaintiffs Worked Exclusively for the Contractor Defendants and
             Apple Bank While Working on the Project...........................................21

iii.    **Plaintiffs Performed a Job That Was Integral to Apple Bank's Operations** ................................................................**21**

iv.    **Responsibility Could Pass from One Subcontractor to Another Without Material Changes**................................................**22**

v.    **Apple Bank Exercised Significant Control Over Work Produced by Plaintiffs and Their Colleagues**.............................................**23**

vi.    **Plaintiffs and Their Colleagues Worked Exclusively on the Apple Bank Project** ..............................................................**23**

**III.**    **THE THREE-YEAR STATUTE OF LIMITATIONS PERIOD SHOULD BE APPLIED IN THIS CASE** ...............................................**24**

**CONCLUSION** ..........................................................................................**25**

TABLE OF AUTHORITIES

Cases

*Allianz Ins. Co. v. Lerner*,

     416 F.3d 109 (2d Cir. 2005)...........................................................................................10

*Anderson v. Liberty Lobby, Inc.*,

     477 U.S. 242 (1986)........................................................................................................10

*Antenor v. D & S Farms*,

     88 F.3d 925 (11th Cir. 1996) ....................................................................................24, 25

*Artola v. MRC Express, Inc*.,

     Index No. 14-cv-23219, 2015 U.S. Dist. LEXIS 130183 (S.D. Fla. Sep. 25, 2015).........15

*Barfield v. N.Y.C. Health & Hosps. Corp.*

     537 F.3d 132 (2d Cir. 2008).....................................................................................10, 11

*Barrentine v. Ark.-Best Freight Sys.*,

     450 U.S. 728 (1981)........................................................................................................15

*Bodle v. TXL Mortg. Corp.*,

     788 F.3d 159 (5th Cir. 2015) ....................................................................................15, 16

*Carter v. Duchess Community College.*,

     735 F.2d 8 (2d Cir. 1984)....................................................................................16, 19, 34

*Celotex Corp. v. Catrett*,

     477 U.S. 317 (1986)........................................................................................................10

*Chao v. Gotham Registry, Inc.*,

     514 F.3d 280 (2d Cir. 2008)............................................................................................31

*Cherif v. Sameday Delivery Corp.*,

No. 13-cv-1341, 2015 U.S. Dist. LEXIS 133807 (E.D.N.Y. Sept. 30, 2015) ...................31

*Collinge v. IntelliQuick Delivery, Inc.*,

     Index No. 12-cv- 824, 2015 U.S. Dist. LEXIS 35860 (D. AZ. Mar. 23, 2015) ...............14

*Dyrhaug v. Tax Breaks Inc.*,

     Index No. 13-cv-1309, 2015 U.S. Dist. LEXIS 192813 (D. AZ. Sept. 15, 2015).............15

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,

     612 F. Supp. 2d 330 (S.D.N.Y. 2009)...............................................................................10

*English v. Tex. Farm Bureau Bus. Corp.*,

     Index No. 17-cv-323, 2018 U.S. Dist. LEXIS 172930 (W.D. Tx. July 9, 2018)...............15

*Fahs v. Tree-Gold Co-operative Growers of Florida, Inc.*,

     166 F.2d 40 (5th Cir. 1948) ..............................................................................................23

*Fincher v. Depository Tr. & Clearing Corp.*,

     604 F.3d 712 (2d Cir. 2010)..............................................................................................10

*Godlewska v. HDA*,

     916 F. Supp. 2d 246 (E.D.N.Y. 2013) ..................................................................21, 22, 31

*Guaraca v. Cafetasia Inc.*,

     No. 17-CV-1516, 2018 U.S. Dist. LEXIS 161899 (S.D.N.Y. Sep. 20, 2018).............10, 11

*Gulf King Shrimp Co. v. Wirtz*,

     407 F.2d 508 (5th Cir. 1969) ............................................................................................24

*Hall v. DIRECTV, LLC*,

     846 F.3d 757 (4th Cir. 2017) ............................................................................................18

*Hart v. Rick's Cabaret Int'l*,

     967 F. Supp. 2d 901 (S.D.N.Y. 2013)..................................................................16, 19, 20

*He v. Home on 8th Corp.*,

    No. 09-cv-5630, 2014 U.S. Dist. LEXIS 114605 (S.D.N.Y. Aug. 13, 2014)....................31

*Hellstrom v. United States Dep't of Veterans Affairs*,

    201 F.3d 94 (2d. Cir. 2000)........................................................................................34, 35

*Herman v. RSR Sec. Servs. Ltd.*,

    172 F.3d 132 (2d Cir. 1999)........................................................................................13, 19

*Hexemer v. Gen. Elec. Co.*,

    Index No. 1:12-cv-1808, 2013 U.S. Dist. LEXIS 129469 (N.D.N.Y. Sep. 11, 2013).......18

*Hugee v. SJC Group, Inc.*,

    Index No. 13-cv-423, 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) ..............................28

*Iglesias-Mendoza v. La Belle Farm, Inc.*,

    239 F.R.D. 363 (S.D.N.Y. 2007) ...................................................................................31

*Indergit v. Rite Aid Corp.*,

    2010 U.S. Dist. LEXIS 32322 (S.D.N.Y. Mar. 31, 2010) .................................................34

*Jean-Louis v. Metro Cable Communs., Inc.*,

    838 F. Supp. 2d 111 (S.D.N.Y. 2011)...............................................................19, 21, 25, 31

*Liotard v. FedEx Freight Corp.*,

    Index No. 14-cv-2083, 2016 U.S. Dist. LEXIS 34754 (S.D.N.Y. Mar. 17, 2016)......17, 18

*Lopez v. Acme Am. Envtl. Co. Inc.*,

    No. 12 Civ. 511, 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)..........................................13

*Martin v. Sprint United Mgmt. Co.,*

    273 F. Supp. 3d 404 (S.D.N.Y. 2017)..............................................................................13

*Miller v. Wolpoff & Abramson, L.L.P.*,

    321 F.3d 292 (2d Cir. 2003).........................................................................................34, 35

*Mitchell v. Robert DeMario Jewelry, Inc.*,

    361 U.S. 288 (1960)........................................................................................................34

*Murphy v. HeartShare Human Servs. of N.Y.*,

    254 F. Supp. 3d 392 (E.D.N.Y. 2017) ........................................................................12, 13

*Nationwide Mut. Ins. Co. v. Darden*,

    503 U.S. 318 (1992)........................................................................................................12

*New York v. Scalia*,

    Index No. 20-cv-1689, 2020 U.S. Dist. LEXIS 163498 (S.D.N.Y. Sep. 28, 2020) ............

    ...................................................................................................................11, 12,13

*Rutherford Food Corp. v. McComb*.

