UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
KENNETH CURRY, RICARDO MAZZITELLI,
JACQUELINE BROWN PILGRIM, on behalf of
themselves and others similarly situated,   Case No. 20-cv-06985 (LTS)(SLC)

                              Plaintiffs,

   -against-

P&G AUDITORS AND CONSULTANTS, LLC; GRC
SOLUTIONS, LLC; PGX, LLC; AND APPLE
BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,

                            Defendants.
------------------------------------------------------------------- x

## DEFENDANT APPLE BANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE BANK'S MOTION FOR SUMMARY JUDGMENT

**INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP**
150 East 42nd Street, Floor 19
New York, New York 10017
(212) 907-9600

*Attorneys for Defendant*
*Apple Bancorp, Inc. d/b/a Apple Bank for Savings*

# TABLE OF CONTENTS

|   | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 1 |
|    I.  DISPOSITIVE ADMISSIONS REGARDING THE FORMAL AND FUNCTIONAL CONTROL FACTORS CONFIRM THE BANK IS NOT A JOINT EMPLOYER | 1 |
|    II.  PLAINTIFFS' SPECULATIVE REQUEST FOR DISCOVERY IS INSUFFICIENT TO JUSTIFY DENYING SUMMARY JUDGMENT | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Godlewska v. Human Development Ass'n, Inc.*,
   916 F. Supp. 2d 246 (E.D.N.Y. 2013), *aff'd*, 561 Fed. App'x 108 (2d Cir. 2014)....................8

*Hoodho v. Holder*,
   558 F. 3d 184 (2d Cir. 2009)........................................................................................3

*Jacobson v. Comcast Corp.*,
   740 F. Supp. 2d 683 (D. Md. 2010).............................................................................2, 4

*Jean-Louis v. Metro. Cable Commc'n, Inc.*,
   838 F. Supp. 2d 111 (S.D.N.Y. 2011)..................................................................3, 4, 6, 8

*Lawrence v. Adderley Indus., Inc.*,
   No. CV-09-2309 (SJF)(EB), 2011 WL 666304 (E.D.N.Y. Feb. 11, 2011)...........................2

*National Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*,
   265 F.3d 97 (2d Cir. 2001).........................................................................................10

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994)....................................................................................9, 10

*Sasson v. Mann*,
   No. 15-CV-6601 (CS), 2019 WL 3532155 (S.D.N.Y. Aug. 2, 2019).....................................3

*Tennenbaum Cap. Partners LLC v. Kennedy*,
   No. 07 CIV. 9695 (LTS)(DCF), 2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009),
   *aff'd sub nom.*, *Tennenbaum Cap. Partners LLC v. Kennedy*,
   372 F. App'x 180 (2d Cir. 2010).....................................................................................9

*Zheng v. Liberty Apparel Co. Inc.*,
   355 F.3d 61 (2d Cir. 2003)....................................................................................6, 7, 8

## PRELIMINARY STATEMENT

Apple Bank, in its moving Memorandum, addressed the "formal" and "functional" control factors that Federal Courts, particularly in the Second Circuit, consider to determine whether an entity alleged to be a "joint employer" meets the criteria to be so characterized. Declarations made under penalty of perjury by each Plaintiff, and the Rule 56.1 Counter-Statement of the Co-Defendants, confirm that the Bank was not a joint employer.

## ARGUMENT

### I. DISPOSITIVE ADMISSIONS REGARDING THE FORMAL AND FUNCTIONAL CONTROL FACTORS CONFIRM THE BANK IS NOT A JOINT EMPLOYER

