UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

KENNETH CURRY, RICARDO MAZZITELLI
and JACQUELINE BROWN-PILGRIM,

       Plaintiffs,

    - against -

P&G AUDITORS AND CONSULTANTS,
LLC, GRC SOLUTIONS, LLC, PGX, LLC and
APPLE BANCORP, INC,

       Defendants

    - and -

PGX, LLC,

      Crossclaim Plaintiff,

    - against -

KDC CONSULTING, LLC, KENNETH
CURRY (IN HIS CAPACITY AS MANAGING
MEMBER OF KDC CONSULTING, LLC),
BROPIL CONSULTING, LLC, JACQUELINE
BROWN-PILGRIM (IN HER CAPACITY AS
MANAGING MEMBER OF BROPIL
CONSULTING, LLC), and DENNIS PILGRIM
(IN HIS CAPACITY AS MANAGING
MEMBER OF BROPIL CONSULTING, LLC),

      Crossclaim
      Defendants.

-------------------------------------------------------------- x

Case No. 20-cv-06985 (LTS)(SLC)

**FIRST AMENDED ANSWER
AND CROSSCLAIMS**

   Defendants P&G Auditors and Consultants, LLC ("P&G"), GRC Solutions, LLC

("GRC") and PGX, LLC ("PGX," and referred to collectively with P&G and GRC as

"Contractor Defendants"), by and through their undersigned counsel, hereby submit their answer

to the allegations set forth in the complaint (the "Complaint") filed by the plaintiffs Kenneth

Curry ("Curry"), Ricardo Mazzitelli ("Mazzitelli") and Jacqueline Brown-Pilgrim ("Brown-

Pilgrim," referred to collectively with Curry and Mazzitelli as "Plaintiffs").

1.      The allegations in Paragraph 1 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the Fair Labor Standards Act ("FLSA"), deny the remaining allegations in Paragraph 1 of the Complaint, and specifically deny that Plaintiffs are entitled to any of the relief sought therein.

2.      The allegations in Paragraph 2 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the New York Labor Law ("NYLL"), deny the remaining allegations in Paragraph 2 of the Complaint, and specifically deny that Plaintiffs are entitled to any of the relief sought therein.

3.      The allegations in Paragraph 3 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the FLSA, deny the remaining allegations in Paragraph 2 of the Complaint, and specifically deny that Plaintiffs are entitled to any of the relief sought therein.

4.      The allegations in Paragraph 4 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants admit that the Complaint purports to assert claims under the FLSA and state law, and deny the remaining allegations in Paragraph 4 of the Complaint.

5.      The allegations in Paragraph 5 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

6.      Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 6 of the Complaint, and therefore deny it.

7.      Contractor Defendants deny the allegation in Paragraph 7 of the Complaint.

8.      Contractor Defendants deny the allegations in Paragraph 8 of the Complaint.

9.      The allegations in Paragraph 9 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

10.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 10 of the Complaint, and therefore deny it.

11.     Contractor Defendants deny the allegation in Paragraph 11 of the Complaint.

12.     Contractor Defendants deny the allegations in Paragraph 12 of the Complaint.

13.     The allegations in Paragraph 13 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

14.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 14 of the Complaint, and therefore deny it.

15.     Contractor Defendants deny the allegation in Paragraph 15 of the Complaint.

16.     Contractor Defendants deny the allegations in Paragraph 16 of the Complaint.

17.     The allegations in Paragraph 17 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

18.     P&G admits the allegation in Paragraph 18 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 18 of the Complaint, and therefore deny them.

19.     The allegations in Paragraph 19 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, P&G denies the allegation in Paragraph 19 of the Complaint, and GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 19 of the Complaint, and therefore deny them.

20.     P&G denies the allegation in Paragraph 20 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 20 of the Complaint, and therefore deny them.

21.     P&G denies the allegation in Paragraph 21 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 21 of the Complaint, and therefore deny them.

22.     P&G denies the allegation in Paragraph 22 of the Complaint.  GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 22 of the Complaint, and therefore deny them.

23.     GRC denies the allegation in Paragraph 23 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 23 of the Complaint, and therefore deny them.

24.     The allegations in Paragraph 24 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them,

and P&G and PGX lack knowledge or information sufficient to form a belief as to their accuracy, and therefore deny them.

25.     GRC denies the allegation in Paragraph 25 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 25 of the Complaint, and therefore deny them.

26.     GRC denies the allegation in Paragraph 26 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 26 of the Complaint, and therefore deny them.

27.     GRC denies the allegation in Paragraph 27 of the Complaint.  P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 27 of the Complaint, and therefore deny them.

28.     PGX admits the allegation in Paragraph 28 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 28 of the Complaint, and therefore deny them.

29.     The allegations in Paragraph 29 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, PGX denies the allegation in Paragraph 29 of the Complaint, and P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 29 of the Complaint, and therefore deny them.

30.     PGX denies the allegation in Paragraph 30 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 30 of the Complaint, and therefore deny them.

31.     PGX denies the allegation in Paragraph 31 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 31 of the Complaint, and therefore deny them.

32.     PGX denies the allegation in Paragraph 32 of the Complaint.  P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 32 of the Complaint, and therefore deny them.

33.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 33 of the Complaint, and therefore deny them.

34.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 34 of the Complaint, and therefore deny them.

35.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 35 of the Complaint, and therefore deny them.

36.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 36 of the Complaint, and therefore deny them.

37.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 37 of the Complaint, and therefore deny them.

38.     The allegations in Paragraph 38 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

39.     PGX and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 39 of the Complaint, and therefore deny them. P&G admits the allegations in Paragraph 39 of the Complaint.

40.     PGX and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 40 of the Complaint, and therefore deny them. GRC admits the allegations in Paragraph 40 of the Complaint.

41.     P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 41 of the Complaint, and therefore deny them. PGX admits the allegations in Paragraph 41 of the Complaint.

42.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 42 of the Complaint, and therefore deny them.

