UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

KENNETH CURRY, RICARDO MAZZITELLI
and JACQUELINE BROWN-PILGRIM,

                        Plaintiffs,

           - against -

P&G AUDITORS AND CONSULTANTS,
LLC, GRC SOLUTIONS, LLC, PGX, LLC and
APPLE BANCORP, INC,

                    Defendants

           - and -

PGX, LLC,

                 Crossclaim Plaintiff,

           - against -

KDC CONSULTING, LLC, KENNETH
CURRY (IN HIS CAPACITY AS MANAGING
MEMBER OF KDC CONSULTING, LLC),
BROPIL CONSULTING, LLC, JACQUELINE
BROWN-PILGRIM (IN HER CAPACITY AS
MANAGING MEMBER OF BROPIL
CONSULTING, LLC), and DENNIS PILGRIM
(IN HIS CAPACITY AS MANAGING
MEMBER OF BROPIL CONSULTING, LLC),

                 Crossclaim
                 Defendants.

Case No. 20-cv-06985 (LTS)(SLC)

------------------------------------------------------------------- x

**CROSSCLAIM PLAINTIFF PGX, LLC'S**
**MEMORANDUM OF LAW IN OPPOSITION TO THE**
**MOTION OF CROSSCLAIM DEFENDANTS TO DISMISS THE CROSSCLAIMS**

**DAVIS WRIGHT TREMAINE LLP**
Michael J. Goettig
Lyle S. Zuckerman
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
(212) 489-8230
Attorneys for Defendants

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT LEGAL STANDARD, CROSSCLAIM DEFENDANTS' IMPROPER
    PROFFERS, AND THE CROSSCLAIMS' RELEVANT FACTUAL
    ALLEGATIONS................................................................................................................ 1

    Relevant Legal Standard ..................................................................................................... 1
    Crossclaim Defendants' Improper Proffers ....................................................................... 2
    Relevant Factual Allegations .............................................................................................. 4
    *KDC and GRC* .................................................................................................................. 5
    *KDC and PGX*................................................................................................................... 6
    *PGX's Assertion of Its Contractual Right as to KDC and KDC's Dissolution* ................ 7
    *Bropil and PGX*................................................................................................................ 8
    *PGX's Assertion of Its Contractual Right as to Bropil and Bropil's Dissolution* ............ 9

ANALYSIS AND ARGUMENT ......................................................................................... 10

    A.     PGX's Claims Sounding in Breach of Contract Are Adequately Pleaded .......... 11

           1.     The FLSA's Fee Shifting Provisions Are Irrelevant to PGX's Claims .... 15

           2.     The Plain Language of the Parties' Contracts Supports PGX's Claims ... 16

           3.     The Crossclaims Do Not Seek Indemnification for an Intentional Tort... 17

    B.     PGX Has Stated Claims for Fraudulent Conveyance ........................................... 18

           1.     PGX Has Adequately Alleged Facts in Support of Its Fraudulent
                 Conveyance Claims .................................................................................. 19

           2.     PGX Has Standing to Assert a Claim Sounding in Fraudulent
                 Conveyance............................................................................................... 23

           3.     New York, Georgia and Florida Have All Adopted the Voidable
                 Transactions Act ...................................................................................... 24

CONCLUSION.................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdul-Rasheed v. KableLink Communs., LLC*,
No. 13-cv-879-T-24-MAP, 2013 U.S. Dist. LEXIS 167159 (S.D. Fla. Nov. 25,
2013) .................................................................................................................................16

*Aldridge v. Brodman*,
100 A.D.3d 1537 (4th Dep't. 2012) .................................................................................18

*Amaya v. Garden City Irrigation, Inc.*,
No. 03-cv-2814, 2011 U.S. Dist. LEXIS 15316 (E.D.N.Y. Feb. 15, 2011) ............................14

*Ansoumana v. Gristedes Operating Corp.*,
No. 00 Civ. 253 (AKH), 2003 U. S. Dist. LEXIS 22 (S.D.N.Y. Jan. 3, 2003).......................13

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)........................................................1

*Austro v Niagara Mohawk Power Corp.*,
66 N.Y.2d 674 (N.Y. 1985) .............................................................................................18

*Bd. Of Managers of the 369 Harman St. Condo. v. 369 Harman LLC*,
No. 450386/2018, 2018 N.Y. Slip. Op. 32026 (Sup. Ct. N.Y. Cty. Aug 20,
2018) .................................................................................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).....................................................18

*Bogosian v. All Am. Concessions*,
No. 06-cv-1633, 2011 U.S. Dist. LEXIS 109082 (E.D.N.Y. Sept. 26, 2011) ........................14

*Carlyle, LLC v. Quik Park 1633 Garage LLC*,
160 A.D.3d 476 (1st Dep't. 2018) ...................................................................................23

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991).............................................................................................25

*Daougherty v. Encana Oil & Gas (USA), Inc.*,
No. 10-cv-02272 (WJM) (KLM) (D. Colo. July 15, 2011) ...................................................16

*Decker v. Nagel Rice LLC*,
716 F. Supp. 2d 228 (S.D.N.Y. 2010)................................................................................3

*Derek Copper v. Cavalry Staffing, LLC*,
14-CV-3676, 2021 U.S. Dist. LEXIS 49742 (E.D.N.Y. March 16, 2021) ..............................14

*EEOC v. O & G Spring & Wire Farms Specialty Co.*,
   38 F.3d 872 (7th Cir. 1994) ...............................................................................17

*Garcia v. Cloister Apt Corp.*,
   No. 16 CV 5542, 2018 U.S. Dist. LEXIS 42869 (S.D.N.Y. March 15, 2008) ........14

*Genger v. Sharon*,
   910 F. Supp. 2d 581 (S.D.N.Y. 2012).................................................................12

*Goodman v. Port Auth., of N.Y. & N.J.*,
   850 F. Supp.2d 363 (S.D.N.Y. 2012)...................................................................14

*Gowan v. Patriot Group, LLC (In re Dreier LLP)*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................24

*Gustafson v. Bell Atl. Corp.*,
   171 F. Supp. 2d 311 (S.D.N.Y. 2001)..................................................................14

*HBE Leasing Corp. v. Frank*,
   48 F.3d 623 (2d Cir. 1995)...................................................................................22

*Herman v. RSR Sec. Servs.*,
   172 F.3d 132 (2d Cir. 1999)................................................................13, 14, 15

*Holt v. Animation Collective. Inc.*,
   No. 13 Civ 2552 (KBF), 2014 U.S. Dist. LEXIS 51625 (S.D.N.Y. Apr. 10,
   2014) .....................................................................................................................13

