## PRELIMINARY STATEMENT

There are several fundamental flaws in PGX's opposition to the Cross Claim Defendants' motion to dismiss. First and foremost, PGX completely ignores the fact that courts have repeatedly held that individuals who believe that their rights under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") have been violated have an inviolable right to assert those claims without interference from the party alleged to be responsible for the FLSA or the NYLL violations. The right to pursue wage and hour litigation is sacrosanct, and courts will not tolerate any actions that could cause a chill toward exercising those rights. Accordingly, courts, especially those in this Circuit, have routinely dismissed actions where an alleged employer has initiated another action or asserted counter or cross claims against the party who has asserted the initial wage and hour claims, finding that these retaliatory lawsuits have the effect of dissuading others from exercising their statutorily protected rights.

Second, PGX incorrectly argues that lawsuits to enforce a contractual provision requiring one party to pay for legal defense costs incurred by a party in the course of defending itself against FLSA and NYLL claims is distinguishable from a situation where a party seeks indemnification for the underlying liability in an action. [1]  Contrary to PGX's assertion, courts in this Circuit have made no distinction between seeking payment for legal defense costs, and seeking indemnification for the underlying liability of an FLSA or NYLL claim, especially when the party seeking indemnification for its legal defense costs is seeking those legal defense costs from parties who have sued them for alleged violations of the FLSA or NYLL.

---

[1] Admittedly, PGX is no longer seeking indemnification from the Cross Claim Defendants for any liability it may incur for violating the FLSA or NYLL.  However, it is important to note that prior to amending its crossclaims alleging a breach of contract and seeking payment of the legal defense costs it incurs in defending itself from Plaintiff's FLSA and NYLL claims, PGX, and another defendant in this Action were, in fact, seeking indemnification for any underlying judgment in this Action. (See Dkt. No 60). PGX now seems to acknowledge that claims seeking indemnification for liability under the FLSA and NYLL would violate public policy and would be dismissed.

In addition, PGX's breach of contract claims should also be dismissed because PGX has not adequately alleged that the conditions necessary to invoke the duty to defend provision have been satisfied.  As set forth in the Cross Claim Defendants' moving memorandum of law, three separate and distinct pre-conditions must occur before PGX can invoke the duty to defend requirement: first, a claim must arise out of the Master Services Agreement ("MSA") between PGX and the contracting entity; second, the contractor, that is KDC and Bropil, must have breached a Statement of Work ("SOW"), which is a separate document that PGX and the contracting entities entered into; and third, the "Personnel," who are Plaintiff Curry and Plaintiff Pilgrim, must also have breached an SOW. In its amended cross claims, PGX solely alleges that the first condition occurred, but it does not allege that either the "Contractor" or the "Personnel" violated an SOW. PGX, in its opposition to the Cross Claim Defendants' motion to dismiss, tried to conceal the fact that the MSA requires a showing that all three conditions be met in order to invoke the indemnification requirement. Nevertheless, when reading the full text of the relevant agreement, it is clear that PGX has not satisfied the conditions necessary to enforce the duty to defend provisions in the contract.

Also, PGX's breach of contract claim is void under New York law, which prohibits claims for indemnification for intentional torts. Finally, PGX's fraudulent conveyance claims must be dismissed because those claims are entirely derivative of its breach of contract claims, which, as discussed above, must be dismissed.

## **LEGAL ARGUMENT**

### I.    **PGX's Cross Claims Should Be Dismissed Because They Violate Public Policy Since Allowing Such Claims Would Deter Individuals From Bringing Wage And Hour Lawsuits**

PGX's primary theory in its opposition to the Cross Claim Defendants' motion to dismiss focuses on the notion that there is a difference between claims for indemnification (which PGX

claims it is not seeking) and claims to enforce a contractual agreement to defend a party named as a defendant in a wage and hour lawsuit. (*See* Dkt. No. 125, at pp. 16-20). While PGX acknowledges that claims for indemnification of damages brought by a defendant in an FLSA and NYLL lawsuit are impermissible, PGX asserts that courts can sustain claims seeking to enforce a duty to defend.  This is incorrect. Defendants in an FLSA and NYLL lawsuit may not assert claims seeking payment of their legal defense costs by plaintiffs or plaintiffs' entities in the FLSA and NYLL proceeding, as such claims violate public policy.

