```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

KENNETH CURRY, RICARDO
MAZZITELLI, and JACQUELINE BROWN
PILGRIM, on behalf of themselves and others
similarly situated,

                Plaintiffs,

      -v-                                                    No.   1:20-cv-6985-LTS-SLC

P&G AUDITORS AND CONSULTANTS,
LLC; GRC SOLUTIONS, LLC; PGX, LLC;
and APPLE BANCORP, INC. d/b/a APPLE
BANK FOR SAVINGS,

                Defendants.

--------------------------------------------------------x
```

## MEMORANDUM ORDER

Plaintiffs Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown Pilgrim ("Plaintiffs"), bring this putative collective and class action, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and New York State Labor Law, §§ 190 et seq. and 650 et seq. ("NYLL"), alleging principally that Defendants P&G Auditors and Consultants, LLC ("P&G"), GRC Solutions, LLC ("GRC"), PGX, LLC ("PGX"), and Apple Bancorp Inc., d/b/a Apple Bank for Savings ("Apple Bank") failed to pay them overtime compensation as required under those statutes. (Docket entry no. 1 ("Compl.").) The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

Defendant Apple Bank moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all of Plaintiffs' claims as against it, on the ground that Apple Bank was not Plaintiffs' employer under the FLSA or NYLL, and on Plaintiffs' FLSA claims, on the ground that those claims are barred by the applicable statute of limitations because Apple Bank's

FLSA violations, if any, were not willful. The Court has considered carefully all of the parties' submissions and arguments. For the following reasons, Apple Bank's motion is denied as premature, without prejudice to renewal upon the completion of pretrial discovery.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[1] On or about December 16, 2015, Apple Bank agreed with the Federal Deposit Insurance Corporation ("FDIC") to entry of a Consent Order. (Apple Bank 56.1 St. ¶ 1.) Among other provisions, that Consent Order required Apple Bank to "engage a qualified firm . . . to perform a validation of the Bank's suspicious activity monitoring system" in connection with the Bank's Bank Secrecy Act ("BSA") and Anti-Money Laundering [ ] compliance programs. (Id.) On January 29, 2016, by way of a Memorandum of Understanding, the New York State Department of Financial Services imposed a similar requirement on Apple Bank, and specifically directed Apple Bank to perform a "look back" review of all accounts and transaction activity for the time period beginning October 1, 2014, through December 16, 2015. (Id. ¶¶ 3-4.)

In compliance with its obligations under the Consent Order and Memorandum of Understanding, Apple Bank entered into several agreements, including a Master Services Agreement dated March 27, 2018 (docket entry no. 42 ("Yuzek Decl.") Ex. C (the "MSA")), and various statements of work (Yuzek Decl. Exs. D-H), with co-defendant GRC, a provider of technology consulting services. (Apple Bank 56.1 St. ¶ 5.) The MSA provided that GRC would

---

[1]  Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. (See docket entry no. 45 ("Apple Bank 56.1 St."); docket entry no. 79 ("Pl. 56.1 St."); docket entry no. 72 ("Contractor Defts. 56.1 St.").) Citations to the parties' respective Local Civil Rule 56.1 Statements incorporate by reference the parties' citations to underlying evidentiary submissions.

"engage" "professionally competent" "officers, employees, representatives, agents and/or subcontractors (herein, 'GRC Agents'),'" as to whom Apple Bank would have "no responsibility for [ ] supervision and/or monitoring to ensure their compliance with MSA [and related] terms and conditions" (MSA § 2), to "test, monitor and validate Apple Bank's Compliance Program, including the Bank's suspicious activity monitoring system." (Apple Bank 56.1 St. ¶ 5.) The MSA also contained a non-solicitation provision, prohibiting Apple Bank from soliciting GRC Agents for employment or other engagement "[t]o avoid the potential for (or the appearance of) any actual or potential conflict of interest (including, without limitation, lack of GRC Agent Independence)[.]" (MSA § 4.)

       The named Plaintiffs were three such persons engaged, directly or indirectly, pursuant to the MSA. Plaintiff Curry worked as an Anti-Money Laundering investigator ("AML") from approximately October 9, 2017, to August 26, 2018. (Compl. ¶ 8.) Plaintiff Mazzitelli worked as a Team Lead from approximately July 2017 to February 2018, and Plaintiff Pilgrim worked as an AML from approximately April 27, 2018, to June 11, 2018. (Id. ¶¶ 12, 16.) In those capacities, Plaintiffs and other GRC Agents worked at an Apple Bank branch, where they were assigned temporary workstations "partitioned from the offices and workstations of Apple Bank employees" (Apple Bank 56.1 St. ¶ 37), and where Apple Bank provided security to ensure their safety after standard hours of operation and on weekends. (Id. ¶ 38; docket entry no. 77 ("Curry Decl.") ¶ 16; docket entry no. 78 ("Mazzitelli Decl.") ¶¶ 14, 26.)[2] On site at Apple Bank, Plaintiffs used Apple Bank's computers, email, paper, and information technology

