JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Tel: 212-688-5640 |
| Josef Nussbaum | Fax: 212-688-2548 |
| Lucas Buzzard | www.jk-llp.com |
| Leah Seliger | |
| Michael DiGiulio | |

January 10, 2023

**VIA ECF**

Hon. Sarah L. Cave
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:  *Curry v. P&G Auditors and Consultants, LLC*, 20 CV 6985
        *Curry v. GRC Solutions, LLC*, 21 CV 11017

Dear Judge Cave:

  Together with Klein Law Group of New York PLLC and Roller Law Group, we represent the Plaintiffs in the above-referenced actions, which assert, respectively, wage and hour claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and retaliation claims under the FLSA and NYLL. The parties have reached a settlement that resolves both of these actions, and their executed settlement agreement is annexed hereto as Exhibit 1. We respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

### I. Background And Procedural History

  Named Plaintiffs Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim commenced the wage and hour action (the "Wage Action") – Case No. 20 CV 6985 – as a putative class and collective action on August 27, 2020. The Named Plaintiffs alleged that Defendants GRC Solutions, Inc. ("GRC"), PGX, LLC ("PGX"), and Acxell, LLC (named P&G Auditors and Consultants, LLC during the time period applicable to this action) ("P&G," together with GRC and PGX, the "Contractor Defendants") are related entities that hired the Named Plaintiffs and other similarly situated individuals to work as anti-money laundering ("AML") investigators, team leads ("TL"), and quality assurance ("QA") on a lookback project for Defendant Apple Bancorp,

---

[1] Prior to filing this letter, the parties filed their consents to refer these actions to Your Honor.

1

Inc. ("Apple Bank," together with the Contractor Defendants, "Defendants").  The Named Plaintiffs alleged that Defendants were joint and/or single integrated employers that misclassified them and similarly situated individuals as independent contractors rather than employees.  The Named Plaintiffs further alleged that Defendants violated the FLSA and NYLL by failing to pay an overtime premium or provide certain wage notices and wage statements required under the NYLL.

On October 15, 2020, Apple Bank filed its answer in the Wage Action and asserted a crossclaim against GRC for contractual indemnification.  On December 4, 2020, Apple Bank moved for summary judgment in the Wage Action on the grounds that even if the Named Plaintiffs were employees of the Contractor Defendants, Apple Bank was not their employer.  The Court denied Apple Bank's motion on August 9, 2021.

On January 5, 2021, the Contractor Defendants filed their Answer in the Wage Action, and GRC and PGX asserted crossclaims.  Specifically, GRC asserted breach of contract crossclaims against Plaintiffs Curry and Mazzitelli's business entities, an indemnification crossclaim against Plaintiff Curry's business entity, and a fraudulent conveyance crossclaim against Plaintiff Curry and his business entity.  PGX asserted breach of contract crossclaims against Plaintiffs Curry's and Brown-Pilgrim's business entities, an indemnification crossclaim against Plaintiff Brown-Pilgrim's business entity, and fraudulent conveyance crossclaims against (1) Plaintiffs Curry and Brown-Pilgrim; (2) Plaintiffs Curry and Brown-Pilgrim's business entities; and (3) Plaintiff Brown-Pilgrim's husband.  Collectively, these claims essentially sought to be indemnified for any liability in the Wage Action.  On February 16, 2021, GRC and PGX amended the crossclaims to (1) remove all crossclaims asserted by GRC; (2) remove the indemnification crossclaims; and (3) alter PGX's breach of contract crossclaims against Plaintiffs Curry and Brown-Pilgrim's companies to seek reimbursement of PGX's attorneys' fees and costs incurred in defending the Wage Action.  The Named Plaintiffs moved to dismiss the crossclaims on March 2, 2021.  That motion is currently pending.

