# Exhibit 1

## <u>COLLECTIVE ACTION SETTLEMENT AGREEMENT</u>

This Collective Action Settlement Agreement, including Exhibits A-G hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim (collectively, the "Named Plaintiffs") on behalf of themselves and the Settlement Collective as defined below on the one hand, and Acxell, LLC f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; PGX, LLC; and Apple Bancorp, Inc. d/b/a Apple Bank for Savings  (together "Defendants"), and Amit Govil on the other hand. The Named Plaintiffs, Defendants, and Govil are referred to herein collectively as the "Parties."

**NOW, THEREFORE**, in consideration of the promises and agreements contained herein, and intending to be legally bound, the Parties agree and covenant as follows:

1.   **DEFINITIONS:**

As used in this Agreement, the following definitions (in addition to those set forth elsewhere herein) shall apply:

a.   "Apple Defendant" means Apple Bank for Savings sued as Apple Bancorp, Inc. d/b/a Apple Bank for Savings.

b.   "Apple Defendant's Counsel" means Dean Yuzek and Jennifer Zourigui of Ingram Yuzek Gainen Carroll & Bertolotti, LLC.

c.   "Approval Order" means the Order granting approval of the collective action settlement substantially in the form appended hereto as **Exhibit A** (as may be amended or modified by the Parties, through their counsel, in accordance with this Agreement).

d.   "Bar Date" means the date that is one hundred and fifty (150) days from the date the Settlement Administrator mails the Settlement Notice and Claim Form to the Settlement Collective.

e.   "Claim Form" means the Claim Form in the form appended hereto as **Exhibit B**. Each Settlement Collective Member's Claim Form will include the estimated amount such Settlement Collective Member would be entitled to if they submit the required information to become a Claiming Collective Member and the Court approves all requested attorneys' fees, costs, claims administration costs, and the Retaliation Settlement Amount.

f.   "Claiming Collective Member" means Kenneth Curry, Ricardo Mazzitelli, Jacqueline Brown-Pilgrim, and any Settlement Collective Member who timely submits a Claim Form in accordance with the terms of this Agreement. In order to be considered timely, Settlement Collective Members' Claim Forms shall be received or postmarked by the Bar Date pursuant to Section 3.d.iii. of this Agreement.  Any Claim Form that does not bear a postmark shall be presumed to have been mailed one (1) day before receipt, unless the Claiming Collective Member can show otherwise.  Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim shall be Claiming Collective Members regardless of whether they submit Claim Forms.

1

g.      "Collective Counsel" means Julia H. Klein, Esq. of the Klein Law Group of New York PLLC; D. Maimon Kirschenbaum, Esq., and Denise Schulman, Esq. of Joseph & Kirschenbaum LLP; and Melissa Mazzitelli, Esq. of The Roller Law Group.

h.      "Collective List" means a list of all Collective Members, in Microsoft Excel format identified by (i) name; (ii) last known address; (iii) last known e-mail address; (iv) last known phone number; and (v) Collective Counsel's calculation of alleged unpaid overtime compensation owed by Defendants.  The Collective List is to be used by the Parties and the Settlement Administrator to effectuate settlement and may not be used for any other purpose. Collective Counsel shall prepare the Collective List.

i.      "Contractor Defendants" means Acxell, LLC f/k/a P&G Auditors and Consultants, LLC, GRC Solutions, LLC, and PGX, LLC.

j.      "Contractor Defendants' Counsel" means Brian Gershengorn and Seth Kaufman of Fisher Phillips LLP.

k.      "Defendants' Counsel" means Apple Defendant's Counsel and Contractor Defendants' Counsel, collectively.

l.      "Exclusion Request" means a request to opt out of the Settlement Collective by a Settlement Collective Member pursuant to this Agreement.

m.      "Form W-9" means the current version of the Internal Revenue Service's Form W-9 (Request for Taxpayer Identification Number and Certification).

n.      "Litigation" means the action entitled *Curry, et al. v. P&G Auditors and Consultants, LLC, et al.*, Case No. 20-cv-6985, in the United States District Court, Southern District of New York, including all cross-claims and counterclaims filed therein.

o.      "Retaliation Action" means the action filed by Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown Pilgrim bearing case number 21-cv-11017 in the United States District Court for the Southern District of New York.

p.      "Retaliation Settlement Amount and Service Award" means the total of Forty Five Thousand Dollars ($45,000.00) to be paid to Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim (1) as consideration for their general release of claims, including the claims asserted in the Retaliation Action, and the dismissal of the Retaliation Action; (2) and in return for services to the Collective Members.  Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim shall each receive Fifteen Thousand Dollars ($15,000.00) from the Retaliation Settlement Amount and Service Award.  Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim's respective portions of the Retaliation Settlement Amount shall be referred to as their "Individual Retaliation Settlement Amount."  The Retaliation Settlement Amount and Service Award shall be paid out of the Settlement Fund.

q.      "Settlement" means collectively the rights and duties of the Parties under this Agreement and the processes for approval and payment to Claiming Collective Members described in this Agreement.

r.     "Settlement Administrator" means the qualified firm to be approved by the Court to administer the Settlement and the Settlement Fund as described in Section 5.4 of this Agreement.  The Parties have preliminarily designated Rust Consulting as the Settlement Administrator.  The Settlement Administrator shall receive all payments made by Defendants and AML RightSource LLC to the Settlement Fund, and shall effectuate the disbursement or return of all Settlement Fund payments as described herein, as applicable.

s.     "Settlement Collective" means collectively the Named Plaintiffs and 40 additional persons who have filed Consents to Join the Litigation and whose names are included on the Schedule of Settlement Collective Members appended hereto as **Exhibit C** (as may be amended or modified by the Parties, through their counsel, to correct errors or omissions therein).

t.     "Settlement Collective Member" means any member of the Settlement Collective.

u.     "Settlement Fund" means the fund totaling Nine Hundred Thousand Dollars ($900,000.00) described in Section 4 below, and which is intended to be a qualified settlement fund.

v.     "Settlement Notice" means the proposed Notice of Settlement Rights and Obligations to Opt-In Plaintiffs in the form appended hereto as **Exhibit D**, to be approved by the Court and mailed to each Settlement Collective Member, in accordance with Section 6 of this Agreement.

## 2.     THE PARTIES' DISPUTE AND THE LITIGATION:

a.     On August 10, 2020, the Named Plaintiffs commenced the Litigation by filing a putative class and collective action complaint alleging that Contractor Defendants and Apple Bank, alleged to be a joint employer, misclassified them and similarly situated individuals as independent contractors and, as a result, failed to pay them all wages due under federal and New York law and failed to provide them with the wage notices and wage statements required under New York law.

b.     On October 15, 2020, Apple Defendant answered the complaint and asserted crossclaims against GRC Solutions, LLC for indemnification.

c.     On December 4, 2020, Apple Defendant filed a motion for summary judgment in the Litigation as to the Settlement Collective, which was denied, without prejudice to renewal, by an Order dated August 9, 2021.

d.     On December 11, 2020, Named Plaintiffs filed a motion to conditionally certify a collective pursuant to 29 U.S.C. § 216(b).  The Court granted the motion on June 14, 2021, and authorized the issuance of a notice to individuals similarly situated to the Named Plaintiffs.

e.     On December 21, 2020, Contractor Defendants answered the complaint, GRC Solutions, LLC answered Apple Defendant's crossclaims, and GRC Solutions, LLC and PGX, LLC filed cross-claims against KDC Consulting, LLC; Kenneth Curry (in his capacity as

managing member of KDC Consulting, LLC); Mazzitelli Consulting, LLC; Mazzitelli Consulting Incorporated; Bropil Consulting, LLC; Jacqueline Brown-Pilgrim (in her capacity as managing member of Bropil Consulting, LLC); and Dennis Pilgrim (in his capacity as managing member of Bropil Consulting, LLC).

       f.     On February 6, 2021, amended cross-claims were filed, solely on behalf of PGX, LLC, against KDC Consulting, LLC; Kenneth Curry (in his capacity as managing member of KDC Consulting, LLC); Bropil Consulting, LLC; Jacqueline Brown-Pilgrim (in her capacity as managing member of Bropil Consulting, LLC); and Dennis Pilgrim (in his capacity as managing member of Bropil Consulting, LLC).

       g.     On March 2, 2021, KDC Consulting, LLC; Kenneth Curry (in his capacity as managing member of KDC Consulting, LLC); Mazzitelli Consulting, LLC; Mazzitelli Consulting Incorporated; Bropil Consulting, LLC; Jacqueline Brown-Pilgrim (in her capacity as managing member of Bropil Consulting, LLC); Dennis Pilgrim (in his capacity as managing member of Bropil Consulting, LLC) filed a motion to dismiss the cross-claims.  No decision has been rendered with respect to this motion to dismiss.

       h.     On December 22, 2021, the Named Plaintiffs commenced the Retaliation Action against Defendants GRC Solutions, LLC and PGX, LLC asserting that the cross claims filed against them and the entities controlled by them constituted retaliation pursuant to the Fair Labor Standards Act and the New York Labor Law.

       i.     The Named Plaintiffs and the Contractor Defendants attended a mediation session with Ralph Berger, Esq. on May 13, 2021. The matter was not resolved at this mediation.

       j.     The Named Plaintiffs and Defendants attended a second mediation session with Martin Scheinman, Esq. on April 25, 2022.  The matter was not resolved at this mediation. However, the Parties continued to negotiate and ultimately reached a settlement.

       k.     This Agreement is made in consideration of the facts and recitals set forth herein. The Parties understand, acknowledge, and agree that this Agreement constitutes a compromise of all the disputed claims at issue in the Litigation and that it is the desire and intention of each of the Parties to effect a final and complete resolution of the Litigation and of the Released Claims, including all costs and attorneys' fees incurred.

       l.     Named Plaintiffs and Collective Counsel: (1) have examined and considered the benefits to be provided to the Settlement Collective under the Settlement; (2) have considered the applicable law and the claims that have been and could have been asserted in the various Complaints filed in the Litigation arising out of or relating to the allegations of misclassification of the members of the Settlement Collective as independent contractors; and (3) believe the Settlement to be fair, reasonable, and adequate, and in the best interest of the Settlement Collective, taking into account the benefits provided to the members of the Settlement Collective through the terms of the Settlement Agreement, the decisions rendered in the Litigation, the risks of continued litigation, and the length of time that would be required to complete the litigation and any appeals.

m.      The Parties believe that the Settlement is fair, reasonable, and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors and all claims (including crossclaims) asserted against various parties, and will materially benefit the members of the Settlement Collective. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Litigation through further discovery and trial, and any further appeals following trial. Accordingly, the Parties desire to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or relating to the Litigation (including crossclaims) and the Retaliation Action.

