# Exhibit 8

M6fezivc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   PAVLE ZIVKOVIC, on behalf of
    himself and others similarly
4   situated,

5           Plaintiffs,

6           v.                    17 Civ. 553 (GHW)

7   LAURA CHRISTY LLC, doing
    business as Valbella, et al.,
8                          Telephonic Conference

9           Defendants.

10  ------------------------------x
                              New York, N.Y.
11                            June 15, 2022
                              4:01 p.m.
12
    Before:
13
                    HON. GREGORY H. WOODS,
14
                       District Judge
15
                       APPEARANCES
16
    JOSEPH & KIRSCHENBAUM LLP
17      Attorneys for Plaintiffs
    BY:  YOSEF NUSSBAUM
18      LUCAS COLIN BUZZARD
        DANIEL MAIMON KIRSCHENBAUM
19
    DEALY SILBERSTEIN & BRAVERMAN LLP
20      Attorneys for Defendant Laura Christy LLC
    BY:  MARIA LOUISA BIANCO
21
    HAROLD, SALANT, STRASSFIELD & SPIELBERG
22      Attorneys for Defendant Laura Christy Midtown LLC
    BY:  LEONARD I. SPIELBERG
23
    NEAL SANFORD COMER
24      Attorney for Defendants Mr. Ghatanfard and Mr. Luca

25

M6fezivc

```
1              (Case called)
2              THE COURT:   So before I begin by taking appearances,
3    what I'd like to do at the outset is just ask everybody to
4    please place your devices on mute.  I'm hearing a substantial
5    amount of background noise.  So if I could just ask everyone to
6    please place your phones on mute, that would be very helpful.
7              If you can't place yourselves on mute, and
8    particularly if you're not participating, we may ask you to, or
9    mute you.  So again, let me just ask everybody to please place
10   their phones on mute.  The hissing sound that you hear in the
11   background is the sound of someone's phone not being on mute.
12             The line is making the sound now, so, again, I'm going
13   to ask everyone to please place your phones on mute, if you
14   can.  I'm going to begin by taking appearances for the parties.
15   And again, I'll ask that you place yourselves on mute.
16             Let me ask first, who's on the line for plaintiff?
17             MR. NUSSBAUM:   Good afternoon, your Honor.  Yosef
18   Nussbaum for the plaintiff.
19             THE COURT:   Thank you.  And who's on the line on
20   behalf --
21             MR. KIRSCHENBAUM:   Your Honor, Maimon Kirschenbaum.
22   I'm here as well.  Sorry.
23             THE COURT:   Thank you.
24             Who's on the line on behalf of defendant Laura Christy
25   LLC?
```

M6fezivc

1          MS. BIANCO:   Good afternoon, your Honor.  Maria Louisa
2     Bianco for Laura Christy LLC.
3          THE COURT:   Thank you.
4          Who's on the line on behalf of Laura Christy Midtown?
5          MR. SPIELBERG:   Good afternoon, Judge.  It's Leonard
6     Spielberg on behalf of Laura Christy Midtown.
7          THE COURT:   Thank you.
8          And who's on the line on behalf of the other
9     defendants, Mr. Ghatanfard and Mr. Luca?
10          MR. COMER:   Good afternoon, your Honor.  This is Neal
11     Comer on behalf of both of those individual defendants.
12          THE COURT:   Thank you.  Good.
13          So let me ask, is there any other lawyer who has not
14     identified themselves who's participating in the call?
15          MR. BUZZARD:   Good afternoon, your Honor.  This is
16     Lucas Buzzard, also for plaintiffs.
17          THE COURT:   Thank you.  Good.
18          So what I'm going to do is I'm going to, again, ask
19     the parties and participants to place your phones on mute.
20     Whoever is dialing in from -- 6775 is your last digits, you're
21     not on mute.  And I'm going to mute the other participant who
22     refuses -- that has just eliminated a substantial amount of the
23     background noise.  Again, please keep yourselves on mute.  The
24     line that I just muted did not seem to be associated with any
25     of the people from whom I just took appearances on behalf of

M6fezivc

1    the parties.  Again, counsel who's dialing in from a 914

2    number, please place your phone on mute.

3          So let me begin with just a brief instructions about

4    the rules that I'd like the parties to follow during this

5    conference.  At the outset, again, please keep your phones on

6    mute at all times, except when you're speaking to me or to the

7    representative of another party.

8          Second, please remember that this is a public

9    proceeding.  Any member of the public or press is welcome to

10   audit today's call.  You should just keep that in mind.

11         Third, please state your name each time that you speak

12   here.

13         Fourth, please abide by instructions from our court

14   reporter that are designed to help the court reporter do their

15   job.

16         And finally, I'm ordering that there be no recording

17   or rebroadcast to follow any portion of today's conference.

18         So, counsel, with that out of the way, today's

19   proceeding, counsel, I scheduled this as an opportunity to

20   discuss the application for an award of attorneys' fees in this

21   case.  As the parties know well, the plaintiffs prevailed at

22   trial with respect to all of the claims presented.  The class

23   plaintiffs are, therefore, entitled to the payment of

24   attorneys' fees pursuant to Section 663 of the New York Labor

25   Law, which I will refer to here as the NYLL.  In addition,

M6fezivc

1    Mr. Zivkovic seeks an award of attorneys' fees under

2    Section 8-502(g) of the New York City Human Rights Law, which I

3    will refer to as the NYCHRL.

4              Counsel, I've reviewed all of the timely filed

5    submissions in this case, did all of the submissions in this

6    case pertaining to the application for attorneys' fees, which

7    is the principal subject of this conference.  And I believe

8    that I have a view regarding the application on the basis of

9    that review.

10             I'll give the parties the opportunity if you like to

11   add anything to the written submissions that have been

12   previously provided to the Court, understanding that I've

13   reviewed the materials that have already been submitted to

14   date, and that the Court has established deadlines for the

15   submissions of briefing with respect to the issues.

16             Let me begin with counsel for plaintiffs.

17             Counsel, is there anything that you'd like to add to

18   your -- with this application?