    331 U.S. 722 (1947).....................................................................................12, 22, 23, 25

*Saffire Corp. v. Newkidco., LLC*,

    286 F. Supp. 2d 302 (S.D.N.Y. 2003)...........................................................................35

*Singh v. 7-Eleven, Inc.*,

    Index No. 05-cv-4534, 2007 U.S. Dist. LEXIS 16677 (N.D. Cal. Mar. 8, 2007) .......14, 15

*Thomas v. River Greene Constr. Grp. LLC*,

    No. 17 CIV. 6954, 2018 WL 6528493 (S.D.N.Y. Dec. 11, 2018)....................................13

*Trask v. Town of Alma*,

    No. 1:19-cv-01192, 2020 U.S. Dist. LEXIS 204107 (W.D.N.Y. Oct. 30, 2020) ..............30

*United States v. Rosenwasser*,

    323 U.S. 360 (1945)........................................................................................................12

*Vasto v. Credico (USA) LLC*,

    2017 U.S. Dist. LEXIS 178457 (S.D.N.Y. Oct. 27, 2017) ..........................................13, 20

*Zheng v. Liberty Apparel Co.*,

    355 F.3d 61 (2d Cir. 2003)........................................................................................ *passim*


<u>Statutes</u>

12 U.S.C. § 1818(a)(2) (2021) ..................................................................................................27

12 U.S.C. § 1811 (2021) ....................................................................................................15, 16

29 U.S.C. § 202 (2021) .............................................................................................................34

29 U.S.C. § 203(d) (2021) ........................................................................................................11

29 U.S.C. § 203(e)(1) (2021) ...................................................................................................11

29 U.S.C. § 203(g) (2021) ........................................................................................................11

29 U.S.C. § 207(a)(1) (2021) ...................................................................................................11

29 U.S.C. § 216(b) (2021) ..........................................................................................................9

29 U.S.C. § 255(a) (2021).........................................................................................................31

29 U.S.C. § 551 (2021) .............................................................................................................15

31 C.F.R. Chapter X (2021)......................................................................................................26

Fed. R. Civ. Proc. 56(c) (2021)................................................................................................10


<u>Other Authorities</u>

Affidavit of Dean G. Yuzek in Support of Motion for Summary Judgment,

      dated December 3, 2020 ................................................................................................31

Affidavit of Mitchell Jacobs in Support of Motion for Summary Judgment,

dated December 1, 2020 ...................................................................... *passim*

Affidavit of Susan Goro in Support of Motion for Summary Judgment,

dated December 2, 2020 .................................................................8, 17, 26

Apple Bank Acceptable Use Policy,

dated September 11, 2017, Docket 42-11 ........................................................17

Declaration of Jacqueline Brown Pilgrim,

dated December 10, 2020 .................................................4, 7, 8, 9, 31

Declaration of Julia H. Klein, Esq.,

dated January 19, 2021 ...................................................................9, 10

Declaration of Kenneth Curry,

dated January 19, 2021 ...................................................................... *passim*

Declaration of Ricardo Mazzitelli,

dated January 19, 2021 ...................................................................... *passim*

Master Services Agreement Between GRC and Apple Bank for Savings,

dated March 27, 2018, Docket 42-3...................................................................5

Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div.,

2016 DOLWH LEXIS 1, 2016 WL 284582 (Jan. 20, 2016) ............................................12

Proposal to Apple Bank for Savings for BSA/AML Model Validation,

dated November 13, 2015, Docket 42-6 ..........................................................6

Proposal to Apple Bank for Savings for BSA/AML/OFAC Risk Assessments,

dated December 4, 2015, Docket 42-5...................................................................6

Proposal to Apple Bank for Savings to Perform a BSA/AML Transaction Look Back Review,

dated March 6, 2016, Docket Entry 42-7............................................4, 5, 7, 30

Proposal to Apple Bank for Savings to Perform a BSA/AML Transaction Look Back Review,

dated November 24, 2015, Docket 42-4 ........................................................................5, 6

## PRELIMINARY STATEMENT

Between 2017 and 2018, Apple Bancorp, Inc. d/b/a Apple Bank for Savings ("Apple Bank"), GRC Solutions, LLC, ("GRC") P&G Consulting, LLC ("P&G"), and PGX, LLC ("PGX") (Apple Bank, GRC, P&G, and PGX collectively referred to as "Defendants") jointly employed several dozens of individuals to work on a compliance review project ("Project") in which these individuals reviewed thousands of Apple Bank's transactions to determine whether these transactions met applicable banking regulations.  Defendants required the employees on the Project to work over 60 hours per week, yet Defendants engaged in a coordinated scheme to withhold overtime premiums from these Project employees.  Accordingly, on August 27, 2020, Kenneth Curry, Jacqueline Brown Pilgrim, and Ricardo Mazzitelli (collectively, "Plaintiffs"), several of the employees who worked on the Project, filed a lawsuit against Defendants alleging that they violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay them the overtime premiums they were owed every time they worked more than 40 hours in a workweek.

The Defendants have all filed Answers in connection with this Action and none have filed a motion to dismiss for failure to state a claim. The parties have not yet engaged in any discovery, yet Defendant Apple Bank takes the extraordinary step of moving for summary judgment in an attempt to prevent Plaintiffs from obtaining discovery to establish that Apple Bank jointly employed them along with Defendants GRC, P&G, and PGX.  Apple Bank's motion should be denied because the limited documentary evidence along with Plaintiffs' declarations establish that Apple Bank exercised formal and functional control over them and similarly situated anti-money laundering compliance reviewers, quality assurance reviewers, and team leads. Indeed, throughout its motion for summary judgment, Apple Bank admits that Plaintiffs, and members of the class,

1

worked on Apple Bank's premises, using its materials and data.  Furthermore, Apple Bank admits that it, along with GRC, P&G, and PGX, maintained Plaintiff's employment records including billing statements that reflected the number of hours Anti Money Laundering reviewers ("AMLs"), Team Leads ("TLs"), and Quality Assurance reviewers ("QAs") worked on the Project, the total amount Plaintiffs billed toward the project in any given week and the total amount paid to each AML, TL, and QA who worked on the project. In addition, as Apple Bank admits in its moving papers, Apple Bank was notified any time GRC, P&G, or PGX hired a new employee and Apple Bank controlled whether that new hire would be given access to its systems and facility.  Apple Bank further admits that it received notification each time an employee was terminated or otherwise removed and would promptly discontinue that employee's access to its systems, consistent with the employee's end date, as communicated by GRC, P&G, or PGX.  Apple Bank further admits that it was aware of the long hours that Plaintiffs and the class spent working on the Project for Apple Bank.  Apple Bank also admits that it hired security staff to allow Plaintiffs to work weekends, holidays, and hours that extended beyond normal business hours.

Additionally, the work that Plaintiffs performed was integral to Apple Bank's process of production.  As Apple Bank repeatedly noted throughout its motion for summary judgment, the work Plaintiffs performed was necessary to comply with edicts from two regulatory agencies.  This work was so integral that Apple Bank directly employed a team of compliance officers that performed virtually identical work to the work that the Plaintiffs performed for Apple Bank.

Finally, and perhaps most importantly, there is, at minimum, a disputed issue of material fact about the degree of control Apple Bank exercised over Plaintiffs.  The documentary evidence Apple Bank itself introduced in support of this motion demonstrates that Apple Bank exercised a hands-on approach and was actively involved in moving the Project along.  This information,

supplemented with Plaintiffs declarations that attest to the fact that Apple Bank representatives directly supervised their work and provide instructions to AMLs, TLs and QAs who worked on the Project, should preclude this Court from granting Apple Bank's motion.