Regarding the first formal control factor, (*see* ECF No. 41, "Bank MOL," pp. 11, 12), Plaintiffs admit that Apple Bank did not hire or fire Plaintiffs. Plaintiff Pilgrim asserts in a Declaration dated December 10, 2020 (ECF No. 52, "Pilgrim Dec.") that she was hired by PGX on or around April 26, 2018 to work on the Bank Project (Pilgrim Dec., ¶ 2); PGX paid her directly (*id.*, ¶¶ 4, 13); she submitted her time sheets through a PGX portal (*id.*, ¶ 13); and, *she* resigned from the Project by June 11, 2018 (ECF No. 1, ¶ 127). Plaintiff Mazzitelli asserts in a Declaration dated January 19, 2021 (ECF No. 78, "Mazz. Dec.") that he was hired by GRC on or around June 13, 2017 to work on the Bank Project (Mazz. Dec., ¶ 2); GRC paid him (*id.*, ¶ 5); he submitted his time sheets through a GRC portal (*id.*, ¶ 36); and, he was terminated from the Project by GRC in February 2018 (ECF No. 1, ¶ 116). Plaintiff Curry asserts in a Declaration dated January 19, 2021 (ECF No. 77, "Curry Dec.") that he was interviewed by a project manager for GRC on or around October 6, 2017 for his position on the Project, that P&G and GRC required him to complete an employment application, and that on October 6, 2017 an employee of P&G and GRC told him in writing that the GRC project manager wanted to hire him (Curry Dec. ¶¶ 5-7); he submitted his

time sheets to the Contractor Defendants (*id.*, ¶ 48), meaning P&G, PGX and GRC (*id.*, ¶ 3); and, PGX terminated his employment by August 26, 2018 (*id.*, ¶ 26).

Apple Bank's requirement that Plaintiffs sign the Bank's Acceptable Use Policy in order to access Bank systems does not indicate the power to fire Plaintiffs. Such security or quality control measures seeking to protect the Bank and its customers' information does not equate to an ability to terminate. *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 689-90 (D. Md. 2010); *Lawrence v. Adderley Indus., Inc.*, No. CV-09-2309 (SJF)(EB), 2011 WL 666304, at *9 (E.D.N.Y. Feb. 11, 2011). Despite Plaintiffs' unsupported statement that discovery is needed to determine if Apple Bank ever terminated or requested that GRC terminate one of its employees, it is undisputed that Apple Bank did not terminate Plaintiffs: Pilgrim resigned from the Project, Mazzitelli was terminated by GRC, and Curry was terminated by PGX. (ECF No. 1, ¶¶ 127, 116; Curry Dec. ¶ 26.)

Regarding the second formal control factor, (*see* Bank MOL, pp. 12-14), Plaintiffs admit that Apple Bank did not supervise or control Plaintiffs. Curry asserts that "[t]hroughout my employment period [on the Project], *the Contractor Defendants* [defined by him as P&G, GRC and PGS (Curry Dec., ¶ 3)] *supervised, directed and controlled my work.* I and all of the other AMLs worked under the supervision of a Contractor Defendants supervisor who reviewed our work and answered questions we had." (*Id.*, ¶ 47.) (Emphasis added.) Mazzitelli asserts that "[t]hroughout my employment period [on the Project], *GRC, directed and controlled my work.* The work performed by AMLs was reviewed by QAs, who were similarly employed by GRC. AMLs and QAs were supervised by TLs, who were also similarly employed by GRC. TLs received their instructions from GRC, including Deepa Keswani Teckchandani, a project manager for GRC." (Mazz. Dec., ¶ 52.) (Emphasis added.) Pilgrim asserts that "PGX required me to work