43.     The allegations in Paragraph 43 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

44.     Contractor Defendants deny the allegations in Paragraph 44 of the Complaint.

45.     Contractor Defendants deny the allegations in Paragraph 45 of the Complaint.

46.     Contractor Defendants deny the allegations in Paragraph 46 of the Complaint.

47.     Contractor Defendants deny the allegations in Paragraph 47 of the Complaint.

48.     Contractor Defendants deny the allegations in Paragraph 48 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 48 of the Complaint that concern Apple Bank.

49.     Contractor Defendants deny the allegations in Paragraph 49 of the Complaint.

50.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 50 of the Complaint, and therefore deny them.

51.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 51 of the Complaint, and therefore deny them.

52.     Contractor Defendants deny the allegations in Paragraph 52 of the Complaint.

53.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 53 of the Complaint, and therefore deny them.

54.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 54 of the Complaint, and therefore deny them.

55.     The allegations in Paragraph 55 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

56.     Contractor Defendants admit that Plaintiffs have purported to commence this action as a collective action under the FLSA, and deny all remaining allegations in Paragraph 56, and specifically deny that treatment of this matter as a collective under the FLSA is appropriate.

57.     The allegations in Paragraph 57 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

58.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 58 of the Complaint, and therefore deny them, and specifically deny that any of the Contractor Defendants were under a duty to pay overtime premiums to any of the Plaintiffs.

59.     Contractor Defendants deny the allegations in Paragraph 59 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 59 of the Complaint that concern Apple Bank.

60.     Contractor Defendants deny the allegations in Paragraph 60 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 60 of the Complaint that concern Apple Bank.

61.     Contractor Defendants deny the allegations in Paragraph 61 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 61 of the Complaint that concern Apple Bank.

62.     Contractor Defendants admit that Plaintiffs have purported to commence this action as a class action under the NYLL and Rule 23 of the Federal Rules of Civil Procedure, and deny all remaining allegations in Paragraph 62, and specifically deny that treatment of this matter as a class under Rule 23 is appropriate.

63.     The allegations in Paragraph 63 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

64.     Contractor Defendants deny the allegations in Paragraph 64.

65.     The allegations in Paragraph 65 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

66.     The allegations in Paragraph 66 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

67.     Contractor Defendants deny the allegations in Paragraph 67.

68.     Contractor Defendants deny the allegations in Paragraph 68.

69.     The allegations in Paragraph 69 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

70.     The allegations in Paragraph 70 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

71.     The allegations in Paragraph 71 and each of its subparts set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

72.     GRC and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 72.  P&G denies the allegations in Paragraph 72 of the Complaint.

73.     P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 73.  GRC denies the allegations in Paragraph 73, except admits that it has, from time to time, provided audit and risk management services to community banks.

74.     P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 74.  PGX denies the allegations in Paragraph 74.

75.     Contractor Defendants admit that Apple Bank has described itself as a state-chartered bank, operating in the New York metropolitan area, headquartered as a matter of record in Manhasset, New York.

76.     Contractor Defendants deny the allegations in Paragraph 76 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 76 of the Complaint that concern Apple Bank.

77.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 77 of the Complaint, and therefore deny them.

78.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 78 of the Complaint, and therefore deny them.

79.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 79 of the Complaint, and therefore deny them.

80.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 80 of the Complaint, and therefore deny them.

81.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 81 of the Complaint, and therefore deny them.

82.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 82 of the Complaint, and therefore deny them.

83.     Contractor Defendants deny the allegations in Paragraph 83 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 83 of the Complaint that concern the rate at which Plaintiffs were compensated by their employers.

84.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 84, and therefore deny them.

85.     Contractor Defendants deny the allegations in Paragraph 85 of the Complaint, and specifically deny that any of the Contractor Defendants were under a duty to pay overtime

compensation to any of the Plaintiffs, and lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 85 of the Complaint that concern Apple Bank.

86.     Contractor Defendants deny the allegations in Paragraph 86 of the Complaint, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 86 of the Complaint that concern Apple Bank.

87.     The allegations in Paragraph 87 and each of its subparts set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

88.     Contractor Defendants deny the allegations in Paragraph 88 of the Complaint, and specifically deny that any of them "harmed" any of the Plaintiffs, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 88 of the Complaint that concern Apple Bank.

89.     Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 89 of the Complaint, except GRC and P&G deny that Deepa Keswani Tekchandani was a project manager for either of them.  Further answering, GRC states that it contracted with Tyche Compliance Consulting, LLC for certain project management services.

90.     P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 90.  GRC denies the allegations in Paragraph 90 of the Complaint, but admits that KDC Consulting LLC submitted certain information about its employee Curry in connection with its bid for work on the Apple Bank project.

91.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 91.  P&G and GRC deny the allegations in Paragraph 91 of the Complaint.

92.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 92.  P&G and GRC deny the allegations in Paragraph 92 of the Complaint, except GRC admits the existence of that certain Master Subcontractor Agreement between KDC Consulting, LLC and GRC (the "KDG-GRC MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.

93.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 93.  P&G denies the allegations in Paragraph 93 of the Complaint.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 93 of the Complaint are inconsistent with the terms of that document, GRC denies them.

94.     P&G and PGX deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 94.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 94 of the Complaint are inconsistent with the terms of that document, GRC denies them.

95.     P&G and PGX deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 95.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its

contents.   To the extent that any of the allegations in Paragraph 95 of the Complaint are inconsistent with the terms of that document, GRC denies them.

96.     P&G and PGX deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 96.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.   To the extent that any of the allegations in Paragraph 96 of the Complaint are inconsistent with the terms of that document, GRC denies them.

97.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 97.  P&G denies the allegations in Paragraph 97 of the Complaint.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 97 of the Complaint are inconsistent with the terms of that document, GRC denies them.

98.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 98.  P&G denies the allegations in Paragraph 98 of the Complaint.  GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 98 of the Complaint are inconsistent with the terms of that document, GRC denies them.

99.     PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 99.  P&G and GRC deny the allegations in Paragraph 99 of the Complaint, and specifically deny that they employed Curry or required him to perform

services, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 99 of the Complaint that concern Apple Bank.

100. PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 100. P&G and GRC deny the allegations in Paragraph 100 of the Complaint, except GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents. To the extent that any of the allegations in Paragraph 100 of the Complaint are inconsistent with the terms of that document, GRC denies them.

101. PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 101. GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents. To the extent that any of the allegations in Paragraph 101 of the Complaint are inconsistent with the terms of that document, GRC denies them.

102. PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 102. GRC admits the existence of the KDG-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents. To the extent that any of the allegations in Paragraph 102 of the Complaint are inconsistent with the terms of that document, GRC denies them.

103. PGX denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 103. P&G and GRC deny the allegations in Paragraph 103 of the Complaint, and specifically deny that they employed Curry or required him to perform services, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 103 of the Complaint that concern Apple Bank.

104.    Contractor Defendants deny the allegations in Paragraph 104, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 104 of the Complaint that concern Apple Bank.  PGX admits the existence of that certain Master Service Agreement and Statement of Work between KDC Consulting, LLC and PGX (the "KDC-PGX MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 104 of the Complaint are inconsistent with the terms of that document, PGX denies them.

105.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 105.  PGX admits the existence of the KDC-PGX MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 105 of the Complaint are inconsistent with the terms of that document, PGX denies them.  Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 105 of the Complaint that concern Apple Bank.

106.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 106.  PGX admits the existence of the KDC-PGX MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 106 of the Complaint are inconsistent with the terms of that document, PGX denies them.

107.    P&G and GRC deny that either of them employed Curry or "require[d] CURRY to work no fewer than 65 hours for each week that he worked for them," and deny knowledge or information sufficient to form a belief as to the accuracy of the remaining allegations in Paragraph 107.  PGX denies the allegations in Paragraph 107, except denies knowledge or

information sufficient to form a belief as to the accuracy of the allegations in Paragraph 107 concerning P&G and GRC.

108.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 108.  PGX denies the allegations in paragraph 108. Further answering, PGX states that KDC Consulting, LLC ceased providing services pursuant to the KDC-PGX MSA on or around August 26, 2018.

109.    P&G denies knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 109.  GRC and PGX deny the allegations in Paragraph 109 of the Complaint, and, further answering, note upon information and belief that Apple Bank's "Acceptable Use Policy" is "applicable to users who require access to the Bank's information technology resources, [and] is required to be signed by, among others, all personnel affiliated with third parties."

110.    Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 110 of the Complaint, except GRC denies that Deepa Keswani Tekchandani was a project manager for GRC.  Further answering, GRC states that it contracted with Tyche Compliance Consulting, LLC for certain project management services.

111.    PGX and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 111 of the Complaint.  GRC denies the allegations in Paragraph 111 of the Complaint, but admits that Mazzitelli Consulting LLC submitted certain information about its employee Mazzitelli in connection with its bid for work on the Apple Bank project.

112.    PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 112.  GRC admits upon information and belief the existence of that certain Master Service Agreement and Statement of Work between Mazzitelli Consulting, LLC and GRC (the "MCL-GRC MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.

113.    PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 113.  GRC denies the allegations in Paragraph 113. Further answering, GRC states that the MCL-GRC MSA called for the payment of certain consulting fees, and respectfully refers the Court to that document for a full and accurate recitation of its contents.

114.    PGX lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 114.  P&G and GRC deny the allegations in Paragraph 114, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 114 of the Complaint that concern Apple Bank.

115.    Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 115 of the Complaint.

116.    PGX and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 116.  GRC denies the allegations in Paragraph 116. Further answering, GRC states that Mazzitelli Consulting, LLC ceased providing services pursuant to the MCL-GRC MSA in or around February 2018.

117.    P&G and PGX lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 117.  GRC denies the allegations in Paragraph 117 of the Complaint, and, further answering, notes upon information and belief that Apple Bank's

"Acceptable Use Policy" is "applicable to users who require access to the Bank's information technology resources, [and] is required to be signed by, among others, all personnel affiliated with third parties."

118.    PGX and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 118 of the Complaint.  GRC denies the allegations in Paragraph 118 of the Complaint, and specifically denies that it employed Mazzitelli or "required" him to work on the Apple Bank project.

119.    Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 119 of the Complaint, including those which concern the rate at which Mazzitelli was compensated by his employer Mazzitelli Consulting, LLC.

120.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 120.  PGX denies the allegations in Paragraph 120 of the Complaint, but admits that Bropil Consulting, LLC submitted certain information about its employee Brown-Pilgrim in connection with its bid for work on the Apple Bank project.

121.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 121.  PGX admits the existence of that certain Master Service Agreement and Statement of Work between Bropil Consulting, LLC and PGX (the "Bropil-PGX MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 121 of the Complaint are inconsistent with the terms of that document, PGX denies them.

122.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 122.  PGX admits the existence of the Bropil-PGX

MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 122 of the Complaint are inconsistent with the terms of that document, PGX denies them.

123.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 123.  PGX denies the allegations in Paragraph 123. Further answering, PGX states that the Bropil-PGX MSA called for the payment of certain consulting fees, and respectfully refers the Court to that document for a full and accurate recitation of its contents.

124.    P&G and GRC lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 124.  PGX admits the existence of the electronic mail correspondence between Mary Hernandez and Bropil Consulting, LLC, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 124 of the Complaint are inconsistent with the terms of that document, PGX denies them.

125.    GRC and P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 125 of the Complaint.  PGX denies the allegations in Paragraph 125 of the Complaint, and specifically denies that it employed Brown-Pilgrim or "required" her to work a certain number of hours per week.

126.    Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 126 of the Complaint, including those which concern the rate at which Brown-Pilgrim was compensated by her employer Bropil Consulting, LLC.

127.    GRC and P&G deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 127.  PGX denies the allegations in Paragraph 127. Further answering, PGX states that Bropil Consulting, LLC ceased providing services pursuant to the Bropil-PGX MSA in or around May 2018.

128.    P&G and GRC deny knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 128.  PGX denies the allegations in Paragraph 128 of the Complaint, and, further answering, notes upon information and belief that Apple Bank's "Acceptable Use Policy" is "applicable to users who require access to the Bank's information technology resources, [and] is required to be signed by, among others, all personnel affiliated with third parties."