*Hortica Florists Mut. Ins. V. Pittman Nursery*,
   729 F.3d 846 (8th Cir. 2013) ...............................................................................12

*In re UBS Auction Rate Sec. Litig.*,
   No. 08-cv-2967, No. 08-cv-3082, No. 08-cv-4352, No. 08-cv-5251, 2010 U.S.
   Dist. LEXIS 59024 (S.D.N.Y. June 10, 2010)........................................................3

*McDougal v. G & S Tobacco Dealers. L.L.C.*,
   712 F. Supp. 2d 488 (N.D. W.Va. 2010) ........................................................14, 15

*Mitropoulos v. 491 Sunrise Corp.*,
   No. 17-cv-3618, 2019 U.S. Dist. LEXIS 98790 (E.D.N.Y. June 12, 2019) ...........13

*Muniz v. Re Spec Corp.*,
   No. 16-CV-02878, 2017 U.S. Dist. LEXIS 54619 (S.D.N.Y. Apr. 4, 2017)............14

*Paganas v. Total Maint. Solution, LLC*,
   220 F.Supp.3d 247 (E.D.N.Y. 2016) ....................................................................14

*Quinio v. Aala*,
    No. 19 CV 4686, 202 U.S Dist. LEXIS 236575 (E.D.N.Y. Dec. 14, 2020)...........................24

*Ruston v. Town Bd. for the Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010)...................................................................................18

*Seaboard Sur. Co. v. Gillette Co.*,
    64 N.Y.2d 304 (N.Y. 1984) .................................................................................12

*Tommy Lee Handbags Mfg. v. 1948 Corp.*,
    971 F. Supp. 2d 368 (S.D.N.Y. 2013)...................................................................21

*Yong Xiong He v. China New Star Rest., Inc.*,
    No. 19-CV-5907(PKC) (CLP), 2020 U.S. Dist. LEXIS 196481 (E.D.N.Y. Oct.
    22, 2020) ............................................................................................................22

## Other Authorities

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 18

Fed. R. Civ. P. 15(a) ...............................................................................................25

N.Y. R.P.C. Rule 1.6(a) ............................................................................................3

N.Y. R.P.C. Rule 3.7(a) ............................................................................................3

## PRELIMINARY STATEMENT

Crossclaim plaintiff PGX, LLC ("PGX") hereby submits its memorandum of law in opposition to the motion of crossclaim defendants KDC Consulting, LLC ("KDC"), Kenneth D. Curry ("Curry") (in his capacity as managing member of KDC), Bropil Consulting, LLC ("Bropil"), Jacqueline Brown-Pilgrim ("Brown-Pilgrim") and Dennis Pilgrim ("Pilgrim") (each in their respective capacities as managing members of Bropil and referred to collectively with KDC, Curry and Bropil as "Crossclaim Defendants") for dismissal of PGX's crossclaims for breach of contract and fraudulent conveyance.  The arguments set forth in Crossclaim Defendants' supporting memorandum of law (Docket Doc. No. 99, the "Moving Memorandum") ignore the applicable standard of review, mischaracterize PGX's causes of action, and ignore PGX's allegations as to Curry's and Brown-Pilgrim's own wrongful conduct.  Viewed in the light most favorable to PGX (as they must be on a motion to dismiss under Rule 12(b)(6)), the allegations set forth in PGX's crossclaims amply state causes of action upon which relief may be granted.  As such, the Court should deny Crossclaim Defendants' motion in its entirety.

## RELEVANT LEGAL STANDARD, CROSSCLAIM DEFENDANTS' IMPROPER PROFFERS, AND THE CROSSCLAIMS' RELEVANT FACTUAL ALLEGATIONS

**Relevant Legal Standard**

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

**Crossclaim Defendants' Improper Proffers**

On this motion, Crossclaim Defendants acknowledge, as they must, that PGX is entitled to all reasonable inferences in its favor. *See* Moving Memorandum, at 7 ("a court considering a motion to dismiss must accept all factual allegations in the Complaint or crossclaims as true and draw all reasonable inferences in favor of the … crossclaim plaintiffs," citing *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)).  As such, the Court should reject in their entirety each and every attempt by Crossclaim Defendants to characterize PGX's crossclaims in any other light.  This includes but is not limited to the claims in the Moving Memorandum that PGX "concocted a system" to "create a façade of a contractor relationship" between PGX and Crossclaim Defendants (Moving Memorandum, at 1-2), that PGX "retaliated" against Crossclaim Defendants by asserting contractual rights against Bropil and KDC (*Id.*, at 3), and that PGX's assertion of its contractual rights is intended to "discourage putative class members from" electing to participate in that part of this lawsuit which claims entitlement to unpaid overtime premiums (*Id.*, at 21).

The Court should also reject as wholly improper the attempt by Crossclaim Defendants' counsel Julia H. Klein to act as both advocate and witness on this motion.  Specifically, in the declaration submitted in support of this motion (the "Klein Declaration," or "Klein Decl.," Docket Doc. No. 98), Ms. Klein states that "Members of the putative class have learned about … PGX's crossclaims and have been intimidated by this action and as a proximate cause [*sic*] of these crossclaims have declined to opt-in to this action."[1]  Klein Decl., ¶ 6; *see also* Moving Memorandum, at 3.  Not only does this representation constitute rank inadmissible hearsay, but it

---

[1] This representation is belied by the fact that "eight individuals have already opted into this action," which "rais[es] the plausible inference that the risk of crossclaims has not, across the board, discouraged potential plaintiffs from participating in this action."  Opinion & Order on Plaintiffs' Motion for 216(b) Notice, Docket Doc. No. 122, at 33.

is also directly contrary to an attorney's professional duty to refrain from acting as both advocate and witness in an action.[2]  *See Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228 (S.D.N.Y. 2010) (discussing Rule 3.7(a) of New York's Rules of Professional Conduct and noting that the "advocate-witness" rule is "based upon concerns that the lawyer might appear to vouch for [her] own credibility [and] that the testifying attorney is distorting the truth as a result of bias in favor of [her] client").  The Klein Declaration also contains legal arguments masquerading as factual assertions.  *See* Klein Decl., ¶ 6 ("Along with their answer and affirmative defenses, PGX and GRC retaliated against Plaintiffs by filing crossclaims against them personally, as well as against their corporate entities and a spouse of one of the Plaintiffs, even though such crossclaims are retaliatory") and ¶ 8 ("PGX's Amended Crossclaims kept allegations of …. indemnification").  Far from supporting an inference of retaliation, the allegations in the Crossclaims, read in the light most favorable to PGX, compel the conclusion that PGX is doing nothing more than attempting to hold its counterparties KDC and Bropil to the contractual commitments they made.  What's more, PGX and GRC *withdrew* their claims of indemnification, and PGX's amended crossclaims allege *only* that Bropil and KDC breached their contracts with it by refusing to accept PGX's tender of its defense in this action.  *Compare* Answer and Crossclaims (Docket Doc. No. 55) and Amended Answer and Crossclaims (Docket Doc. No. 91) ("Crossclaims").  Any attempt to mischaracterize PGX's crossclaims as sounding in indemnification – either in the Klein Declaration or in the Moving Memorandum – finds no support within the four corners of PGX's crossclaims against Bropil and KDC.  In short, none of the inaccurate, baseless and inflammatory assertions in the Klein Declaration has any place in the Court's consideration of this motion.  The Court should disregard them.  *See In re UBS Auction Rate Sec. Litig.*, No. 08-