PGX's opposition to the Cross Claim Defendants' motion to dismiss largely ignores the Cross Claim Defendants' primary argument that PGX's cross claims should be dismissed because the cross claims violate public policy. Courts have reasoned that, "[r]equiring plaintiffs to indemnify defendants for ***the costs of litigating*** an unsuccessful FLSA claim would deter plaintiffs from bringing suit in the first place."  *Fernandez v. Kinray, Inc.*, Index No. 13-cv-4938, 2014 U.S. Dist. LEXIS 17954, at *32 (E.D.N.Y. Feb. 5, 2014) (emphasis added); *see also Abdul-Rasheed v. KableLink Commc'ns, LLC*, Index No. 8:13-cv-879-T-24 MAP, 2013 WL 6182321, at *5 (M.D. Fla. Nov. 25, 2013) (finding that a contractual provision requiring plaintiffs to pay for defendants' attorneys' fees even unsuccessful FLSA claims was unenforceable because "[t]o hold otherwise would impose a chilling effect that would defeat the remedial purpose of the FLSA"); *see Yaw Adu Poku v. Beavex, Inc.,* Index No. 13-cv-3327, 2013 WL 5937414, at *2 (D.N.J. Nov. 1, 2013) (same).  As such, contractual provisions like those PGX seeks to enforce through its cross claims are unenforceable.

In support of their motion to dismiss, Cross Claim Defendants rely heavily on the Eastern District's decision in *Fernandez v. Kinray, Inc.*, yet PGX makes no attempt to distinguish the holding in *Fernandez v Kinray, Inc.*, from the instant case.  The circumstances in *Fernandez* are

remarkably similar to the facts presented in the instant action. The *Fernandez* plaintiffs, like the plaintiffs here, alleged that they were misclassified as independent contractors and were therefore deprived of overtime compensation and other wages. In response to the *Fernandez* plaintiffs' complaint, the *Fernandez* defendant, like PGX here, asserted counterclaims against plaintiffs and opt-in plaintiffs seeking indemnification of defense costs. The *Fernandez* court dismissed the counterclaims before there was any determination of the merits of the *Fernandez* plaintiffs' claims, because public policy "intended to protect plaintiffs' ability to bring claims – a policy that applies before the parties know whether or not the claim will be successful." *Fernandez*, 2014 U.S. Dist. LEXIS 17954, at **27-29.

*Fernandez* is not an isolated decision and courts repeatedly found that claims for defense costs brought by wage and hour defendants against the aggrieved plaintiffs violate public policy because these types of claims could dissuade individuals from bringing FLSA actions. *See e.g., Robinson v. Great Performances/Artists as Waitresses*, Index No 152469/2018, 2021 N.Y. App. Div. LEXIS 2871, at *1 (1st Dep't May 4, 2021) (holding that an employer does not have a right to contractual indemnification to have another party pay for its legal costs incurred in defending itself from claims brought pursuant the NYLL because indemnification, whether contractual or otherwise, is against public policy); *Abdul-Rasheed v. KableLink Communs., LLC*, Index No. 13-cv-00879, 2013 WL 6182321, at *5 (M.D. Fla. Nov. 25, 2013) (concluding that a defendant could not assert claims for reimbursement of legal defense costs where plaintiff alleged misclassification as an independent contractor because an award of attorney's fees to defendants would impose a chilling effect, defeating the remedial purpose of the FLSA); *Cummings v Energy Intl. Servs.*, LC, 271 F Supp 3d 1182, 1193-1194 (E.D. Cal. 2017) (holding that a provision requiring plaintiffs' corporate entities to pay for defendants' legal defense costs in the event that the defendants were

sued was unenforceable and violated public policy whether or not the plaintiffs were found to be employees because the FLSA's public policy is implicated when a worker files an FLSA claim, not just when a worker prevails in the litigation).

In fact, some courts have found that even claims for defense costs against entities unrelated to plaintiffs in FLSA and NYLL actions violate public policy. In *Robinson*, 2021 N.Y. App. Div. LEXIS 2871, a group of plaintiffs filed a lawsuit against a catering company for alleged violations of the NYLL. In response to the lawsuit, the catering company/defendant filed a third-party complaint against a staffing agency that provided the catering company with workers. The contract between the catering company and the staffing company contained a provision that required the staffing company to pay the catering company's legal defense costs in the event that a worker sent to the catering company by the staffing company filed a lawsuit against the catering company. When a worker sued the catering company, the catering company filed a claim against the staffing company to enforce the terms of their agreement and to have the staffing company pay the legal costs incurred by the catering company in defending against the worker's lawsuit. The trial court ultimately dismissed the catering company's third-party complaint on the grounds that an employer had no right to have its legal defense costs paid by a third party for claims brought pursuant to NYLL because indemnification under that statute, whether contractual or otherwise, was against public policy. *Id.*, at *12 ("[e]ven if it is determined that Great Performances is not plaintiffs' employer pursuant to the NYLL, and thus, could not be held liable to plaintiffs for a violation of the statute, Great Performances still would not be entitled to contractual indemnification from Kensington for the defense costs it incurred in the action.").