---

[2] Plaintiffs also agreed to Apple Bank's Acceptable Use Policy (Yuzek Decl. Ex. K), and by doing so, agreed that: "I understand that upon any violation of this Acceptable Use policy I may be subject to disciplinary action by the Bank, up to and including termination of employment."

to perform their work. (Mazzitelli Decl. ¶¶ 19, 50.) Plaintiffs Curry and Mazzitelli submit that they received regular feedback on their work, through their superiors at GRC, from Apple Bank employees. (Id. ¶¶ 65-67; Curry Decl. ¶¶ 53-54.) They also submit that GRC hired them exclusively for work at Apple Bank (Curry Decl. ¶¶ 35-36; Mazzitelli Decl. ¶¶ 31-32), and Plaintiff Mazzitelli states that he is unaware of any person engaged by GRC on the Apple Bank project who was moved to another project by GRC upon the completion of the Apple Bank project. (Mazzitelli Decl. ¶ 33; see also Curry Decl. ¶ 39 ("To my knowledge, the AMLs, QAs, or TLs from the Apple Bank Project each searched for new jobs individually, rather than as a collective, both before and after the Apple Bank Project.").)

On or around April 26, 2018, defendant PGX replaced defendants GRC and P&G as the named employer on Plaintiff Curry's employment paperwork related to his work at Apple Bank. (Curry Decl. ¶¶ 23-24; Am. Compl. ¶¶ 104-05.) Nevertheless, Plaintiff Curry attests that his "job duties did not change and [he] continued working" at Apple Bank "at the same location and on the second phase of the same project." (Curry Decl. ¶ 24.)

According to Apple Bank's Executive Vice President and Chief Human Resources Officer Susan Goro, "Apple Bank was not involved in the process of hiring or terminating GRC employees [including, for purposes of this motion, the named Plaintiffs[3]] with respect to the Project[,]" "did not have the power to hire or fire GRC employees working on the Project[,]" "did not prepare or retain records of employment" or "personnel files" for any "GRC employees," did not "pay" or issue any pay statements to any GRC employees, and "neither

---

[3]   The Court takes note of GRC's dispute with Apple Bank's characterization of GRC's agents as "GRC employees." (See docket entry nos. 71-72.) Nothing in this Memorandum Order should be construed as addressing the question of whether Plaintiffs were "employees" of GRC, or any other entity, aside from Apple Bank.

controlled nor dictated the days or the number of hours GRC employees worked[.]" (Docket entry no. 43 ("Goro Decl.") ¶¶ 1-8; see also Apple Bank 56.1 St. ¶¶ 15, 23-31, 33-34.) Plaintiffs dispute several of these facts, and deny knowledge sufficient to form a belief as to several others, on the ground that "Apple Bank filed its motion for summary judgment prior to engaging in any discovery." (Pl. 56.1 St. ¶¶ 15, 23-29, 33-34.)

GRC terminated Plaintiff Mazzitelli's engagement on the Apple Bank project in February 2018, GRX terminated Plaintiff Curry's engagement on the Apple Bank project on August 26, 2018, and Plaintiff Pilgrim resigned from her engagement on the Apple Bank project by June 11, 2018. (Apple Bank 56.1 St. ¶¶ 39-41.) Plaintiffs claim that throughout the course of their engagement, they regularly worked well in excess of forty hours per week, yet were not paid overtime pursuant to the overtime provisions of the FLSA and NYLL. (Curry Decl. ¶¶ 13, 19, 22, 56-57; Mazzitelli Decl. ¶¶ 13, 16, 41-42.) Plaintiffs filed this suit asserting claims pursuant to those statutes on August 27, 2020.

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). To defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted). The

nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom v. U.S. Dep't of Veterans Affs., 201 F.3d 94, 97 (2d Cir. 2000); accord Ass'n of Car Wash Owners Inc. v. City of New York, 911 F.3d 74, 83 (2d Cir. 2018) ("Since summary judgment is a 'drastic device,' it should not be granted when there are major factual contentions in dispute [ ] particularly so when [ ] one party has yet to exercise its opportunities for pretrial discovery." (quoting Nat'l Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975)).  Stated otherwise, "the burden on the moving party is greater in cases where discovery is incomplete." United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 139 (S.D.N.Y. 2015) (citation, quotation marks, and editorial marks omitted).  Consistent with this "greater" burden, Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, "the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Joint Employer Status

Apple Bank first seeks summary judgment in its favor on all of Plaintiffs' claims on the ground that it was not Plaintiffs' employer under the FLSA and NYLL.[4]

---

[4] "[C]ourts in this Circuit 'have consistently interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA.'" Moreno v. Ramos, No. 17-CV-9439 (LTS) (KNF), 2021 WL 637563, at *3 n.4 (S.D.N.Y. Feb. 17,

Under the FLSA, an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d) (Westlaw through P.L. 117-32). An entity "employ[s]" an individual under the FLSA if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C.A. § 203(g). The FLSA's definition of employ "is the broadest definition . . . that has ever been included in any one act . . . and it encompasses working relationships, which prior to the FLSA, were not deemed to fall within an employer-employee category." Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 69 (2d Cir. 2003) (internal quotation marks, citations, and brackets omitted, alterations in original). "An entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer." Id. at 66.