On December 11, 2020, the Named Plaintiffs moved for conditional collective certification pursuant to 29 U.S.C. § 216(b).  After that motion was fully briefed but before oral argument, the Named Plaintiffs and the Contractor Defendants agreed to attend a mediation to attempt to resolve the action.  The Named Plaintiffs and the Contractor Defendants attended a mediation on May 13, 2021 with mediator Ralph Berger, which was unsuccessful.  The Court subsequently heard oral argument on Named Plaintiffs' conditional certification motion on May 27, 2021 and granted that motion on June 14, 2021.  In addition to the Named Plaintiffs, 40 people have submitted consent to sue forms (the "Opt-In Plaintiffs," together with the Named Plaintiffs, "Plaintiffs") and are now party plaintiffs.

On December 14, 2021, the Named Plaintiffs moved to amend the complaint to add additional factual allegations and correct the name of a Defendant.  The motion was granted as unopposed on December 29, 2021.  Defendants filed answers to the amended complaint on February 2, 2022.

On December 22, 2021, the Named Plaintiffs commenced an action (the "Retaliation Action") against GRC and PGX – Case No. 21 CV 11017 – alleging that GRC and PGX violated

the retaliation provisions of the FLSA and NYLL by asserting frivolous crossclaims against them and their business entities in the Wage Action. GRC and PGX filed their answer on April 1, 2022.

The parties engaged in substantial discovery in the Wage Action. Defendants responded to interrogatories and produced, *inter alia*, documents relevant to the relationship between the Contractor Defendant and Apple Bank, the work performed by Plaintiffs, training provided to Plaintiffs, Plaintiffs' hours worked and compensation, and the relationship between Plaintiffs and Defendants. All of the Named Plaintiffs and most of the Opt-In Plaintiffs also responded to interrogatories and document requests. While the case settled before Defendants undertook to search and produce ESI, many Plaintiffs produced e-mails that were relevant to the Wage Action.

In April 2022, all parties agreed to attend a mediation to seek to resolve both the Wage Action and the Retaliation Action. In advance of the mediation, the Contractor Defendants provided Plaintiffs with a spreadsheet showing the weekly hours worked by and pay rate of every Plaintiff except for one.[2] This enabled Plaintiffs to calculate their wage and hour damages with virtually perfect precision. The parties attended a mediation with mediator Martin Scheinman on April 25, 2022. Although the parties were unable to reach a settlement at the mediation, they continued to engage in settlement discussions. On August 4, 2022, the parties ultimately agreed to settle both cases for a total of $900,000.

## II. The Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle the Wage Action and the Retaliation Action for $900,000 (the "Settlement Sum"). The Contractor Defendants are responsible for $675,000 of the Settlement Sum, and Apple Bank is responsible for $225,000 of the Settlement Sum. (Settlement Agreement § 4.a.) The Contractor Defendants' share of the Settlement Fund will be paid by a combination of the following entities and/or individuals: AML RightSource LLC, the Contractor Defendants, and Amit Govil. On or around December 31, 2020, AML RightSource purchased the assets of GRC. In so doing, it held back $600,000 to pay GRC's outstanding liabilities in this action, some of which has already been used to pay legal fees. AML RightSource will pay the remainder of that $600,000 (estimated to be approximately $580,000) to fund the settlement. The portion of the Contractor Defendants' share that is not paid by AML RightSource will be paid in six equal monthly installments starting 30 days after Court approval of the settlement. (*Id*. at § 4.b.i., iv.) These installments will be paid by either the Contractor Defendants or Amit Govil, who owned the Contractor Defendants when the events giving rise to the Wage Action occurred. To guarantee the payment of the Contractor Defendants' six installment payments, Govil will execute a consent judgment authorizing entry of judgment against him in the amount of 110% of the unpaid portion of the Contractor Defendants' share of the Settlement Sum if the Contractor Defendants miss an installment payment and fail to cure within seven days of being notified of the late payment. (*Id*. at § 3.d.iii.) Apple Bank will pay its share of the settlement 32 days after Court approval of the settlement. (*Id*. at § 4.b.ii. AML RightSource's payment is due 34 days after Court approval of the settlement, provided that the Defendants paid their portions of the settlement due 30 and 32 days after Court approval. (*Id*. at § 4.b.iii.)