3.     **REQUIRED EVENTS:**

a.      This Agreement shall become effective upon the date that all of the following conditions are met (the "Effective Date") in the following order: (1) the Court approves the Settlement and enters an Approval Order substantially in the form appended hereto as Exhibit A; (2) Amit Govil executes a consent judgment per Paragraph 3.d.iii. and funds the first installment payment of Contractor Defendants' Amount set forth Paragraph 4.a.i.2. that is required by Paragraph 4.b.iv.1.; (3) Apple Defendant funds the Amount as provided in Paragraphs 4.a.ii. and 4.b.ii.; (4) AML RightSource LLC funds the Amount as provided in Paragraphs 4.a.i.1.and 4.b.iii.; and (5) the Court enters the Parties' stipulations of dismissal substantially in the form appended hereto as **Exhibit E**. No funds will be released to Claiming Collective Members, Named Plaintiffs, or Collective Counsel until this Agreement becomes effective. If conditions (1) through (4) of this sub-paragraph do not occur, the Parties will not proceed to dismiss the Litigation or the Retaliation Action, the Settlement Administrator shall return any and all amounts it had previously received pursuant to Section 4 ('Payments to the Settlement Fund') directly to the party which funded those amounts (or the party's successor or assign, if applicable), and the Parties will return to their prior positions in the Litigation and the Retaliation Action, and this Agreement and the Settlement shall be void *ab initio*.

b.      The Approval Order: The Approval Order to be submitted to the Court shall by its terms and its incorporation of this Agreement accomplish all of the following:

i.      Approve the Settlement as fair, reasonable, and adequate to the Settlement Collective Members;

ii.      Adopt the terms of the Settlement Agreement;

iii.      Approve Collective Counsel's reasonable litigation costs, expenses;

iv.      Approve reasonable compensation and costs to the Settlement Administrator; and

v.      Approve the form, content and method of notice to be given to Settlement Collective Members as set forth below.

c.      Procedures for Settlement Approval:

i.      As soon as practicable after this Agreement is fully executed, Collective Counsel will file a motion requesting judicial approval of the Settlement as required under the Fair Labor Standards Act (FLSA), which will be prepared by Collective Counsel. Defendants shall not oppose that motion, provided that it is consistent with the terms of this Agreement.

ii.     Within three (3) business days of filing the motion requesting judicial approval of the Settlement, Collective Counsel shall provide the Collective List to the Settlement Administrator and Defendants' Counsel.

iii.    Named Plaintiffs, Collective Counsel, and Defendants will cooperate and use their best efforts to accomplish the above. If the Court fails to enter the Approval Order substantially in the form appended hereto as **Exhibit A**, Named Plaintiffs, Collective Counsel, and Defendants will use best efforts to amend the Approval Order, consistent with this Agreement, to cure any defect(s) identified by the Court; for the avoidance of doubt, Named Plaintiffs, Collective Counsel, and Defendants may not cure any defect(s) identified by the Court if the cure which would impact the rights and/or obligations of AML RightSource, LLC under this Agreement without the prior written consent of AML RightSource, LLC, which shall not be unreasonably withheld, conditioned, or delayed. If, despite such efforts, the Court does not enter an Order approving the Settlement, the Parties will return to their prior positions in the Litigation, and this Agreement and the Settlement all shall be void *ab initio*.

d.      Procedures After Settlement Approval:

i.      Within ten (10) days from the date that the Court enters an order approving the Settlement, the Settlement Administrator will distribute the Settlement Notice, Claim Form, and Form W-9 to all Settlement Collective Members via First Class Mail and e-mail. Defendants shall be obligated to cooperate in good faith with Collective Counsel and the Settlement Administrator to locate and identify the Settlement Collective Members' email addresses and phone numbers.

ii.     Settlement Collective Members will be provided with one hundred and fifty (150) days from the date of the mailing described herein to either (i) submit a Claim Form and become or Claiming Collective Member, or (ii) submit an Exclusion Request and opt- out of the Settlement. The last day of this one hundred and fifty (150) day period is the Bar Date. Claim Forms or Exclusion Requests must be postmarked or received by the Bar Date to be considered timely under this Agreement.  Any Claim Form that does not bear a postmark shall be presumed to have been mailed one (1) day before receipt, unless the Claiming Collective Member can show otherwise.

iii.    No later than twenty-seven (27) days after the Court enters the Approval Order, Amit Govil shall deliver to Collective Counsel and AML RightSource, LLC an original copy of an executed consent judgment in the form appended hereto as Exhibit  F for the amount of Contractor Defendants' Amount less the amount of AML RightSource LLC's payment pursuant to Paragraph 4.a.i.1, plus 10% of outstanding monies owed by Contractor Defendants.

The consent of judgment must bear Govil's original signature, as opposed to a copied or electronic signature. Collective Counsel shall hold the consent judgment in escrow and shall not file it in any court unless and until Contractor Defendants default in the payment of any of the installments identified in Paragraph 4.b.iv. of this Agreement and fails to cure his default in accordance with the notice and cure provisions set forth in Paragraph 3.d.iii.1. of this Agreement.

1. If Contractor Defendants fail to make any of the payments set forth in Paragraph 4.b.iv., Collective Counsel shall notify Contractor Defendants via e-mail to bgershengorn@fisherphillips.com and skaufman@fisherphillips.com of the default. If Contractor Defendants do not cure the default within seven (7) days of the notice, 110% of the outstanding monies owed by Contractor Defendants under this Agreement shall be immediately due in their entirety, and the Named Plaintiffs may file the consent judgment, unless otherwise agreed to in writing by Named Plaintiffs and Contractor Defendants. The Named Plaintiffs shall also be entitled to their reasonable attorneys' fees and costs incurred in effecting the consent judgment and collecting on a judgment, and Contractor Defendants shall be solely liable for such reasonable attorneys' fees and costs.

2. Neither Apple Defendant nor AML RightSource, LLC, nor their respective consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, owners, and/or past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers shall be liable for any of Contractor Defendants payments set forth in Paragraph 4.b.iv.

iv.     Within three (3) days from the date that Amit Govil delivers to Collective Counsel and AML RightSource, LLC the original copy of an executed consent judgement referenced in Section 3.d.iii., Contractor Defendants shall fund the first installment payment required by Paragraph 4.b.iv.1. for the Contractor Defendants' Amount provided in Paragraph 4.a.i.2.

v.     Within two (2) days from the date that Contractor Defendants fund the first installment payment required by Paragraph 3.d. iv., Apple Defendant shall fund the Amount as provided in Paragraph 4.a.ii.

vi.     Within two (2) days from the date that Apple Defendant funds the Amount as provided in Paragraph 3.d.v., AML RightSource LLC shall fund the Amount as provided in Paragraph 4.a.i.1.

vii.     Within three (3) business days of AML RightSource, LLC funding the Amount as provided in Paragraph 3.d.vi., Plaintiffs will file with the Court stipulations of dismissal in the Litigation and in the Retaliation Action in the form appended hereto as **Exhibit E**. The Parties will ask the Court in the Litigation and in the Retaliation Action to retain jurisdiction over the administration of the Settlement and enforcement of this Agreement.

### 4.     PAYMENTS TO THE SETTLEMENT FUND

a.     The Settlement Payment: The maximum amount that Defendants will pay pursuant to terms set forth in this Agreement is Nine Hundred Thousand Dollars ($900,000.00, the "Settlement Payment"). Of the total Settlement Payment:

i.     Contractor Defendants are responsible for Six Hundred Seventy Five Thousand Dollars ($675,000.00) of the Settlement Payment (the "Contractor Defendants' Amount") which shall be funded as follows:

1.   AML RightSource LLC has agreed to fund an estimated Five Hundred Eighty Thousand Dollars ($580,000.00) of Contractor Defendants' Amount of the Settlement Payment. Simultaneously with the Parties' execution of this Agreement, AML RightSource LLC will sign the side letter that is attached as **Exhibit G** to this Agreement acknowledging its intent to make this payment, conditional upon the occurrence of the required events set forth in the order listed in Sections 3.a.(1)-(3); and

2.   Contractor Defendants shall be responsible for funding the portion of the Contractor Defendants' Amount that AML RightSource LLC does not pay, which is estimated to be Ninety Five Thousand Dollars ($95,000.00).