19             MR. NUSSBAUM:   This is Yosef Nussbaum.  Thank you,

20   your Honor.

21             We'll rest on the papers, and we're happy and prepared

22   to address any specific questions the Court may have.

23             THE COURT:   Thank you.

24             Let me turn to counsel for Laura Christy.  Anything

25   that you'd like to add with respect to these issues?

M6fezivc

1          MS. BIANCO:   Thank you, your Honor.  Maria Louisa

2     Bianco.  Nothing to add at this time.

3          THE COURT:   Thank you.

4          Counsel for Laura Christy Midtown?

5          MR. SPIELBERG:   No.  I have nothing to add at this

6     time, Judge.

7          THE COURT:   Thank you.

8          Counsel for Mr. Ghatanfard and Mr. Luca?

9          MR. COMER:   Nothing from us either, Judge.  Thank you

10     very much.  This is Neal Comer.

11          THE COURT:   Thank you very much.  So thank you all for

12     that.

13          I'm going to ask you to place your phones on mute.

14     I'm prepared to rule on the application.  I'm going to do so

15     now, I'm going to do it orally.  Please bear with me.  And,

16     again, if you would please keep your phones on mute as I try to

17     provide the reasoning and ultimate conclusion with respect to

18     the application for an award of fees here.

19          After I've discussed the issues that relate to the

20     award of fees, I want to talk some more about the request for

21     the entry of judgment that the parties presented to the Court,

22     just to preview the topic there so that you can be thinking

23     about it.  I expect to talk about one how that proposed form of

24     judgment can and should be modified in response to the ruling

25     that I expect to enter now.

M6fezivc

1           And second, I want to talk about the process for

2      collection and distribution of the judgment amount and how the

3      plaintiffs in particular propose for us to set up a process to

4      do that under the supervision of the Court.

5           Before I get to that, however, let's turn to the

6      motion itself.  That is the motion for attorneys' fees.

7           So on May 13, 2022, plaintiffs filed a motion for

8      attorneys' fees.  Dkt. No. 306.  In support of the motion,

9      plaintiffs filed a memorandum of law, Dkt. No. 307 (the "P's

10     Mem."), and an affidavit by Mr. Buzzard, Dkt. No. 308 (the

11     "Buzzard Aff.").  The affidavit from Mr. Buzzard attached,

12     among other things, detailed contemporaneous time records for

13     the attorneys and paralegals who worked on the case for

14     plaintiffs.  In addition to requesting an award of fees under

15     the fee-shifting provisions of the NYLL, plaintiffs request

16     that I approve an award to counsel of one-third of the common

17     fund.  They have also requested that the Court approve up to

18     $30,000 in fees to a claims administrator and $15,000 in

19     administrative payments to each of the class representatives

20     who testified at trial.

21           Counsel for Mr. Ghatanfard, Mr. Luca and Laura Christy

22     Midtown did not oppose the motion.  However, counsel for

23     defendant Laura Christy Midtown LLC ("LCM") filed a declaration

24     in opposition to the motion.  Dkt. No. 309 (the "Opposition").

25     In the opposition, LCM challenges only a subset of the

M6fezivc

1    plaintiffs' application for fees.  They ask that the Court not

2    compensate plaintiffs' counsel for the costs associated with

3    litigating two ultimately fruitless motions for summary

4    judgment.  They do not argue that the amount of time spent on

5    those motions was excessive, but, rather, that because the

6    motions did not advance the litigation, they should not be

7    supported by an award of fees.  The declaration was not

8    supported by a memorandum of law.  Plaintiffs filed their reply

9    on June 2, 2022 (the "Reply").  Dkt. No. 312.

10           After reviewing the parties' submissions, I issued an

11   order on June 10, 2022, requesting supplemental briefing

12   regarding the extent to which all of the fees claimed by

13   plaintiffs could be pursued under the NYLL, given that

14   attorneys' fees were expended to develop Mr. Zivkovic's

15   individual claims, which were not brought pursuant to that

16   statute.  Plaintiffs' counsel submitted the requested

17   supplemental briefing on June 13, 2022, together with an

18   affidavit.  Defendants did not submit a response to the

19   supplemental briefing by the date ordered by the Court.

20           I have reviewed the submissions and am prepared to

21   rule on the motion.

22           So Attorneys' Fees, Costs and Expenses.

23           A.  Attorneys' Fees As The Prevailing Party Under the

24   NYLL.

25           In order to evaluate the reasonableness of the fees to

M6fezivc

1   be awarded under the NYLL, the Court begins by calculating the

2   lodestar.  The lodestar -- "the product of a reasonable hourly

3   rate and the reasonable numbers of hours required by the

4   case -- creates a 'presumptively reasonable fee.'"  *Millea* v.

5   *Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting

6   *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty of*

7   *Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Second Circuit

8   precedent requires a party seeking an award of attorneys' fees

9   to support its request with contemporaneous time records that

10  show "for each attorney, the date, the hours expended, and the

11  nature of the work done."  *New York State Ass'n for Retarded*

12  *Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

13  District courts have "considerable discretion" in determining

14  what constitutes a reasonable award of attorneys' fees.  *Arbor*

15  *Hill*, 522 F.3d at 190.

16          The Second Circuit has directed that district "courts

17  should generally use the hourly rates employed in the district

18  in which the reviewing court sits in calculating the

19  presumptively reasonable fee."  *Restivo v. Hesseman*, 846 F.3d

20  547, 590 (2d Cir. 2017) (quoting *Simmons v. NYC Transit Auth.*,

21  575 F.3d 170, 174 (2d Cir. 2009)).  Those hourly rates "are the

22  market rates 'prevailing in the community for similar services

23  by lawyers of reasonably comparable skill, experience, and

24  reputation.'"  *Gierlinger v. Gleason*, 160 F.3d 858, 882

25  (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11

M6fezivc

1    (1984)).

2           In determining a reasonable hourly fee, the Second

3    Circuit has also instructed district courts to consider "all of

4    the case-specific variables." *Arbor Hill*, 522 F.3d at 190.