While ignoring the fact that they exercised formal or functional control over Plaintiffs and the class of workers they are seeking to represent, Apple Bank instead simply relies upon a Consent Order and Memorandum of Understanding ("MOU") it entered into with two separate banking regulators that required Apple Bank to "engage a qualified firm" to perform an independent review of the Apple Bank's suspicious activity monitoring system. Contrary to Apple Bank's assertions, neither the existence of these settlement decrees, nor the content of the settlement decrees are in any way dispositive to the issues raised in the instant Action. Plaintiffs are not litigating whether Apple Bank complied with the terms of the Consent Order and/or the MOU; whether Apple Bank complied with the Consent Order or the MOU has no bearing on whether the employees who performed such work were properly classified or properly compensated under state and federal laws. The analysis of whether Apple Bank complied with the Consent Order or the MOU does not bear on the answer to the only question that matters: whether Apple Bank was a joint employer of Plaintiffs in accordance with the FLSA and the NYLL. Both the FLSA and the NYLL apply tests to determine whether individuals are jointly employed by an enterprise that that does not directly hire or pay those workers, and these tests are completely distinct and unrelated as to whether Apple Bank satisfied the conditions set forth in the Consent Order and MOU.

Under these circumstances, there are, at minimum, issues of disputed fact, especially at this pre-discovery stage of this Action, about whether Apple Bank exercised formal and/or functional control over Plaintiffs. As such, the Court should deny Apple Bank's motion for summary judgment.

**STATEMENT OF FACTS**

Plaintiffs Kenneth Curry ("Curry"), Jacqueline Brown Pilgrim ("Pilgrim") and Ricardo Mazzitelli ("Mazzitelli") worked for the benefit of Apple Bank on a "Lookback Review" project (hereinafter "Project") in overlapping periods between July 2017 and August 2018. *See* Declaration of Kenneth Curry, dated January 19, 2021 ("Curry Decl."), at ¶ 3; Declaration of Jacqueline Brown Pilgrim, dated December 10, 2020 ("Pilgrim Decl."), at ¶ 2; Declaration of Ricardo Mazzitelli, dated January 19, 2021 ("Mazzitelli Decl."), at ¶ 2.

The work performed was anti-money laundering compliance review wherein AMLs reviewed transactions; their work was reviewed by QAs; and the QAs and AMLs were overseen by team leads (TLs) who reported to project managers. Mazzitelli Decl., at ¶ 59-62. Apple Bank reviewed and used Plaintiffs' work product in furtherance of Apple Bank's compliance obligations. Mazzitelli Decl., at ¶ 54-56, 59-62. Apple Bank employees provided feedback on the work performed by AMLs, QAs and TLs. *See* Curry Decl., at ¶ 54. The type of feedback provided was significant, as it concerned the substance and thoroughness of the reports generated by AMLs, QAs and TLs. Mazzitelli Decl., at ¶¶ 65-67. Input from Apple Bank was required and anticipated, and potentially affected the duration of the Project, as the "duration and actual hours needed to complete this project may vary based on . . . turnaround on reviews provided by Bank Management in working toward the deliverable of this engagement." *See* Proposal to Apple Bank for Savings to Perform a BSA/AML Transaction Look Back Review ("BSA/AML Proposal"), dated March 6, 2016, at *Estimated Fees, Expenses & Timeline,* Dkt. No 42-7. "The availability of Bank staff is essential to provide support for data gathering and to review draft versions of deliverables prepared by the Firm during the project." *See* Dkt. No 42-7, BSA/AML Proposal, at *Additional Activity Assumptions*.

In support of its motion for summary judgment, Apple Bank introduced various documents, including proposals and communications between GRC and Apple Bank that show that Apple Bank was actively involved in setting the parameters that would govern the day-to-day employment of Plaintiffs and the class of AMLs, TLs, and QAs that Plaintiffs are trying to represent in this Action.  These documents also shed light on the level of oversight Apple Bank would have over the timing and content of Plaintiffs' and the class of AMLs', TLs', and QAs' work product.  The following examples demonstrate the level of oversight Apple Bank had over the Project:

- Apple Bank, in its Master Services Agreement with GRC, mandated that GRC could only hire individuals "who are professionally competent to perform the particular services described in the SOW."  *See* Dkt. 42-3, at p. 4.

- The November 24, 2015 proposal from GRC to Apple Bank clearly contemplated frequent oversight by Apple Bank over Plaintiffs' work.  Indeed, as part of the job description of GRC's Project Manager, GRC wrote to Apple Bank, and Apple Bank accepted that "[a]ny issues with respect to completion of the project will be identified and discussed in weekly status update meetings with the Bank."  *See* Dkt. 42-4, at p. 6.[1]

- Likewise, according to the November 24, 2015 proposal, the Project Manager would not be the only GRC employee who would converse with Apple Bank and the position of Managing Director was created that would "act as the liaison for the communication to the Bank's Board of Directors." *See* Dkt. 42-4, at p. 6.

- The November 24, 2015 proposal also clearly indicated to Apple Bank, that the AML who would be conducting the review would be expected to work 75 hours per week.  *See* Dkt. 42-4, at p. 7. Despite the long hours, GRC did not propose that its costs would increase in order to pay the AML overtime compensation, and there is no indication that Apple Bank, despite being on notice of the long hours the AML would have to work, inquired as to whether GRC would be paying the AML overtime compensation.

- In a different proposal from GRC to Apple Bank dated December 4, 2015, GRC promised as a deliverable to "meet with Apple Bank for Savings Management to review draft and final assessment." *See* Dkt. 42-5, at p. 6.  This collaboration between GRC and Apple Bank erodes Apple Bank's insistence throughout its motion that it had to operate independently from GRC and the Contractor Defendants.

---

[1] This proposal was signed and accepted by Connie L. Moyer, Esq., Apple Bank's First Vice President

- In yet another proposal from GRC to Apple Bank, this one dated November 13, 2015, GRC promised to hold weekly meetings with Apple Bank "to identify potential delays, data extraction issues, and other factors causing potential project delays." *See* Dkt. 42-6, at p. 5.  Furthermore, information in this proposal underscored the necessity for Apple Bank to collaborate with GRC in order for GRC to undertake a thorough review of Apple Bank's transactions.  GRC noted, "[t]he availability of the Bank staff is essential to provide support for data gathering and to review draft versions of deliverables prepared by the Firm during the project process. *See* Dkt. 42-6, at p. 8.  Likewise, in this November 13, 2015 proposal GRC and Apple Bank acknowledged that the duration of the project was dependent, at least in part, on Apple Bank.  "The duration and actual hours needed to complete this project may vary based on how long it takes to gather the information, conduct interviews, and turnaround on reviews provided by bank management in working toward the deliverable of this engagement." *Id*.

- In yet another proposal, this one dated March 8, 2016,[2] Apple Bank again reaffirmed that it controlled the scope, timing and duration of the compliance review project.  Apple Bank agreed that, "[t]he effort, timetable, and GRC resources to be applied to the second phase is dependent on the findings of the first phase, and as directed by Apple Bank for Savings Management. See Dkt. No. 42-7, at p. 4.  The information contained in this proposal should further disabuse any notion that Apple Bank was truly "independent" and uninvolved with GRC's analysis.  Specifically, the proposal notes that "[a]ny issues with respect to completion of the project will be identified and discussed in weekly status update meetings with the Bank."  *Id*., at p. 11.