2

664843_5/00452-0209

a minimum of 65 hours per week . . ." (Pilgrim Dec., ¶ 8). Mazzitelli also asserts that "GRC required me to work a minimum of 65 hours per week" (Mazz. Dec., ¶ 13). Curry, too, asserts that "P&G and GRC required me to work more than 40 hours per week" (Curry Dec., ¶ 19), and that PGX, upon replacing P&G and GRC "as the party named on [his] employment agreement" (*id.*, ¶ 24), "continued P&G and GRC's policy of continuing to require me to work no fewer than 65 hours for each week that I worked for them" (*id.*, ¶ 25). These unequivocal assertions, devoid of any speculation, made by each Plaintiff under penalty of perjury, confirm that the Contractor Defendants, *not Apple Bank*, supervised, directed, and controlled their work, and required each of them to work a minimum of 65 hours per week. These judicial admissions regarding the Contractor Defendants' total control over Plaintiffs' work are formal concessions "'that have the effect of withdrawing [this dispositive] fact from issue and dispensing wholly with the need for proof of the fact.'" *Sasson v. Mann*, No. 15-CV-6601 (CS), 2019 WL 3532155, at *10 (S.D.N.Y. Aug. 2, 2019) (quoting *Hoodho v. Holder*, 558 F. 3d 184, 191 (2d Cir. 2009)). That Apple Bank "reviewed and provided feedback" on work performed, (Pl. MOL, p. 17), shows only "that [Apple Bank] ma[de] efforts to ensure that [GRC] is providing quality service; the evidence does not show that [Apple Bank] control[ed] the day-to-day manner in which [GRC employees] provide that service." *Jean-Louis v. Metro. Cable Commc'n, Inc.*, 838 F. Supp. 2d 111, 127 (S.D.N.Y. 2011).

Curry, regarding Apple Bank, equivocates by also alleging, *upon information and belief*, "Apple Bank directed GRC to force us to work extremely long hours in order to complete the projects within its timeframe." (Curry Dec., ¶ 15.) This speculative allegation is insufficient to create a disputed issue of fact and stands in stark contrast to his unequivocal assertions above regarding P&G and GRC. Curry's equivocal allegation regarding the Bank is also contradicted by the fact that any "timeframe" to which he refers was not the Bank's timeframe. Timeframes
3

664843_5/00452-0209

relating to the Project were driven generally by the FDIC and the NYSDFC and specifically by GRC in its undisputed role as an independent third-party auditor. *See* the Contractor Defendants' Rule 56.1 Statement (ECF No. 72, ¶¶ 12, 13). For example, GRC's Proposal to Apple Bank to Perform a BSA/AML Transaction Look Back Review provides, among other things, that: "Based on our experience in this type of initiative, as well as our current understanding of your structure, operations, and requirements, our estimates are: Phase I Timeline: 10 Weeks - 5/9/16 - 7/15/16" and "Phase II Timeline: 10 Weeks - 7/25/16 – 10/17/16." (ECF No. 42, Affidavit of Dean G. Yuzek, sworn to December 3, 2020 ("Yuzek Aff."), Ex. G, p, 11.) GRC further informed the Bank that: "The duration and actual hours needed to complete both phases may vary based upon how long it takes to gather the information," and related factors. (*Id.*) As noted above, GRC admits as undisputed its role as an independent third-party auditor as mandated by the FDIC and NYSDFS, and its awareness of the time-sensitive constraints under which *it* was required to work. (ECF No. 72, ¶¶ 12, 13.) Plaintiffs do not assert otherwise.

Regarding the third formal control factor, (*see* Bank MOL, pp. 15, 16), as addressed above and below, Plaintiffs admit that their rate and method of payment were not determined by Apple Bank. *See also* ECF No. 72, ¶¶ 9, 11, 14-17, 25-34. GRC was solely responsible for determining the rate and method of payment to Plaintiffs. Plaintiffs' argue that "Apple Bank *indirectly* determined Plaintiffs' rate of pay" because Plaintiffs' "ultimate compensation" was based on GRC's estimated fees in its proposals to Apple Bank (Pl. MOL, pp. 18-19.) (Emphasis added.) But "the test is whether a putative joint employer *determines* pay rates, not whether it *affects* them. To infer joint employment from the latter "would dramatically expand the FLSA to subsume traditional independent contractor relationships" *Jean–Louis*, 838 F. Supp. 2d at 129-30, citing *Jacobson*, 740 F. Supp.2d at 692.