129.    P&G lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 129.  PGX and GRC deny the allegations in Paragraph 129 of the Complaint.  Contractor Defendants lack knowledge or information sufficient to form a belief as to the accuracy of the allegations in Paragraph 129 of the Complaint that concern Apple Bank.

130.    The allegations in Paragraph 130 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

131.    The allegations in Paragraph 131 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

132.    The allegations in Paragraph 132 of the Complaint set forth legal argument, to which no response is necessary.  To the extent that a response is called for, Contractor Defendants deny them.

133.    Contractor Defendants incorporate by reference Paragraphs 1 to 132 as if set forth fully herein.

134.    The allegations in Paragraph 134 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, except lack knowledge or information sufficient to form a belief as to the accuracy of the allegations which concern the rate at which Plaintiffs and putative members of the purported FLSA Collective were compensated by their respective employers.

135.    The allegations in Paragraph 135 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

136.    The allegations in Paragraph 136 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they owed any duty to Plaintiffs under the FLSA.

137.    The allegations in Paragraph 137 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

138.    The allegations in Paragraph 138 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

139.    The allegations in Paragraph 139 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

140.    Contractor Defendants incorporate by reference Paragraphs 1 to 139 as if set forth fully herein.

141.    The allegations in Paragraph 141 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

142.    The allegations in Paragraph 142 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they owed any duty to Plaintiffs or any other member of the purported class under the NYLL.

143.    The allegations in Paragraph 143 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they owed any duty to Plaintiffs or any other member of the purported Class under the NYLL.

144.    The allegations in Paragraph 144 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that Plaintiffs or any other member of the purported Class are entitled to any of the relief sought.

145.    Contractor Defendants incorporate by reference Paragraphs 1 to 144 as if set forth fully herein.

146.    The allegations in Paragraph 146 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them, and specifically deny that they were under any duty to provide "accurate statements of wages" to Plaintiffs or any other member of the purported Class.

147.    The allegations in Paragraph 147 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

148.    The allegations in Paragraph 148 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

149.    The allegations in Paragraph 149 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

150.    Contractor Defendants incorporate by reference Paragraphs 1 to 149 as if set forth fully herein.

151.    The allegations in Paragraph 151 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

152.    The allegations in Paragraph 152 of the Complaint set forth legal argument, to which no response is necessary.   To the extent that a response is called for, Contractor Defendants deny them.

Contractor Defendants deny that any of the Plaintiffs, either individually or on behalf of anyone else they purport to represent, are entitled to any of the relief sought in their Prayer for Relief.

## AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLAIMS

Contractor Defendants, either individually or collectively, reserve the right to amend this Answer and to assert additional defenses and/or supplement, alter, or change their Answer and Affirmative Defenses upon completion of appropriate investigation and discovery.   The

statement of any defense hereafter does not assume the burden of proof for any issue as to which applicable law places the burden on Plaintiff.

1. Plaintiffs have failed to serve any of the Contractor Defendants in accordance with the Federal Rules of Civil Procedure and/or the New York Civil Practice Law and Rules.

2. The Complaint and each claim fails to state a claim upon which relief can be granted.

3. Plaintiffs and any and all putative collective and class action members were not "employees" of any of the Contractor Defendants within the meaning of the FLSA or NYLL.

4. Any damages suffered by Plaintiffs and any and all putative collective and class action members were proximately caused in whole or in part by the wrongful conduct of nonparties (including but not limited to KDC Consulting LLC, Mazzitelli Consulting LLC, Mazzitelli Consulting Corporation and/or Bropil Consulting LLC), and therefore any recovery must be barred or apportioned according to the respective fault of those nonparties whose actions contributed to those alleged damages.

5. Plaintiffs' claims and the claims of any and all collective and/or class action members are barred, based on the doctrine of unclean hands.

6. Plaintiffs' claims and the claims of any and all collective and class action members are barred, in whole or in part, because they are estopped by their own conduct (including but not limited to representations they made to state and federal tax authorities) to claims and right to damages or other monetary relief from Contractor Defendants.

7. Plaintiffs' claims and the claims of the putative collective and class action members for liquidated damages are barred because Contractor Defendants acted in good faith,

nonwillfully, and with reasonable grounds for believing that their relationships with Plaintiffs were not subject to the FLSA and NYLL.

8.      Plaintiffs' claims and the claims of any and all collective and/or class action members are barred by their ratification of and/or consent to the actions allegedly undertaken.

9.      Plaintiffs' claims and the claims of any and all putative collective action and class members are barred in whole or in part by the applicable statute of limitations.

10.      Plaintiffs cannot satisfy the requirements for a class action under Fed. R. Civ. P. 23 or a collective action under 29 U.S.C. § 216, because, among other reasons, Plaintiffs are inappropriate representatives, Plaintiffs' counsel is not qualified, experienced or able to represent a class of plaintiffs, and common issues of law and fact do not predominate over individual issues.

11.      Even if Plaintiffs or the collective action members are entitled to any unpaid wages, Contractor Defendants did not willfully violate the FLSA, and therefore Plaintiffs are not entitled to a three-year statute of limitations.

12.      Plaintiffs and any and all collective and/or class action members are not entitled to any relief under the FLSA, because, to the extent that they performed work and were not compensated, they worked without Contractor Defendants' knowledge or mutual assent.

13.      Contractor Defendants' actions, as complained of in the Complaint, were taken in good faith, and in conformity with and in reliance on written interpretations of the Fair Labor Standards Act promulgated by the Secretary of Labor, and Contractor Defendants therefore have a complete defense to Plaintiffs' claims, pursuant to § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259.

14.     Plaintiffs' claims and the claims of any and all putative collective and class action members are barred because such claims have been waived, discharged, or abandoned.

15.     Contractor Defendants are entitled to a credit for or setoff against amounts paid to Plaintiffs and the putative collective and/or class action members.