---

[2] Depending upon the relationship between Ms. Klein and these unnamed "members of the putative class," this representation may also constitute a breach of Rule 1.6(a) of New York's Rules of Professional Conduct.

cv-2967, No. 08-cv-3082, No. 08-cv-4352, No. 08-cv-5251, 2010 U.S. Dist. LEXIS 59024, *51

(S.D.N.Y. June 10, 2010) ("the Court will disregard any portions of the [attorney] declaration

which set forth new facts, beyond the scope of the complaint, or legal arguments, both of which

are not appropriate for consideration on a motion to dismiss").

Similarly, the Court should disregard as irrelevant each reference in the Moving

Memorandum to the allegations in the Complaint filed by Curry, Brown-Pilgrim and Ricardo

Mazzitelli. *See* Moving Memorandum, at 4, 5, and 16 (referring to factual allegations as pleaded

in the Complaint).  For the purpose of this motion, those allegations are entitled to no weight

whatsoever – the question before the Court is whether PGX's *own* factual allegations, read in the

light most favorable to it, are sufficient to state a cause of action.

**Relevant Factual Allegations**

Here, PGX's crossclaims amply meet the *Twombly/ Iqbal* standard of plausibility.  In

sum, PGX alleges that both it and co-defendant GRC Solutions, LLC ("GRC") conducted due

diligence on each of its contracting counterparties – including KDC and Bropil – in order to

establish that they were *bona fide* businesses engaged in the practice of providing services as

Anti-Money Laundering professionals to a variety of clients.  PGX's breach-of-contract

crossclaims allege that KDC and Bropil each voluntarily entered into contractual commitments

to defend PGX from claims arising out of their respective contracts with PGX, breached those

commitments and caused damage to PGX.

Notably, the crossclaims sounding in breach of contract are asserted against business

entities – *not* the plaintiffs Curry or Brown-Pilgrim.  Curry and Brown-Pilgrim are named as

crossclaim defendants in this action solely in connection with the claims sounding in fraudulent

conveyance – and arise from allegations rooted in their own wrongful conduct.  Specifically, the

allegations in the crossclaims set forth that Curry dissolved KDC and Brown-Pilgrim dissolved

Bropil within mere weeks of learning of PGX's intent to invoke KDC's and Bropil's duty to defend it, in a transparent attempt to avoid the contractual commitments those entities owed to PGX.

### KDC and GRC

In October 2017, KDC sought to be engaged by co-defendant GRC to provide services on an independent contractor basis.  Crossclaims, ¶ 9.  In connection with GRC's due diligence as to KDC's business operations, GRC conducted a background check into KDC and Curry, the personnel that KDC had proposed to perform services pursuant to the agreement between the parties.  *Id.*, ¶ 10.  Also in connection with that due diligence process, KDC represented to GRC that it, and its personnel, had provided "consulting and investigative expertise and services to financial institutions under regulatory review for compliance and/or policy deficiencies."  *Id.*, ¶ 11.  Through KDC, Curry represented to GRC that he had "40+ years of combined municipal law enforcement, corporate security and Bank Secrecy Act/Anti-Money Laundering (BSA/AML) investigation experience," and that he had provided services to no fewer than fourteen financial institutions in connection with "BSA/ AML/ OFAC engagements" over an eleven-year period. *Id.*, ¶¶ 12-13.

Importantly, Curry also provided proof of KDC's general commercial liability insurance covering losses of up to one million dollars ($1,000,000.00) in connection with its security consulting business.  *Id.*, ¶ 14.  It is presumed that the crossclaims that PGX has asserted against KDC would have been covered by this insurance policy.  It remains to be determined whether Curry provided notice to KDC's insurer of PGX's claim against it, either prior to KDC's dissolution or at any time thereafter.

GRC and KDC further agreed that employees of KDC would not be entitled to any benefits accorded to GRC's employees, and that KDC assumed sole responsibility for the

payment of workers' compensation, unemployment insurance and other associated employment-related obligations.  Crossclaims, ¶¶ 15-16.  GRC and KDC further agreed that KDC would be engaged by GRC to perform consulting services on an "as needed" basis as an independent contractor.  *Id.*, ¶ 20.

Between October 2017 and February 2018, Curry provided services as an AML professional in connection with the agreement between KDC and GRC.  *Id.*, ¶ 21.

### KDC and PGX

After conclusion of KDC's relationship with GRC, in April 2018, KDC sought to be engaged by PGX to provide similar Anti-Money Laundering services, again on an independent contractor basis.  *Id.*, ¶ 24.  KDC identified Curry as its sole employee, and represented to PGX that, through KDC, Curry had provided a range of professional services on projects similar to PGX's, and that he had "40+ years of combined municipal law enforcement, corporate security and Bank Secrecy Act/Anti-Money Laundering (BSA/AML) investigation experience."  *Id.*, ¶ 25-27.

On the strength of those representations, as well as KDC's prior performance in connection with its relationship with GRC, PGX entered into an agreement with KDC on or around April 26, 2018 (the "PGX-KDC Agreement").  *Id.*, ¶ 28.  In that agreement, PGX and KDC agreed that KDC would be engaged by PGX to perform consulting services on an "as needed" basis as an independent contractor.  *Id.*, ¶ 29.  KDC further represented to PGX that it was "a corporation duly organized and existing under the laws of [Georgia], and that it is a bona fide corporate business entity established for a valid business purpose[.]"  *Id.*, ¶ 30.  Indeed, according to the Georgia Secretary of State's Corporations Division, Curry formed KDC on or around July 26, 2016 – well over a year before its initial agreement with GRC.  *Id.*, ¶ 3.