The public policy argument is even stronger here, in the present action, than in *Robinson*, as PGX seeks coverage of its defense costs from Plaintiffs' own companies (*see e,g.*, Amended

Counterclaim, at ¶¶ 25, 69), and not from unrelated entities.  The bulk of courts that have evaluated this issue recognize the terrible chilling effect that cross claims for indemnification or legal defense costs would have on potential litigants who believe that their rights under the FLSA or NYLL have been violated. Because this chilling effect is undeniable, courts simply do not allow these types of cross claims to proceed. As such PGX's claims violate public policy and should be dismissed.

In its opposition to the Cross Claim Defendants' motion to dismiss, PGX acknowledges that, contrary to its position, many courts have dismissed breach of contract claims brought by defendants in FLSA and NYLL claims who were trying to enforce agreements that required a plaintiff or a third party to pay either the defendants' legal defense costs or the underlying liability in the FLSA or NYLL action.  *See e.g., Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001) (dismissing cross claim for contractual indemnification for legal defense costs and underlying liability for claims brought under the FLSA and NYLL); *Garcia v. Cloister Apt Corp.*, No. 16 CV 5542, 2018 U.S. Dist. LEXIS 42869, at *6-7 (S.D.N.Y.) (Swain, J.) (same). Furthermore, the cases PGX relies on in arguing that its cross claims do not violate public policy are inapposite.  To the extent they cite cases in which courts permitted claims for coverage of defense costs, most of those decisions do not address the public policy concerns addressed *supra* and in Cross Claim Defendants' moving brief. *See Paganas v. Total Maint. Solution, LLC*, 220 F.Supp.3d 247, 263 (E.D.N.Y. 2016); *Bogosian v. All Am. Concessions*, No. 06-cv-1633, 2011 U.S. Dist. LEXIS 109082 (E.D.N.Y. Sept. 26, 2011); *Amaya v. Garden City Irrigation, Inc.*, No. 03-cv-2814, 2011 U.S. Dist. LEXIS 15316 (E.D.N.Y. Feb. 15, 2011).  As such, the public policy argument does not appear to have been made or considered in those cases.  In addition, none of the cases PGX relies upon involved claims for defense costs asserted against plaintiffs or their closely-held companies.  Rather, they deal with such claims against unrelated entities. *Copper v.*

*Cavalry Staffing, LLC*, Index No. 14-cv-3676, 2021 U.S. Dist. LEXIS 49742, *5 (E.D.N.Y. March 16, 2021); *Paganas*, 220 F. Supp. 3d 247; *Bogosian*, 2011 U.S. Dist. LEXIS 109082; *Amaya*, 2011 U.S. Dist. LEXIS 15316; *McDougal v. G & S Tobacco Dealers, L.L.C.*, 712 F. Supp. 2d 488 (N.D. W. Va. 2010).  Moreover, the *Copper* case presents an entirely distinct factual situation where an entity sold its assets to another entity. After the sale, workers sued the seller for wage and hour violations *See Copper*, 2021 U.S. Dist. LEXIS 49742, at *5.  Similar to the *Paganas*, *Bogosian,* and *Amaya* cases, *Copper* represent situations where one corporation attempted to enforce contractual indemnification provisions against third-party corporations that were not related to the plaintiffs claiming wage and hour violations. PGX also cites to *McDougal v. G & S Tobacco Dealers, L.L.C.*, 712 F. Supp. 2d 488 (N.D. W. Va. 2010) in support of the proposition that while courts will not enforce "indemnification" agreement for claims under the FLSA, courts will enforce a duty to defend provision. *McDougal* is distinguishable from the instant action because, in *McDougal*, claims to provide legal costs were asserted against corporate co-defendants in the underlying FLSA action, and not against closely-held corporate entities owned and staffed by FLSA plaintiffs.  In other words, the agreements that PGX wishes to invoke in the present action are entirely unlike the *McDougal, Copper*, *Paganas*, *Bogosian,* and *Amaya* agreements, in that PGX's agreements shift FLSA liability to Plaintiffs' closely-held entities and, in fact, rewards PGX for misclassifying Plaintiffs.

Notably, PGX has utterly failed to cite to any case where a court has allowed a defendant in an FLSA case to invoke a contractual duty to defend provision against an FLSA plaintiff or against an entity related to an FLSA plaintiff. Accordingly, PGX lacks any support to counter Cross Claim Defendants' position that such actions are contrary to public policy and therefore unenforceable. For this reason, the Court should dismiss PGX's cross claims.