Where, as here, Plaintiffs allege that they were jointly employed by several entities, courts in this Circuit look to at least two sets of non-exhaustive factors to determine whether a defendant is a "joint employer" under the FLSA. Courts initially consider whether the alleged joint employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Zheng, 355 F.3d at 67 (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). Even where Carter's "formal control" test is unsatisfied, however, a court should also consider, in the context of a vertical structure involving an alleged joint employer, a contractor, and that contractor's putative employees, "(1) whether [the alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [contractor] had a business that could or did shift as a unit

---

2021) (citation omitted). Neither party raises any material difference between the statutes' definitions of "employer" in connection with this motion.

from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [the alleged joint employer or its agents] supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [the alleged joint employer]." Zheng, 355 F.3d at 72.  Courts are also "free to consider any other factors [they] deem[ ] relevant to [their] assessment of the economic realities."  Id. at 71-72.

"Because determining joint employment is 'fact-intensive,' awards of summary judgment on this issue, although sometimes appropriate, are rare."  Greenawalt v. AT & T Mobility LLC, 642 F. App'x 36, 37 (2d Cir. 2016).  Accord Benitez v. Demco of Riverdale, LLC, No. 14-CV-7074 (CM), 2015 WL 803069, at *1 (S.D.N.Y. Feb. 19, 2015) (denying pre-discovery motion for summary judgment because of the "fact-intensive" nature of joint employer status under the FLSA); Duarte v. Tri-State Physical Med. & Rehab., P.C., No. 11-CV-3765 (NRB), 2012 WL 2847741, at *8 (S.D.N.Y. July 11, 2012) (same).

Apple Bank has not met its burden of demonstrating that this case is one of the "rarest," Hellstrom, 201 F.3d at 97, of "rare," Greenawalt, 642 F. App'x at 37, cases where summary judgment is warranted on the question of joint employer status prior to discovery on that question.  While Apple Bank has proffered competent evidence that may weigh in its favor under the four-factor test set forth in Carter (see Goro Decl. ¶¶ 1-8), Plaintiffs have not yet had the opportunity to challenge that evidence through depositions or other discovery.  Moreover, Plaintiffs point to other evidence, such as Apple Bank's Acceptable Use Policy, suggesting the possibility that discovery might show that Apple Bank had the authority to terminate Plaintiffs'

employment (see Yuzek Decl. Ex. K), and Plaintiffs submit, on information and belief, that Apple Bank retained Plaintiffs' weekly time records. (Curry Decl. ¶ 50; Mazzitelli ¶ 39.)

Turnings to the more liberal Zheng factors, Plaintiffs point to some evidence which may weigh in their favor, including that Plaintiffs worked on Apple Bank's premises, used Apple Bank's computers and information technology, received regular feedback from Apple Bank (albeit indirectly through their superiors at GRC), and worked exclusively on the Apple Bank project. (See Curry Decl. ¶¶ 4, 35-40, 53-54; Mazzitelli Decl. ¶¶ 19-20, 25, 65-67, 72.) Plaintiff Curry also states (at Curry Decl. ¶ 24) that, even when the named contractor on his agreement paperwork changed from GRC to PGX, his job duties and work location at Apple Bank remained unchanged. See Zheng, 355 F.3d at 74 (explaining that the fourth Zheng factor—"whether responsibility under the contracts could pass from one subcontractor to another without material changes"—may weigh "in favor of a determination of joint employment when employees are tied to an entity [ ] rather than to an ostensible direct employer").

To be sure, Apple Bank's evidence that it did not hire, fire, or pay Plaintiffs, that it did not retain Plaintiffs' employment records, that it engaged Plaintiffs only indirectly, at the behest of regulators, for a limited time, and that it was contractually prohibited by its non-solicitation agreement with GRC from hiring Plaintiffs for employment, may ultimately weigh in favor of a finding that Apple Bank was not Plaintiffs' joint employer. Zheng, 355 F.3d at 71-72 ("The court is also free to consider any other factors it deems relevant to its assessment of the economic realities."); Gordon v. Gen. Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 837 (S.D.N.Y. 2020) ("[T]he question of employment for FLSA purposes [is] 'a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'") (citation omitted). However, the limited record before the Court, when viewed in the light most favorable

to the Plaintiffs, is not one which clearly precludes the possibility, after discovery, of a finding in favor of Plaintiffs on that issue. The Court therefore denies Apple Bank's motion for summary judgment, to the extent it is based on Apple Bank's claim that it was not Plaintiffs' employer under the FLSA and NYLL, as premature, and without prejudice to renewal upon the completion of discovery.[5]

Statute of Limitations

Apple Bank next seeks summary judgment in its favor on Plaintiffs' FLSA claims on the ground that those claims are barred by the FLSA's two-year statute limitations.