---

[2] The Contractor Defendants lacked complete data for one individual – Mary Hernandez – because unlike the other Plaintiffs, Ms. Hernandez was paid through a third party.

3

Although Plaintiffs are asking the Court to approve the settlement now, the Settlement Agreement provides that the Wage Action and Retaliation Action shall not be dismissed until AML RightSource funds its portion of the Settlement Sum. (*Id*. at § 3.a.) Thus, if the Court approves the settlement, Plaintiffs will submit stipulations of dismissal of all claims and cross claims in the Wage Action and Retaliation Action after AML RightSource provides funding. If those predicate acts do not occur, the Settlement Agreement will be void, and the parties will return to their prior positions in the Wage Action and Retaliation Action. (*Id*. at § 3.a.)

No later than 10 days after the Court enters an order approving the settlement, the claims administrator will distribute the Settlement Notice, Claim Form, and IRS Form W-9 to all Plaintiffs via first class mail and e-mail. (*Id*. at § 3.d.i.) The Settlement Notice and Claim Form are attached as Exhibits B and D to the Settlement Agreement. The Opt-In Plaintiffs must submit Claim Forms to the claims administrator within 150 days of mailing in order to receive payment from the settlement.[3] Opt-In Plaintiffs may also opt out of the settlement if they do not wish to participate. (*Id*. at § 3.d.ii.) Any Opt-In Plaintiff who opts out of the settlement will not release any claims against Defendants and may pursue his or her claims individually. (*Id*. at § 9.a.) All Opt-In Plaintiffs who do not opt out of the settlement will release FLSA and state wage and hour claims related to their work on the Apple Bank Lookback Projects against Defendants, related individuals and entities, and AML RightSource. (*Id*. at § 9.b.) This method of providing notice to collective members and an opportunity to participate in or exclude themselves from a settlement after the Court has deemed the settlement fair and reasonable was previously approved by the court in *Fernandez v. Kinray, Inc.*, No. 13 CV 4938 (E.D.N.Y.). (*See* Order attached hereto as Exhibit 2.)

The Settlement Agreement provides for a $45,000 Retaliation Settlement Amount and Service Award to be divided equally among the three Named Plaintiffs. (Settlement Agreement § 1.p.) This payment is consideration for the Named Plaintiffs' dismissal of the Retaliation Action and general release of claims against the Contractor Defendants and AML RightSource and in return for services provided to the Opt-In Plaintiffs. (*Id*. at §§ 1.p., 9.c.) The Contractor Defendants will also provide (1) a general release to the Named Plaintiffs and the other individuals and entities they named in their crossclaims and (2) a release to all Opt-In Plaintiffs who do not opt out of the settlement of all indemnification and breach of contract claims that relate to the Wage Action. (*Id*. at § 9.d.e.) The Settlement Agreement further provides for mutual general releases between Apple Bank and the Contractor Defendants and Apple Bank and AML RightSource. (*Id*. at § 9.f.-i.) Finally, AML RightSource releases all claims against the Named Plaintiffs. (*Id*. at § 9.k.)

The Net Settlement Fund is the portion of the Settlement Sum remaining after deducting (1) Court-approved attorneys' fees and costs; (2) the claims administrator's expenses; and (3) the Retaliation Settlement Amount and Service Award. The Net Settlement Fund will be allocated among all Plaintiffs on a *pro rata* basis according to Collective Counsel's calculation of each Plaintiff's potential unpaid overtime damages. (*Id*. at § 6.a.i.) These calculations are based on the weekly hours worked and pay rate information provided by the Contractor Defendants.[4] However,

---

[3] The Named Plaintiffs are not required to submit claim forms because they have signed the Settlement Agreement.
[4] The Contractor Defendants did not have complete information for Opt-In Plaintiff Mary Hernandez because, unlike the other Plaintiffs, Hernandez did not contract directly with the Contractor Defendants. Instead, the Contractor

no Plaintiff will be allocated a settlement share of less than $1,000. (*Id*. at § 6.a.ii.) $15,000 shall be reserved from the Settlement Sum to account for any errors and omissions in calculating Plaintiffs' alleged unpaid overtime. (*Id*. at § 6.a.iii.)

The Net Settlement Sum will be distributed to Named Plaintiffs and the Opt-In Plaintiffs who submit claim forms in two installments: (1) the later of 60 days after Court approval of the settlement or 15 days after dismissal of the Wage Action and Retaliation Action; and (2) 195 days after Court approval of the settlement. (*Id*. at § 6.b.)

### III.   The Settlement Should Be Approved

Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted). Applying these factors, the settlement is fair and reasonable.

The total settlement amount of $900,000 is fair and reasonable in light of the Plaintiffs' range of possible recovery. Plaintiffs' maximum potential compensatory damages for unpaid overtime are approximately $1.383 million. Plaintiffs' potential damages for violations of N.Y. Lab. L § 195(1) total $198,250, and potential damages for violations of N.Y. Lab. L. § 195(3) total $208,750. In addition, if Defendants were unable to establish the good faith defense to liquidated damages, Plaintiffs could recover liquidated damages equal to the amount of their unpaid overtime. With respect to the Named Plaintiffs' retaliation claims, they could each recover up to $20,000 in liquidated damages under N.Y. Lab. L. § 215 as well as damages for emotional distress. The settlement amount of $900,000 is approximately 65% of compensatory damages for Plaintiffs' overtime claims, which are the primary claims in this action, and is plainly reasonable. *E.g.*, *Mikityuk v. Cision US Inc.*, No. 21 CV 510, 2022 U.S. Dist. LEXIS 135405, at *11 (S.D.N.Y. July 29, 2022) (approving FLSA collective settlement amounting to approximately 63% of unpaid wages).

---

Defendants paid a separate company for Hernandez' hours, which in turn paid Hernandez. Hernandez also worked in a different position than the other Plaintiffs. The Contractor Defendants provided Plaintiffs' Counsel with the invoices reflecting Hernandez' hours and the amount the Contractor Defendants paid to the other company for those hours. These invoices showed that the Contractor paid a double time rate for Ms. Hernandez' overtime hours. While Hernandez does not herself have records of her pay on the Lookback Projects, she told Plaintiffs' Counsel what her pay rate was and provided bank records showing deposits of her pay. The amounts of the deposits are consistent with her having received time and a half for overtime hours, minus ordinary payroll tax withholdings. Accordingly, it is unlikely that Hernandez is owed damages for unpaid overtime, and she will receive the minimum payment of $1,000 from the settlement.

This settlement will allow the parties to avoid the anticipated burdens and expenses in establishing their claims and defenses. Absent a settlement, all parties would incur substantial expenses. Defendants would have to undertake costly ESI searches and review, and the parties would take dozens of depositions. One or more parties would likely move for summary judgment following the completion of discovery, and Plaintiffs may move for class certification, further burdening the parties.

Plaintiffs also face serious litigation risks. In the Wage Action, the analysis of whether Plaintiffs were employees or independent contractors is necessarily fact intensive, and the ultimate outcome is uncertain. If the Court or a jury found that Plaintiffs were in fact independent contractors, Plaintiffs would recover nothing. Plaintiffs also face the risk that the collective could be decertified after discovery if Court determines that they are not sufficiently similarly situated or that some Plaintiffs could be dismissed from the Wage Action if they fail to comply with their discovery obligations.

In addition, Apple Bank contends that even if Plaintiffs were employees, it was not an employer. Thus, in order to prevail against Apple Bank, Plaintiffs need to establish not only that they were employees, but also that Apple Bank and the Contractor Defendants were joint employers. This too is a fact intensive and therefore risky analysis. If Plaintiffs prevailed against the Contractor Defendants but not against Apple Bank, Plaintiffs would likely face serious collections issues. Throughout this litigation, the Contractor Defendants have insisted that they do not have the funds to pay a large judgment. To fund this settlement, the Contractor Defendants are relying primarily on funds held back by AML RightSource, but those funds would be likely greatly reduced by legal fees incurred if litigation were to continue, particularly because Plaintiffs would seek to add AML RightSource as a defendant absent a settlement.[5]

Finally, the Wage Action was filed in August 2020. The Opt-In Plaintiffs joined the Wage Action between April 27, 2021 and December 26, 2021. The Lookback Projects that Plaintiffs worked on ended in September 2018. Thus, most Plaintiffs stopped worked for Defendants more than two years before joining the Wage Action. As the FLSA's statute of limitations is two years for non-willful claims and three years for willful claims, 29 U.S.C. § 255, even allowing for certain periods of stipulated tolling most Plaintiffs would need to establish willfulness in order to have timely FLSA claims. Accordingly, the settlement is reasonable in light of the many risks that Plaintiffs face.

This settlement, which was reached after two unsuccessful mediations and months of additional negotiations, is clearly the result of arm's-length bargaining between experienced counsel, and there has been no fraud or collusion. The settlement is also fair and reasonable in light of the purposes of the FLSA. The settlement is not confidential, and the Opt-In Plainitffs' release is limited to FLSA and NYLL claims. *See*, *e.g.*, *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727, 2016 U.S. Dist. LEXIS 5366 (S.D.N.Y. Jan. 5, 2016). While the Named Plaintiffs will provide a general release to the Contractor Defendants, this is appropriate in light of (1) the general

---

[5] A further complicating factor is that AML RightSource is willing to release its funds only if Apple Bank releases and dismisses its crossclaim against GRC. Thus, there would not be a settlement if Apple Bank refused to release that claim. After extensive negotiations, Apple Bank made clear that the $225,000 it has agreed to pay in the Settlement Agreement is the absolute maximum it is willing to pay while releasing its claim against GRC.

6

release that the Contractor Defendants are providing to the Named Plaintiffs in conjunction with dismissing the crossclaims, *e.g.*, *Mikityuk v. Cision US Inc.*, No. 21 CV 510, 2022 U.S. Dist. LEXIS 135405, at *17-18 (S.D.N.Y. July 29, 2022) (collecting cases approving mutual general releases in FLSA settlements); and (2) the payment of the Retaliation and Service Awards to the Named Plaintiffs, *e.g.*, *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854, 2021 U.S. Dist. LEXIS 27462, at *18-19 (S.D.N.Y Feb. 12, 2021).

### IV. The Named Plaintiffs' Retaliation And Service Awards Should Be Approved

The Settlement Agreement provides that each Named Plaintiff will receive a $15,000 Retaliation and Service Award payment out of the Settlement Sum. These payments will compensate the Named Plaintiffs for (1) releasing their retaliation claims and dismissing the Retaliation Action and (2) their services to the Opt-In Plaintiffs. Where lead plaintiffs have alleged retaliation claims, courts approve payments out of common settlement funds to resolve those claims. *E.g.*, *Torres v. Gristede's Operating Corp.*, No. 04 CV 3316, 2010 U.S. Dist. LEXIS 139144, at *23 (S.D.N.Y. Dec. 21, 2010). In addition, service awards are routinely granted to lead plaintiffs in collective and class actions. Such awards "serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Mikityuk*, 2022 U.S. Dist. LEXIS 135405, at *18-19 (internal quotation marks omitted). Here, the Named Plaintiffs initiated and litigated the Wage Action, ultimately enabling the creation of a settlement fund to compensate the Opt-In Plaintiffs. Because of the Named Plaintiffs' initiation of the Wage Action, GRC and PGX sued the Named Plaintiffs to attempt to recoup their attorneys' fees in the Wage Action, and the Named Plaintiffs contend that these claims were retaliatory. As courts recognize that service awards are warranted in light of the *risk* of retaliation, *e.g.*, *Gaston v. Valley Nat'l Bancorp & Valley Nat'l Bank*, No. 17 CV 1886, 2019 U.S. Dist. LEXIS 243119, at *5-6 (E.D.N.Y. Feb. 22, 2019), such awards are particularly appropriate here, where the Named Plaintiffs contend that were actually subjected to retaliation. Accordingly, the Retaliation and Service Awards are reasonable and should be approved.

### V. The Settlement Administrator's Fees Should Be Approved

The parties have retained Rust Consulting to administer the settlement. Settlement administration costs are expected to total approximately $12,768. Accordingly, Plaintiffs respectfully request that the Court approve the parties' request to pay the Settlement Administrator's reasonable expenses out of the Settlement Sum.

### VI. Collective Counsel's Fees and Costs Should Be Approved

The Settlement Agreement provides that Collective Counsel may receive from the Settlement Sum reimbursement of their litigation expenses and one-third of the after-costs portion of the Settlement Fund. Thus, Collective Counsel seek $7,346.37 as reimbursement of costs[6] and $297,551.21 as attorneys' fees, for a total of $304,897.58 in costs and fees.

---

[6] Plaintiffs' counsel seeks reimbursement of the following costs: $400 filing fee, $898.29 for service of process, $5,500 in mediation expenses, $132.68 for mailings, $210 for transcript orders, and $205.40 to obtain business records from the State of New Jersey.

Under Plaintiffs' contingency fee engagement agreements, Plaintiffs' counsel is entitled to request reimbursement of costs and one-third of the after-costs settlement as fees. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs.  This fee arrangement is routinely approved by courts in this Circuit."). "Contingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Martinez v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016); *see also, e.g.*, *Basiroglou*, 2021 U.S. Dist. LEXIS 255853, at *7; *Geskina v. Admore Air Conditioning Corp.*, No. 16 Civ. 3096, 2017 U.S. Dist. LEXIS 67583, at *8-9 (S.D.N.Y. May 3, 2017); *Ramirez v. Greenside Corp.*, No. 16 CV 726, 2017 U.S. Dist. LEXIS 30527, at *9-10 (S.D.N.Y. Mar. 3, 2017); *Maldonado v. Srour*, No. 13 Civ. 5856, 2016 U.S. Dist. LEXIS 139881, at *3 (E.D.N.Y. Oct. 6, 2016); *Garcia v. Atlantico Bakery Corp.*, No. 13 Civ. 1904, 2016 U.S. Dist. LEXIS 84631, at *3-4 (S.D.N.Y. June 29, 2016).

The requested fee is also reasonable under a lodestar crosscheck.  Four attorneys worked on this case: the undersigned, D. Maimon Kirschenbaum, Julia Klein, and Melissa Mazzitelli.  All attorneys contemporaneous time records are attached hereto as Exhibits 3-5.  I worked over 219.5 hours, Mr. Kirschenbaum worked over 24.2 hours, Ms. Klein worked over 288.04 hours, and Ms. Mazzitelli worked over 298.17 billable hours.[7]

Mr. Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked at Joseph & Kirschenbaum LLP ("JK") since then.  JK is a law firm dealing almost exclusively with employee rights.  Specifically, the firm represents employees in wage/hour and employment discrimination matters.  Thus, for Mr. Kirschenbaum's entire legal career, the overwhelming majority of his practice has been representing employees with employment-related claims.  As a result of his accomplishments, he became a member/partner of the firm in May 2007, and he currently manages the firm.  I received my J.D. from NYU School of Law, *cum laude*, in 2008 and joined JK in January 2009.  I was an associate at JK until February 2017, when I became a partner.  At JK, my practice has consisted almost entirely of representing employees in their claims against employers.  Courts have repeatedly recognized Mr. Kirschenbaum's and my skill and expertise in wage and hour litigation.  *E.g.*, *Orlando v. Liberty Ashes, Inc.*, No. 15 CV 9434, at 10:18-20 (S.D.N.Y. Sept. 4, 2020) ("[I]n my entire experience with [Ms. Schulman] in this case, and a lot of others, she's always been among the very best lawyers in this case.") (transcript attached as Ex. 6); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (transcript attached as Ex. 7).

---

[7] Plaintiffs' counsel compiled their time records at the end of October 2022 in anticipation of filing this letter motion shortly thereafter.  As the parties' negotiations continued after that time, Plaintiffs' counsel have worked additional hours since then.  Given that, as described below, Plaintiffs' counsel seek attorneys' fees that are a negative multiplier of their lodestar as of the end of October 2022, counsel have not updated the submitted time records to include post-October 2022 hours worked.

Julia Klein has been the principal attorney of the Klein Law Group of New York PLLC since 2019. The Klein Law Group of New York PLLC represents both plaintiffs and defendants in litigating claims arising out of the employment relationship including claims for wage and hour violations, employment discrimination, whistleblower retaliation, and contract disputes. Ms. Klein graduated from Fordham Law School in 2006 and worked at the firm of McKee Nelson, LLP from approximately 2006 through 2009. Ms. Klein then practiced at the firm of Murtha Cullina, LLP from approximately 2011 to 2013. From 2013 to 2017, Ms. Klein worked at Robinson & Cole LLP and then worked at the City of New York's Housing and Preservation Department from 2017 to 2019. Following that, Ms. Klein opened the Klein Law Group of New York PLLC.

Melissa Mazzitelli graduated from University of Iowa College of Law in 2005, having spent her final year in law school as a visiting student at Fordham University School of Law. Following graduation, she was admitted to the New York State Bar and worked in public service with both the City of New York and the New York Unified Court System until 2016, handling a variety of civil litigation matters. In 2016, Ms. Mazzitelli transitioned to private practice and in 2019 began practicing in Florida, counseling and representing individuals and businesses in employment and insurance matters. Ms. Mazzitelli is currently an attorney with Roller Law Group in North Miami Beach, Florida.

Judge Woods recently approved an hourly rate of $500 for Mr. Kirschenbaum and me. *Zivkovic v. Laura Christy LLC*, Case No. 17 Civ. 553 (S.D.N.Y. June 15, 2022) at 16:16-19, 17:9-12, 17:21-22 (transcript attached as Ex. 8); *see also Brown v. Barnes & Noble, Inc.*, No. 16 CV 7333, 2020 U.S. Dist. LEXIS 85442, at *9-10 (S.D.N.Y. May 14, 2020) (approving a $500 rate for a partner with almost 10 years of experience litigating FLSA cases). This rate is also appropriate for Ms. Klein and Ms. Mazzitelli, who have both been practicing attorneys for over 14 years.

Using an hourly rate of $500 for the 829.91 hours worked by the attorneys on this case yields a lodestar of $414,955. Thus, the requested fee is roughly 28% *less than* Plaintiffs' counsel's lodestar and is therefore objectively reasonable. *E.g.*, *Villanueva v. 179 Third Ave. Rest. Inc.*, No. 16 CV 8782, 2018 U.S. Dist. LEXIS 116379, at *8 (S.D.N.Y. July 12, 2018) (Nathan, J.); *c.f.*, *Campos v. Goods*, No. 10 CV 224, 2011 U.S. Dist. LEXIS 22959, at *21 (S.D.N.Y. Mar. 4, 2011) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *see also Quiroz v. NYC Bldg. Mgmt. LLC*, No. 16 CV 7077, 2017 U.S. Dist. LEXIS 141162, at *7 (S.D.N.Y. Aug. 30, 2017) (approving one-third fee that amounted to a 2.46 lodestar multiplier). For the foregoing reasons, the requested attorneys' fees and costs are reasonable.

As set forth above, we respectfully request that the Court approve the parties' settlement as fair and reasonable. We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ Denise A. Schulman
Denise A. Schulman

cc: All counsel (via ECF)