3.   The Parties acknowledge and agree that AML RightSource, LLC has no direct relationship with Contractor Defendants or the Parties, has no liability with respect to the Litigation and/or this Agreement, is not responsible for Contractor Defendants' Amount, and has solely agreed to fund the amount set forth in Paragraph 4.a.i.1. pursuant to the side letter that is attached as Exhibit G to this Agreement.

ii.     Apple Defendant shall pay Two Hundred and Twenty Five Thousand Dollars ($225,000.00) and shall be responsible for the funding of that amount.

b.     The Settlement Payment shall be remitted upon the following schedule:

i.      No later than thirty (30) days after the Court enters the Approval Order, Contractor Defendants shall fund the first installment payment required by Paragraph 4.b.iv.1. for the Contractor Defendants' Amount provided in Paragraph 4.a.i.2.

ii.      No later than thirty-two (32) days after the Court enters the Approval Order, Apple Defendant shall pay its full share of Two Hundred and Twenty Five Thousand Dollars ($225,000.00) to the Settlement Fund.

iii.      No later than thirty-four (34) days after the Court enters the Approval Order, AML RightSource LLC shall pay its full share of the Amount set forth in Paragraph 4.a.i.1 to the Settlement Fund, provided that all pre-conditions set forth in this Agreement (including, but not limited to Paragraphs 3.a., 3.d.iii-v., and 4.b.(i) & (ii) above) have been satisfied.

iv.      Contractor Defendants shall pay the portion of the Contractor Defendants' Amount that is not paid by AML RightSource LLC's payment pursuant to Paragraph 4.a.i.1 in six equal installments over the course of a 180-day period after the Court enters the Approval Order, as follows: (1) no later than thirty (30) days after the Court enters the Approval Order; (2) no later than sixty (60) days after the Court enters the Approval Order; (3) no later than ninety (90) days after the Court enters the Approval Order; (4) no later than one hundred twenty (120) days after the Court enters the Approval Order; (5) no later than one hundred fifty (150) days after the Court enters the Approval Order; and (6) no later than one hundred eighty (180) days after the Court enters the Approval Order.

c.      The Net Settlement Fund. The Net Settlement Fund shall be equal to the Settlement Payment less:

i.      The total amount allocated as reasonable litigation costs, expenses and attorneys' fees as set forth in Section 5 hereof and as approved by the Court;

ii.      The Settlement Administrator's costs and fees in administering the Settlement; and

iii.      The Retaliation Settlement Amount.

**5.      ATTORNEYS' FEES AND COSTS**

a.      Collective Counsel shall petition the Court for an award of costs and no more than one-third of the Settlement Payment after deducting Court-approved costs. Defendants shall not oppose Collective Counsel's request for attorneys' fees and costs, provided it is consistent with the terms of this Agreement. The attorneys' fees Collective Counsel will seek shall cover all legal services provided by Collective Counsel in the past and future to the members of the Settlement Collective in connection with the Litigation, the settlement of the Litigation, any appeal in connection with the Settlement, implementation of the Settlement, or otherwise.

**6.      PAYMENTS TO CLAIMING COLLECTIVE MEMBERS, NAMED PLAINTIFFS, AND COLLECTIVE COUNSEL**

a.      Calculation of Payments to Claiming Collective Members.

i.   The Net Settlement Fund shall be allocated among all Settlement Collective Members on a *pro rata* basis according to Collective Counsel's calculation of each Settlement Collective Member's alleged overtime compensation owed by Defendants, as provided in the Collective List (the "Individual Allocated Share").

ii.   No Settlement Collective Member's Individual Allocated Share shall be less than One Thousand Dollars ($1,000.00). Thus, if any Settlement Collective Member's share calculated pursuant to Paragraph 6.a.1. is less than $1,000, such share shall be increased to $1,000, and all shares above $1,000 reduced *pro rata* to account for this increase.

iii.   To account for any errors and omissions in calculating each Settlement Collective Member's alleged overtime compensation owed by Defendants, Fifteen Thousand Dollars ($15,000.00) shall be reserved from the Net Settlement Fund to be used to resolve any disputes that may arise concerning the distribution of funds or payment calculations. Following the Bar Date, each Settlement Collective Member's share of the Net Settlement Fund (the "Final Individual Allocated Share") will be recalculated to include, on a *pro rata* basis, any amounts remaining from the $15,000 that was reserved.

iv.   Following the Bar Date, any monies remaining in the Settlement Fund for the Final Individual Allocated Shares of Settlement Collective Members who have timely submitted Exclusion Requests shall be returned, *pro rata*, to Apple Defendant, AML RightSource LLC, and/or Contractor Defendants. However, Contractor Defendants shall not receive payment under this paragraph unless they have fully complied with their payment obligations under this Agreement.

v.   Following the Bar Date, the Individual Allocated Shares for any Settlement Collective Members who did not timely submit either a Claim Form or an Exclusion Request shall be reallocated among the Claiming Collective Members (the "Reallocated Amount"). Each Claiming Collective Member shall receive payment from the Net Settlement Fund in the amount of the sum of his or her Final Individual Allocated Share and his or her respective portion of the Reallocated Amount (the "Total Individual Payment Amount").

b.      Distribution of Settlement Fund.

i.   On the later of 60 days after the Court enters the Approval Order or 15 days after dismissal of the Action (contingent on the Agreement becoming effective, per Paragraph 3.a, above), the Settlement Administrator shall distribute the portion of the Settlement Fund paid up to 15 days before the check issuance date as follows:

1.   The Settlement Administrator shall pay to itself administration costs and deduct this amount from the portion of the Settlement Fund paid up to 15 days before the check issuance date. The remaining funds shall be called the "First Payment Amount."

10

2. The Settlement Administrator shall calculate the percentage of the total Settlement Fund allocated to (i) attorneys' fees and costs; (ii) each of Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim's Individual Retaliation Settlement Amounts; and (iii) each Settlement Collective Member's Individual Allocated Share.

3. The Settlement Administrator shall multiply the percentages derived in Paragraph 5.b.i.2. by the First Payment Amount to determine each Settlement Collective Member's and Collective Counsel's respective shares of the First Payment Amount ("Individual First Payment Amount").

4. The Settlement Administrator shall issue settlement checks to Collective Counsel and to each person who has become a Claiming Collective Member no later than 15 days before the check issuance date in the amount of their respective Individual First Payment Amounts.

ii. 195 days after the Court enters the Approval Order (contingent on the Agreement becoming effective, per Paragraph 3.a, above), the Settlement Administrator shall distribute the balance of the Settlement Fund as follows:

1. The Settlement Administrator shall pay to itself the remainder of any administration costs.

2. The Settlement Administrator shall pay to Collective Counsel all attorneys' fees and costs awarded by the Court that were not paid in the Individual First Payment Amount.

3. The Settlement Administrator shall pay to Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim the portion of their Individual Retaliation Settlement Amounts that were not paid in the Individual First Payment Amount.

4. The Settlement Administrator shall pay to each Claiming Collective Member the entire portion of their respective Total Individual Payment Amounts that were not paid in the Individual First Payment Amount.

5. The Settlement Administrator shall return the Final Individual Allocated Shares of Settlement Collective Members who timely submitted Exclusion Requests *pro rata* to Apple Defendant, AML RightSource LLC, and/or Contractor Defendants.  However, Contractor Defendants shall not receive payment under this paragraph unless they

have fully complied with their payment obligations under this Agreement.

6. In the event that the Settlement Fund has not been fully funded within 180 days of Court approval of the Settlement, the Settlement Administrator shall distribute the monies in the Settlement Fund on a *pro rata* basis according to the outstanding portion of Collective Counsel's attorneys' fees and costs; the outstanding portions of Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim's Individual Retaliation Settlement Amounts; and the outstanding portions of each Claiming Collective Member's Total Individual Payment Amounts.

7. Any portion of the Settlement Fund that is paid more than 180 days after Court approval of the Settlement shall be distributed within 15 days of payment to Collective Counsel, Kenneth Curry, Ricardo Mazzitelli, Jacqueline Brown-Pilgrim, and Claiming Collective Members on a *pro rata* basis according to the then-unpaid amounts of attorneys' fees and costs, Individual Retaliation Settlement Amounts, and Total Individual Payment Amounts.

c. Reissued and Uncashed Settlement Checks.

i. All settlement checks will be redeemable for 90 days after issuance. If a Claiming Collective Member does not redeem his or her settlement check within the 90-day period, the settlement check will be void and a stop-payment will be placed.

ii. Claiming Collective Members may request reissued settlement checks up to 120 days after the settlement checks described in Paragraph 5.b.ii. are issued. All reissued settlement checks will be valid for forty-five days after the date of issue and will be void thereafter.

iii. Any portion of a Claiming Collective Member's Total Individual Payment Amount or Individual Retaliation Settlement Amount that remains in the Settlement Fund after the last deadline to request and/or redeem settlement checks has expired shall be paid to the unclaimed property administrator for the last known state in which such Claiming Collective Member resided.

d. Tax Characterization of Payments to Claiming Collective Members.

i. All payments made Claiming Collective Members of the Total Individual Payment Amount shall be allocated as follows: fifty (50%) percent shall be reported on an IRS Form 1099-NEC, and fifty (50%) shall be reported on an IRS Form 1099-MISC as "other income," representing alleged liquidated damage and penalties.

ii. All payments of the Individual Retaliation Settlement Amounts shall be non-wage income reported on an IRS Form 1099-MISC as "other income."

iii.   Named Plaintiffs and Claiming Collective Members understand and agree that Defendants are providing them with no tax or legal advice, and make no representations regarding tax obligations or consequences, if any, related to this Settlement Agreement.  Named Plaintiffs and Claiming Collective Members agree that they will each be solely responsible for any and all taxes payable by any of them with respect to the payments issued on an IRS Form 1099-MISC.

e.      Settlement Administrator's Duties. The Settlement Administrator shall be solely responsible for the following functions in accordance with the terms of this Agreement, and with the Approval Order:

i.   As soon as practicable, but no later than ten (10) days after the Court's entry of the Approval Order (unless otherwise ordered by the Court), mailing, by first-class United States Mail, and e-mailing the Settlement Notice, Claim Form, and a blank Form W- 9 to each Settlement Collective Member, as set forth in this Agreement.

ii.   Providing regular reports to the Parties, but no less frequently than one report every two weeks, regarding (i) The status of the mailing of the Settlement Notices and Claim Forms to Settlement Collective Members; (ii) The identity and number of Settlement Collective Members who submit an Exclusion Request, (iii) The identity and number of Claiming Collective Members; and (iv) The distribution and redemption of the settlement checks.

iii.   Processing any challenges to the payment calculations.

iv.   Within seven (7) days following the Bar Date, providing to Collective Counsel and Defendants' Counsel a list of every Settlement Collective Member who timely submitted an Exclusion Request;

v.   Providing Collective Counsel with electronic copies of all individual Claims Forms mailed to Settlement Collective Members.

vi.   Submitting the Named Plaintiffs' and Claiming Collective Members' taxpayer identification numbers, as provided in the executed Form W-9's, to the Internal Revenue Service taxpayer identification number matching service, and obtaining (prior to issuing payment) a corrected Form W-9 from each Named Plaintiff and/or Claiming Collective Member whose taxpayer identification number does not result in a match in the above-referenced IRS process.

vii.   Mailing, by first-class United States Mail, settlement checks to Claiming Collective Members in accordance with the payment calculations provided to the Settlement Administrator by Collective Counsel.

viii.   Transmitting, by wire transfer, payment(s) for attorneys' fees and costs to Collective Counsel.

ix.   Mailing, by first-class United States Mail, the Curry Retaliation Settlement to Plaintiff Kenneth Curry; the Mazzitelli Retaliation Settlement to Plaintiff Ricardo Mazzitelli and the Pilgrim Retaliation Settlement to Plaintiff Jacqueline Brown-Pilgrim.

x.     Establishing, designating, and maintaining the Collective Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of Named Plaintiffs and the Settlement Collective.

xi.     Preparing and filing federal income tax returns in the name of the Collective Settlement Fund, as well as any other tax filings the Collective Settlement Fund must make under federal, state, or local law.

xii.     Preparing, filing, and issuing all necessary tax reporting forms in the name of the Collective Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to Claiming Collective Members, Collective Counsel, and Named Plaintiffs.

xiii.     Providing Defendants with copies of all tax reporting and filings made for the Collective Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Claiming Collective Members, Collective Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities.

xiv.     Paying any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Collective Settlement Fund. Any such tax payment shall be made solely from the assets of the Collective Settlement Fund without any recourse against Defendants for additional monies.

xv.     Providing the Final Accounting to Defendants and Collective Counsel.

f.     Access to the Settlement Administrator. The Parties will have equal access to the Settlement Administrator and, upon request of Counsel, the Settlement Administrator will provide any information that was prepared in administration of this Settlement.

## 7.     SETTLEMENT NOTICE

The Parties agree that the Settlement Notice provides information sufficient to inform the Settlement Collective Members of the material terms of this Settlement, the appropriate means for obtaining additional information regarding this Agreement and the status of the Litigation, the appropriate means for and information about obtaining a Settlement Collective Member's share of the Net Settlement Fund pursuant to the Settlement, and the appropriate means to exclude oneself from the Settlement Collective.

## 8.     COSTS OF NOTICE AND CLAIMS ADMINISTRATION

All fees and expenses incurred in administering this Agreement, including payments made for the services of the Settlement Administrator for the duties set forth in this Agreement, shall be paid from the Settlement Fund.

## 9.     RELEASES

a.      Any Settlement Collective Member who timely submits a valid Exclusion Request in accordance with the terms of this Agreement shall not release any claims under this Agreement.

b.      Every Settlement Collective Member who does not timely submit a valid Exclusion Request shall fully release and discharge (1) Defendants and their respective (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners, including but not limited to  Amit Govil, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers, and (2) AML RightSource, LLC and its respective (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, owners, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers (the "Released Parties") from any and all wage and hour claims under the Fair Labor Standards Act or state wage and hour laws (including, without limitation, the New York Labor Law and New York Miscellaneous Wage Order) relating to their work on the Apple Bank Lookback Projects, including but not limited to claims for unpaid wages, overtime pay, failure to maintain and furnish employees with proper wage notices or wage statements, claims under the Wage Theft Prevention Act, and all other claims that were or could have been asserted in the Litigation under the Fair Labor Standards Act or state wage and hour laws, whether known or unknown, through the date that the Court approves this Agreement, including but not limited to claims for overtime, unpaid wages, interest, penalties, liquidated damages, and attorneys' fees and costs related to such claims.

c.      In addition to the waiver and release contained in 9.b. above, and in consideration of the Retaliation Settlement Amount and Service Award, each Named Plaintiff knowingly and voluntarily, fully releases and discharges Acxell, LLC f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; PGX, LLC and their respective (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers, including but not limited to Amit Govil (collectively, the "Contractor Defendants Releases") from any and all claims arising up to and as of the date of this Agreement, both known and unknown, which the Named Plaintiffs have or may have against the Contractor Defendants' Releasees, including but not limited to retaliation claims under the Fair Labor Standards Act or New York Labor Law, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Age Discrimination in Employment Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Worker Adjustment and Retraining Act; The Occupational Safety and Health Act; The New York Corrections Law, including Sections 750-755 thereof; The Family and Medical Leave Act of 1993; The New York State Human Rights Law; the New York Worker Adjustment and Retraining Act;The New York Civil Rights Law; The New York City Human Rights Law; the New York City Paid Sick Leave Law; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for back pay, front pay, compensatory damages, punitive damages, liquidated damages, penalties, interest, and attorneys' fees' and costs.

d.      Acxell, LLC f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; and PGX, LLC, on behalf of themselves and the Contractor Defendants Releasees, knowingly and voluntarily fully release and discharge Kenneth Curry, Ricardo Mazzitelli, Jacqueline Brown-Pilgrim, Dennis Pilgrim, KDC Consulting, LLC, Mazzitelli Consulting LLC, Mazzitelli Consulting Incorporated, and Bropil Consulting, LLC from any and all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, arising up to and as of the date of this Agreement, whether now known or unknown, contingent or absolute, which  arise under any statutory or common law or contractual claim, including but not limited to claims for indemnification, breach of contract, and fraudulent conveyance.

e.      Acxell, LLC f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; and PGX, LLC, on behalf of themselves and the Contractor Defendants Releasees, knowingly and voluntarily fully release and discharge every Settlement Collective Member who does not timely submit a valid Exclusion Request; any and all business entities affiliated with those Settlement Collective Members that entered into agreements or contracts with Acxell, LLC f/k/a P&G Auditors and Consultants, LLC, GRC Solutions, LLC, or PGX, LLC in connection with the Apple Bank Lookback Projects; and all such business entities' consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, insurers, attorneys, and, in their official capacities, shareholders, officers, directors, agents, and owners from all indemnification and breach of contract claims that relate to this Litigation.

f.      Apple Defendant knowingly and voluntarily fully releases and discharges Contractor Defendants and their (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers from any claim for indemnification that relates to this Litigation.

g.      Contractor Defendants knowingly and voluntarily fully release and discharge Apple Defendant and its (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers from all claims that relate to or could have been brought in this Litigation.

h.      Apple Defendant knowingly and voluntarily fully releases and discharges AML RightSource, LLC,  and its (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers from any claim that relates to this Litigation.

i.      AML RightSource, LLC knowingly and voluntarily fully releases and discharges Apple Defendant,  and its (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers from any claim that relates to this Litigation.

j.      In addition to the waiver and release contained in 9.b. above, and in consideration of the Retaliation Settlement Amount and Service Award, each Named Plaintiff knowingly and voluntarily, fully releases and discharges AML RightSource, LLC and its respective (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers, Govil (collectively, the "AML RightSource Releasees") from any and all claims arising up to and as of the date of this Agreement, both known and unknown, which the Named Plaintiffs have or may have against the AML RightSource Releasees, including but not limited to retaliation claims under the Fair Labor Standards Act or New York Labor Law, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Age Discrimination in Employment Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Worker Adjustment and Retraining Act; The Occupational Safety and Health Act; The New York Corrections Law, including Sections 750-755 thereof; The Family and Medical Leave Act of 1993; The New York State Human Rights Law; the New York Worker Adjustment and Retraining Act;The New York Civil Rights Law; The New York City Human Rights Law; the New York City Paid Sick Leave Law; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for back pay, front pay, compensatory damages, punitive damages, liquidated damages, penalties, interest, and attorneys' fees' and costs.

k.      AML RightSource, LLC, on behalf of itself and the AML RightSource Releasees, knowingly and voluntarily fully release and discharge Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim from any and all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, arising up to and as of the date of this Agreement, whether now known or unknown, contingent or absolute, which  arise under any statutory or common law or contractual claim, including but not limited to claims for indemnification, breach of contract, and fraudulent conveyance.

l.      Notwithstanding the above, the Court shall retain jurisdiction over the Parties, the Settlement Collective and the Settlement with respect to the future performance of the terms of this Settlement Agreement, and to assure that all payments and other actions required by the Settlement are properly carried out.

## 10.   REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

a.      Each of the Parties has had the opportunity to receive, and has received, independent legal advice from his or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and fully understands and accepts the terms of this Settlement.

b.      Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that party and his or its attorneys.

c.      The Parties believe that the Settlement is fair, reasonable, and adequate. The Settlement was arrived at through arm's-length negotiations with the assistance of a mediator, taking into account all relevant factors and all claims (including crossclaims) brought against various parties, and will materially benefit the members of the Settlement Collective. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Litigation through further discovery and trial, and any further appeals following trial. Accordingly, the Parties desire to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or relating to the Litigation.

d.      Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his or its attorneys.

e.      Section titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof.

f.      Each of the Parties has participated in the drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider the effect of the language of this Agreement, and has agreed to its terms.

g.      It is understood and agreed that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his or its counsel participated in the drafting of this Agreement.

h.      This Agreement constitutes and comprises the entire agreement among the Parties with respect to the subject matter hereof. It supersedes all prior and contemporaneous oral and written agreements and discussions with any of the Defendants. It may be amended only by an agreement in writing, signed by all Parties hereto.

i.      The Parties agree that any dispute regarding the interpretation or enforcement of the terms of this Agreement or in connection with the Settlement shall be resolved by the Court.

## 11.   MISCELLANEOUS

a.      Severability. None of the terms of this Agreement is severable from the others. However, if the Court should rule that any term is void, illegal, or unenforceable for any reason, Defendants, in their sole discretion, and Named Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations to the Settlement Collective), may elect to waive any such deficiency identified by the Court and proceed with the Settlement under the terms and conditions ultimately approved by the Court. However, Defendants and Named Plaintiffs may not elect to waive any deficiency and proceed with the Settlement if such deficiency impacts the rights

and/or obligations of AML RightSource, LLC without the prior written consent of AML RightSource, LLC, which shall not be unreasonably withheld, conditioned, or delayed.

b.    Amendments. This Agreement may be amended only by written agreement signed by the Parties. Except as otherwise stated above, each of the parties, including Named Plaintiffs on behalf of themselves and the Settlement Collective, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

c.    Binding Nature. This Agreement is binding on, and shall inure to the benefit of, the parties to the Litigation and the Settlement Collective and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest.

d.    Cooperation in Implementation. The Parties and their respective counsel (including Collective Counsel) agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

e.    Governing Law. This Agreement shall be construed and governed in accordance with the procedural and substantive law of the state of New York, except that all matters of federal law and the Settlement Fund's compliance with Internal Revenue Code § 468B and the Treasury Regulations thereunder shall be governed by federal law.

f.    No Admission of Liability. The Parties acknowledge that this Settlement is a compromise of disputed claims and that Defendants and AML RightSource, LLC are not in any way admitting liability by entering into this Agreement and/or funding the Settlement Fund. The Parties further acknowledge and agree that AML RightSource, LLC is not a successor to or affiliate of any Defendant, and AML RightSource, LLC denies that it is a successor to or affiliate of any Defendant. Defendants have at all times disputed, and continue to dispute, the allegations in the Litigation and deny any liability for any of the claims that have or could have been raised in the Litigation regarding the classification of the Named Plaintiffs and the members of the Settlement Collective as independent contractors, but believe that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation.

g.    Signatures. This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes. This paragraph shall not apply to the affidavit for confession of judgment, which must bear an original signature rather than an electronic or copied signature.

_Kennet Curry_    Date: __10/27__, 2022
Kenneth Curry

_____    Date: _____, 2022

19

and/or obligations of AML RightSource, LLC without the prior written consent of AML RightSource, LLC, which shall not be unreasonably withheld, conditioned, or delayed.

b.      Amendments. This Agreement may be amended only by written agreement signed by the Parties. Except as otherwise stated above, each of the parties, including Named Plaintiffs on behalf of themselves and the Settlement Collective, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

c.      Binding Nature. This Agreement is binding on, and shall inure to the benefit of, the parties to the Litigation and the Settlement Collective and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest.

d.      Cooperation in Implementation. The Parties and their respective counsel (including Collective Counsel) agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

e.      Governing Law. This Agreement shall be construed and governed in accordance with the procedural and substantive law of the state of New York, except that all matters of federal law and the Settlement Fund's compliance with Internal Revenue Code § 468B and the Treasury Regulations thereunder shall be governed by federal law.

f.      No Admission of Liability. The Parties acknowledge that this Settlement is a compromise of disputed claims and that Defendants and AML RightSource, LLC are not in any way admitting liability by entering into this Agreement and/or funding the Settlement Fund.  The Parties further acknowledge and agree that AML RightSource, LLC is not a successor to or affiliate of any Defendant, and AML RightSource, LLC denies that it is a successor to or affiliate of any Defendant.  Defendants have at all times disputed, and continue to dispute, the allegations in the Litigation and deny any liability for any of the claims that have or could have been raised in the Litigation regarding the classification of the Named Plaintiffs and the members of the Settlement Collective as independent contractors, but believe that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation.

g.      Signatures. This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.  This paragraph shall not apply to the affidavit for confession of judgment, which must bear an original signature rather than an electronic or copied signature.

_____   Date: _____, 2022
Kenneth Curry

_____   Date: __10__/__31__, 2022

19

Ricardo Mazzitelli

_____ Date: _10/28/_____, 2022
Jacqueline Brown-Pilgrim

_____ Date: _____, 2022
Acxell, LLC f/k/a P&G Auditors and Consultants, LLC
By:
Its:

_____ Date: _____, 2022
GRC Solutions, LLC
By:
Its:

_____ Date: _____, 2022
PGX, LLC
By:
Its:

_____ Date: _____, 2022
Amit Govil

_____ Date: _____, 2022
Apple Bank for Savings, sued as Apple Bancorp, Inc. d/b/a Apple Bank for Savings
By:
Its:

20

Ricardo Mazzitelli

_____ Date: _____, 2022
Jacqueline Brown-Pilgrim

*Melissa Taylor*
_____ Date: ___November 7,_____, 2022
Acxell, LLC f/k/a P&G Auditors and Consultants, LLC
By:   Melissa Taylor
Its:   Director Operations

*Melissa Taylor*
_____ Date: ___November 7,_____, 2022
GRC Solutions, LLC
By:   Melissa Taylor
Its:   Director Operations

*Melissa Taylor*
_____ Date: ___November 7,_____, 2022
PGX, LLC
By:   Melissa Taylor
Its:   Director Operations

_____ Date: ___11/7/22_____, 2022
Amit Govil

_____ Date: _____, 2022
Apple Bank for Savings, sued as Apple Bancorp, Inc. d/b/a Apple Bank for Savings
By:
Its:

Ricardo Mazzitelli

_____  Date: _____, 2022
Jacqueline Brown-Pilgrim

_____  Date: _____, 2022
Acxell, LLC f/k/a P&G Auditors and Consultants, LLC
By:
Its:

_____  Date: _____, 2022
GRC Solutions, LLC
By:
Its:

_____  Date: _____, 2022
PGX, LLC
By:
Its:

_____  Date: _____, 2022
Amit Govil

_____  Date: November 1 _____, 2022
Apple Bank for Savings, sued as Apple Bancorp, Inc. d/b/a Apple Bank for Savings
By:   Jeffrey L. Herbert
Its:   General Counsel

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KENNETH CURRY, RICARDO MAZZITELLI,**
**JACQUELINE BROWN PILGRIM, on behalf of**         Case No. 20 CV 6985
themselves and other similarly situated,

                    **Plaintiffs,**


- against -

**ACXELL, LLC, F/K/A P&G AUDITORS AND**
**CONSULTANTS, LLC; GRC SOLUTIONS, LLC;**
**PGX, LLC; AND APPLE BANCORP, INC. d/b/a**
**APPLE BANK FOR SAVINGS,**

                    **Defendants,**

                    **- and -**

**PGX, LLC,**

                         **Crossclaim Plaintiff,**

                    **- against –**

**KDC CONSULTING, LLC, KENNETH CURRY**
**(IN HIS CAPACITY AS MANAGING MEMBER**
**OF KDC CONSULTING, LLC), BROPIL**
**CONSULTING, LLC, JACQUELINE BROWN-**
**PILGRIM (IN HER CAPACITY AS MANAGING**
**MEMBER OF BROPIL CONSULTING, LLC), and**
**DENNIS PILGRIM (IN HIS CAPACITY AS**
**MANAGING MEMBER OF BROPIL**
**CONSULTING, LLC),**

                         **Crossclaim Defendants.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KENNETH CURRY, RICARDO MAZZITELLI,**
**JACQUELINE BROWN PILGRIM,**                    **Case No. 21 CV 11017**

                                        **Plaintiffs,**

                    **- against -**

**GRC SOLUTIONS, LLC AND PGX, LLC,**

                                        **Defendants.**

**[proposed] ORDER APPROVING FLSA COLLECTIVE SETTLEMENT**

    This matter having come before this Court on _____ __, 2023 on the joint application of Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim (collectively, the "Named Plaintiffs") and Acxell, LLC, GRC Solutions, LLC, and PGX, LLC (collectively, the "Contractor Defendants") and Apple Bancorp, Inc. ("Apple Bank") (together with the Contractor Defendants, "Defendants") for approval of the collective action settlement reached between the Parties on the terms set forth in the Collective Action Settlement Agreement made and entered into as of November 7, 2022 (the "Settlement Agreement") by, between and among the Named Plaintiffs on behalf of themselves and the Settlement Collective (as defined in the Settlement Agreement) on the one hand, and Defendants and Amit Govil on the other hand (the "Settlement"); and

    This Court having considered the parties' application, and it appearing that the Settlement is fair, reasonable and adequate as to the Named Plaintiffs and the Settlement Collective; and

    Having reviewed both the letter motion filed by plaintiffs dated _____, Docket Entry __, seeking approval of the settlement agreement reached by the parties as well as the settlement agreement, Docket Entry ___-_;

**IT IS HEREBY ORDERED,** that the Court adopts the terms of the Settlement Agreement and the Parties must abide by and carry out the terms of the Settlement Agreement;

**IT IS HEREBY FURTHER ORDERED**, the Plaintiffs' counsels' attorneys' fees and expenses as set forth in their approval letter are approved;

**IT IS HEREBY FURTHER ORDERED**, that Rust Consulting is approved to perform the settlement administration duties set forth in the Settlement Agreement and is entitled to reasonable compensation and costs;

**IT IS HEREBY FURTHER ORDERED**, that notice to the Settlement Collective Members of the Settlement shall be in the form of the proposed Notice of Settlement Rights and Obligations to Opt-in Plaintiffs appended to the Settlement Agreement as Exhibit D ("Settlement Notice") and that the procedures and deadlines for Settlement Collective Members to return claim forms or to submit a request to opt out of the Settlement set forth in the Settlement Notice and the Claim Form appended to the Settlement Agreement as Exhibit B are approved;

**IT IS HEREBY FURTHER ORDERED**, that all pending motions before the Court are terminated; and

**IT IS HEREBY FURTHER ORDERED**, that within three business days of the completion of the predicate acts set forth in the Settlement Agreement, the Parties shall file stipulations of dismissal to the Court.

**IT IS HEREBY FURTHER ORDERED**, that upon the filing and so ordering of a stipulation of dismissal, this action shall be dismissed with prejudice and without costs to any Party other than as provided for in the Settlement Agreement, except that the claims of any Settlement Collective Members who timely submits a request to opt out of the Settlement shall be dismissed without prejudice; and

**IT IS HEREBY FURTHER ORDERED**, that without affecting the finality of this Final Order and Judgment, the Court reserves continuing and exclusive jurisdiction over parties to the Settlement Agreement to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the parties.

SO ORDERED on this _____ day of _____, 202_

_____

Hon. Sarah L. Cave

# Exhibit B

# CLAIM FORM

*Curry, et al. v. Acxell, LLC, f/k/a P&G Auditors and Consultants, LLC, et al.*, No. 20 CV 6985 (S.D.N.Y.)

       **In order to claim a share of the collective action settlement in the above-referenced lawsuit filed against Acxell, LLC, f/k/a/ P&G Auditors and Consultants, LLC; GRC Solutions, LLC; PGX, LLC; and Apple Bancorp, Inc. you must complete, sign, date and return to [claims administrator] the following two forms: (1) this Claim Form, and (2) the enclosed IRS Form W-9.  In order to receive your settlement amount, both these forms must be mailed to the address listed below no later than [BAR DATE - 150 days from date of mailing]:**

CLAIMS ADMINISTRATOR'S ADDRESS
Phone: xxx-xxx-xxxx
Fax:  xxx-xxx-xxxx
EMAIL ADDRESS

_____        _____
Name                                                                            Signature

                                                                                        _____
Address

_____        _____
Home Phone                                                                Cell Phone

_____
Email address

To receive your settlement payment, you must sign below and return the completed forms by mail, fax or email before **[bar date]**.  You may use the enclosed return envelope to this Claim Form and your completed IRS Form W-9.  Under the terms of the settlement in this case, your estimated individual settlement amount is approximately _____.  **To ensure that you receive your settlement payment, please inform the claims administrator or Collective Counsel if your mailing address changes.**

                                                            _____
                                                            Signature

                                                            _____
                                                            Date

**Exhibit C**

**Exhibit C - List of Settlement Collective Members**

| |
|---|
| Frederick Anarfi |
| Pamela Andrews |
| Kwame Asare |
| Julie Ballard |
| Stuart Block |
| Jackie Brown-Pilgrim |
| Rhonda Buck |
| Robert Chung |
| Bruce Corben |
| Hernan Crivellari |
| Ken Curry |
| Isis Curtis |
| Charles Dotto |
| Ehab Elgendy |
| Miles Harter |
| Mary Hernandez |
| James Hughes |
| Ludger Jean-Charles |
| Clint Kapenda |
| Erik Krasnic |
| Urim Lekaj |
| Gerry Linnane |
| Timothy Lyle |
| Ricardo Mazzitelli |
| Andrew Merlino |
| Richard Naas |
| Mark Piluso |
| Dustin Pinkerton |
| Luis Rivera |
| Zainab Rizvi |
| Whitney Rolle |
| Michael Smith |
| Ingrid Grace Sobers |
| Ed Sulca |
| Jennifer Tang |
| Dvong Trinh |
| Chhorvy Ung |
| Dominic Valentino |
| John Voinovich |
| Keith Wendling |
| Michael Whelan |
| Robert Williams |
| Brian Zittel |

**Exhibit D**

**NOTICE OF SETTLEMENT RIGHTS AND OBLIGATIONS TO OPT-IN PLAINTIFFS**

*Curry, et al. v. Acxell, LLC, f/k/a P&G Auditors and Consultants, LLC et al.*, 20 CV 6985,
United States District Court for the Southern District of New York (the "Litigation").

# PLEASE READ THIS ENTIRE NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE PROPOSED SETTLEMENT DESCRIBED IN THIS NOTICE.

TO:     ALL INDIVIDUALS WHO OPTED IN TO THIS ACTION BY FILING A "CONSENT TO JOIN" WITH THE COURT

A settlement of the Litigation (the "Settlement") has been reached in which Acxell, LLC, f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; PGX, LLC; and Apple Bancorp, Inc. (collectively, "Defendants") will set up a settlement fund of up to $900,000 from which all individuals who have opted-in to the Litigation ("Settlement Collective Members") will be eligible to receive payment to resolve their claims alleging that Defendants unlawfully failed to pay them overtime compensation or provide them with certain wage statements.

If this Notice was mailed to you, you are eligible to receive a share of the settlement fund.  The Settlement affects your rights whether you act or don't act.  Read this Notice carefully to consider your options.

**HOW CAN I RECEIVE MY SHARE OF THE SETTLEMENT?**

If you submit the enclosed Claim Form and a fully completed and executed IRS Form W-9 by **[Bar Date-150 days from date of mailing]** you will receive payment as part of this Settlement. **You must submit the Claim Form to receive payment**.  The completed Claim Form and IRS Form W-9 should be submitted to:

CLAIMS ADMINISTRATOR'S ADDRESS
Phone: xxx-xxx-xxxx
Fax:  xxx-xxx-xxxx
EMAIL ADDRESS

You may use the enclosed return envelope to submit your Claim Form and IRS Form W-9.

**WHAT IF I DO NOT WANT TO PARTICIPATE IN THE SETTLEMENT?**

You may opt-out of the Settlement, in which case you will not release any claims against Defendants.  If you do not wish to be part of the Settlement you must send a letter stating that you wish to opt out of the settlement and do not wish to be bound by the settlement in *Curry, et al. v. Acxell, LLC, f/k/a P&G Auditors and Consultants, LLC et al.*, 20 CV 6985.  Your letter must be signed by you, contain your name and address, and be mailed to **[name]**, the third-party claims administrator, on or before **[150 days from mailing]** at the following address:

**[ADDRESS]**

**WHAT HAPPENS IF I DO NOTHING?**

If you do nothing, you will not receive any funds that are available under the Settlement, but you will still release all wage and hours claims, including for unpaid overtime compensation, that you may have against Defendants. Under the terms of the Settlement, all Settlement Collective Members who do not exclude themselves from the Settlement will be releasing Defendants and related parties from all claims that were asserted or could have been asserted in the Litigation relating to allegations of misclassification as an independent contractor, as set forth more fully in the Collective Action Settlement Agreement approved by the Court on _____ (the "Settlement Agreement").

**PURPOSE OF THIS NOTICE**

This Notice is given pursuant to the Fair Labor Standards Act ("FLSA") to provide notice to you of the settlement of the above referenced FLSA Collective action. The Litigation was commenced on August 10, 2020 by Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim. The Litigation sought to recover unpaid overtime wages, penalties for violations of New York wage statement requirements, and related damages. You are receiving this Notice because you previously submitted a "Consent to Join" form, which your attorneys have filed with the Court.

**THE SETTLEMENT**

The Parties have agreed to settle the Litigation for the maximum amount of $900,000 (the "Settlement Amount"), which is based on the claims in the case and the potential damages, as well as Defendants' defenses and the risks associated with further litigation. The Settlement Amount includes (1) payments to all Settlement Collective Members who timely submit the enclosed Claim Form and a fully completed and executed IRS Form W-9; (2) payments of $15,000 each to Named Plaintiffs Kenneth Curry, Jacqueline Brown-Pilgrim, and Ricardo Mazzitelli (the "Named Plaintiffs") in exchange for releasing retaliation claims against GRC Solutions, LLC and PGX, LLC that are related to the Litigation; (3) the costs of the third party claims administrator that is administering the settlement; (4) and reimbursement of costs plus up to one-third of the after-costs Settlement Amount as attorneys' fees to Collective Counsel Julia H. Klein of the Klein Law Group of New York PLLC; D. Maimon Kirschenbaum and Denise Schulman of Joseph & Kirschenbaum LLP; and Melissa Mazzitelli of The Roller Law Group.

Settlement Collective Members will have 150 days from the date this Notice is mailed to submit a Claim Form to receive their respective shares of the settlement. The Settlement Amount will be distributed to Settlement Collective Members who timely submit their Claim Forms and fully completed and executed IRS Forms W-9 (collectively, the "Claiming Collective Members") in two installments as follows: (1) on or around [date that is 60 days after approval], settlement checks representing approximately 91% of Claiming Collective Members' settlement shares will be sent to Claiming Collective Members whose completed Claim Forms and IRS Forms W-9 are received by the Claims Administrator by [date that is 60 days after approval]; (2) on or around [date that is 195 days after approval], settlement checks representing the outstanding balance of Claiming Collective Members' settlement shares will be sent to all Claiming Collective Members. All settlement checks will be redeemable for 90 days, after which each uncashed check shall be null and void. Claiming Collective Members may request reissued settlement checks up to 120 days

after the second installment settlement checks are issued.  Reissued checks will be valid for 45 days.  Uncashed settlement checks will be paid to the lost property administrators for the last known states in which the checks' payees' resided.

Collective Counsel estimates that after attorney's fees and costs, administrative expenses, and $15,000 payments to the Named Plaintiffs are deducted from the Settlement Amount, you are eligible to receive approximately **$_____**, based on your overtime hours worked and pay rates in connection with your work on the Apple Bank LookBack Projects.  You will receive two IRS Forms 1099 for the amount of any settlement payment you are sent.  You should consult with an accountant or other tax advisor about the tax consequences of your settlement proceeds.

## BACKGROUND TO THE SETTLEMENT

Prior to entering into the Settlement Agreement, Collective Counsel conducted an investigation relating to the events and transactions underlying the Named Plaintiffs' and Settlement Collective Members' claims.  Collective Counsel's decision to enter into the Settlement Agreement was made with knowledge of the underlying facts and circumstances and the strengths and weaknesses of those claims, including information obtained through substantial discovery in the Litigation.  In determining to settle the Litigation, Collective Counsel has analyzed the evidence adduced during pretrial proceedings and settlement negotiations, and has taken into account the substantial expense and length of time necessary to prosecute the Litigation through trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation.  The Parties also participated in numerous and extensive negotiations with the assistance of a mediator, in which all terms of the Settlement Agreement were mutually agreed upon by the Parties.  Collective Counsel has determined that the Settlement described herein confers substantial benefits upon the Settlement Collective Members.  Based upon consideration of these factors, and others, Collective Counsel has concluded that it is in the best interest of the Settlement Collective Members to settle the Litigation on the terms described herein, and that this Settlement and the Settlement Agreement is fair, reasonable and adequate.

Defendants deny all allegations of wrongdoing or liability whatsoever.  Defendants desire to settle and terminate all existing or potential claims against them which were, or could have been, asserted in the Litigation, without in any way acknowledging any fault or liability, solely in order to eliminate the expense and uncertainty of protracted litigation.

## YOUR OBLIGATIONS

If you do not properly opt out of the Settlement, you will fully release and discharge (1) Defendants and their respective (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and owners, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers, and (2) AML RightSource, LLC and its respective (a) consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, owners, and (b) past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers from any wage and hour claims under the Fair Labor Standards Act or state wage and hour laws (including, without limitation, the New York Labor Law and New York Miscellaneous Wage Order) relating to your work on the Apple Bank

Lookback Projects, including but not limited to claims for unpaid wages, overtime pay, failure to maintain and furnish employees with proper wage notices or wage statements, claims under the Wage Theft Prevention Act, and all other claims that were or could have been asserted in the Litigation under the Fair Labor Standards Act or state wage and hour laws, whether known or unknown, through the date that the Court approves this Agreement, including but not limited to claims for overtime, unpaid wages, interest, penalties, liquidated damages, and attorneys' fees and costs related to such claims. Reciprocally, if you do not properly opt out of the Settlement, Acxell, LLC f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; and PGX, LLC will fully release and discharge you; any and all business entities affiliated with you that entered into agreements or contracts with Acxell, LLC f/k/a P&G Auditors and Consultants, LLC, GRC Solutions, LLC, or PGX, LLC in connection with the Apple Bank Lookback Projects; and all such business entities' consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, insurers, attorneys, and, in their official capacities, shareholders, officers, directors, agents, and owners from all indemnification and breach of contract claims that relate to this Litigation.

**ADDITIONAL INFORMATION**

For more detailed information concerning the matters involved in the Litigation, including the specific breakdown of settlement funds, please contact Collective Counsel as follows:

Julia H. Klein
Klein Law Group of New York, PLLC
120 East 79th Street, Suite 1A
New York, NY 10021
347-292-8170
jklein@kleinlegalgroup.com

D. Maimon Kirschenbaum
Denise A. Schulman
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, NY 10004
212-688-5640
denise@jk-llp.com

Melissa Mazzitelli
The Roller Law Group
801 NE 167th Street, Second Floor
North Miami Beach, FL 33162
954-828-0333
mmazzitelli@roller.law

**THIS NOTICE HAS BEEN AUTHORIZED BY THE COURT**

**Do not call or write the Court to obtain copies of documents or to ask questions about the settlement.**

Dated:_____ __, 2022

**Exhibit E**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KENNETH CURRY, RICARDO MAZZITELLI,**
**JACQUELINE BROWN PILGRIM, on behalf of**       Case No. 20 CV 6985
themselves and other similarly situated,

                    **Plaintiffs,**

**- against -**

**ACXELL, LLC, F/K/A P&G AUDITORS AND**
**CONSULTANTS, LLC; GRC SOLUTIONS, LLC;**
**PGX, LLC; AND APPLE BANCORP, INC. d/b/a**
**APPLE BANK FOR SAVINGS,**

                    **Defendants,**

                    **- and -**

**PGX, LLC,**

                    **Crossclaim Plaintiff,**

                    **- against –**

**KDC CONSULTING, LLC, KENNETH CURRY**
**(IN HIS CAPACITY AS MANAGING MEMBER**
**OF KDC CONSULTING, LLC), BROPIL**
**CONSULTING, LLC, JACQUELINE BROWN-**
**PILGRIM (IN HER CAPACITY AS MANAGING**
**MEMBER OF BROPIL CONSULTING, LLC), and**
**DENNIS PILGRIM (IN HIS CAPACITY AS**
**MANAGING MEMBER OF BROPIL**
**CONSULTING, LLC),**

                    **Crossclaim Defendants.**

### STIPULATION OF DISMISSAL

IT IS HEREBY STIPULATED that this action, including all claims, cross-claims, and

counterclaims, has been discontinued and is hereby dismissed with prejudice and without costs to any

1

party against any other.  The Court retains jurisdiction to enforce the Parties' Settlement.  This Stipulation

may be filed with the Court without further notice to any party.

Dated:  New York, New York
_____, 2022

| *Attorneys for Plaintiffs* | *Attorneys for Defendants Acxell, LLC, GRC Solutions, LLC, and PGX, LLC and Crossclaim Plaintiff PGX, LLC* | *Attorneys for Defendant Apple Bancorp* |
|---|---|---|
| By:_____ | By:_____ | By:_____ |
| Denise A. Schulman | Brian Gershengorn | Dean G. Yuzek |
| JOSEPH & | Seth Kaufman | Jennifer B. Zourigui |
| KIRSCHENBAUM LLP | FISHER & PHILLIPS LLP | INGRAM YUZEK GAINEN |
| 32 Broadway, Suite 601 | 7 Times Square, Suite 4300 | CARROLL & |
| New York, NY 10004 | New York, NY 10036 | BERTOLOTTI, LLP |
| | | 150 East 42nd St., 19th Fl. |
| Julia Klein | | New York, NY 10017 |
| KLEIN LEGAL GROUP OF | | |
| NEW YORK PLLC | | |
| 120 East 79th St., Suite 1A | | |
| New York, NY 10021 | | |
| | | |
| Melissa Mazzitelli | | |
| The Roller Law Group | | |
| 801 NE 167th Street, Second Floor | | |
| North Miami Beach, FL 33162 | | |

So Ordered: _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM,** | **Case No. 21 CV 11017** |
| **Plaintiffs,** | |
| **- against -** | |
| **GRC SOLUTIONS, LLC AND PGX, LLC,** | |
| **Defendants.** | |

**STIPULATION OF DISMISSAL**

IT IS HEREBY STIPULATED that this action has been discontinued and is hereby dismissed with prejudice and without costs to any party against any other.  The Court retains jurisdiction to enforce the Parties' Settlement.  This Stipulation may be filed with the Court without further notice to any party.

Dated:  New York, New York
      _____, 2022

*Attorneys for Plaintiffs*

By:_____
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004

Julia Klein
KLEIN LEGAL GROUP OF
NEW YORK PLLC
120 East 79th St., Suite 1A
New York, NY 10021

Melissa Mazzitelli
The Roller Law Group

*Attorneys for Defendants GRC Solutions, LLC, and PGX, LLC*

By:_____
Brian Gershengorn
Seth Kaufman
FISHER & PHILLIPS LLP
7 Times Square, Suite 4300
New York, NY 10036

1

801 NE 167th Street, Second Floor
North Miami Beach, FL 33162


So Ordered: _____

**Exhibit F**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KENNETH CURRY, RICARDO MAZZITELLI, JACQUELINE BROWN PILGRIM, on behalf of themselves and other similarly situated,** | **Case No. 20 CV 6985** |
| **Plaintiffs,** | |
| **- against -** | |
| **ACXELL, LLC, F/K/A P&G AUDITORS AND CONSULTANTS, LLC; GRC SOLUTIONS, LLC; PGX, LLC; AND APPLE BANCORP, INC. d/b/a APPLE BANK FOR SAVINGS,** | |
| **Defendants,** | |
| **- and -** | |
| **PGX, LLC,** | |
| **Crossclaim Plaintiff,** | |
| **- against –** | |
| **KDC CONSULTING, LLC, KENNETH CURRY (IN HIS CAPACITY AS MANAGING MEMBER OF KDC CONSULTING, LLC), BROPIL CONSULTING, LLC, JACQUELINE BROWN-PILGRIM (IN HER CAPACITY AS MANAGING MEMBER OF BROPIL CONSULTING, LLC), and DENNIS PILGRIM (IN HIS CAPACITY AS MANAGING MEMBER OF BROPIL CONSULTING, LLC),** | |
| **Crossclaim Defendants.** | |

### STIPULATION AND CONSENT JUDGMENT

This Stipulation and Consent Judgment is entered into by and between Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim (hereinafter, "Plaintiffs"), and behalf of themselves and the FLSA Collective Members in this Action, and Amit Govil ("Govil," collectively with Plaintiffs, the "Parties"), subject to approval by the Court.

1

**WHEREAS,** Plaintiffs brought this action bearing Case Number 20 CV 6985 (hereinafter, the "Action") and alleging violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and related regulations by, *inter alia*, Defendants Acxell, LLC, f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; and PGX, LLC (collectively, the "Contractor Defendants");

**WHEREAS,** Contractor Defendants were properly served with the Complaint in this Action and have not contested the jurisdiction of this Court;

**WHEREAS,** at the time of the events giving rise to the Action, Govil was an owner of the Contractor Defendants;

**WHEREAS,** Plaintiffs, Contractor Defendants, Defendant Apple Bancorp, Inc. (together with the Contractor Defendants, "Defendants"), and Govil negotiated a resolution of the Action, as memorialized in the Parties' Settlement Agreement, by agreeing that Plaintiffs would dismiss the Action with prejudice and release certain claims in exchange and in consideration for payment by Defendants to Plaintiffs and Claiming Collective Members in the aggregate amount of $900,000.00 (the "Settlement Amount"), without any admission of wrongdoing or liability by Defendants and the Releasees (as defined in the Settlement Agreement);

**WHEREAS,** the Contractor Defendants are responsible for paying $675,000.00 of the Settlement Amount, of which $580,000.00 will be funded by AML Rightsource LLC pursuant to the terms of the Settlement Agreement;

**WHEREAS,** under the Settlement Agreement, the remainder of the Contractor Defendants' portion of the Settlement (the remainder being $95,000.00) is to be paid in 6 equal monthly installments, and Govil has agreed to guarantee those payments;

**WHEREAS,** Plaintiffs' counsel agreed to hold this Stipulation and Consent Judgment in escrow and not file it with any court unless and until the Contractor Defendants failed to cure a default;

**WHEREAS,** in the event that the Contractor Defendants are in default of the payment of any installments due under the Settlement Agreement, the Settlement Agreement provides that Plaintiffs shall provide the Contractor Defendants with seven (7) calendar days' notice of their intent to file this Stipulation and Consent Judgment with the Court, and Defendants shall be afforded the opportunity to cure the default; and

**WHEREAS,** the Contractor Defendants have defaulted under the payment terms of the Settlement Agreement, Plaintiffs have provided the requisite notice specified above and in the Settlement Agreement, and Contractor Defendants have not cured the default within seven (7) days of receiving notice from Plaintiffs' counsel of record in this Action.

**WHEREAS,** this Stipulation and Consent Judgment shall become void *ab initio* if the Settlement Agreement becomes void *ab initio*.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, ORDERED, ADJUDGED, AND DECREED** that the Clerk of the Court shall enter Judgment with respect to all claims contained in the Complaint in this Action in favor of Plaintiffs and the Claiming Collective Plaintiffs, as defined in the Settlement Agreement, against Govil in the amount of 110% of the following amount: **Ninety Five Thousand Dollars and Zero Cents ($95,000.00)** less any settlement payment(s) made by or on behalf of the Contractor Defendants on or after the date that Govil signs this stipulation and consent judgment other than the $580,000 payment made by AML Rightsource LLC.

_____  Date: _____, 2023
**Kenneth Curry**

_____  Date: _____, 2023
**Ricardo Mazzitelli**

_____  Date: _____, 2023
**Jacqueline Brown-Pilgrim**

_____  Date: _____, 2023
**Amit Govil**
[insert address]

Sworn to before me this
____ day of _____, 2023.

_____
        Notary Public

3

**Exhibit G**

January 9, 2023

**Via Email**

AML RightSource, LLC
Frank Ewing, CEO
1 Seneca St. 27th Fl.
Buffalo, NY 14203

Dear Mr. Ewing:

This letter confirms the Collective Action Settlement Agreement (the "**Settlement Agreement**") among Kenneth Curry, Ricardo Mazzitelli, and Jacqueline Brown-Pilgrim (collectively, the "**Named Plaintiffs**") on behalf of themselves and the Settlement Collective (as defined in the Settlement Agreement), and Acxell, LLC f/k/a P&G Auditors and Consultants, LLC; GRC Solutions, LLC; PGX, LLC; and Apple Bancorp, Inc. d/b/a Apple Bank for Savings  (together "**Defendant**s"), and Amit Govil. Capitalized terms that are not defined herein shall be defined as set forth in the Settlement Agreement. Upon execution by all parties hereto, this Agreement shall constitute a binding agreement among the parties hereto that may not be amended without such parties' written consent.

      1.    <u>Funding Payment</u>. Pursuant to the terms and conditions precedent set forth in the Settlement Agreement, AML RightSource, LLC shall fund Five Hundred Eighty Thousand ($580,000.00) of the Settlement Amount no later than thirty-four (34) days after the date that the Court enters its Approval Order, conditional upon the occurrence of the required events set forth in Sections 3.a.(1)-(3) of the Settlement Agreement.

      2.    <u>Assignment</u>. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or will confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

      3.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this letter agreement as of the date first above written.

Very truly yours,

_Kenneth Curry_
_____

Kenneth Curry


*Jacqueline Brown Pilgrim*
Jacqueline Brown Pilgrim (Jan 9, 2023 21:56 EST)
_____

Jacqueline Brown-Pilgrim


*Ricardo Mazzitelli*
Ricardo Mazzitelli (Jan 9, 2023 18:18 EST)
_____

Ricardo Mazzitelli


Acxell, LLC f/k/a P&G Auditors and Consultants, LLC

_____

By:

Its:


GRC Solutions, LLC

_____

By:

Its:

PGX, LLC

_____

By:

Its:

IN WITNESS WHEREOF, the parties hereto have executed this letter agreement as of the date first above written.

Very truly yours,

_____

Kenneth Curry

_____

Jacqueline Brown-Pilgrim

_____

Ricardo Mazzitelli

Acxell, LLC f/k/a P&G Auditors and Consultants, LLC

*Melissa Taylor*
_____

By:   Melissa Taylor

Its:   Director Operations

GRC Solutions, LLC

_____

By:

Its:

PGX, LLC

*Melissa Taylor*
_____

By:   Melissa Taylor

Its:   Director Operations

3

By: Jeffrey L. Herbert

Its: EVP & General Counsel

Apple Bank for Savings, sued as Apple
Bancorp, Inc. d/b/a Apple Bank for Savings

_____

By:

Its:

_____

Amit Govil


Agreed to and accepted:

AML RIGHTSOURCE, LLC

By:_____

Name: Frank Ewing

Title: CEO

4

Apple Bank for Savings, sued as Apple Bancorp, Inc. d/b/a Apple Bank for Savings

_____

By:

Its:

_____
Amit Govil

Agreed to and accepted:

AML RIGHTSOURCE, LLC

By:_____

Name: Frank Ewing

Title: CEO

Apple Bank for Savings, sued as Apple
Bancorp, Inc. d/b/a Apple Bank for Savings

_____

By:

Its:


_____

Amit Govil




Agreed to and accepted:

AML RIGHTSOURCE, LLC

By: Frank Ewing (Jan 5, 2023 22:03 EST)

Name: Frank Ewing

Title: CEO

4