5    The touchstone inquiry is "what a reasonable paying client

6    would be willing to pay." *Id.* at 184; *see Id.* at 192 ("By

7    asking what a reasonable, paying client would do, a district

8    court best approximates the workings of today's market for

9    legal services.").  The court should "bear in mind that a

10    reasonable paying client wishes to spend the minimum necessary

11    to litigate the case effectively" and "should also consider

12    that [a client] might be able to negotiate with his or her

13    attorneys." *Id.* at 190.

14           A district court may additionally factor into its

15    determination "the difficulty of the questions involved, the

16    skill required to handle the problem, the time and labor

17    required, the lawyer's experience, ability and reputation, the

18    customer fee charged by the bar for similar services, and the

19    amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants,*

20    *Inc.*, a 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010)

21    (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen*

22    *Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987), *report and*

23    *recommendation adopted*.  No 09 Civ. 8665 (JGK), 2011 WL 43459

24    (S.D.N.Y. Jan. 5, 2011).

25           "The district court retains discretion to determine

M6fezivc

1    what constitutes a reasonable fee." *Millea*, 658 F.3d at 166

2    (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758

3    (2d Cir. 1998)).  "However, this discretion is not unfettered,"

4    and "the district court must abide by the procedural

5    requirements for calculating those fees articulated by [the

6    Second Circuit] and the Supreme Court." *Id.*  "Attorneys' fees

7    must be reasonable in terms of the circumstances of the

8    particular case ..." *Alderman v. Pan Am World Airways*, 169 F.3d

9    99, 102 (2d Cir. 1999).

10            Mr. Kirschenbaum billed 129.3 hours to this case at a

11   rate of $550 per hour.  Mr. Nussbaum billed the most hours to

12   this case -- for the New York Labor Law claims, 409.8 hours as

13   a partner, at a rate of $500 per hour, and before that, 432.8

14   hours as an associate at a rate of $400 per hour.  Mr. Buzzard,

15   an associate, billed 234.4 hours to the NYLL claims in this

16   case at a rate of $400 per hour.  Leah Seliger, an associate,

17   billed 17.7 hours to the case at a rate of $400 per hour.

18   Denise Schulman billed 10.6 hours to the case at a rate of $500

19   per hour.  Six separate paralegals worked on the matter for a

20   total of 101.7 hours, billing $125 per hour.

21            "In determining the number of hours reasonably

22   expended for purposes of calculating the lodestar, the district

23   court should exclude excessive, redundant or otherwise

24   unnecessary hours, as well as hours dedicated to severable

25   unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d at

M6fezivc

1    422, 425 (2d Cir. 1999).

2          I have reviewed all of the billing records presented

3    by plaintiffs.  Having done so, I conclude that the total

4    number of attorney hours expended in this matter to be

5    "reasonable number of hours required by the case."  *Millea v.*

6    *Metro-North R.R., Co.* at 658 F.3d 154, 166 (2d Cir. 2011).

7    This case was litigated over an extended period and proceeded

8    through discovery, class certification, summary judgment motion

9    practice and trial.  As a result, plaintiffs were required to

10   expend a substantial amount of time working on the case.

11         I have looked at each of the billing records, and I

12   did not identify any that seemed to be excessive.  Indeed, I

13   was often impressed by the relative efficiency of plaintiffs'

14   counsel in briefing motions presented to the Court.  In

15   particular, I think the amount of time that they worked to

16   brief the pair of summary judgment motions, which are the focus

17   of LCM's declaration, was very reasonable -- they charged

18   relatively little to brief each of those substantial motions.

19         I do not believe that I should reduce the amount of

20   plaintiffs' recoverable fees as a result of the fact that the

21   summary judgment motions that they brought were unsuccessful

22   and did not, ultimately, advance the ball.  Before I turn to

23   the substance of the argument, let me first say that LCM's

24   declaration in opposition to the motion was not properly placed

25   before the Court.  As counsel for plaintiffs correctly argued,

M6fezivc

1   it did not comply with Local Rule 7.1, which provides the

2   following:

3           "Except as otherwise permitted by the Court, all

4   motions and all oppositions thereto shall be supported by a

5   memorandum of law, setting forth the points and authorities

6   relied upon in support of or in opposition to the motion, and

7   divided, under appropriate headings, into as many parts as

8   there are points to be determined.  Willful failure to comply

9   with this rule may be deemed sufficient cause for the denial of

10  a motion or for the granting of a motion by default."

11          Local Civil Rule 7.1.  "Failure to file a memorandum

12  of law in opposition to the opposing party's motion is, by

13  itself, a sufficient basis to grant the motion." *Kamara v.*

14  *United States*, 2005 WL 2298167 at *1 (S.D.N.Y. Sept. 20, 2005)

15  (citing *Loew v. Kolb*, 2003 WL 22271221 at *2 (S.D.N.Y.

16  September 30, 2003).  It is within the discretion of the Court

17  to consider the opposition notwithstanding its failure to

18  comply with the local rules.  I am exercising my discretion to

19  consider it here, but I think that it is worthwhile to

20  highlight the fact that the declaration does not comply with

21  the rule.  More substantively, it fails to provide any legal

22  support for the position that it advances.

23          At the outset, I recognize that LCM's motion rests in

24  part on comments made by me at the time the briefing schedule

25  was set for the second motion.  As the record reflects, I

M6fezivc

1    thought that the proposed motion was likely to be a waste of

2    time, and I wanted plaintiffs to think carefully before

3    bringing the motion.  I did not say then that I would not award

4    attorneys' fees for the motion; rather, that I would take the

5    issue into account when considering an application for

6    attorneys' fees.  I have done so here.

7            Having done so, I do not find a basis to exclude those

8    costs from the attorneys' fees recoverable by plaintiffs.

9    While unsuccessful -- and in my view a bit of a waste of

10   time -- I do not think that they were frivolous.  I granted

11   plaintiffs leave to file them, and plaintiffs did prevail at

12   trial with respect to the issues advanced in the motions.

13   Section 663 of the NYLL states that plaintiffs "shall recover"

14   "all reasonable attorneys' fees."  I do not believe that the

15   fees incurred in pursuing those motions were unreasonable in

16   amount or type; therefore, they are compensable under the

17   statute.

18           Some of the rates proposed by counsel exceed those

19   that have been endorsed by recent decisions in this district.

20   "Courts in this district have determined in recent cases that a

21   fee ranging from 250 to $450 is appropriate for experienced

22   litigators in wage-and-hour cases."  *Tendilla v. 1465 Espresso*

23   *Bar LLC*, 2021 WL 2209873, at *3 (S.D.N.Y. June 1, 2021)

24   (quoting *Yuquilema v. Manhattan's Hero Corp.*, 2014 WL 4207106,

25   at *14 (S.D.N.Y. Aug. 20, 2014).  Additionally, courts in this

1    district have determined "$175 to $250 per hour is an

2    appropriate range for junior attorneys."  *Reinoso v. Cipriani*,

3    2019 WL 2324566, at *3 (S.D.N.Y. May 30, 2019).   Associates

4    with three to four years of experience are usually awarded fees

5    of 200 to $275 per hour.  *See Hernandez v. JRPAC Inc.*, 2017 WL

6    66325, at *2 (S.D.N.Y. Jan. 6, 2017) (finding rate of $250 per

7    hour for attorney with three to four years of experience was

8    reasonable).  "Rates in excess of $225 per hour are reserved

9    for FLSA litigators with more than three years' associate

10   experience" while "associates with one to three years of

11   experience have been awarded rates ranging from $150 to $200

12   per hour."  *Lu Wan v. YWL USA Inc.*, 2021 WL 1905036, at *6

13   (S.D.N.Y. May 12, 2021).

14           Courts in this district have also awarded a standard

15   hourly paralegal rate of $75 unless the parties have shown that

16   the paralegal has specialized skills.  *Lu Wan v. YWL USA Inc.*,

17   2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) (citing *Knox v.

18   John Varvatos Enters. Inc.*, 2021 WL 608345, at *6 (S.D.N.Y.

19   Feb. 17, 2021)).

20           I recognize the issues that plaintiffs raise regarding

21   the use of case precedents in establishing appropriate rates

22   for counsel -- namely, that the use of precedent anchors rates

23   in the past.  I have also reviewed the aggregate data presented

24   by plaintiffs in their declaration regarding prevailing hourly

25   rates in New York for employment litigators.  In New York City,

1   first quartile partners billed $469 per hour, where third

2   quartile partners billed $794 per hour.  Associates in those

3   quartiles billed at 315 and $571 per hour respectively.  The

4   rates that I just recited from the case law present a range

5   that is lower than even the first quartile rates.  Accordingly,

6   I believe that an upward adjustment -- above the rates that I

7   just recited based on the case law -- is appropriate based on

8   my knowledge of the case and prevailing rates.  Because the law

9   firm was retained on a contingency basis, I do not have

10  empirical evidence regarding the amount that their clients are

11  willing to pay.

12          Mr. Kirschenbaum's hourly rate, $550, exceeds the top

13  of the range that courts in this district have awarded to

14  partners with significant employment litigation experience in

15  FLSA cases.  At the same time, I recognize Mr. Kirschenbaum's

16  years of experience in this practice area.  Therefore, I will

17  approve an hourly rate of $500 per hour for Mr. Kirschenbaum.

18  Given their experience in the field, I approve the same hourly

19  rate for each of the partners involved in the case.  The hourly

20  rates of each of the associates of the firm are supported as

21  well.  Mr. Buzzard has been practicing since 2010; Ms. Seliger

22  has been practicing since 2002.  Given their experience and the

23  nature of the work that they performed in this case, a fee at

24  the top of the associate range is appropriate in this case.

25          Counsel has provided detailed biographies for each of

M6fezivc

1    the paralegals who have worked on the case.  Each has

2    sufficient education and experience to command a rate higher

3    than the $75 per hour rate that I described as being supported

4    by the case law.  Based on my knowledge of market conditions, I

5    believe that the proposed rate of $125 per hour is appropriate

6    for each of them as a result of their specialized skill and

7    training, as well as the efficient use of their time in this

8    case as demonstrated in the billing records.

9              As a result, I calculate plaintiffs' attorneys' fees

10   as follows:

11             Mr. Kirschenbaum, a rate of $500 per hour for 129.3

12   hours; total, 64,500.

13             Mr. Nussbaum, who's a partner, $500 per hour for 409.8

14   hours, totaling $204,900.

15             Mr. Nussbaum as an associate, at a rate of $400 an

16   hour, for 432.8 hours, yielding $173,120.

17             Mr. Buzzard at a rate of $400 for 234.4 hours,

18   yielding $94,320.

19             Ms. Seliger at a rate of $400 an hour for 17.7 hours,

20   yielding $7,096.

21             Ms. Schulman at a rate of $500 per hour for 10.6

22   hours, yielding $5,300.

23             And paralegals at a rate of $125 for 101.7 hours,

24   yielding $12,712.50, aggregating $561,948.50.

25             This is the amount of attorneys' fees that plaintiffs'

1     counsel are entitled to under the NYLL.  This is also the

2     lodestar against which I will measure the proposed percentage

3     of fund award.  Again, the total was $561,948.50.

4             The Costs as the Prevailing Party Under the NYLL.

5             Plaintiffs' counsel also moves the Court for

6     reimbursement of $20,200.57 in litigation expenses under the

7     NYLL.  *See* P's Mem. at 16-17.  The costs for which plaintiffs

8     seek reimbursement include filing and service costs, postage,

9     deposition costs, interpreting fees and transcripts.  The costs

10    for which they seek reimbursement are properly compensable

11    under the NYLL.  Therefore, the Court awards plaintiffs

12    $20,200.57 in litigation costs.

13            C.  Attorneys' Fees as the Prevailing Party Under the

14    NYCHRL.

15            The NYCHRL provides that a court, "in its discretion,

16    may award the prevailing party reasonable attorneys' fees,

17    expert fees and other costs."  N.Y.C. Admin. Code

18    Section 8-502(g).  Here, I believe that as the prevailing

19    party, counsel for Mr. Zivkovic is entitled to reasonable

20    attorneys' fees on account of his success litigating the

21    discrimination claims against defendants Valbella Midtown,

22    Mr. Ghatanfard, and Mr. Luca.  As with the NYLL claims, the

23    Court must evaluate the reasonableness of the requested fees.

24    For the reasons described before, I conclude that the rates

25    billed by Messrs. Nussbaum and Buzzard -- the only people who

M6fezivc

1    billed on account of these claims -- are reasonable.

2              Mr. Nussbaum billed in the aggregate only 14.2 hours

3    with respect to these claims; Mr. Buzzard billed only 1.4

4    hours.  This amount of time to pursue claims that proceeded

5    through a successful trial is very reasonable.  Indeed, it is

6    extraordinarily little.  While Mr. Zivkovic's assault claim is

7    not subject to the fee-shifting provisions of the NYCHRL, the

8    work to prosecute that claim is clearly inextricably

9    intertwined with the NYCHRL claims the conduct that underpinned

10   the discrimination claim was also at the heart of the assault

11   claim.  "Where the district court determines that the

12   successful and unsuccessful claims are 'inextricably

13   intertwined' and 'involve a common core of facts or [are] based

14   on related legal theories,' it is not an abuse of discretion

15   for the Court to award the entire fee."  *Reed v. A.W.*

16   *Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996).

17             For these reasons I'm awarding to Mr. Zivkovic $7,060

18   in attorneys' fees pursuant to the NYCHRL.  This award will be

19   entered against Valbella Midtown, Mr. Ghatanfard, and Mr. Luca.

20             D.  Percentage of Fund Recovery

21             In addition to the recovery of attorneys' fees under

22   the NYLL, plaintiffs' counsel seeks an award of one third of

23   the common fund recovery.  First off, I want to be clear that

24   the common fund recovery here is $4,509,868.78 -- the common

25   fund recovery does not include the amount awarded to

M6fezivc

1    Mr. Zivkovic individually, which amounts to $680,000.  I do not

2    believe that I need to approve the distribution of a portion of

3    that recovery to his counsel pursuant to whatever fee

4    arrangement they have in place.  I am focused on the common

5    fund recovery for the benefit of the class.  33 percent of the

6    common fund is $1,503,274.56.

7            Counsel may recover a percentage of the common fund in

8    addition to statutory attorneys' fees.  See *Cnty. of Suffolk v.*

9    *Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990)

10   ("The purpose of fee-shifting statutes, however, is to

11   encourage the prosecution of certain favored actions by private

12   parties.  Under the facts herein, we perceive no basis for

13   concluding that giving effect to the equitable fund doctrine

14   would conflict with this purpose.").  Here, too, I perceive no

15   basis to conclude that giving effect to the equitable fund

16   doctrine would conflict with the purpose behind the

17   fee-shifting provisions of the NYLL.

18           The trend in the Second Circuit is to use the

19   percentage of the fund method to compensate attorneys in common

20   fund cases, although the Court has discretion to award

21   attorneys' fees based on either the lodestar method or the

22   percentage-of-recovery method.  See *Fresno Cty. Employees' Ret.*

23   *Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir.

24   2019).

25           The notice provided to class members advised that

M6fezivc

1    class counsel would apply for attorneys' fees for up to

2    one-third of the settlement fund.  No class member objected to

3    that provision.

4           1. *Goldberger* Factors.

5           Reasonableness is the touchstone when determining

6    whether to award attorneys' fees.  In *Goldberger v. Integrated*

7    *Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit

8    set forth the following six factors to determine the

9    reasonableness of a fee application:  (1) the time and labor

10   expended by counsel; (2) the magnitude and complexities of the

11   litigation; (3) the risk of the litigation; (4) the quality of

12   the representation; (5) the requested fee in relation to the

13   settlement; and (6) public policy considerations.  *Id.* at 50.

14          2.  Class Counsel's Time and Labor

15          Plaintiffs' counsel spent a substantial amount of time

16   on this litigation, as detailed in the billing records provided

17   to the Court.  That labor was appropriate, given the fact that

18   the case was fully litigated through trial.  This factor weighs

19   in favor of the requested award of fees.

20          3.  Magnitude and Complexity of the Litigation

21          The size and difficulty of the issues in a case are

22   significant factors to be considered in making a fee award.

23   *In Re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F.Supp. 97,

24   100 (S.D.N.Y. 1996).  This case is one of some magnitude,

25   concerning separate subclasses containing many individuals.

M6fezivc

1    The case proceeded to trial and raised complex issues of law.

2    The amount sought by plaintiffs' counsel is commensurate with

3    the magnitude and complexity of this litigation.

4              4.  The Risk of Litigation

5              Plaintiffs' counsel faced significant risk in

6    prosecuting this action and proving the merits of the claims.

7    And, given the complexity of the case, the risk was very large,

8    and would have required extensive work, as it did.  Plaintiffs'

9    counsel bore that risk on a contingency basis over an extended

10   period of time.  This factor weighs in favor of granting

11   plaintiffs' counsel's request.

12             5.  Quality of Representation

13             Plaintiffs' counsel have considerable experience in

14   wage and hour class action lawsuits, such as this.  They did

15   well in presenting the issues to the Court and the jury.  I

16   questioned the wisdom of their partial summary judgment

17   motions -- predicting that they would merely delay the final

18   resolution of the case -- but nonetheless, I find that the

19   quality of their representation was high.  Accordingly, I find

20   that this *Goldberger* factor weighs in favor of approving the

21   requested fee award.

22             6.  When determining whether a fee award is

23   reasonable, courts consider the social and economic value of

24   the class action, "and the need to encourage experienced and

25   able counsel to undertake such litigation."  *In re Sumitomo*

M6fezivc

1    *Copper Litig.*, 74 F.Supp. 2nd 393, 399 (S.D.N.Y. 1999).  Here,

2    the Court sees considerable public benefit to pursuing these

3    claims, particularly considering that some of the class

4    members' claims are for a relatively small dollar amount.

5    *Berni v. Barilla G. e R Fratelli S.p.A.*, 332 F.R.D., 14, 36

6    (E.D.N.Y. 2019), vacated and remanded sub on other grounds nom.

7    *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ("the very

8    small claims of the members of the class when taken separately

9    would not justify the expense of litigation.").  In addition,

10   "there is ... commendable sentiment in favor of providing

11   lawyers with sufficient incentive to bring common fund cases

12   that serve the public interest."  *Goldberger*, 209 F.3d at 51.

13   Accordingly, public policy, and more specifically, the goal of

14   incentivizing lawyers to bring private enforcement actions such

15   as this one, favors granting plaintiffs' counsel's request.

16          After considering all the *Goldberger* factors, the

17   requested fee award appears to be reasonable.

18          7.  Lodestar "Cross Check"

19          To ensure the reasonableness of a fee awarded under

20   the percentage of the fund method, district courts may

21   cross-check the proposed award against counsel's lodestar.  *See*

22   *Goldberger*, 209 F.3d at 50.

23          The lodestar in this case is $561,948.50.  That means

24   that the requested fees of $1,503,274.56 represents a

25   multiplier of 2.675 of the lodestar calculated by the Court.

M6fezivc

1   It would be a higher lodestar if I include the direct fee

2   recovery under the NYLL.  I'm going to analyze this using the

3   2.65 number, but my conclusion would be the same even if I used

4   the higher number.

5              This lodestar multiplier falls well within the range

6   of appropriate lodestar multipliers; indeed, courts often award

7   lodestar multipliers of up to eight times the lodestar, and in

8   some cases even higher.  *Viafara v. MCIZ Corp.*, 2014 WL

9   1777438, at *14 (S.D.N.Y.. May 1, 2014).

10             The requested fee award is within the range of what

11   courts in this circuit regularly award in class actions such as

12   this one, whether calculated as a percentage of the fund or in

13   relation to class counsel's lodestar.  Moreover, the factors

14   established for the review of attorneys' fees awards in

15   *Goldberger* supports the conclusion that the requested fee is

16   reasonable.

17             D.  Service Awards for Class Representatives

18             The service awards requested for the class

19   representatives here are excessive.  An incentive award may be

20   given to compensate named plaintiffs for efforts expended "for

21   the benefit of the lawsuit."  *Dornberger v. Metro Life Ins.*

22   *Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001).  Here, plaintiffs'

23   counsel seek an award of $15,000 for each of the four class

24   representatives who testified at trial in this case.  Counsel

25   asserts that each of the class representatives "participated in

M6fezivc

1    the litigation by producing documents, sitting for a

2    deposition, and preparing for trial."  Pls. Mem. at 25.

3            First off, the Court does not find that a payment to

4    Zivkovic -- who's been awarded $680,000 in this case as a

5    result of his direct claims in this case -- is either necessary

6    or appropriate.  *See e.g. Silverberg v. People's Bank*,

7    23 Fed. Appx. 46, 48 (2d Cir. 2001); *Brown v. Steinberg*, 1990

8    U.S. Dist. LEXIS 13516, at *11.  Mr. Zivkovic has been amply

9    compensated for his time testifying at trial.

10            "In calculating incentive payments, courts consider

11   'the existence of special circumstances, including the personal

12   risk (if any) incurred by the plaintiff applicant in becoming

13   and continuing as a litigant, the time and effort expended by

14   that plaintiff in assisting in the prosecution of the

15   litigation or in bringing to bear added value (e.g., factual

16   expertise), any other burdens sustained by the plaintiff in

17   lending himself or herself to the prosecution of the claim and

18   of course, the ultimate recovery.'" *Frank v. Eastman Kodak Co.*,

19   228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting *Roberts v. Texaco,*

20   *Inc.*, 979 F.Supp. 185, 200 (S.D.N.Y. 1997)).  Plaintiffs'

21   application for an incentive payment to Mr. Zivkovic does not

22   demonstrate a "level of special circumstances warranting an

23   incentive award." *Silverberg*, 23 Fed. Appx. at 48.

24            As noted, Mr. Zivkovic was pursuing individual claims,

25   as well as his classwide claims.  His testimony at trial

M6fezivc

1    contained testimony both about the classwide matters as well as

2    about his individual claims.  Having observed his individual

3    testimony and the amount of time and labor involved, I don't

4    believe that there is a need for additional payment to

5    Mr. Zivkovic as a result of his work, given the amount of

6    recovery for each of the class members.

7         There is "no indication that Mr. Zivkovic assumed a

8    risk or inconvenience not shared by the other class members

9    which is of such a magnitude to merit" an incentive award, and

10   the plaintiffs haven't provided specific evidence of any

11   purported risks magnitude.  Here, Mr. Zivkovic was amply

12   motivated to provide testimony, I believe, in support of both

13   his individual claims, as well as those on behalf of the class.

14        For the same reasons, I don't believe that the record

15   supports granting each of the testifying class representatives

16   other than Mr. Zivkovic an award of the size that has been

17   requested.  The amount of work that they did as described does

18   not appear to justify an award of $15,000 each.  The amount of

19   work that they did as described in the affidavit, and based on

20   my observations of the testimony of each of the individuals,

21   was more modest.  As a result, I will approve an incentive

22   award to each of the three representative plaintiffs who

23   testified at trial other than Mr. Zivkovic -- that is, Sanchez,

24   Marin and Rendon -- in the amount of $5,000 each.

25        III

1          In conclusion, I'm awarding plaintiffs' counsel

2     $561,948.50 in attorneys' fees pursuant to the fee-shifting

3     provisions of the NYLL.  I am awarding them $20,200.57 in costs

4     pursuant to the statute.  Plaintiffs' counsel are entitled to

5     an award of 33.3 percent of the common fund recovery for the

6     class action, or $1,503,274.56.  I am also awarding lead

7     plaintiffs Sanchez, Marin and Rendon a representative fee of

8     $5,000 each.  The obligation to pay the amounts that I have

9     just described is borne jointly and severally by Valbella

10    Midtown, Valbella Meatpacking and Mr. Ghatanfard.  In addition,

11    I am awarding counsel for Mr. Zivkovic $7,060 in attorneys'

12    fees pursuant to the NYCHRL.  The obligation to pay this amount

13    will be borne jointly and severally by Valbella Midtown,

14    Mr. Ghatanfard, and Mr. Luca.

15          So thank you very much for your patience, counsel, as

16    I got through that.  My proposal would be that you provide me

17    with a new form of judgment that includes the award of fees

18    that I just described.  The attorneys' fees should be included

19    in the judgment.  As I understand the law, interest on this

20    component of the award does not begin to accrue until judgment

21    with respect to it has been entered.

22          So what I would propose is that the parties present to

23    me a revised form of judgment consistent with this decision

24    that would also award attorneys' fees in the amount that I just

25    described.  I could then enter the judgment, and the parties

M6fezivc

1   could go off to do whatever you want to do next with respect to

2   the case.

3              Separately, I want to spend a little bit of time

4   talking about claims administration and the process going

5   forward.  I did not grant the request that I approve $30,000

6   for a payment of a claim administrator.  I didn't want address

7   that because I'm not sure that I'm yet -- I should say I don't

8   believe that I'm in a position yet to grant that request.  I

9   would like to review the résumé and qualifications of the

10  proposed claim administrator, as well as their costs and any

11  applications for expense reimbursement before I provide

12  authorization for their fee.

13             The other thing that I want to -- so I want to talk

14  about how it is that I'll be getting from you information about

15  the claims administrator who will be doing the distribution

16  work.  There are two other data points regarding the case going

17  forward that I want to talk with the parties about, perhaps

18  principally plaintiff.

19             One is once we have a claims administrator on board, I

20  would expect to see a more detailed plan of distribution than

21  what's been described to me to date.  I have unsworn

22  distribution percentages for the class members, but first I

23  would need for that information to be presented to me in an

24  affirmation or affidavit.

25             Second, more significantly, I'd like to see how it is

M6fezivc

1    that the claims administrator is planning to get the money out

2    to recipients, and how it will handle issues such as people

3    that they're not able to track down; how any overage, to the

4    extent there is any, will be allocated.

5            So there are a number of distribution-related issues

6    that, counsel, you're familiar with, which I just don't have in

7    front of me, and I'm not in a position to endorse.  And I think

8    that the process there would be helped along by the presence of

9    a claims administrator who can help the plaintiffs' counsel

10   present a more detailed proposal to me.

11           As a threshold, however, with respect to that issue, I

12   recognize that the first point is to make sure that there's

13   something to distribute.  And the issues there are twofold:

14   One is when will money be coming from the defendants; none of

15   them, to my knowledge, have declared bankruptcy, so I assume

16   that they are going to be paid, be paying or pursued for

17   payment at some point.

18           And two, to the extent that payment comes in over time

19   or incrementally -- not that I'm saying that it should or will,

20   but I would like to know how the plaintiffs wish to preserve

21   any moneys that come in for the payment of the common fund or

22   otherwise, and how they will be divvied up, where there are,

23   I'll call it, competing obligations.

24           So, for example, Mr. Ghatanfard and Midtown owe both

25   class obligations and the obligations to Mr. Zivkovic.  So in

M6fezivc

1    the hypothetical scenario in which we don't receive full

2    payment with respect to all of the claims up front, how will

3    allocation decisions be made with respect to the cash that is

4    received?

5           So I usually like to assume that everything will be

6    paid up front quickly, and maybe that will be the case here.

7    But I want to at least acknowledge that that is a part of the

8    plan here as to which I don't have much information, and that

9    which I think I need to know more in order to develop a plan

10   for depositing any funds received, and then distributing them.

11          All of this is brought on by your request for

12   appointing, or I should say approving, the compensation of a

13   claims administrator.  I think there are a number of other

14   threshold issues that we need to address, and as to which I

15   will want to solicit your views, counsel for plaintiffs.

16          So I apologize for the monologue.  My two questions

17   are, one, what's your view about sending me a revised proposed

18   judgment reflecting the things that we just talked about; and

19   two, what are your proposals regarding how to collect and

20   obtain more detail regarding the distribution of any funds from

21   the defendants here?  And I'll hear from each party in turn

22   with respect to each of those issues, beginning with number one

23   regarding the judgment.

24          Counsel for plaintiffs, what do you think about

25   whether or not you can give me a new proposed judgment

M6fezivc

1    reflecting the attorneys' fees as well?

2            MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

3    for plaintiffs and the class.

4            We can -- we can get a new proposed judgment to the

5    Court pretty quickly.  We'd want to send it to defendants

6    first, just to run it by them.

7            There is one issue that we would like to include in

8    this new proposed judgment that I don't think is an earlier

9    draft, which is to actually include the names of all of the --

10   the subclass members who are the beneficiaries of the judgment.

11   In preparing for the conference, I think that Rule 23 requires

12   the names of all these individuals to be put in the judgment,

13   and I don't think that was in the previous draft, but we would

14   like to incorporate that as well as, you know, the attorneys'

15   fees that the Court awarded today.

16           I'm happy to address the second issue as well.  I

17   don't know if the Court wants to hear from all the parties

18   first.

19           THE COURT:   Thank you.  I'll hear from the other

20   parties first.

21           With respect to the identity of the class members,

22   I'll come to you in a moment.  I'm not going to take a position

23   on that.  I certainly don't mind if you and the defendants talk

24   about adding additional issues to it.

25           Let me turn to counsel, first, for Mr. Ghatanfard and

M6fezivc

1    Mr. Luca, just on issue one, namely the judgment proposal.  Can

2    you work with counsel for plaintiffs to develop a new proposed

3    judgment to present to me for hopefully prompt entry?  Counsel

4    for Mr. Luca and Ghatanfard?

5              MR. COMER:   Your Honor, this is Neal Comer.

6              I would certainly be prepared to look at what they

7    draft and go through it with them.  And if it's what your Honor

8    has ruled, then I suppose we would not object to it.

9              THE COURT:   Thank you.

10             Counsel for Midtown?

11             MR. SPIELBERG:   Yes, Judge.  We would be in the same

12   position.

13             THE COURT:   Thank you.

14             Counsel for Meatpacking?

15             MS. BIANCO:   Maria Louisa Bianco.  I agree, your

16   Honor.

17             THE COURT:   Thank you.

18             So let's turn to issue two -- I'm sorry, let me finish

19   up with issue one.

20             Issue one, counsel for plaintiffs, please coordinate

21   with your colleagues on the other side, present me with a

22   proposed form of judgment promptly.  I will review it promptly

23   and try to execute it and enter it so that there is a judgment

24   on the boards in the case.

25             With respect to issue two, counsel for plaintiffs, how

M6fezivc

1    do you respond?

2    MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

3    for the plaintiffs again.

4    We appreciate the Court's comments on engaging a

5    claims administrator to work through the nitty-gritty issues of

6    how the -- any funds that are recovered would be distributed.

7    What we would do is we would send out a request for a bid.

8    There are a few of the claims administrators that I'm sure your

9    Honor has seen before in labor law class actions; try to find

10   who can get us the best quote.  I have to explain to them

11   exactly what it is we're going to need here.  And as the Court

12   highlighted, one of the important issues would be to figure out

13   where the subclasses are today, or the most recent contact

14   information that we can get for them, for a significant part of

15   the task here would be skip tracing and the like, to try to get

16   the class members' most recent addresses.  Once we find someone

17   who, or a company that gives us, you know, the best proposal,

18   we would then submit to the Court a letter and then try to

19   outline exactly what the specifics of the proposal are for your

20   Honor's approval.

21   In terms of allocating the judgment, what we would

22   suggest and what we've seen in the past is to allocate it on a

23   pro rata basis.  So, you know, the judgment, you know, is

24   $6 million, and $100,000 comes in, and that's -- you know, we

25   know the percentages of how that 6 million number was being

M6fezivc

1    divided to all of the -- all of the judgment creditors; we

2    would just divide it accordingly.

3           THE COURT:   Thank you.

4           Let me just pause --

5           MR. NUSSBAUM:   There's one other --

6           THE COURT:   I'll remind you of the one other -- just

7    pause you on the one issue.

8           I don't know when moneys will be coming in in respect

9    of this judgment and in what increments.  So just one issue to

10    put on the table for your consideration, as you're thinking

11    about that issue, is the size of checks to class members.

12           So I can imagine a situation in which, hypothetically,

13    not the full amount is paid up front, and in which a smaller

14    amount is instead received.  There will be a question about

15    whether and to what extent those moneys should be distributed

16    at all, perhaps, to class members until they hit a trigger

17    amount at which it makes sense to do the work, to do the

18    distribution.  So just an issue to think about.  Again, I

19    don't -- I'm going to assume that the defendants are going to

20    pay promptly and in full, since none have gone bankrupt, but it

21    may be that that is a nuance worth thinking about here.

22           The other issue that I'd raised was the simple

23    question of where money goes when it comes in, assuming money

24    comes in.  Typically I'm asked to approve something like an

25    escrow arrangement into which cash will be deposited and held

M6fezivc

1      for distribution in accordance with a preapproved plan of

2      distribution.  One thing that I don't have here yet is such an

3      application that is to establish some kind of an escrow account

4      into which these moneys will be deposited and only be released

5      subject to the distribution.  That's the other issue that I

6      wanted to ask you to consider, and either address here or in

7      your next submission to the Court.

8                   Any thoughts on that, counsel for plaintiffs?

9                   MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

10     again.

11                  We would open an escrow account and ask that the Court

12     allow us any moneys that come in be deposited into -- into the

13     class counsel's escrow account.

14                  THE COURT:   Thank you.  Good.

15                  MR. NUSSBAUM:   I do have one comment on the Court's

16     previous discussion on if the judgment's paid in installments,

17     how to handle that.  And I have a little bit of experience with

18     this in the past.  I think the situations are too numerous to

19     go through now and would not be fruitful to go through now, but

20     I think we would have to keep the Court involved and, you know,

21     ask for the Court's permission.

22                  You know, if a number that was too small came in to

23     justify sending checks to about 400 class members, we would ask

24     the Court's permission to continue to hold the money in escrow

25     until more money came in that would justify sending checks out.

M6fezivc

1          THE COURT:   Thank you.

2          That's my assumption.  It may be that in whatever

3    proposal you give me, you want to consider prebaked trigger

4    points so you don't need to come to me for preapproval for each

5    distribution.  But I'll leave that to you.  Thank you for being

6    on top of the question.

7          I think this might be, too, principally an issue for

8    counsel for plaintiffs, but if there's any defendant who wishes

9    to be heard with respect to those issues, I welcome any

10   comments.

11         First, counsel for Mr. Luca and Ghatanfard?

12         MR. COMER:   Neal Comer here, Judge.

13         No, your Honor.  No further comment.

14         THE COURT:   Thank you.

15         Counsel for Midtown?

16         MR. SPIELBERG:   Leonard Spielberg.  No further

17   comment, Judge.

18         THE COURT:   Thank you.

19         Counsel for Meatpacking?

20         MS. BIANCO:   Maria Lisa Bianco.  Nothing from me, your

21   Honor.

22         THE COURT:   Thank you very much.

23         I look forward to seeing the judgment, and then the

24   parties will be off to the races.

25         So, counsel for plaintiffs, please do think about the

M6fezivc

1    distribution escrow issues and present whatever you think is

2    appropriate to the Court for approval well in advance of

3    receipt of funds.

4              Thank you all very much.  This proceeding is

5    adjourned.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25