Beyond these details the documents that Apple Bank submitted in support of its motion for summary judgment indicate that GRC and Apple Bank collectively agreed on the timing of each phase of the project, the estimated fees for each phase of the project, the scope of work, activities to be executed, and hourly rates for each category of employee who was to be hired to work on the project. *Id*.

All work on the Project took place at an Apple Bank facility, located at 2100 Broadway in Manhattan. *See* Curry Decl., at ¶ 3; Pilgrim Decl., at ¶ 6; Mazzitelli Decl., at ¶ 11.  Apple Bank permitted Plaintiffs access to the facility beyond the facility's regularly scheduled hours and provided extra security accordingly. *See* Curry Decl., at ¶ 16; Pilgrim Decl., at ¶ 11; Mazzitelli Decl., at ¶ 26-27; Affidavit of Mitchell Jacobs in Support of Motion for Summary Judgment, dated

---

[2] Michael Rokos, Apple Bank's First Vice President, executed this proposal as well.  See Dkt. No. 42-7, at p. 14.

December 1, 2020 ("Jacobs Affidavit"), at ¶ 5 (Dkt. No 44).  Apple Bank concedes that "GRC employees" required access to Apple Bank's systems in order to perform their work. *See* Jacobs Affidavit, at ¶ 3.  They further concede that they provided space at an Apple Bank branch along with workstations in order to perform the work for the Project. Jacobs Affidavit, at ¶ 4.  As a condition of being allowed access to Apple Bank's systems, GRC employees were "required to sign Apple Bank's 'Acceptable Use Policy.'" *See* Affidavit of Susan Goro in Support of Motion for Summary Judgment, dated December 2, 2020 ("Goro Affidavit"), at ¶ 4 (Dkt. No 43).  The Acceptable Use Policy signed by Mazzitelli and appended to Apple Bank's motion for summary judgment includes a statement that says, "I understand that upon any violation of this Acceptable Use policy I may be subject to disciplinary action by the Bank, up to and including termination of employment." Acceptable Use Policy, p. 8.  The Acceptable Use Policy was provided to Mazzitelli by GRC and failure to sign would have resulted in Mazzitelli's termination from the Project. Mazzitelli Decl., at ¶¶ 28-30.

Each of the Plaintiffs was required to work in excess of forty (40) hours per week, often working between 60 and 75 hours per week. *See* Curry Decl., at ¶¶ 19, 21, 22, 25; Pilgrim Decl., at ¶ 8; Mazzitelli Decl., at ¶¶ 42-42.  Mazzitelli worked every day for the final three weeks of Phase I without a break to meet the delivery deadline requirements for the Project. Mazzitelli Decl., at ¶ 18.  GRC required TLs to ask AMLs and QAs to work additional hours if the AMLs or QAs hours were anticipated to fall below the 65-hour minimum. Mazzitelli Decl., at ¶ 15.  GRC required TLs to ask AMLs and QAs to work at least one day each weekend. Mazzitelli Decl., at ¶ 17.  Each of the Plaintiffs worked exclusively on the Project during their tenure on the Project. Curry Decl., at ¶ 4; Pilgrim Decl., at ¶ 7; Mazzitelli Decl., at ¶ 12.  Apple Bank was or should have been aware of the time that Plaintiffs and members of the class spent working on the look back review project

because they allowed them to use their facilities and computer programs and Apple Bank also was aware that the Contractor Defendants were not paying them overtime premiums by virtue of the time sheets and pay records that they received from the Contractor Defendants. Curry Decl., at ¶ 48-51. Accordingly, Apple Bank knew, or should have known, that Plaintiffs and the class were being deprived of overtime compensation.

During their time on the Project, Plaintiffs were paid flat rates and were never compensated for overtime at the time and one-half rate. *See* Curry Decl., at ¶ 18, 19, 21, 56-58; Pilgrim Decl., at ¶¶ 16-18; Mazzitelli Decl., at ¶¶ 40-42. Apple Bank's agreement reflects that it paid flat hourly rates for work performed.

## PROCEDURAL HISTORY

Plaintiffs filed this Action on or around August 27, 2020. *See* Declaration of Julia H. Klein, Esq., dated January 19, 2021 ("Klein Decl."), at ¶ 4. Ex., A. Defendant Apple Bank filed an answer and affirmative defenses on or around October 15, 2020. *See* Klein Decl., at ¶ 5. Ex., B. The Contractor Defendants filed an untimely answer on or around December 21, 2020. *See* Klein Decl., at ¶ 6. Ex., C. Along with their answer and affirmative defenses, the Contractor Defendants have retaliated against Plaintiffs by filing cross claims against them personally, and against their corporate entities, even though such cross claims violate public policy. *Id*. Clearly, Contractor Defendants are trying to intimidate putative class members from exercising their statutorily protected rights to file actions to vindicate their right to receive overtime compensation. *Id*. Plaintiffs have not yet filed a responsive pleading with respect to the cross claims. *Id*.

On or around December 16, 2020, Plaintiffs filed a motion pursuant to 29 U.S.C. § 216(b) to seek collective action certification of this lawsuit and to authorize the dissemination of a notice to members of the collective which alerts them of their rights to opt-in and become a party plaintiff

to this action. *See* Klein Decl., at ¶ 7.  Defendants have not yet filed their opposition to this motion

and the Court has not yet issued a decision with respect to the motion. *Id*.

To date no discovery has taken place. *See* Klein Decl., at ¶ 8.  The parties have not taken

or noticed a single deposition, no party has served document requests or interrogatories, and except

for the documents appended to Apple Bank's motion for summary judgment, not a single

document has been formally exchanged. *Id*.  The parties have not even served initial disclosures

pursuant to Rule 26 of the Federal Rules of Civil Procedure. *Id*. [3]

## ARGUMENT

### I.    STANDARD OF REVIEW

Summary judgment may be granted where "there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c);

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 344

(S.D.N.Y. 2009).  "[I]n ruling on a motion for summary judgment, the judge must view the

evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Evidence must be construed "in the light most favorable

to the nonmoving party and [draw on] all reasonable inferences in its favor." *Fincher v. Depository

Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416

F.3d 109, 113 (2d Cir. 2005)).  The nonmoving party is not "required to produce evidence in a

---

[3] Because this motion is premature, the Court should decline to rule until discovery is completed and hold this motion
in abeyance. "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been
afforded the opportunity to conduct discovery." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir.
2003) (quoting *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)); *see also Indergit
v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 32322, at *8 (S.D.N.Y. Mar. 31, 2010). "[S]ummary judgment should only
be granted if 'after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of
[its] case with respect to which [it] has the burden of proof.'" *Miller*, 321 F.3d 292, 303 (2d Cir. 2003). At minimum,
the Court should apply a much higher burden on Apple Bank when ruling on this motion because "[t]he burden on the
moving party is greater in cases where discovery is incomplete." *Saffire Corp. v. Newkidco.*, LLC, 286 F. Supp. 2d
302, 306 (S.D.N.Y. 2003).

form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Courts have held that motions for summary judgment on issues of joint employment should be rarely granted because of the factual nature of the inquiry. *Guaraca v. Cafetasia Inc.*, No. 17-CV-1516 (VSB), 2018 U.S. Dist. LEXIS 161899, at *17 (S.D.N.Y. Sep. 20, 2018) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 at 143 (2d Cir. 2008)). This should be especially true when a Defendant moves for summary judgment before the parties have had any opportunity to exchange discovery about the nature of the employment relationship between the parties.

II.  GENIUNE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER APPLE BANK EMPLOYED PLAINTIFFS

The primary issue presented in this motion is whether Apple Bank "employed" Plaintiffs. If it did, Apple Bank would be responsible for ensuring that Plaintiffs earned overtime premiums for each hour worked in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1). The FLSA provides some guidance as to who is considered an employee and who is considered an employer. The FLSA defines an "employee" as "any individual employed by an employer," and defines the term "employ" expansively to include any person or enterprise that "suffer[s] or permit[s] an employee to work." *See* 29 U.S.C. §§ 203(e)(1), 203(d), 203(g))." As Judge Woods recently noted, these definitions are to be construed extremely liberally. *New York v. Scalia*, Index No. 20-cv-1689, 2020 U.S. Dist. LEXIS 163498 *67 (S.D.N.Y. Sep. 28, 2020) (holding that "the remedial nature of the statute further warrants an expansive interpretation of its provisions"). Indeed, as far back as 1945, the Supreme Court noted that "the term 'employee' in the FLSA has "the broadest definition . . . ever . . . included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (internal citations omitted). Two years later, the Court observed that the FLSA's "definition of 'employ' is broad." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947).

The notion that employment is broadly defined was reaffirmed by the Court decades after the holdings in *Rosenwasser* and *Rutherford* when the Court again noted, "the 'striking breadth' of the FLSA's definition of 'employ'" and that the definition stretches the meaning of 'employee' to cover some parties who might not qualify as such under traditional agency law principles. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

Multiple persons or entities may qualify as "joint employers" under the FLSA. *Murphy v. HeartShare Human Servs. of N.Y.*, 254 F. Supp. 3d 392, 396 (E.D.N.Y. 2017). Vertical joint employment, which is what is alleged in this Action, commonly exists when an employee works for an intermediary employer, such as a subcontractor, and that primary contractor hires the intermediary employer, such that the employee is economically dependent on the primary contractor. *Id.* (citing Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div., 2016 DOLWH LEXIS 1, 2016 WL 284582, at *4 (Jan. 20, 2016)).  If both the primary contractor and the subcontractor meet the FLSA's definition of an "employer, they are joint employers who are both jointly and severally liable for damages for FLSA violations.  *See Scalia*, 2020 U.S. Dist. LEXIS 163498, at * 58 ("An employer is a joint employer if it suffers or permits an employee to work while another employer simultaneously suffers or permits the same employee to work.").  In the Second Circuit, nonexclusive and overlapping factors are taken into account to determine whether the purported joint employer has formal and/or functional control over the workers in analyzing the economic realities of a purported vertical joint employment relationship.  *Murphy*, 254 F. Supp. 3d 396-397; *see also Vasto v. Credico (USA) LLC*, 2017 U.S. Dist. LEXIS 178457, at *20-21 (S.D.N.Y. Oct. 27, 2017).  "[E]conomic reality is determined based upon all the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

As the terms of the FLSA and New York Labor Law are analyzed and construed similarly, the arguments presented herein apply to Plaintiffs' claims and Apple Bank's motion as it relates to both the FLSA and NYLL. *See Vasto,* 2017 U.S. Dist. LEXIS 178457, at *22*; Lopez v. Acme Am. Envtl. Co. Inc.*, No. 12 Civ. 511, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012); *see e.g.*, *Martin v. Sprint United Mgmt. Co.,* 273 F. Supp. 3d 404 (S.D.N.Y. 2017); *Thomas v. River Greene Constr. Grp. LLC*, No. 17 CIV. 6954, 2018 WL 6528493 (S.D.N.Y. Dec. 11, 2018).

A.   **The Economic Realities between Apple Bank and the Plaintiffs, and Not the Contents of the Consent Order, Memorandum of Understanding, or the Contractual Agreements between Apple Bank and GRC Determine Whether a Joint Employer Relationship Exists**

Throughout its motion for summary judgment, Apple Bank repeatedly refers to the fact that that Federal Deposit Insurance Corporation ("FDIC") and New York State Department of Financial Services ("NYSDFS") required Apple Bank to retain the services of a third party to among other things validate Apple Bank's suspicious activity monitoring system and review transactions to assess whether suspicious activity in these accounts were identified and reported. Apple Bank asserts that it hired Defendant GRC as the third party to "independently" perform these tasks in accordance with its obligations under the Consent Order and MOU.  The crux of Apple Bank's argument is that, taken together, the Consent Order, MOU and its contractual agreement with GRC, foreclose the possibility that Apple Bank can be considered Plaintiffs' joint employer for purposes of the FLSA or NYLL.  Apple Bank thoroughly misreads the law.  The mere existence of the Consent Order and MOU, and the contractual language between Apple Bank and GRC, do not, in any way, prevent a finding that Apple Bank jointly employed Plaintiffs. These documents, by themselves, do not address the extent to which Apple Bank actually controlled the manner and means by which Plaintiffs completed their assignments. In other words, a genuine issue of material fact exists as to whether Apple Bank exercised either formal or functional control

over Plaintiffs, notwithstanding the existence of the Consent Order and MOU, and the contractual language between Apple Bank and GRC.  As such, Apple Bank's motion for summary judgment must be denied.

It is axiomatic that neither contractual language that purports to describe an individual's working relationship, nor contracting parties' intent is an important factor in evaluating whether a joint employment relationship exists.  *See e.g., Collinge v. IntelliQuick Delivery, Inc.*, Index No. 12-cv- 824, 2015 U.S. Dist. LEXIS 35860 *5 (D. AZ. Mar. 23, 2015) ("[c]ontractual language that purports to describe an individual's working relationship does not control"); *Singh v. 7-Eleven, Inc.*, Index No. 05-cv-4534, 2007 U.S. Dist. LEXIS 16677 *11 (N.D. Cal. Mar. 8, 2007) (holding that contractual language "does not establish the nature of the employment relationship as a matter of law" for purposes of the FLSA). Instead, courts must examine the economic realities of the employment relationship rather than contractual labels or the intent of parties to determine employment status for the remedial purposes of the FLSA.  See e.g., *English v. Tex. Farm Bureau Bus. Corp.,* Index No. 17-cv-323, 2018 U.S. Dist. LEXIS 172930 *9 (W.D. Tx. July 9, 2018) (holding that "it does not matter that a contract with an entity exists because the FLSA's broad definition of "employee" is evaluated solely by consideration of the economic realities test"); *Artola v. MRC Express, Inc*., Index No. 14-cv-23219, 2015 U.S. Dist. LEXIS 130183 *4 (S.D. Fla. Sep. 25, 2015) (holding that, "[t]his economic reality inquiry discourages a formal approach. . . [c]ontract language is not given undue weight, as the parties' intentions are irrelevant"); *Dyrhaug v. Tax Breaks Inc*., Index No. 13-cv-1309, 2015 U.S. Dist. LEXIS 192813 *13 (D. AZ. Sept. 15, 2015) (holding that "the 'economic reality' controls regardless of whether contractual language purports to describe a working relationship").

Presently, in the absence of any discovery, including depositions or document production that sheds light on the amount of control Apple Bank exerted over Plaintiffs, Apple Bank instead relies entirely on the contractual language in its agreement with GRC that purports to divest Apple Bank of any responsibility over Plaintiffs.  Apple Bank also relies on the terms of the Consent Order and the MOU to bolster its claim that it operated independently from Plaintiffs.  However, as discussed in the cases above, Apple Bank's contract with GRC and the settlement agreements it entered into with the regulatory agencies are immaterial in determining whether Apple Bank actually "suffered" or "permitted" Plaintiffs to work or whether Apple Bank jointly employed Plaintiffs. Furthermore, as discussed below, even with the limited factual record available to Plaintiffs in this pre-discovery stage, facts exist that demonstrate that Apple Bank exercised both formal and functional control over Plaintiffs and the class of people they are trying to represent.

**B.      Apple Bank Exercised Formal Control Over Plaintiffs and Was a Joint Employer**

Rather than examining contractual language to determine whether an employment relationship exists, Courts in the Second Circuit must first apply the "formal control" test to ascertain whether the alleged employer: (i) had the power to hire and fire employees, (ii) supervised and controlled employee work schedules or conditions of employment, (iii) determined the rate and method of payment, and (iv) maintained employment records.  *See Carter v. Duchess Community College.,* 735 F.2d 8 (2d Cir. 1984); *Hart v. Rick's Cabaret Int'l*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013). In this case, it is clear that Apple Bank exercised formal control over the Plaintiffs and their colleagues.

**i.      Apple Bank's Documents Reflect that Apple Bank Had the Power to Fire Employees**

Although Apple Bank argues that it did not have the power to hire and fire the employees, the limited documentary and anecdotal evidence available to Plaintiffs at this pre-discovery stage

14

indicates that this assertion is not accurate.  For example, the Acceptable Use Policy signed by each of the Plaintiffs and similarly situated persons states, "I understand that upon any violation of this Acceptable Use policy I may be subject to disciplinary action by the Bank, up to and including termination of employment." *See* Dkt. No 42-11, at p. 8.  Importantly, the wording states that any disciplinary action would be taken by Apple Bank, not by the Contractor Defendants. It bears mention that Apple Bank's declarant, Susan Goro, submitted a sworn affidavit stating that "Apple Bank did not have the power to hire or fire GRC employees working on the Project." *See* Dkt. No. 46, at ¶ 5.  This sworn statement is directly and unambiguously contradicted by the Apple Bank's own Acceptable Use Policy and therefore casts doubt on Apple Bank's claim that it did not have the ability to at least fire Plaintiffs.

Furthermore, Apple Bank terminated a subset of the class of employees Plaintiffs are trying to represent when Apple Bank no longer needed those employees' services at the conclusion of the Project.  Indeed, in the context of employees who are "placed" with an employer through a temporary agency or staffing agency, the end of that placement is considered constructive termination, as the employee is no longer working or compensated once their work for the employer ends. *Liotard v. FedEx Freight Corp.*, Index No. 14-cv-2083, 2016 U.S. Dist. LEXIS 34754, at *17 (S.D.N.Y. Mar. 17, 2016).

Separately, the Plaintiffs each understood that they would be removed from the Project for any violation of the Acceptable Use Policy and would not be able to work on the Project without signing the Acceptable Use Policy. Curry Decl., at ¶ 27-29; Mazzitelli Decl., at ¶¶ 28-30. Additionally, because Apple Bank controlled access to its data and systems, access to which were essential to the performance of the Plaintiffs' work, if Apple Bank revoked access, that action would cause termination of the affected worker. Curry Decl., at ¶¶ 27-34; Mazzitelli Decl., at ¶¶

20-24.  Apple Bank therefore had both the ability and means to terminate any personnel from the Apple Bank Project.

Because the Plaintiffs would become unemployed upon termination from the Project and could neither expected to be shifted to other responsibilities at Apple Bank, nor shifted to an entirely different project with  Contractor Defendants, their circumstances are distinguishable from matters where plaintiffs remained employed after their reassignment was requested or their access or credentials were terminated.  In sum, it is clear from the documentary evidence that Apple Bank had the *de facto* power to terminate Plaintiffs' employment. Discovery is needed to determine whether Apple bank actually exercised this authority and either directly terminated anyone or asked GRC to terminate an employee *See Jean-Louis v. Metro Cable Communs., Inc.*, 838 F. Supp. 2d 111, 124 (S.D.N.Y. 2011) (holding that de facto power to fire employees can be used to establish formal control).

###    ii.    Apple Bank Supervised and Controlled Employee Schedules or Conditions of Employment

There is, at minimum, at least a disputed issue of material fact about whether Apple Bank controlled Plaintiffs' schedules or conditions of employment.  In cases where the proposed joint employer provides the scope of work and provides feedback as to the work performed, the proposed joint employer can be found to have controlled the employee's schedule. *See e.g.*, *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003).   "[C]ontrol of employees is central" in determining whether a defendant should be deemed an employer. *Herman*, 172 F.3d 135. Additionally, where a proposed joint employer provides the premises where work is performed, the proposed joint employer may be found to have controlled conditions of employment.  *Id.* (citing *Carter*, 735 F.2d at 12).  "Formal control does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control

16

of one's employees.  Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." *Hart*, 967 F. Supp. 2d 939; *see also Vasto*, 2017 U.S. Dist. LEXIS 178457, at *20-21. Throughout its filings, Apple Bank repeatedly claims that it had no responsibility to supervise or monitor "GRC Agents" and that it was not responsible for the time constraints that were imposed by the FDIC and NYSDFS.  However, from the BSA/AML Proposal that was created specifically for Apple Bank, it is clear that Apple Bank was more than a hands-off recipient of services provided by Plaintiffs and their colleagues.  *See e.g.,* Dkt. No 42-7.

Aside from the terms and conditions of the proposals and agreements between Apple Bank and GRC, Apple Bank actually reviewed and provided feedback on the work performed by Plaintiffs. *See* Mazzitelli Decl., at ¶¶ 65-67; Curry Decl., at ¶¶ 53-54.  The nature of the review and feedback provided was such that the critiques provided by Apple Bank influenced AMLs, TLs and QAs work product, and in particular the content of the SARs that were generated by the Plaintiffs and members of the purported class. *See* Mazzitelli Decl., at ¶¶ 65-67.  Furthermore, Plaintiffs' declarations show that Apple Bank determined whether the due diligence performed was sufficient; whether the customer identification program information was complete; and whether the SAR narrative was sufficiently detailed. *See* Mazzitelli Decl., at ¶ 67.  Moreover, if the timelines were not met, in violation of the Consent Order and Memorandum of Understanding, the party that would be most negatively impacted would be Apple Bank. *See infra* II(A).

Apple Bank relies on two cases *Jean-Louis*, 838 F. Supp. 2d 111 and *Godlewska v. HDA*, 916 F. Supp. 2d 246 (E.D.N.Y. 2013) in support of the claim that it did not control Plaintiffs' schedules or conditions of employment.  These cases are distinguishable from the instant Action.

In *Jean-Louis*, a key reason why the Court found that the alleged joint employer did not exercise sufficient control was that the plaintiff was not guaranteed assignments on any day in which he showed up to work, and that it was the primary employer, not the joint employer who decided which technician will work on specific assignments. *See Jean-Louis,* 838 F. Supp. 2d at 126. This fact is distinguishable from our case where Plaintiffs were not reliant on the Contractor Defendants for assignments and where Plaintiffs were on a set schedule and for the duration of the Project were guaranteed work every day on Apple Bank's premises. *See* Mazzitelli Decl., at ¶¶ 25, 31-34; Curry Decl., at ¶¶ 36-39.  Likewise, in *Godlewska*, where plaintiffs were home health aides who worked for a company that had a contract with New York City. The court determined that the alleged joint employer did not supervise and control the plaintiffs' schedules because only the direct employer decided whether the prospective patient needed services, and if so, solely decided whether to send the plaintiff to the patient's home. *See Godlewska,* 916 F. Supp. 2d at 259.  Again, in the instant Action, Plaintiffs were not entirely reliant on the Contractor Defendants for their daily schedule. *See* Curry Decl., at ¶ 17; Mazzitelli Decl., at ¶ 27.  For these reasons, there is, at minimum, a disputed issue of material fact as to whether Apple Bank controlled Plaintiffs' schedules and conditions of employment.

### iii.   Apple Bank Determined the Rate and Method of Payment

An employment relationship may exist where the proposed joint employer *de facto* set workers' wages even if it did not literally pay those workers. See e.g., *Rutherford*, 331 U.S. at 726 Here, the proposals and MSA between Apple Bank and the Contractor Defendants demonstrate that those parties together determined the cost that the Contractor Defendants would charge Apple Bank for Plaintiffs' services. Dkt. No 42-7, BSA/AML Proposal, *Lookback Review Workflows*; *Estimated Fees, Expenses & Timeline*. Plaintiffs' ultimate compensation, therefore, was based on

this agreement, thus Apple Bank indirectly determined Plaintiffs' rate of pay. Accordingly, Apple

Bank meets the third element of formal control.

### iv.    Apple Bank Maintained Employment Records

In the course of the Project, Apple Bank concedes that it received documentation of on-

boarding and off-boarding of each person, as well as signed copies of the Acceptable Use Policy.

Apple Bank also concedes that it received time sheets and verifications to demonstrate how much

money Apple Bank owed the Contractor Defendants.  Discovery has not yet begun so it is unclear

what other documents Apple Bank may have in its possession. Nevertheless, these employment

records are sufficient to establish the fourth and final factor in the formal control test, and there is,

at least, disputed issues of material fact as to whether Apple Bank exercised formal control over

Plaintiffs.

### C.    Apple Bank Jointly Employed Plaintiffs Because It Exercised Functional Control Over Them

The inquiry does not end with the *Carter* factors. "[T]he broad language of the FLSA, as

interpreted by the Supreme Court in *Rutherford*, demands that a district court look beyond an

entity's formal right to control the physical performance of another's work before declaring that

the entity is not an employer under the FLSA." *Zheng*, 355 F.3d 69. Even if there is no direct

control over workers, an employment relationship may be found if an employer "asserted control

whenever its interests were involved." *Fahs v. Tree-Gold Co-operative Growers of Florida, Inc.*,

166 F.2d 40 at 44-45 (5th Cir. 1948). Accordingly the Second Circuit has instructed courts to

examine the following six factors to ascertain whether an alleged joint employer has exercised

functional control over a plaintiffs: (i) whether the alleged joint employer's premises and

equipment were used for the plaintiff's works, (ii) whether the original employer had a business

that could or did shift work as a unit from one putative joint employer to another, (iii) the extent

19

to which Plaintiffs performed a discrete line job that was integral to the alleged joint employer's process or production, (iv) whether responsibility under the contract could pass from one subcontractor to another without material changes, (v) the degree to which the alleged joint employer or its agent supervised plaintiffs' work, and (vi) whether plaintiffs worked exclusively or predominantly for the purported joint employer. *Id.* Here, each the *Zheng* factors point toward an employment relationship; accordingly, the Court should deny Apple Bank's motion for summary judgment and allow discovery to proceed.

### i.    Plaintiffs Worked on Apple Bank's Premises and Used Their Equipment

Plaintiffs easily satisfy the first element of the functional control test because they worked on Apple Bank's premises and used Apple Bank's equipment.   "[S]hared use of premises and equipment may support the inference that a putative joint employer has functional control over the plaintiffs' work." *Zheng*, 355 F.3d at 72.   Ownership of the facilities where work occurred is "probative of joint-employment status for the obvious reason that without the land, the worker might not have work, and because a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors." *Antenor v. D & S Farms*, 88 F.3d 925, 937 (11th Cir. 1996) (citing *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) ("The cases must be rare where prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided.")).

Apple Bank does not seriously dispute that this element falls in favor of finding a joint employment relationship.

### ii.    Plaintiffs Worked Exclusively for the Contractor Defendants and Apple Bank While Working on the Project

The second element in the functional control tests asks whether the direct employer (here GRC, P&G, and PGX) has more than one client (the alleged joint employer) and whether the direct

employer shifted the Plaintiffs and their co-workers as a unit from one putative joint employer to another. *See Zheng*, 355 F.3d at 72.  While Apple Bank points out that the Contractor Defendants represented in their proposal that they have serviced "financial institutions such as Apple Bank," there is no evidence on the record that identifies who these other financial institutions are or when the Contractor Defendants performed work for them. Importantly, Apple Bank has not secured an affidavit from any of the Contractor Defendants with whom they had a contractual relationship to establish whether GRC, P&G, and PGX had other contracts to perform this type of work.  Simply put, there is no concrete evidence that establishes that either GRC, P&G, and PGX actually had other clients.  Certainly, during the duration of the projects the Contractor Defendants did not shift any of the Plaintiffs and assign them to another one of their clients to perform compliance reviews. Curry Decl., at ¶ 35-39; Mazzitelli Decl., at ¶¶ 31-35.  Accordingly, based on the evidence on record in this pre-discovery stage, the second element of the *Zheng* test for functional control has been satisfied.

### iii.   Plaintiffs Performed a Job That Was Integral to Apple Bank's Operations

Plaintiffs worked on a compliance project that Apple Bank was required to undertake by federal and state regulatory agencies.  It should go without saying that a bank's compliance program is a key element to its success and continued operation. Here Apple Bank concedes that the Project arose because of a Consent Order and MOU that it entered into with various regulators; however, Apple Bank has not yet disclosed the facts and circumstances that gave rise to the regulators' investigations.  Likewise, Apple Bank has not yet disclosed the consequences it would have faced if it had failed to conduct an adequate investigation in accordance with the terms of the Consent Order and MOU.  It is, however, fair to assume that Apple Bank's licensing was at stake if it had failed to comply with the terms of the Consent Order and MOU.  In other words, the successful completion of the Project had existential importance to Apple Bank.

21

Instead of acknowledging the significance of the work Plaintiffs performed for Apple Bank, Apple Bank attempts to argue that this element is not applicable outside of "production line employment situation." *See Hugee v. SJC Group, Inc.*, Index No. 13-cv-423, 2013 WL 4399226, at *9 (S.D.N.Y. Aug. 14, 2013). Apple Bank's reliance on this case is misplaced. As an initial matter, the *Hugee* court only said that this element "might apply with somewhat less vigor" where the parties are engaged in providing a service, not that this element should not apply. *Id*. In any event, in the present Action, Plaintiffs were not working as security guards, or as maintenance workers, or as cafeteria workers, jobs that are incidental to a bank's operations. Rather Plaintiffs worked as compliance offers who reviewed Apple Bank's actual transaction to ensure compliance with federal and state banking laws. They were doing the exact same work that Apple Bank's own internal and directly employed compliance workers performed. Mazzitelli Decl., at ¶ 68. Based on the foregoing, it is plainly evident that Plaintiffs performed a job that was integral to Apple Bank's operations, and as such the third element of the functional control test is satisfied.

### iv. Responsibility Could Pass from One Subcontractor to Another Without Material Changes

The fourth factor in the *Zheng* test for functional control asks whether employees are tied to an entity (the proposed joint employer) or to a supervisor. *See Zheng*, 355 F. 3d, at 74. If a supervisor was replaced "the *same* employees would continue to do the *same* work in the *same* place" then this factor weighs in favor of a determination of joint employment. Presently, there is no fact in evidence that either indicates outright, or even implies that Plaintiffs could not continue to work on the Apple Bank compliance review Project if Apple Bank terminated its contract with the Contractor Defendants and if the entity that replaced the Contractor Defendants hired Plaintiffs instead. In fact, the evidence available at this early stage in litigation indicates that the opposite is true. In this case, Phase II of the Project saw a change in the entity that contracted with Plaintiffs.

Specifically, the Plaintiffs and class members who worked on Phase I of the project contracted with Defendants P&G, while the Plaintiffs and class members who worked on Phase 2 of the project contracted with Defendants PGX. Curry Decl., at ¶ 23. Yet, despite this change, the Plaintiffs continued working for the benefit of Apple Bank. Moreover, throughout both phases of the Project, the supervisors within the GRC organizational chart changed. Mazzitelli Decl., at ¶ 53. None of the changes affected the day-to-day operations. Mazzitelli Decl., at ¶ 53. Accordingly, this factor weighs in favor of finding that Apple Bank jointly employed the Plaintiffs and their colleagues.

  **v. Apple Bank Exercised Significant Control Over Work Produced by Plaintiffs and Their Colleagues**

   As discussed in connection with the *Carter* test for formal control, Apple Bank exercised control over Plaintiffs and the class. Apple Bank provided feedback about the Plaintiffs' work and did so on a frequent basis. *See supra* II(B)(ii); *see also* Curry Decl., at ¶¶ 52-54; Mazzitelli Decl., at ¶¶ 65-67. The feedback was significant enough to merit a mention in the Contractor Defendants' BSA/AML Proposal as a factor that could impact the deliverables timeline. *See* Dkt. No 42-7. The control factor in the *Zheng* test therefore weighs in favor of a finding that Apple Bank was a joint employer.

  **vi. Plaintiffs and Their Colleagues Worked Exclusively on the Apple Bank Project**

   In situations where workers worked full-time for a purported joint employer for extended periods of time or where workers provided services exclusively to a purported joint employer, such arrangements weigh toward finding in favor of a joint employment relationship. *See Godlewska*, 916 F. Supp. 2d at 265 (discussing extended and repeated periods of employment weighing in favor of a joint employer relationship)*; Jean-Louis*, 838 F. Supp. 2d at 135 (finding that exclusive employment weighed in favor of finding a joint employment relationship). Here, each of the

Plaintiffs worked full-time, exclusively for Apple Bank for the duration of their involvement with the Project. *See* Curry Decl., at ¶ 4; Pilgrim Decl., at ¶¶ 7-8; Mazzitelli Decl., at ¶ 12.  The fact that Plaintiffs' average work weeks exceeded sixty (60) hours on-site, on Apple Bank's premises, weighs heavily in favor of a finding that Apple Bank jointly employed Plaintiffs and their colleagues.

III.   THE THREE-YEAR STATUTE OF LIMITATIONS PERIOD SHOULD BE APPLIED IN THIS CASE

The statute of limitations under the FLSA is extended from two to three years when, as here, Defendants violated the FLSA willfully, i.e., with guilty knowledge or reckless disregard that the conduct was prohibited. *See* 29 U.S.C. § 255(a). Willfulness may be found on the basis that Defendants were fully aware of the fact that Plaintiffs were not being adequately compensated for their work. *He v. Home on 8th Corp.*, No. 09-cv-5630, 2014 U.S. Dist. LEXIS 114605, at *22 (S.D.N.Y. Aug. 13, 2014); *see also Cherif v. Sameday Delivery Corp.*, No. 13-cv-1341, 2015 U.S. Dist. LEXIS 133807, at *12-13 (E.D.N.Y. Sept. 30, 2015) (applying three-year statute of limitations to notice period of FLSA claim when willfulness was in dispute); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (also applying three-year statute of limitations to notice period of FLSA claim when willfulness was in dispute).

"An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) (citing *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997)).  In this case, Apple Bank knew or had reason to know that overtime was being worked, based on the hours the bank held its premises open; the number of workers during any given week; and the hours of work the Contractor Defendants billed.  Nonetheless, Apple Bank did not appear to take any steps to prevent overtime work.  Rather, Apple Bank enabled overtime work, yet still

24

failed to pay the Plaintiffs appropriately. Furthermore, while Apple Bank argued that it should bear no responsibility for a plan designed by GRC, it must be noted that the detailed plans provided by GRC that were signed by Apple Bank management actually provide evidence that Apple Bank knew or had reason to know of the existence of possible overtime liability exposure. *See* Dkt. No 42-7. Accordingly, discovery should be permitted surrounding Apple Bank's knowledge of the time Plaintiffs were working for Apple Bank, and a three year statute of limitations should be applied.

## CONCLUSION

At this juncture, summary judgment in this matter is inappropriate. Discovery has not commenced and questions of fact including but not limited to: (1) Apple Bank's ability to fire Plaintiffs; (2) the extent of feedback Apple Bank provided; (3) which records did Apple Bank maintain; (4) what role did Plaintiffs' work play in Apple Bank's "production line"; (5) to what extent did the work performed by Plaintiffs change when P&G replaced GRC; (6) whether Apple Bank took any steps to prevent improperly compensated overtime work. Accordingly, Apple Bank's motion for summary judgment should be denied and discovery should commence.

Dated: Stamford, Connecticut
January 19, 2021

Respectfully submitted,

KLEIN LAW GROUP OF NY PLLC

By: /s/ Julia Klein
        Julia Klein
        120 East 79th Street, Suite 1A
        New York, New York 10075
        347.292.8170
        jklein@kleinlegalgroup.com
        Attorneys for Plaintiff