4

Regarding the fourth formal control factor, (*see* Bank MOL, p. 16), Plaintiffs fail to dispute that Apple Bank did not maintain Plaintiffs' employment records. Plaintiffs merely assert without knowledge, in their Declarations, that Apple Bank, *upon information and belief*, routinely retained copies of GRC employee time records, an immaterial assertion even if true. (Pilgrim Dec., ¶ 15; Mazzitelli Dec., ¶ 39; Curry Dec., ¶ 51.) Curry, regarding time records, states that the Contractor Defendants would receive and sign "time sheets" but speculates, *upon information and belief*, that the Bank would receive them from the Contractor Defendants "for review," to "ascertain how much money Apple Bank owed the Contractor Defendants to pay for our services." (Curry Dec., ¶¶ 48-50.) *If* so, the process of Apple Bank reviewing time records approved by the Contractor Defendants to determine if the Bank was receiving from GRC what the Bank was paying for does not check any box that would render Apple Bank a joint employer. Susan Goro, an officer of Apple Bank, in her sworn Affidavit, has confirmed that the Bank was not involved in the process of hiring or firing plaintiffs, and asserts based on first-hand knowledge, *not upon information and belief*, that the Bank neither prepared nor retained records of employment for any GRC employees, did not pay the GRC employees, or provide them with tax forms. (ECF No. 43, ¶¶ 5-7.) This is all confirmed as undisputed by the Contractor Defendants. (ECF No. 72, ¶¶ 25-31.)

Plaintiffs fare no better under the six related functional control factors, which comprise an "economic reality" test. The first functional control factor, (*see* Bank MOL, pp. 16, 17), whether the putative joint employer's premises and equipment were used for Plaintiffs' work, does not avail Plaintiffs. To undertake its work, GRC required access to the Bank's systems and information technology resources. (*See* ECF No. 43, ¶¶ 3, 4; *see also* Yuzek Aff., Ex. G, p. 4, ¶ 2 ("Project Management") and ¶ 3 ("Information Gathering"), underscoring GRC's need for "physical records" of the Bank, Bank "system access, data records," and "access as required to

5

support the transaction analysis," as well as "identify[ing] data extract requirements from the Bank's system(s)." To enable GRC to access the Bank's information technology resources and systems, the Bank set the GRC employees up with temporary workstations at a Bank branch which were partitioned from the offices of Bank employees. (ECF. No. 44, ¶¶ 3-5.) As the Second Circuit stated in *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003), "shared premises" are not "anything close to a perfect proxy for joint employment . . . " This too is all confirmed as undisputed by the Contractor Defendants. (ECF No. 72, ¶¶ 35-38.)

Regarding the second functional control factor, (*see* Bank MOL, pp. 17, 18), plaintiffs who work for an employer and can shift as a unit from one putative joint employer to another, like Plaintiffs, are hard-pressed to characterize a third party, like Apple Bank, which engages their employer, like GRC, as a joint employer. As the Second Circuit has stated, "a subcontractor [such as GRC] that seeks business from a variety of contractors [such as the Bank among many other financial institutions] is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client." *Zheng*, 355 F.3d at 72. GRC seeks business from a variety of institutions, advertising itself as "a trusted resource to financial institutions by providing consultative services to assess the efficiency and technology used by banks to monitor Customer Identification Program, Bank Secrecy Act, Anti-Money Laundering, Office of Foreign Assets Control program, and other risk-based regulations." (Yuzek Aff., Exs. D at p. 3 and F at p. 3.)[1] Any suggestion by Plaintiffs that the Bank's engagement of GRC was a subterfuge arrangement is contradicted by the undisputed fact that the FDIC and the NYSDFS required the Bank to "engage a qualified firm" that was "acceptable" to the Regional Director of the FDIC and the Superintendent of the

---

[1] Plaintiffs distort this factor, making it about themselves. (*See* Pl. MOL, p. 21, Curry Dec. at ¶¶ 35-37, and Mazz Dec. at ¶¶ 31-33.) Whether Plaintiffs moved from project to project during or after the Bank Project is irrelevant. This factor relates to whether GRC *could* shift its workers from one *putative* joint employer to another; *not* whether Plaintiffs "actually shifted from one employer to another." *Jean-Louis*, 838 F. Supp. 2d at 133.

664843_5/00452-0209

NYSDFS, and therefore, *for that reason*, engaged GRC, *not* to evade requirements of the FLSA or NYLL. (Yuzek Aff., Exs. A, section 6(a), and B, section 6(a).)

Regarding the third functional control factor, (*see* Bank MOL, pp. 18, 19), Plaintiffs' position is also undercut by the fact that work on projects, such as the Project, is frequently outsourced to maintain the integrity of the review process. (*See Zheng*, 355 F. 3d at 73, regarding the significance of "industry custom and historical practice.") The FDIC Consent Order and the NYSDFS MOU, referred to above, are in accord, including with regard to the integrity of the review process by mandating the Bank's engagement of a third-party qualified firm (Yuzek Aff., Exs. A, section 6(a), and B, section 6(a)). So too GRC's solicitation of other financial institutions, quoted above, offering the same services to them as GRC brought to bear for Apple Bank, while stressing the need for independence. (*Id.*, Exs. C, at p. 3, ¶ 4, "Non-Solicitation," D., p. 7 (3rd paragraph), F, p. 8 (1st paragraph), and G, p. 11.) Under a Federal Regulatory and Statutory framework, and Federal and State directives mandating independent testing, it is common practice for financial institutions to engage third-party entities such as GRC to provide independent review and validation of BSA, AML and OFAC compliance systems. (*See* ECF No. 19, ¶¶ 50-51, 156-60.)

Regarding the fourth functional control factor, (*see* Bank MOL, p. 19), Plaintiffs do not dispute, nor can they, that they "work[ed] for an entity (the purported joint employer) only to the extent that their direct employer," here GRC, "is hired by that entity," a fact that "does not in any way support the determination that a joint employment relationship exists." *Zheng*, 355 F.3d at 74. There is nothing to suggest Plaintiffs could continue working on Apple Bank-related issues after the Bank's engagement with GRC ended. In fact, Apple Bank would have breached its agreement with GRC if the Bank had made an offer of employment to an existing or former

7

employee of GRC, or had even "engage[d] in a discussion" about employment, and any such solicitation would have subjected the Bank to penalties. (Yuzek Aff., Exs. C, at p. 3, ¶ 4, "Non-Solicitation," D., p. 7 (3rd paragraph), F, p. 8 (1st paragraph), and G, p. 11.)

The fifth functional control factor, (*see* Bank MOL, p. 20), regarding supervision of Plaintiffs and other employees of GRC, mirrors the second formal control factor (*see* Bank MOL, pp. 12-14), has been extensively addressed above. This functional control factor has been described as "'largely the same' as the inquiry under the second *Carter* [formal control] factor and is *the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs.*" *Godlewska v. Human Development Ass'n, Inc.*, 916 F. Supp. 2d 246, 264 (E.D.N.Y. 2013), *aff'd*, 561 Fed. App'x 108 (2d Cir. 2014) (quoting *Jean-Louis*, 838 F. Supp. 2d at 126 n. 7). (Emphasis added.) As established in the foregoing discussion of the second formal control factor, each named Plaintiff, in Declarations made under penalty of perjury, has admitted that the Contractor Defendants, *not* Apple Bank, supervised, directed and controlled their work. Regarding this "most relevant" functional control factor, the criterion is now emphatically checked in favor of the Bank; so too, the other preceding criteria.

The final functional control factor, (*see* Bank MOL, pp. 20, 21), differentiates between a situation in which the "joint employer may *de facto* become responsible . . . for the amount workers are paid and for their schedules . . . [and situations] where a subcontractor performs merely a majority of its work for a single customer." *Zheng*, 355 F.3d at 75. As addressed regarding the first through fourth formal control factors, GRC had total uninterrupted control of Plaintiffs' rate and method of payment, and determined Plaintiffs' schedules and the timelines for their work, just as GRC did with respect to every Data Analyst, BSA Analyst, Project Manager and Managing Director assigned by GRC to the Project. (Yuzek Aff., Ex. G, pp. 7, 10, 11.)

8

Except *only* for the characterization of Plaintiffs as "employees" of the Contractor Defendants, such Defendants admit in their Rule 56.1 Statement that "GRC designed the plan for implementing the Project, including the estimated hours GRC expected its Agents to work" (ECF No. 72 ¶ 11); "Apple Bank neither controlled nor dictated the days or the number of hours GRC employees worked ..." (*Id.*, ¶ 15); "Apple Bank was not involved in the process of hiring or terminating GRC employees" and "did not have the power" to do so (*Id.*, ¶¶ 23, 24); "Apple Bank did not prepare or retain records of employment for any GRC employee" (*Id.*, ¶ 25); "Apple Bank did not pay the GRC employees" (*Id.*, ¶ 30); "Apple Bank was obligated to provide GRC employees with access to Bank systems and information technology resources to perform their agreed-upon scope of work," and "required" them, "like all personnel affiliated with third parties, to sign its Acceptable Use Policy for security purposes" (*Id.*, ¶¶ 35, 36); and, "[t]o enable GRC employees to perform their work, Apple Bank provided them, at a Bank branch, with temporary workstations" (*Id.*, ¶ 37).

## II. PLAINTIFFS' SPECULATIVE REQUEST FOR DISCOVERY IS INSUFFICIENT TO JUSTIFY DENYING SUMMARY JUDGMENT

This is *not* an action where the evidence supporting Apple Bank's position lies only in the Bank's hands. As this Court has made clear, "Rule 56(f) [now 56(d)] is not a shield against all summary judgment motions and a 'bare assertion' that evidence supporting a party's allegations lies in the hands of the opposing party is insufficient to justifying denying a summary judgment motion." *Tennenbaum Cap. Partners LLC v. Kennedy*, No. 07 CIV. 9695 (LTS)(DCF), 2009 WL 2913679, at *3 (S.D.N.Y. Sept. 11, 2009), *aff'd sub nom.*, *Tennenbaum Cap. Partners LLC v. Kennedy*, 372 F. App'x 180, at *3 (2d Cir. 2010) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).) Plaintiffs' tepid allegations in their Declarations regarding Apple Bank, made upon information and belief, fail to explain "how the facts sought through discovery

9

are reasonably expected to create a genuine issue of material fact," (*id.*), particularly in light of Plaintiffs' forceful assertions, made under penalty of perjury, regarding their work having been supervised, directed and controlled by the Contractor Defendants. Neither Plaintiffs nor their attorney have shown, by affidavit or declaration as required, that, for specified reasons, they cannot present facts essential to justify their opposition to the Bank's motion. (*Id.*, and FRCP 56(d).) Even where a Rule 56(d) motion is properly supported, a District Court may refuse to allow discovery "if it deems the request to be based on speculation as to what potentially could be discovered." *Id.* (quoting *National Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*, 265 F.3d 97, 117 (2d Cir. 2001).) This applies as well to Plaintiffs' inability to support an extension of the limitations period from two to three years, another basis for judgment in the Bank's favor regarding FLSA claims.

## CONCLUSION

For the foregoing reasons, Apple Bank is not a proper party to this action. Defendant Apple Bank respectfully requests that the Court grant its motion for summary judgment.

Dated: New York, New York
February 4, 2021

**INGRAM YUZEK GAINEN CARROLL
& BERTOLOTTI, LLP**

By: _____
Dean G. Yuzek (dyuzek@ingramllp.com)
Jennifer B. Zourigui (jzourigui@ingramllp.com)
Amanda B. Grannis (agrannis@ingramllp.com)
150 East 42nd Street, 19th Floor
New York, New York, 10017
(212) 907-9600