16.     Plaintiffs' claims and the claims of any and all collective and/or class action members are barred, in whole or in part, because some of the activities for which they demand compensation are *de minimis* under the FLSA and NYLL.

17.     Plaintiffs and the putative collective and class action members are not entitled to equitable relief insofar as they have an adequate remedy at law.

18.     The hours Plaintiffs and the collective and/or class action members claim to have worked are not "hours worked" within the meaning applicable under the FLSA and NYLL.

19.     Plaintiffs' claims and the claims of any and all collective and/or class action members for equitable relief are barred by the doctrine of laches.

20.     Contractor Defendants were under no duty to provide Wage Theft Prevention Act notices or wage statements to Plaintiffs or any member of the putative class or collective.

21.     Contractor Defendants assert that they presently have insufficient knowledge or information upon which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available. Contractor Defendants reserve the right to assert additional defenses in the event that discovery reveals that such defenses would be appropriate.

**WHEREFORE**, Contractor Defendants request that all counts asserted against them be dismissed with prejudice, and that they be awarded such other relief as the Court deems fair and just.

## GRC'S ANSWER TO APPLE BANK'S CROSSCLAIM

GRC, by and through its undersigned counsel, hereby submits its answer to the allegations set forth in the crossclaim (the "Apple Bank Crossclaim") filed by the defendant Apple Bancorp, Inc. ("Apple").

1.     The allegations in Paragraph 1 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

2.     The allegations in Paragraph 2 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

3.     GRC lacks knowledge or information sufficient to form a belief as to the accuracy of the allegation in Paragraph 3 of the Apple Bank Crossclaim, and therefore denies it.

4.     GRC admits the allegation in Paragraph 4 of the Apple Bank Crossclaim.

5.     GRC admits the allegation in Paragraph 5 of the Apple Bank Crossclaim.

6.     GRC admits the existence of the MSA referenced in Paragraph 6 of the Apple Bank Crossclaim (the "AB-GRC MSA"), and respectfully refers the Court to that document for a full and accurate recitation of its contents.

7.     GRC admits the existence of the AB-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 7 of the Apple Bank Crossclaim are inconsistent with the terms of that document, GRC denies them.

8.      GRC incorporates by reference Paragraphs 1 to 7 as if set forth fully herein.

9.      The allegations in Paragraph 9 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

10.     The allegations in Paragraph 10 of the Apple Bank Crossclaim set forth legal argument, to which no response is necessary.  To the extent that a response is called for, GRC denies them.

11.     GRC denies the allegations in Paragraph 11 of the Apple Bank Crossclaim.

12.     GRC admits the existence of the AB-GRC MSA, and respectfully refers the Court to that document for a full and accurate recitation of its contents.  To the extent that any of the allegations in Paragraph 12 of the Apple Bank Crossclaim are inconsistent with the terms of that document, GRC denies them.

GRC denies that any Apple Bank is entitled to the relief sought against it in the Prayer for Relief.

## AFFIRMATIVE DEFENSES TO APPLE BANK'S CROSSCLAIMS

GRC reserves the right to amend this Answer to Apple Bank's Crossclaim and to assert additional defenses and/or supplement, alter, or change its Answer and Affirmative Defenses upon completion of appropriate investigation and discovery.  The statement of any defense hereafter does not assume the burden of proof for any issue as to which applicable law places the burden on Apple Bank.

1.      The Crossclaim fails to state a claim upon which relief can be granted.

2.      Apple Bancorp. has failed to fulfill its obligations under the agreement.

3.     GRC's performance of the alleged obligations is excused by the failure of conditions precedent.

4.     The Crossclaim of Apple Bancorp. is barred by its ratification of and/or consent to the actions allegedly undertaken.

5.     GRC's performance of the alleged obligations is excused by the doctrine of impossibility.

6.     GRC's performance of the alleged obligations is excused by the doctrine of frustration of purpose.

7.     GRC asserts that it presently has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. GRC reserves the right to assert additional defenses in the event that discovery reveals that such defenses would be appropriate.

**WHEREFORE**, GRC requests that the crossclaim asserted against it by Apple Bank be dismissed with prejudice, and that it be awarded such other relief as the Court deems fair and just.

## <u>CROSSCLAIMS</u>

### <u>Parties</u>

PGX, by and through its undersigned counsel, hereby asserts crossclaims against crossclaim defendants KDC Consulting, LLC ("KDC"), Curry in his capacity as its managing member, Bropil Consulting, LLC ("Bropil"), and Brown-Pilgrim and Dennis Pilgrim ("D. Pilgrim") in their respective capacities as Bropil's managing members.

1.     PGX is a New Jersey Limited Liability Company with a principal place of business in East Brunswick, New Jersey.

2.       KDC was a Georgia Limited Liability Company with a principal place of business at 120 Crown Chase Drive, Stockbridge, Georgia.

3.       According to the Georgia Secretary of State's Corporations Division, Curry formed KDC on or around July 26, 2016.

4.       Bropil was a Florida Limited Liability Company with a principal place of business at 12840 NW 18th Court, Pembroke Pines, Florida.

5.       According to the Florida Department of State's Division of Corporations, Brown-Pilgrim registered Bropil as a domestic Limited Liability Company on August 14, 2013.

6.       Brown-Pilgrim and D. Pilgrim are identified as Bropil's "Authorized Persons" on Bropil's Secretary of State filings.

## Jurisdiction and Venue

7.       The Court has supplemental jurisdiction over these crossclaims under 28 U.S.C. § 1367(a) because the claims asserted herein are so related to the claims asserted in the Complaint that they form a part of the same case and controversy under Article III of the United States Constitution.

8.       Venue is proper in this Court and in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) to the extent venue is deemed proper in the Complaint.

## Facts

*As to KDC*

### The KDC-GRC MSA

9.       In October 2017, KDC sought to be engaged by GRC to provide services on an independent contractor basis.

10.     In connection with GRC's due diligence as to KDC's business operations, GRC conducted a background check into KDC and Curry, the personnel that KDC had proposed to perform services pursuant to the agreement between the parties (the "KDC-GRC MSA").

11.     In connection with that process, KDC represented to GRC that it, and its personnel, had provided "consulting and investigative expertise and services to financial institutions under regulatory review for compliance and/or policy deficiencies."

12.     KDC also represented to GRC that its personnel had "40+ years of combined municipal law enforcement, corporate security and Bank Secrecy Act/Anti-Money Laundering (BSA/AML) investigation experience."

13.     KDC also represented to GRC that its personnel had provided services to no fewer than fourteen financial institutions in connection with "BSA/ AML/ OFAC engagements" over an eleven-year period.

14.     KDC also provided proof of general commercial liability insurance covering losses of up to one million dollars ($1,000,000.00) in connection with its security consulting business.

15.     In the KDC-GRC MSA, GRC and KDC further agreed that employees of KDC would not be entitled to any benefits accorded to GRC's employees.

16.     In the KDC-GRC MSA, KDC assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations.

17.     KDC agreed to "indemnify and hold GRC harmless from any claims, losses, costs, fees, liabilities, damages or injuries suffered by GRC arising out of KDC's failure or negligence with respect to KDC's obligations" under the KDC-GRC MSA.

18.     In the KDC-GRC MSA, GRC and KDC agreed that all fees paid to KDC would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

19.     In reliance upon these representations, GRC entered into the KDC-GRC MSA with KDC on or around October 7, 2017.

20.     In the KDC-GRC MSA, GRC and KDC agreed that KDC would be engaged by GRC to perform consulting services on an "as needed" basis as an independent contractor.

21.     Between October 2017 and February 2018, KDC provided services in connection with the KDC-GRC MSA and retained the revenue generated through the operation of its business.

22.     As a result of its tax status as an independent contractor, KDC has benefited from the avoidance of certain tax obligations that must be assumed by employees.

23.     Upon information and belief, KDC has represented to state and federal tax authorities that the income generated in connection with the KDC-GRC MSA was not subject to employment-related taxes and withholdings.

**The KDC-PGX MSA**

24.     In April 2018, KDC sought to be engaged by PGX to provide services on an independent contractor basis.

25.     In connection with that process, KDC identified Curry as its sole employee.

26.     KDC also represented to PGX that its services included, among other things, the provision of "investigative expertise to financial institutions under regulatory review for compliance and/or policy deficiencies pertaining to Alert Clearance, Transaction Monitoring, Suspicious Activity, Quality Control (QC), Know Your Customer (KYC), Customer Due

Diligence (CDD), Enhanced Due Diligence (EDD) and Office of Foreign Asset Control (OFAC) Sanctions."

27. KDC also represented to PGX that its personnel had "40+ years of combined municipal law enforcement, corporate security and Bank Secrecy Act/Anti-Money Laundering (BSA/AML) investigation experience."

28. In reliance upon these representations as well as KDC's prior performance in connection with the KDC-GRC MSA, PGX entered into the KDC-PGX MSA with KDC on or around April 26, 2018.

29. In the KDC-PGX MSA, PGX and KDC agreed that KDC would be engaged by PGX to perform consulting services on an "as needed" basis as an independent contractor.

30. In the KDC-PGX MSA, KDC represented to PGX that it was "a corporation duly organized and existing under the laws of [Georgia], and that it is a bona fide corporate business entity established for a valid business purpose[.]"

31. In the KDC-PGX MSA, KDC agreed to maintain comprehensive commercial liability insurance, as well as such other insurance coverage as may be reasonably requested by PGX and/or its clients.

32. In the KDC-PGX MSA, PGX and KDC further agreed that employees of KDC would not be entitled to any benefits accorded to PGX's employees.

33. In the KDC-PGX MSA, KDC assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations.

34. In the KDC-PGX MSA, PGX and KDC agreed that all fees paid to KDC would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

35.     Between April 2018 and August 2018, KDC provided services in connection with the KDC-PGX MSA and retained the revenue generated through the operation of its business.

36.     Upon information and belief, KDC has represented to state and federal tax authorities that the income generated in connection with the KDC-PGX MSA was not subject to employment-related taxes and withholdings.

**PGX'S Assertion of Its Contractual Right**

37.     In the KDC-PGX MSA, KDC expressly agreed to defend PGX with respect to any claim arising out of the KDC-PGX MSA.

38.     Through a public court filing in this action, on November 16, 2020, PGX provided notice that it intended to seek relief from KDC pursuant to the KDC-PGX MSA in connection with this action.

39.     During a telephonic status conference with the Court on November 20, 2020, PGX, through counsel, articulated an intent to name KDC as a crossclaim defendant in this action.

40.     By correspondence dated November 30, 2020, PGX provided further notice to KDC of its intent to assert its contractual rights.

**KDC'S Dissolution**

41.     Notwithstanding the substantial revenue retained as a result of KDC's status as an independent contractor, KDC has failed to defend PGX in connection with the instant lawsuit.

42.     According to the Georgia Secretary of State's Corporations Division, KDC's business status has been regularly updated on an annual basis since the time of its formation, most recently on February 12, 2020.

43.     According to the Georgia Secretary of State's Corporations Division, KDC's business status was terminated on or around December 1, 2020.

44.     As recently as December 21, 2020, Curry continued to hold himself out to the business community as a "Financial Crime Consultant" affiliated with KDC.

*As to Bropil*

### The Bropil-PGX MSA

45.     In April 2018, Bropil sought to be engaged by PGX to provide services on an independent contractor basis.

46.     In connection with PGX's due diligence as to Bropil's business operations, PGX conducted a background check into Bropil and Brown-Pilgrim, the personnel that Bropil had proposed to perform services pursuant to the Bropil-PGX MSA.

47.     In connection with that process, Bropil represented that it "provides investigative expertise to major financial institutions under Regulatory review for deficiencies in Policies and Compliance procedures pertaining to Banking/Finance Operations, Correspondent Banking, Retail Banking, OFAC, Bank Secrecy Act (BSA), and Bank Bribery Act."

48.     In connection with that process, Bropil represented to PGX that its personnel had provided Anti-Money Laundering consulting services in connection with at least ten lookback projects over the preceding seven years.

49.     Bropil also represented to PGX that its business was "comprised of three (3) employees, with a combined 45 years of Corporate Managerial, Administrative experience in the areas of Bank Secrecy Act (BSA) /Anti-Money Laundering (AML) investigations [and] Client On-Boarding and Documentation."

50.     Bropil further represented to PGX that it had the experience and expertise to "perform transactional reviews on designated accounts/transactions, conduct KYC reviews, and Customer Due Diligence."  Bropil further stated that it had the expertise and resources to provide "review of OFAC regulations and sanctions as it relates to the entities and individuals under the lookback review."

51.     Bropil also represented to PGX that its personnel had the skills and expertise to prepare "investigative reports … with some being escalated for further review, while performing additional duties as required by the client and filing accurate and timely documentary reports."

52.     In reliance upon these representations, PGX entered into the Bropil-PGX MSA with Bropil on or around April 26, 2018.

53.     In the Bropil-PGX MSA, Bropil represented to PGX that it was "a corporation duly organized and existing under the laws of [Florida], and that it is a bona fide corporate business entity established for a valid business purpose[.]"

54.     In the Bropil-PGX MSA, KDC agreed to maintain comprehensive commercial liability insurance, as well as such other insurance coverage as may be reasonably requested by PGX and/or its clients.

55.     In the Bropil-PGX MSA, PGX and Bropil further agreed that employees of Bropil would not be entitled to any benefits accorded to PGX's employees.

56.     In the Bropil-PGX MSA, Bropil assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations.

57.     In the Bropil-PGX MSA, PGX and Bropil agreed that all fees paid to Bropil would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.

58.     Bropil subsequently provided services in connection with the Bropil-PGX MSA and retained the revenue generated through the operation of that business.

59.     As a result of its tax status as an independent contractor, Bropil has benefited from the avoidance of certain tax obligations that must be assumed by employees.

60.     Upon information and belief, Bropil has represented to state and federal tax authorities that the income generated in connection with the Bropil-PGX MSA was not subject to employment-related taxes and withholdings.

**PGX's Assertion of its Contractual Right**

61.     In the Bropil-PGX MSA, Bropil expressly agreed to defend PGX with respect to any claim arising out of the Bropil-PGX MSA.

62.     Through a public court filing in this action, on November 16, 2020, PGX provided notice that it intended to seek relief from Bropil pursuant to the Bropil-PGX MSA in connection with this action.

63.     During a telephonic status conference with the Court on November 20, 2020, PGX, through counsel, articulated an intent to name Bropil as a crossclaim defendant in this action.

64.     By correspondence dated November 30, 2020, PGX wrote to D. Pilgrim in his capacity as one of Bropil's managing members and tendered defense of this action to Bropil pursuant to the Bropil-PGX MSA.

65.    PGX sought written confirmation of Bropil's acceptance of its tender by no later than December 10, 2020.

**Bropil's Dissolution**

66.    Notwithstanding the substantial revenue retained as a result of Bropil's status as an independent contractor, Bropil has failed to defend PGX in connection with the instant lawsuit.

67.    According to the Florida Secretary of State's Division of Corporations, Bropil's business status has been regularly updated on an annual basis since the time of its formation, most recently on June 26, 2020.

68.    According to the Florida Secretary of State's Division of Corporations, Bropil's business status was terminated on or around December 10, 2020.

69.    The December 10, 2020 Articles of Dissolution filed with the Florida Secretary of State's Division of Corporations are electronically signed by Brown-Pilgrim.

<u>**FIRST CROSSCLAIM**</u>
**BREACH OF CONTRACT (BY PGX AGAINST KDC)**

70.    PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71.    The KDC-PGX MSA is a valid and enforceable contract, supported by consideration, between KDC and PGX.

72.    The KDC-PGX MSA governed the terms and conditions of KDC's relationship with PGX.

73.    In the KDC-PGX MSA, KDC agreed to defend PGX in connection with any claim arising out of the KDC-PGX MSA.

74.    PGX has performed its contractual obligations under the KDC-PGX MSA.

75.     Rather than honor its contractual commitments to PGX, KDC's managing member filed a certificate of dissolution with the Georgia Secretary of State on or around December 1, 2020 upon receiving notice of PGX's intent to enforce its contractual rights.

76.     As a direct result of KDC's breach of its contractual commitment to defend PGX, PGX has incurred and will continue to incur attorney's fees and other expenses in an amount to be determined at trial.

**SECOND CROSSCLAIM**
**FRAUDULENT CONVEYANCE**
**(BY PGX AGAINST KDC AND CURRY)**

77.     PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

78.     PGX provided notice of its claim against KDC on or around November 16, 2020, and again on November 20, 2020 and again by correspondence dated November 30, 2020.

79.     By filing a notice of KDC's dissolution with the Georgia Secretary of State on or around December 1, 2020, Curry attempted to avoid KDC's obligations to PGX.

80.     In light of his background and experience as an Anti-Money Laundering professional specializing in financial crimes, Curry is uniquely positioned with the skills and expertise to sequester funds and assets of KDC that would otherwise go to the satisfaction of its obligations to PGX.

81.     Curry's dissolution of KDC was done with the intent to hinder, delay or defraud PGX in its efforts to enforce its contractual rights against KDC.

82.     Upon information and belief, substantially all of KDC's assets were transferred to Curry immediately prior to or at the time of dissolution.

83.     Because these steps constitute fraudulent and deceptive conduct in an effort to defraud PGX, balancing of the equities favors PGX.

84.     By filing this action, Curry has consented to the jurisdiction of this Court.

85.     Due to Curry's efforts to avoid KDC's contractual obligations to PGX, PGX is entitled to an accounting of all assets held by KDC and/or Curry, entry of an order enjoining the further disposition of any and all assets transferred from KDC to Curry, and an award of attorney's fees pursuant to Sections 276 and 276-a of the New York Uniform Voidable Transactions Act, New York Debtor and Creditor Law, Article 10.

## THIRD CROSSCLAIM
### BREACH OF CONTRACT
### (BY PGX AGAINST BROPIL)

86.     PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87.     The Bropil-PGX MSA is a valid and enforceable contract, supported by consideration, between Bropil and PGX.

88.     The Bropil-PGX MSA governed the terms and conditions of Bropil's relationship with PGX.

89.     In the Bropil-PGX MSA, Bropil agreed to defend PGX in connection with any claim arising out of the Bropil-PGX MSA.

90.     PGX has performed its contractual obligations under the Bropil-PGX MSA.

91.     By correspondence dated November 30, 2020, PGX tendered its defense of this action to Bropil and sought a response to that tender by no later than December 10, 2020.

92.     Rather than honor its contractual commitments to PGX, Bropil's managing member filed a certificate of dissolution with the Florida Secretary of State on or around December 10, 2020.

93.     As a direct result of Bropil's breach of its contractual commitment to defend PGX, PGX has incurred and will continue to incur attorney's fees and other expenses in an amount to be determined at trial.

**FOURTH CROSSCLAIM**
**FRAUDULENT CONVEYANCE**
**(BY PGX AGAINST BROPIL, BROWN-PILGRIM AND DENNIS PILGRIM)**

94.     PGX realleges and incorporates by reference the allegations contained in paragraphs 1 through 93 as if fully set forth herein.

95.     PGX provided notice of its claim against Bropil on or around November 16, 2020, again on November 20, 2020 and again by correspondence dated November 30, 2020.

96.     By filing a notice of Bropil's dissolution with the Florida Secretary of State on or around December 10, 2020, Bropil's managing member attempted to avoid Bropil's obligations to PGX.

97.     In addition to Brown-Pilgrim, D. Pilgrim is identified as an authorized agent of Bropil.

98.     PGX's defense of this action was tendered to D. Pilgrim in his capacity as Bropil's authorized agent.

99.     Upon information and belief, D. Pilgrim was one of Bropil's three employees "with a combined 45 years of Corporate Managerial, Administrative experience in the areas of Bank Secrecy Act (BSA) /Anti-Money Laundering (AML) investigations [and] Client On-Boarding and Documentation."

100.    In light of their background and experience as Anti-Money Laundering professionals, Brown-Pilgrim and D. Pilgrim are uniquely positioned with the skills and

expertise to sequester funds and assets of Bropil that would otherwise go to the satisfaction of its obligations to PGX.

101.    Brown-Pilgrim's dissolution of Bropil was done with the intent to hinder, delay or defraud PGX in its efforts to enforce its contractual rights against Bropil.

102.    Upon information and belief, substantially all of Bropil's assets were transferred to Brown-Pilgrim and/or D. Pilgrim immediately prior to or at the time of dissolution.

103.    Because these steps constitute fraudulent and deceptive conduct in an effort to defraud PGX, balancing of the equities favors PGX.

104.    By filing this action, Brown-Pilgrim has consented to the jurisdiction of this Court.

105.    Due to Brown-Pilgrim's and D. Pilgrim's efforts to avoid Bropil's contractual obligations to PGX, PGX is entitled to an accounting of all assets held by Bropil, Brown-Pilgrim and D. Pilgrim, entry of an order enjoining the further disposition of any and all assets transferred from Bropil to Brown-Pilgrim and/or D. Pilgrim, and an award of attorney's fees pursuant to Sections 276 and 276-a of the New York Uniform Voidable Transactions Act, New York Debtor and Creditor Law, Article 10.

**WHEREFORE,** P&G Auditors and Consultants, LLC, GRC Solutions, LLC and PGX, LLC pray that the Court (i) dismiss the claims of the plaintiffs Kenneth D. Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim in their entirety; (ii) dismiss the crossclaim asserted by Apple Bancorp, Inc. against GRC in its entirety; (iii) enter judgment in PGX's favor against crossclaim defendants KDC Consulting LLC (and its managing member Kenneth D. Curry) and Bropil Consulting LLC (and its managing members Dennis Pilgrim and Jacqueline Brown-Pilgrim); (v) award to PGX compensatory damages, including but not limited to an award of

attorneys' fees and expenses, in connection with the crossclaim defendants' breaches of their respective agreements; (vi) direct the issuance of writs of attachments against the interests of KDC Consulting LLC and its managing member Kenneth D. Curry; (vii) enjoin and restrain KDC Consulting LLC and its managing member Kenneth D. Curry from withdrawing, transferring, spending, hypothecating or otherwise removing or alienating their interests in any checking, savings, investment, or other banking or security accounts held in their names, either individually or with others, which are maintained anywhere; (viii) enjoin and restrain KDC Consulting LLC and its managing member Kenneth D. Curry from transferring, spending, hypothecating or otherwise removing or alienating their interests in any and all real or personal property; (ix) order Kenneth D. Curry to account for all assets acquired from KDC Consulting LLC and turn over same to PGX; (x) direct the issuance of writs of attachments against the interests of Bropil Consulting, LLC and its managing members; (xi) enjoin and restrain Bropil Consulting, LLC and its managing members from withdrawing, transferring, spending, hypothecating or otherwise removing or alienating their interests in any checking, savings, investment, or other banking or security accounts held in their names, either individually or with others, which are maintained anywhere; (xii) enjoin and restrain Bropil Consulting, LLC and its managing members from transferring, spending, hypothecating or otherwise removing or alienating their interests in any and all real or personal property; (xiii) order Bropil Consulting, LLC's managing members to account for all assets acquired from Bropil Consulting, LLC and turn over same to PGX and (xiv) grant to them any such further relief as to the Court may seem just and proper.

Dated: New York, New York
       February 16, 2021

DAVIS WRIGHT TREMAINE LLP

By: <u>s/ Michael J. Goettig</u>
    Michael J. Goettig
    Lyle S. Zuckerman
    1251 Avenue of the Americas, 21st Floor
    New York, New York 10020
    (212) 489-8230
    *Counsel for Defendants*
    *P&G Auditors and Consultants, LLC, GRC Solutions,*
    *LLC and PGX, LLC*
    *and Crossclaim Plaintiff PGX, LLC*