As was the case with GRC, in its agreement with PGX, KDC agreed to maintain comprehensive commercial liability insurance, as well as such other insurance coverage as may be reasonably requested by PGX and/or its clients.  *Id.*, ¶ 31; *see also* Klein Decl., Exh. D.  The parties also agreed that employees of KDC would not be entitled to any benefits accorded to PGX's employees, that KDC assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations, and that all fees paid to KDC would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings.  *Id.*, ¶¶ 32-34.

Between April 2018 and August 2018, Curry provided services in connection with KDC's agreement with PGX.  *Id.*, ¶ 35.

### PGX's Assertion of Its Contractual Right as to KDC and KDC's Dissolution

More than two years after the last day that Curry provided services in connection with KDC's agreement with PGX, he commenced this action seeking payment of unpaid overtime premiums.  *See* Docket Doc. No. 1 (filed on August 27, 2020).

In its agreement with PGX, KDC expressly agreed to defend PGX with respect to any claim arising out of the parties' agreement.  Crossclaims, ¶ 37; see also Klein Decl., Exh. D.  On three separate occasions between November 16, 2020 and November 30, 2020, PGX provided notice that it intended to seek relief from KDC pursuant to the parties' agreement in connection with this action.  Crossclaims, ¶¶ 38-40; *see also* Docket Doc. No. 33.

According to the Georgia Secretary of State's Corporations Division, Curry updated KDC's business status on an annual basis since the time of its formation in July 2016, and did so most recently on February 12, 2020.  Crossclaims, ¶ 42.  However, according to the Georgia Secretary of State's Corporations Division, Curry terminated KDC's business status on or around December 1, 2020, approximately two weeks after, through counsel, he received notice of PGX's

intent to enforce provisions of the PGX-KDC Agreement. *Id.*, ¶ 43.  Subsequent to Curry's termination of KDC's status as an active business entity, Curry continued to hold himself out to the business community as a "Financial Crime Consultant" affiliated with KDC. *Id.*, ¶ 44.

### *Bropil and PGX*

Bropil was a Florida Limited Liability Company formed on August 14, 2013. *Id.*, ¶ 5.  In April 2018, PGX invited Bropil to provide a response to a request for a proposal to provide Anti-Money Laundering services on an independent contractor basis. *Id.*, ¶ 45.  In response, Bropil submitted a proposal stating that its services included "provid[ing] investigative expertise to major financial institutions under regulatory review for deficiencies in Policies and Compliance procedures pertaining to Banking/Finance Operations, Correspondent Banking, Retail Banking, OFAC, Bank Secrecy Act (BSA), and Bank Bribery Act." *Id.*, ¶ 47.  Bropil further represented that it "is comprised of three (3) employees, with a combined 45 years of Corporate Managerial [and] Administrative experience in the areas of Bank Secrecy Act (BSA)/Anti-Money Laundering (AML) investigations [and] Client On-Boarding and Documentation." *Id.*, ¶ 49.

In Bropil's submissions to PGX, Brown-Pilgrim was described as having the experience and expertise to "perform transactional reviews on designated accounts/transactions, conduct KYC reviews, and Customer Due Diligence," as well as to "review of OFAC regulations and sanctions as it relates to the entities and individuals under the lookback review." *Id.*, ¶ 50.  Brown-Pilgrim was also described as having experience in preparing "investigative reports … with some being escalated for further review, while performing additional duties as required by the client and filing accurate and timely documentary reports." Crossclaims, ¶ 51.

On the strength of those credentials, PGX entered into a Master Service Agreement with Bropil, effective April 26, 2018 (the "PGX-Bropil Agreement"). *Id.*, ¶ 52; *see also* Klein Decl., Exh. E.  In that agreement, Bropil represented and warranted that it was a business entity "duly

organized and existing under the laws of [Florida], and that it [was] a bona fide corporate business entity established for a valid business purpose within the meaning of the tax laws of the United States." *Id.* Bropil also agreed to maintain comprehensive commercial liability insurance, as well as such other insurance coverage as may be reasonably requested by PGX and/or its clients. *Id.*, ¶ 54; *see also* Klein Decl., Exh. E. The parties also agreed that employees of Bropil would not be entitled to any benefits accorded to PGX's employees, that Bropil assumed sole responsibility for the payment of workers' compensation, unemployment insurance and all associated employment-related obligations, and that all fees paid to Bropil would be on an IRS tax form 1099, and not subject to employment-related taxes and withholdings. *Id.*, ¶¶ 55-57.

Brown-Pilgrim provided services in connection with the PGX-Bropil Agreement for three weeks, from April 2018 to May 2018, before she terminated Bropil's agreement with PGX. During those three weeks, she provided services for an average of 35.3 hours per week.

### PGX's Assertion of Its Contractual Right as to Bropil and Bropil's Dissolution

More than two years after the last day that Brown-Pilgrim provided services in connection with Bropil's agreement with PGX, Brown-Pilgrim commenced this action seeking payment of unpaid overtime premiums. *See* Docket Doc. No. 1 (filed on August 27, 2020).

In the PGX-Bropil Agreement, Bropil expressly agreed to defend PGX with respect to any claim arising out of the parties' agreement. Crossclaims, ¶ 61; see also Klein Decl., Exh. E. On three separate occasions between November 16, 2020 and November 30, 2020, PGX provided notice that it intended to seek relief from Bropil pursuant to the parties' agreement in connection with this action. Crossclaims, ¶¶ 62-64; *see also* Docket Doc. No. 33. The most recent of these was by correspondence dated November 30, 2020, when PGX wrote to Pilgrim in his capacity as one of Bropil's managing members. In that correspondence, PGX tendered defense of this action to Bropil pursuant to the PGX-Bropil Agreement. Crossclaims, ¶ 62.

According to the Florida Secretary of State's Corporations Division, Brown-Pilgrim updated Bropil's business status on a regular basis since the time of its formation in August 2013, and did so most recently on June 26, 2020.  Crossclaims, ¶ 67.  However, according to the Florida Secretary of State's Division of Corporations, Brown-Pilgrim terminated Bropil's business status on or around December 10, 2020.  *Id.*, ¶ 68.

It is on the strength of these specific and detailed factual allegations that PGX has asserted crossclaims against KDC and Bropil sounding in breach of contract for failure to accept PGX's tender of its defense, and against all Crossclaim Defendants sounding in fraudulent conveyance.

### ANALYSIS AND ARGUMENT

The cases and authorities cited by KDC and Bropil in support of their argument that PGX's claims sounding in breach of contract should be disregarded are inapposite because PGX is not seeking indemnification for liability or damages which may accrue under either the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") in the unlikely event that PGX is found liable under either of those statutes.  Enforcement of KDC's and Bropil's agreement to defend PGX does not enable PGX to evade any responsibilities it may owe to Curry or Brown-Pilgrim under the FLSA or the NYLL, because the contractual provision at issue does not shift the financial responsibility for liability or damages from PGX to KDC, Bropil, Crossclaim Defendants or anyone else.  Similarly, Crossclaim Defendants' argument that PGX's crossclaims sounding in breach of contract are inconsistent with the fee shifting structure of the FLSA and NYLL fails by its own logic: if either Curry or Pilgrim prevails on their respective claims of entitlement to unpaid overtime premiums, the fact that KDC and Bropil agreed to assume PGX's defense costs is of no consequence to Curry's and/or Brown-Pilgrim's entitlement to attorney's fees.  The arguments presented in the Moving Memorandum further fail to

recognize the fact that, as a matter of law, Curry and Brown-Pilgrim are not interchangeable with their respective business entities, KDC and Bropil.  Finally, the arguments proffered in support of KDC's and Bropil's motion for dismissal of PGX's breach-of-contract crossclaims fail under the plain language of the contractual provision at issue in this case.

That part of Crossclaim Defendants' motion which seeks dismissal of PGX's crossclaims sounding in fraudulent conveyance should also be denied.  PGX has adequately pleaded its claims for fraudulent conveyance, providing ample particularity as to the details of those claims (including specific dates on which both Curry and Brown-Pilgrim engaged in conduct supporting the inference of an intent to defraud).  The contention that PGX cannot maintain such a claim because it is not a creditor flies in the face of the applicable statutory language.  Crossclaim Defendants' citation to tort law for their argument that indemnification agreements violate public policy when an intentional injury is at issue is also misplaced, as PGX's claims involve neither a tort, an intentional injury, nor an indemnification agreement.

A.     **PGX's Claims Sounding in Breach of Contract Are Adequately Pleaded**

The contention that KDC's and Bropil's agreement to defend PGX is unenforceable finds no support in applicable case law.  The points and authorities presented in the Moving Memorandum apply to claims for indemnification and contribution – not to those seeking to enforce an agreement to defend.

Indemnification claims are those in which "one party agrees to hold the other harmless[.]"  *Genger v. Sharon*, 910 F. Supp. 2d 581, 587-88 (S.D.N.Y. 2012).  In contrast, a contractual agreement to assume defense costs in the event of litigation is "is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable…. Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased."  *Seaboard Sur. Co. v. Gillette*

11

*Co.*, 64 N.Y.2d 304, 311 (N.Y. 1984) (collecting cases); *see also Hortica Florists Mut. Ins. v. Pittman Nursery*, 729 F.3d 846 (8th Cir. 2013) (affirming enforcement of contractual commitment to defend against case alleging violation of FLSA).  KDC's and Bropil's agreement to defend PGX in the event of subsequent litigation covers "any claim arising out of this Agreement and Contractor's and Personnel's performance under any SOW (or the Agreement as it may relate to such SOW)" (Klein Decl., Exhs. D-E), thereby bringing the instant action squarely within the scope of that obligation.

The cases cited in the Moving Memorandum stand for the proposition that an employer may not avoid liability for violations of applicable wage payment laws by shifting that obligation to an indemnitee.  The majority of cases cited in the Moving Memorandum further hold that indemnification cannot and does not arise from the operation of the FLSA itself.  That is of no import to this motion.  Here, PGX is not claiming that KDC's and Bropil's obligation arises from operation of the FLSA, but from their own voluntarily-undertaken contractual commitments.

For example, in *Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999), the case upon which the Moving Memorandum relies most heavily, the issue before the Second Circuit concerned whether *the FLSA itself* created a right to indemnification and contribution.  The court found that it did not.  *Id.*, at 144 (noting, *inter alia*, that neither the text nor the legislative history of the FLSA provided for contribution and cautioning against "judicially engraft[ing] remedies" onto statutes).  The oft-quoted statement from *Herman*, that "[t]here is no right of indemnification or contribution for employers found liable under the FLSA" does not, as Crossclaim Defendants contend, mean that a contractual commitment to defend in an FMLA case may not stand.  Rather, that statement refers to the court's findings that: (i) no *indemnification* rights arise from operation of the FLSA itself; and (ii) a contractual provision

that would allow an employer to avoid liability for failure to meet its FLSA obligations is not enforceable.  Indeed, the *Herman* court made this reasoning explicit in specifying that the basis for its holding was that "the text of the FLSA makes no provision for contribution or indemnification," and "the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted."  172 F.3d, at 144.  Here, however, PGX is not seeking to have either Bropil or KDC shoulder its liability under the FLSA or NYLL – nor is it seeking to enforce an extra-contractual obligation.  Thus, *Herman* and its progeny cited in the Moving Memorandum are inapposite.  *See Mitropoulos v. 491 Sunrise Corp.*, No. 17-cv-3618, 2019 U.S. Dist. LEXIS 98790, *3-4 (E.D.N.Y. June 12, 2019) (rejecting a claim for "absolute indemnity," where the defendant did not provide any grounds for indemnification); *Holt v. Animation Collective. Inc.*, No. 13 Civ. 2552 (KBF), 2014 U.S. Dist. LEXIS 51625 (S.D.N.Y. Apr. 10, 2014) (rejecting a claim for implicit indemnification); *Ansoumana v. Gristedes Operating Corp.*, No. 00 Civ. 253 (AKH), 2003 U. S. Dist. LEXIS 22 (S.D.N.Y. Jan. 3, 2003) (suggesting that a non-settling defendant in an FLSA action would be unlikely to obtain indemnification against a settling defendant, if such indemnification were sought); *Muniz v. Re Spec Corp.*, No. 16-CV-02878, 2017 U.S. Dist. LEXIS 54619 (S.D.N.Y. Apr. 4, 2017) (FLSA does not create the right to seek contribution from a supervisory employee).

The Second Circuit Court of Appeals has not addressed *Herman*'s application to contractual indemnification obligations, and lower courts in the Second Circuit have been inconsistent in their approach to the question.  *Compare Derek Copper v. Cavalry Staffing, LLC*, 14-CV-3676, 2021 U.S. Dist. LEXIS 49742, *5 (E.D.N.Y. March 16, 2021) ("the agreement between Cavalry and Fleet does not incentivize flouting the FLSA.  The Court questions whether

any typical indemnity agreement does so; after all, employers regularly seek to manage their risk of liability through bonds and insurance policies.  The Court hesitates to call these commonplace arrangements unenforceable in the FLSA context."); *Paganas v. Total Maint. Solution, LLC*, 220 F.Supp.3d 247, 263 (E.D.N.Y. 2016); *Bogosian v. All Am. Concessions*, No. 06-cv-1633, 2011 U.S. Dist. LEXIS 109082 (E.D.N.Y. Sept. 26, 2011); *Amaya v. Garden City Irrigation, Inc.*, No. 03-cv-2814, 2011 U.S. Dist. LEXIS 15316 (E.D.N.Y. Feb. 15, 2011) (all applying indemnification claims in the context of claims for unpaid wages) and *Goodman v. Port Auth., of N.Y. & N.J.*, 850 F. Supp.2d 363, 389 (S.D.N.Y. 2012); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 328, (S.D.N.Y. 2001); *Garcia v. Cloister Apt Corp.*, No. 16 CV 5542, 2018 U.S. Dist. LEXIS 42869 at * 6-8 (S.D.N.Y. March 15, 2008).  In any event, even in those cases where courts have extended *Herman* to private contracts, it was claims for indemnification – not the duty to defend – that were found to be unenforceable.  On this point, *McDougal v. G & S Tobacco Dealers. L.L.C.*, 712 F. Supp. 2d 488 (N.D. W.Va. 2010) provides persuasive authority. There, the presiding court held that, under *Herman*, a defendant could not seek indemnification from a contracting counterparty for claims asserted under the FLSA – *but that the contractual duty to defend remained enforceable. Id.*, at 500-01.  The Court should so hold here as well.

It is emphatically not the case, as argued in the Moving Memorandum, that PGX is seeking to "create an end run around the purpose of the law."  Moving Memorandum, at 9-10. On the contrary, PGX is doing nothing more than seeking the benefit of the bargain it struck with KDC and Bropil – two counterparties that had all the hallmarks of sophisticated, well-established business entities.  PGX conducted due diligence on each of these entities, received assurances that each of them were established for legitimate business purposes – and obtained warranties that each of them carried insurance policies sufficient to cover any expenses or liabilities that

may arise.  When PGX put KDC and Bropil on notice of its intent to tender its defense to them,

each could have put their insurance carrier on notice of PGX's crossclaims – instead, Curry and

Brown-Pilgrim elected to dissolve those companies.  In light of these choices, the court should

not indulge the argument that PGX is attempting to impose its litigation expenses upon either

Curry or Brown-Pilgrim.

      Crossclaim Defendants' public policy argument is similarly misplaced.  None of the

cases cited in the Moving Memorandum stands for the proposition that a contractual obligation

to defend, as opposed to one to assume financial responsibility for liability and damages, violates

public policy.  To repeat, PGX is not seeking indemnification – requiring KDC and Bropil to

comply with the contractual obligations into which they willingly entered does not enable PGX

to avoid liability or financial responsibility for damages under the FLSA or the NYLL.  PGX

would remain liable for any damages assessed in the unlikely event that Curry and Brown-

Pilgrim prevail on the merits of their claims.  As such, KDC's and Bropil's duties to defend PGX

in this action do not offend the purposes of the FLSA or the NYLL as a matter of law.

Therefore, that part of the motion seeking dismissal on this ground should be denied.

      **1.**      **The FLSA's Fee Shifting Provisions Are Irrelevant to PGX's Claims**

      There is no merit to the argument that enforcement of KDC's and Bropil's agreements to

defend PGX in this action would thwart the fee shifting provisions of the FLSA or NYLL.

Indeed, Crossclaim Defendants have not cited to a single case from within the Second Circuit

that supports their argument that the crossclaims should be dismissed for that reason.  As

controlling law does not support this position, this argument should be summarily rejected.

      As set forth above, PGX is not attempting to shift fees to either Curry or Brown-Pilgrim.

Instead, it is attempting to enforce a contract into which it entered with two established,

sophisticated, insured business entities, KDC and Bropil.  The fact that the FLSA would not

grant to PGX an award of attorney's fees from Curry or Brown-Pilgrim if judgment is entered in its favor is irrelevant to the question of whether PGX's agreements with KDC and Bropil are enforceable.

Furthermore, the cases outside the Second Circuit cited in the Moving Memorandum provide no basis upon which to grant this part of the motion, as none of them supports the argument that PGX's crossclaims for breach of contract are insufficient to state a claim upon which relief may be granted. *Abdul-Rasheed v. KableLink Communs., LLC*, No. 13-cv-879-T-24-MAP, 2013 U.S. Dist. LEXIS 167159 (S.D. Fla. Nov. 25, 2013), involved the form of notice to be sent to prospective class members in an FLSA case – not a motion to dismiss (moreover the court's decision was predicated on the Eleventh Circuit pattern jury instructions, which are not applicable here – *id.*, 2013 U.S. Dist. LEXIS 167159 at *12-14). The court in *Daougherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272 (WJM) (KLM) (D. Colo. July 15, 2011) applied case law specific to the enforceability of arbitration agreements – and was not considering the merits of a party's claims on a motion to dismiss. This case as well is irrelevant to the court's consideration of the issues before it on this motion. In *EEOC v. O & G Spring & Wire Farms Specialty Co.*, 38 F.3d 872 (7th Cir. 1994), the Seventh Circuit analyzed the appropriate standard to apply when assessing attorneys' fees against the EEOC in an ADEA case. None of these cases addresses the relief sought by the Crossclaim Defendants on this motion.

### 2. The Plain Language of the Parties' Contracts Supports PGX's Claims

The Court should reject the attempt set forth in the Moving Memorandum to impose conditions upon KDC's and Bropil's duties which are absent from the parties' agreements. Specifically, KDC and Bropil argue that they are under no duty to defend PGX unless "three

separate and distinct precondition … occur."  Moving Memorandum, at 15.  This proposition finds no support in the relevant contractual language.

Both the PGX-KDC Agreement and the PGX-Bropil Agreement call in relevant part for KDC and Bropil to "defend … PGX … with respect to any … claim arising out of this Agreement and Contractor's and Personnel's performance under any SOW (or the Agreement as it may related to such SOW)."  Klein Decl., Exhs. D-E.  It is evident that Curry's and Brown-Pilgrim's claims fall within the scope of the parties' agreement.  KDC's and Bropil's duty to defend is not invoked in the event of an underlying breach of the Agreement or SOW – but upon the assertion of a "claim" concerning the parties' contractual relationship.  The Moving Memorandum correctly notes that "the best evidence of what parties to a written agreement intend is what they say in their writing."  Moving Memorandum, at 15.  Here, the parties' written agreement is unequivocal, and readily demonstrates that KDC and Bropil agreed to defend PGX against any claim concerning the parties' agreement which may arise.

PGX's crossclaims sounding in breach of contract provide "a short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, *infra*, 550 U.S. at 554-555 (2007).  KDC's and Bropil's arguments to the contrary should be rejected.

### 3.     The Crossclaims Do Not Seek Indemnification for an Intentional Tort

In the Moving Memorandum, KDC and Bropil next argue that PGX's crossclaims violate public policy.  This argument suffers from several fatal defects.

First, the Moving Memorandum refers to *Curry's and Brown-Pilgrim's* allegations in the Complaint in support of the position that PGX "acted intentionally in misclassifying [them] as independent contractors."  Moving Memorandum, at 16.  As set forth above, for the purpose of this motion to dismiss PGX's crossclaims under Rule 12(b)(6), their allegations are irrelevant.

Rather, under Rule 12(b)(6), it is *PGX's* allegations which must be accepted as true. *Ruston*, 610 F.3d, at 59. Under that standard, there is *nothing* in the allegations in support of PGX's crossclaims to suggest intentional misconduct on PGX's part. On the contrary, at each turn, PGX acted reasonably under the circumstances and in accordance with generally accepted industry standards by, among other things, conducting background checks on its contracting counterparties, verifying that those counterparties were legitimate business entities, and obtaining representations as to insurance coverage. The Court should reject the suggestion that *Curry's and Brown-Pilgrim's* allegations have any relevance to whether PGX has adequately stated a cause of action upon which relief can be granted.

Neither of the cases cited in the Moving Memorandum is relevant to this analysis. Both *Austro v Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676 (1985) and *Aldridge v. Brodman*, 100 A.D.3d 1537, 1539 (4th Dep't. 2012) concerned determinations either at the summary judgment stage or after trial – *not* at the pleadings stage. Both stand for the proposition that, in an action sounding in tort, attorney's fees may not be recovered pursuant to an indemnification agreement if it is established in the course of the judicial proceeding that the injury was intentional – a rule which has no application to the instant Motion. Neither case concerns payment of defense fees in an action for overtime under either the FLSA or NYLL. Simply put, these opinions do not speak to the issues presented on this motion at all.

As such, this argument provides no basis upon which to grant the motion to dismiss PGX's crossclaims against KDC and Bropil sounding in breach of contract.

### B.      PGX Has Stated Claims for Fraudulent Conveyance

As summarized above, rather than have KDC and Bropil honor their contractual commitments to PGX, Curry and Brown-Pilgrim brazenly dissolved their respective business entities shortly after receiving notice of PGX's intent to tender its defense to them. This

dereliction of their professional and contractual obligations amply supports a claim sounding in fraudulent transfer.

### 1.     PGX Has Adequately Alleged Facts in Support of Its Fraudulent Conveyance Claims

Crossclaim Defendants' contention that PGX has not pleaded the essential elements of its fraudulent conveyance claims are flatly incorrect.  PGX has pleaded intent to defraud by allegations of specific detailed actions reflecting multiple badges of fraud.

### a.     PDX Has Plead With Specificity Intent to Hinder, Delay or Defraud

PGX has adequately pleaded its claims for fraudulent conveyance.  Specifically, as to KDC and Curry, PGX has alleged that:

- Curry formed KDC in July of 2016 (Crossclaims ¶¶ 2-3);

- Curry updated KDC's business status on an annual basis since the time of its formation in July 2016, and did so most recently on February 12, 2020 (*Id.*, ¶ 42);

- On November 16, 2020 PGX provided notice that it intended to seek relief from KDC pursuant to the KDC-PGX MSA in connection with the instant action (*Id.*, ¶ 38);

- on November 20, 2020, through its counsel, PGX gave KDC notice of its intent to name KDC as a Crossclaim defendant in this case (*Id.*, ¶ 39);

- on November 30, 2020, PGX gave notice to KDC of its intent to assert its contractual rights ( *Id.*, ¶ 40);

- KDC failed to defend PGX in regard to this lawsuit (*Id.*, ¶ 42); and

- On December 1, 2020, KDC's business status was terminated with the Georgia Secretary of State (*Id.*, ¶ 43).

19

As to Bropil, Brown-Pilgrim and Dennis Pilgrim, PGX has alleged that:

- Brown-Pilgrim registered Bropil as a Limited Liability Company in Florida in 2013 (*Id.*, ¶¶ 4-5);

- Brown-Pilgrim and Dennis Pilgrim are identified as Bropil's "Authorized Persons" on Bropil's Secretary of State filings (*Id.*, ¶ 6);

- Brown-Pilgrim updated Bropil's business status on a regular basis since the time of its formation in August 2013, and did so most recently on June 26, 2020 (*Id.*, ¶ 67);

- On November 16, 2020 PGX provided notice that it intended to seek relief from Bropil in connection with the instant action (*Id.*, ¶ 62);

- On November 30, 2020, PGX gave notice to D. Pilgrim in his capacity as a managing member of Bropil and tendered defense of this action to Bropil (*Id.*, ¶ 64);

- Bropil has failed to defend PGX in regard to this lawsuit (*Id.*, ¶ 66);

- On or around December 10, 2020, Bropil's business status was terminated with the Georgia Secretary of State (*Id.*, ¶ 68); and

- Brown-Pilgrim electronically signed Articles of Dissolution filed with the Florida Secretary of State (*Id.*, ¶ 69).

While Crossclaim Defendants allege in bald conclusory fashion that this level of detail is insufficient to state fraudulent conveyance claims against the five Crossclaim Defendants, they have failed to identify what about the pleading is insufficiently detailed.  They also neglected to cite to any cases that support their assertion that the fraudulent conveyance claims warrant dismissal.  Accordingly, as Crossclaim Defendants have not demonstrated why the pleading is

insufficient as to any one, much less all five, of the Crossclaim Defendants, their motion to dismiss the fraudulent conveyance claims on this ground is baseless and should be denied.

Similarly baseless is Crossclaim Defendants' argument that PGX has not adequately alleged intent to defraud as to any of the Crossclaim Defendants.  In a fraudulent conveyance claim, "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Tommy Lee Handbags Mfg. v. 1948 Corp.*, 971 F. Supp. 2d 368, 382 (S.D.N.Y. 2013) (quoting *In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)).  "These 'badges of fraud' include: a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; ... and retention of control of the property by the transferor after the conveyance." *Id.*  (Internal citation and quotation marks omitted).  They also include the effect of a course of conduct after threat of suits by creditors and the general chronology of the events and transactions under inquiry.  *Yong Xiong He v. China New Star Rest., Inc.*, No. 19-CV-5907(PKC) (CLP), 2020 U.S. Dist. LEXIS 196481, *14-15 (E.D.N.Y. Oct. 22, 2020).  Fraudulent intent "may also be inferred from the secrecy, haste, or unusualness of the transaction."  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995).  "The existence of several badges of fraud can constitute clear and convincing evidence of 'actual intent' to defraud creditors."  *Yong Xiong He*, *infra*, 2020 U.S. Dist. LEXIS 196481, at * 14 (internal citation omitted).  "While the presence or absence of any particular badges of fraud is not determinative in finding fraudulent intent, 'the presence of multiple indicia will increase the strength of the inference.'"  *Id.*, at * 15 (internal citations omitted).

Here, the crossclaims cite to and rely upon multiple badges of fraud: (1) the close relationship between Curry and KDC (specifically that Curry formed KDC, was its sole employee and was the person who dissolved it) and the close relationship between Bropil, Brown-Pilgrim and Pilgrim (specifically, that facts that Brown-Pilgrim formed Bropil, that she and Pilgrim were its two managing members, and that Brown-Pilgrim was the person who dissolved Bropil); (2) the haste with which KDC and Bropil were dissolved, within weeks of receiving notice that they would held to their contractual obligation of defense and despite the fact that those companies had been in existence for years; and of course (3) the threat of impending litigation commenced by PGX.

Given that these multiple badges of fraud constitute clear and convincing indicia of fraud, Crossclaim defendant's argument that PGX's pleadings are insufficient to state a claim is not in accord with applicable law.  Crossclaim Defendants' motion to dismiss PGX's fraudulent conveyance claims on this basis is patently without foundation.

### b.    PGX Has Adequately Alleged a Conveyance

Crossclaim Defendants argue that PGX has not alleged with sufficient particularity that KDC's and Bropil's assets were conveyed without adequate consideration or with fraudulent intent.  This argument is unavailing as well.

The fatal defect in Crossclaim Defendants' argument is set forth in the authority they cite in their own brief.  As Crossclaim Defendants acknowledge, claims may be alleged upon information and belief if "the facts are peculiarly within the opposing party's knowledge," in which case "the pleader must nonetheless allege facts upon which the belief is founded." Moving Memorandum, at 21 (citing *In re Dreier LLP*, 452 BR 391 (SDNY 2011)).  PGX has done precisely that.  Concededly, the disposition of KDC's and Bropil's assets is unknown to PGX at this time – because that information is "peculiarly within [Curry's, Brown-Pilgrim's and

Pilgrim's] knowledge."  Crossclaim Plaintiffs' argument on this point fails to recognize this crucial detail.

The case cited by Crossclaim Defendants do not hold otherwise.  Rather, in *Carlyle, LLC v. Quik Park 1633 Garage LLC*, 160 A.D.3d 476 (1st Dep't. 2018), the transfers at issue took place *two years* before the defendants became indebted to the plaintiffs.  Here, Curry and Brown-Pilgrim dissolved their respective business entities within weeks of learning of the imminence of PGX's tender.  Similarly, in the case of *Bd. Of Managers of the 369 Harman St. Condo. v. 369 Harman LLC*, No. 450386/2018, 2018 N.Y. Slip. Op. 32026 (Sup. Ct. N.Y. Cty. Aug. 20, 2018), again, it was the allegations as to intent – not as to the conveyance – that were deficient, because they contained no facts and merely parroted the statutory language.  ("Plaintiff alleges that '[u]pon information and belief, some or all of the Equity Distributions were made by the Sponsor with actual intent to hinder, delay and defraud creditors of the Sponsor, including Plaintiff and the Unit Owners'…").  *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 408 (Bankr. S.D.N.Y. 2011), also cited by Crossclaim Defendants, does not stand for the proposition that allegations may not be made upon information and belief, but rather, that a party cannot allege fraud upon information and belief *unless*, as is the case here with the dissolutions of KDC and Bropil, the facts are "peculiarly within the opposing party's knowledge."  In short, Crossclaim Defendants' argument is unfounded.

## 2. PGX Has Standing to Assert a Claim Sounding in Fraudulent Conveyance

For the reasons set forth above, the Court should deny that part of the motion which seeks dismissal of PGX's breach-of-contract crossclaims.  Even if that motion had merit, a dismissal would not strip PGX of its status as a creditor for purposes of the New York Uniform Fraudulent Voidable Transactions Act, New York Debtor and Creditor Law, Article 10 §§ 270 *et seq*.

Rather, PGX would lose its status as a creditor only where the contract had been deemed to be "void." This is because a contract that is void is one that "never existed" and therefore could not be breached. *See Quinio v. Aala*, No. 19 CV 4686 (PKC) (SJB), 202 U.S Dist. LEXIS 236575 at *8-9 (E.D.N.Y. Dec. 14, 2020) (after a jury finding that a contract was void as against public policy, the contract ceased to produce an obligation that could be breached). However, as set forth above, Crossclaim Defendants have not supplied any basis for a finding that the defense obligation violates public policy. Accordingly, there is no merit to Crossclaim Defendants' assertion that PGX is not a creditor.

### 3. New York, Georgia and Florida Have All Adopted the Voidable Transactions Act

Crossclaim Defendants argue that the laws of their home states should govern PGX's fraudulent transfer claim. However, New York, Georgia and Florida have all adopted the Voidable Transactions Act, thereby rendering moot the issue of which state's law applies to PGX's claims sounding in fraudulent transfer. *Compare* N.Y. D.C.L. § 276 ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors"), GA Code § 18-2-74(a)(1) ("A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation… with actual intent to hinder, delay, or defraud any creditor of the debtor"), and Fla. Stat. § 726.105(1)(a) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor"). "In New York, the first question

to resolve in determining whether to undertake a choice of law analysis is whether there is an

actual conflict of laws." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d. Cir. 1998).  Because,

regardless of applicable law, the Crossclaims have sufficiently alleged fraudulent conduct on the

part of Crossclaim Defendants, the Court should deny this part of the Motion as well.

## CONCLUSION

For the reasons discussed above, the Court should deny the motion of Crossclaim

Defendants seeking dismissal of PGX's crossclaims, and grant to PDX such other relief as the

Court deems just and proper.

Dated: New York, New York
      June 21, 2021

DAVIS WRIGHT TREMAINE LLP

By: s/ Michael J. Goettig
    Michael J. Goettig
    Lyle S. Zuckerman
    1251 Avenue of the Americas, 21st Floor
    New York, New York 10020
    (212) 489-8230
    *Counsel for Defendants*
    *P&G Auditors and Consultants, LLC, GRC*
    *Solutions, LLC and PGX, LLC*
    *and Crossclaim Plaintiff PGX, LLC*