## II.   PGX Has Not Established That the Contractual Conditions Necessary to Seek Indemnification Have Been Met

As noted in the Cross Claim Defendants' memorandum of law, in order to invoke the duty to defend provision in PGX's agreement with the Cross Claim Defendants, PGX must allege that: (i) there is a claim against PGX arising out their Master Service Agreement with any of the Cross Claim Defendants; (ii) the claim relates to the Plaintiff's conduct under that agreement; and (iii) the claim relates to Cross Claim Defendant's corporate entity's conduct under that agreement. PGX has failed to allege that the second and third elements have been met. Indeed, the claim in the underlying action is emphatically not based on any of the Cross Claim Defendants' actions, but rather on PGX's decision to classify plaintiffs as independent contractors and withhold overtime pay from them.  Therefore, since the underlying claims arise out PGX's actions, and not any of the actions of the Cross Claim Defendants, PGX is not entitled to invoke the provisions in the MSA that require PGX to pay for their legal defense costs. *See e.g.*, *Yaw Adu Poku,* Index No. 13-cv-3327, 2013 WL 5937414, at *2.

## III.   PGX Is Not Entitled to Seek Indemnification for Its Intentional Activity

PGX appears to agree with and acknowledge the Cross Claim Defendants' position that a party cannot seek indemnification from a third party for the party's intentional act.  PGX, however, asserts that nothing in the cross claims "suggest intentional misconduct on PGX's part."  (*See* Dkt. No. 125, at p. 23). Nothing could be further from the truth.  PGX's cross claims are replete with allegations showing their intentional conduct.  *See e.g.*, Dkt. No. 91, at ¶¶ 28-36 (showing intentional conduct by PGX in contracting with KDC to provide services); Dkt. No. 98-4 (MSA with KDC classifying KDC as an "independent contractor"); Dkt. No. 83-15 (SOW between PGX and KDC, ¶ 8, requiring that Curry personally to perform all services); Dkt. No. 91, at ¶¶ 52-58 (showing intentional conduct by PGX in contracting with Bropil to provide services); and Dkt.

No. 98-5 (MSA between PGX and Bropil classifying Bropil as an "independent contractor"). These admissions, allegations, and documents clearly demonstrate that PGX took intentional and considered steps to procure the Cross Claim Defendants' services as individuals while attempting to obscure that employment relationship using corporate entities and contracts. Accordingly, PGX cannot sustain its cross claims and those claims should be dismissed.

### IV.   The Fraudulent Conveyance Claims Are Derivative of the Unenforceable Duty To Defend Claims And Must Be Dismissed

PGX's fraudulent conveyance claims should be dismissed for several reasons.  First, the claims are entirely derivate of PGX's breach of contract claims.  As noted above, those claims violate public policy and must be dismissed.  If the claims are dismissed, then the Cross Claim Defendants are not debtors to PGX and no fraudulent conveyance claim can survive as PGX lacks standing. *See Harris v. Coleman*, 863 F. Supp. 2d 336, 341 (S.D.N.Y. 2012) ("In order to bring a fraudulent conveyance claim, the plaintiff must therefore be a creditor of the transferor [as] [n]on creditors can find no relief in a statute").

Second, while PGX asserts that Bropil and KDC were dissolved PGX has failed to allege that any Cross Claim Defendant conveyed assets to anyone else, or that such transfers were made without fair consideration.  Instead, PGX merely alleged, "upon information and belief" that KDC transferred assets to Curry (*See* Amended Cross Claim, at ¶ 82) and that that Bropil transferred assets to Brown-Pilgrim and to Dennis Pilgrim. (*See* Amended Cross Claim, at ¶ 102) These conclusory allegations cannot survive a motion to dismiss. *See Paradigm BioDevices, Inc. v. Viscogliosi Bros. LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012); *Safety-Kleen Sys. v Silogram Lubricants Corp.*, Index No. 12-cv-4849, 2013 US Dist LEXIS 180219, at *14 (E.D.N.Y. Nov. 15, 2013). Without alleging that a conveyance occurred, or that there was a lack of fair consideration, PGX's cross claim must be dismissed.  Furthermore, to the extent that PGX ask the

court to infer that a fraudulent conveyance has occurred because they have pled "badges of fraud," that claim should be rejected as well because PGX has pled nothing more than recited the elements of a fraudulent conveyance and it has failed to plead any facts with the requisite amount of specificty . *See Safety-Kleen Sys. v. Silogram Lubricants Corp.*, No. 12-cv-4849, 2013 U.S. Dist. LEXIS 180219, at *8 (E.D.N.Y. Nov. 15, 2013) ("[L]abels, conclusions, and mere recitation of the elements of a cause of action will not suffice . . . Instead, a plaintiff must provide enough factual support that, if true, would 'raise a right to relief above the speculative level.'")

## CONCLUSION

For the foregoing reasons and the reasons set forth in Cross Claim Defendants' moving brief, PGX's cross claims should be dismissed.

Dated: July 18, 2021

Respectfully submitted,

By: /s/ Julia Klein
     Julia Klein
     120 East 79th Street, Suite 1A
     New York, New York 10075
     347.292.8170
     jklein@kleinlegalgroup.com
     Attorneys for Plaintiff