The limitations period for FLSA claims is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C.A. § 255(a) (Westlaw through P.L. 117-32). An FLSA violation is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141

---

[5] Apple Bank argues that Plaintiffs have failed to show "by affidavit or declaration as required [by Federal Rule of Civil Procedure 56(d)], that, for specified reasons, they cannot present facts essential to justify their opposition to the Bank's motion." (Docket entry no. 87 at 10.) See also Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) ("The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful."). However, Plaintiffs raise the fact that no discovery has taken place generally in Plaintiffs' counsel's affidavit (docket entry no. 76 ¶ 8), and throughout their opposition brief and Local Civil Rule 56.1 statement, including with reference to specific facts claimed by Apple Bank to be undisputed. (See Pl. 56.1 St. ¶¶ 11, 15-16, 23-29, 32-34.) In light of "the nature of the uncompleted discovery"—in this case, any discovery at all on the fact-intensive question of joint employer status—the Court deems these submissions collectively sufficient to meet the technical requirements of Rule 56(d). See, e.g., Hussain v. Burton & Doyle of Great Neck, LLC, No. 14-CV-5924 (SIL), 2016 WL 6088309, at *3 (E.D.N.Y. Oct. 18, 2016) ("Although Hussain has not submitted the formal affidavit generally anticipated under Fed. R. Civ. P. 56(d) in support of the pending motion, the Court, in its discretion, reads Plaintiff's Motion to Compel and Plaintiff's Rule 56.1 Statement collectively to satisfy the rule's requirements.").

(2d Cir. 1999) (citation omitted), holding modified by Zheng, 355 F.3d 61.  The question of "[w]hether a defendant has willfully violated the FLSA is a mixed question of law and fact on which the plaintiff carries the burden of proof."  Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 321 (2d Cir. 2021).

Here, there is no dispute that Plaintiffs filed their Complaint more than two years, but less than three years, after their FLSA claims against Apple Bank accrued.  (Apple Bank 56.1 St. ¶ 42.)  Therefore, Plaintiffs' FLSA claims are only timely if Apple Bank's alleged FLSA overtime violations were willful.

Apple Bank argues that "[i]n light of [the] documentary evidence" proffered by Apple Bank in connection with its argument that it was not Plaintiffs' employer, Plaintiffs' claim that Apple Bank willfully violated the overtime provisions of the FLSA is "unsupportable." (Docket entry no. 41 at 23.)  However, even without discovery into Apple Bank's willfulness—an issue as to which Apple Bank possesses most, if not all, of the relevant evidence—Plaintiffs identify some evidence that, construed in Plaintiffs' favor, at least suggests the possibility that discovery might reveal evidence of willfulness on the part of Apple Bank.  For example, Plaintiffs attest that Apple Bank hired additional security to allow Plaintiffs and their colleagues to work on Apple Bank's premises late into the evenings and over weekends when the bank was closed to customers.  (Curry Decl. ¶ 16; Mazzitelli Decl. ¶¶ 26-27.)  Plaintiffs also state, on information and belief, that "the Contractor Defendants submitted [Plaintiffs'] time sheets to Apple Bank for review and to ascertain how much money Apple Bank owed the Contractor Defendants to pay for our services" (Curry Decl. ¶ 50; accord Mazzitelli Decl. ¶ 39), and that "Apple Bank directed GRC to force us to work extremely long hours in order to complete the projects within its timeframe."  (Curry Decl. ¶ 15; see also Mazzitelli Decl. ¶ 64.)  At this early

stage, and in light of Apple Bank's "greater" pre-discovery burden, Plaintiffs' showing suffices to overcome Apple Bank's motion for summary judgment.

The Court therefore denies Apple Bank's motion for summary judgment, to the extent it is based on the FLSA's statute of limitations, as premature, and without prejudice to renewal upon the completion of discovery.

CONCLUSION

For the foregoing reasons, Apple Bank's motion for summary judgment is denied in its entirety as premature, without prejudice to renewal upon the completion of discovery.

This case remains referred to Magistrate Judge Cave for general pretrial proceedings.

This Memorandum Order resolves docket entry no. 40.

SO ORDERED.

Dated: New York, New York
August 9, 2021

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge